**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>    Defendant. | Civil Case No.: 18-cv-81004<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This action arises out of Defendant Post University, Inc.'s ("Defendant") practice of placing telemarketing calls to individuals in the absence of prior express written consent, and in the absence of any "do not call" policy or training, and without honoring the national "do not call" list, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Despite Defendant's failure to comply with these legal requirements *prior* to making telemarketing calls, Defendant has placed numerous telemarketing calls to Plaintiff's telephone number.

3. Plaintiff Davis has repeatedly tried to opt out of Defendant's solicitations, only to be met with resistance and continued calls.

4. Accordingly, Plaintiff brings this TCPA action on behalf of herself and two classes of similarly situated individuals under 47 U.S.C. § 227(c).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District and has committed the tortious acts in this District.

7. Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

8. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Boynton Beach, Florida.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is, and at all times mentioned herein was, a Delaware corporation headquartered at 800 Country Club Rd., Waterbury, CT 06708.

11. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## THE TCPA

12. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations and provide power to consumers to opt out of unwanted solicitations. *See* 47 U.S.C. § 227, *et seq.*

13. The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop

proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

15. Pursuant to this statutory mandate, the FCC issued two relevant regulations.

16. The first, in the FCC's very first regulation pursuant to the above mandate, established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

17. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

18. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

19. These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

20. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

21. These policies and procedures are required to be implemented before a company may legally make *any* calls for "telemarketing purposes." 47 CFR 64.1200(d).

22. Accordingly, any telemarketing call made without these policies and procedures implemented violate the TCPA.

23. The second regulation established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

24. These regulations are codified at 47 CFR 64.1200(c)(1-2).

25. Specifically, a company may not initiate any "telephone solicitation"[1] to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

26. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

27. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an established business relationship. However, once that established business relationship is terminated by a "do not call" request, the company must comply with the national do-not-call registry provisions.

## PLAINTIFF'S FACTUAL ALLEGATIONS

28. On or about August 9, 2017, Plaintiff called Defendant to inquire about enrolling in its for-profit school.

29. Plaintiff called from her cellular telephone number ending in 4599.

30. The same day, Defendant's employee Rita Francisco emailed Plaintiff financial aid paperwork.

31. The following day, Defendant's employee Carissa Valluzzo sent Plaintiff an email welcoming her to post.

32. **First call**: On August 11, 2017, Defendant called Plaintiff's telephone number ending in 4599 from its telephone number 203-596-8364.

33. **First revocation**: On August 13, 2017, Plaintiff wrote Defendant's employee Rita Francisco an email stating that she will no longer be able to move forward with attending Post. Victoria Meehan was copied on this email.

34. Victoria Meehan is not an ordinary employee – she is Defendant's Assistant Director of Admissions according to her email signature, and has been since June 2014, according to Ms. Meehan's LinkedIn

35. **Second call**: On August 15, 2017, Defendant's employee Rita Francisco called Plaintiff's telephone number ending in 4599 from its number 203-596-8364 acknowledging receipt of the August 13 email but stating that she was reluctant to close Plaintiff's file.

36. **Second revocation**: On September 21, Defendant's employee Carissa Valluzzo emailed Plaintiff, and Plaintiff responded that same day stating she was no longer able to attend and that "you may close my file".

37. **Third revocation**: On October 5, 2017, Defendant's employee Kimberly Williams emailed Plaintiff, and Plaintiff responded "[p]lease take me off ur mailing lists!"

38. Kimberly Williams lists her position in her email signature as "Admissions Counselor ADP – Team Lead."

39. **Fourth revocation**: On October 11, 2017, Defendant's Assistant Director of Admissions Victoria Meehan emailed Plaintiff, and Plaintiff responded "[p]lease stop emailing, texting, sms, calls, and voicemail! This is the third or fourth time I am asking to be removed from all of your lists!!"

40. Nevertheless, Defendant continued to call and email.

41. **Fifth revocation**: On November 8, 2017, Defendant's Admissions Counselor Team Lead Kimberly Williams sent an email encouraging enrollment, and Plaintiff replied "I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind. I am no longer interested in applying to attend Post University! Please let this be the last communication regarding your school."

42. Defendant continued to contact Plaintiff.

43. **Sixth revocation**: On January 4, 2018, Defendant's Assistant Director of Admissions Victoria Meehan emailed Plaintiff, and Plaintiff replied "[p]lease stop contacting me! Not interested!!"

44. **Third call**: On January 11, 2018, Defendant called Plaintiff's telephone number ending in 4599 from its telephone number 203-596-8364.

45. **Seventh revocation**: On April 4, 2018, Defendant's Admissions Counselor Team Lead Kimberly Williams emailed Plaintiff, and Plaintiff responded "[t]his is the 5 or 6th time I have asked Post representatives to stop contacting me. Please close my file!!! I will be forced to

obtain legal action."

46.     **Eighth revocation**: On June 6, 2018, Defendant's Admissions Counselor Team Lead Kimberly Williams emailed Plaintiff, and Plaintiff responded "Please stop emailing me! I'm not interested anymore! I have told everyone who has contacted me by phone and email!!"

47.     Notably, all of Defendant's emails included indications that those emails were being monitored (and none of Plaintiff's emails bounced back, as they would to an email address that could not accept incoming messages). For example, some of the emails included language that "[i]f you are no longer interested in completing your degree, please respond to this email and I will update our records." Others contained language asking the recipient to inform the sender via return email if the recipient was not the intended recipient.

48.     Despite these eight revocations, on July 17, Defendant's employee Connie (upon information and belief, Admissions Counselor Connie Reilly) sent a series of text messages[2] from its telephone number 203-802-5819 to Plaintiff's telephone number ending in 4599. The following is that text message exchange:

- **Fourth call**. *Defendant*: (1/5) Hello Melanie, this is Connie with Post University's Admissions
- **Fifth call.** *Defendant*: (2/5) office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were
- **Sixth call**. *Defendant*: (3/5) unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

---

[2] Text messages are "calls" under the TCPA. *See, e.g.*, 2003 FCC Order, 18 FC Rcd. 14014, ¶ 165

- **Seventh call**. *Defendant*: (4/5) We'd love to help you get back on track towards your educational

- **Eighth call**.[3] *Defendant*: (5/5) and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.

- **Ninth revocation**. *Plaintiff*: I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University. Any further communication from Post will allow me to file a complaint for harassment.

- **First DNC policy request**. *Plaintiff*: I would like to have a copy of Post University's Do-not-call list please! You may send it to my address on your file. Thank you! Melanie Davis.

- *Defendant*: We do not disclose student information. Your file has been closed.

- **Second DNC policy request.** *Plaintiff*: I'm[sic] am not asking for any student information. I am asking for Post University's Do not call Manuel[sic]. My file being closed with your organization did not stop you from contacting me after several requests!

- *Defendant*: You will not be contacted by us again

- **Third DNC policy request**. *Plaintiff*: Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school. Thank you.

---

[3] Upon information and belief, there were additional calls other than those listed here, which will be uncovered in discovery.

49. On July 18, 2018, Plaintiff called Defendant's telephone number at 203-591-5047, and spoke with Defendant's employee Anna Lynn.

50. **Fourth DNC policy request**: On this call, Plaintiff identified herself and once again asked for Defendant's "Do Not Call" policy.

51. Defendant stated "I'm not sure I have that right here on my computer. If you need your file closed, I can do that for you", or words to that effect.

52. Plaintiff again reiterated her request for Defendant's "Do Not Call" policy.

53. Defendant's employee placed Plaintiff on hold. When Defendant's employee returned to the phone, she stated that she did not have that on her computer and would have to check in with an unspecified "him" to see if there was a policy. She offered to email it to Plaintiff when she got it from "him."

54. Plaintiff provided her email address, which Defendant's employee read back to confirm. To date, however, Plaintiff has not received any policy.

55. As discussed, the TCPA prohibits making "any call for telemarketing purposes" unless the caller has instituted certain minimum standards with respect to persons who request not to receive telemarketing calls (regardless of equipment used or consent obtained).

56. These standards include, among others, keeping a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in telemarketing on the existence and use of the do-not-call list, and recording and honoring "do not call" requests. 47 CFR § 64.1200(d).

57. All of Defendant's calls to Plaintiff were in an effort to convince Plaintiff to enroll in its for-profit university, which is telemarketing.

58. At the time of its calls to Plaintiff, Defendant did not have such a written policy,

nor did it train personnel engaged in telemarketing on the existence and use of the do-not-call list.

59. Even if Defendant did have a such a policy in place at the time of the calls, Defendant's failure and refusal to produce that policy make it not "available upon demand".

60. Furthermore, Defendant's employees are not trained on honoring "do not call" requests or any internal "do not call policy".

61. Furthermore, Defendant did not record and/or honor "do not call" requests, as seen in Plaintiff's futile efforts to stop the calls.

62. Accordingly, all of Defendant's telemarketing calls to anyone, in the absence of such a policy, and regardless of consent or equipment used, violate 47 U.S.C. § 227(c).

63. While the exact number of calls to Plaintiff's cellular telephone number will be determined in discovery, Plaintiff has received more than two such telemarketing calls in a 12-month period.

64. Plaintiff is entitled to up to $500 for each call placed to her telephone number in violation of 47 U.S.C. § 227(c).

65. Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the violations were knowing and/or willful.

66. In addition, Plaintiff's telephone number ending in 4599 has been on the national "Do Not Call" registry since November 30, 2005.

67. As of no later than Plaintiff's second revocation, and certainly by Plaintiff's fourth revocation, Plaintiff had terminated any "established business relationship" with Defendant.

68. Plaintiff received at least two additional calls after that point.

69. Accordingly, Plaintiff is entitled to an additional $500 for each call placed to her telephone number in violation of 47 U.S.C. § 227(c).

70. Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the violations were knowing and/or willful.

71. Plaintiff has suffered actual injury because of Defendant's unwanted and untrained telemarketing telephone calls, including, but not limited to:

- Device storage;
- Data usage;
- Lost time tending to and responding to the unsolicited calls;
- Invasion of Privacy;
- Nuisance;
- Deprivation of the right to request, receive, and act in accordance with the mandated "do not call" policy to stop further calls.

72. These forms of actual injury are sufficient for Article III standing purposes.

## CLASS ACTION ALLEGATIONS

73. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed Classes, defined as follows:

Since July 30, 2014, Plaintiff and all persons within the United States to whose telephone number Defendant Post University, Inc. placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period.

("Internal DNC Class")

Since July 30, 2014, Plaintiff and all persons within the United States to whose telephone number Defendant Post University, Inc. placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period, when said telephone number was on the national "Do Not Call" registry at the time of the calls and after the person who Defendant called at that number had asked Defendant to stop contacting him or her (or words to that effect).

("External DNC Class")

74. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

75. **Numerosity**: The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable. Upon information and belief, Defendant expects each of its outbound call center employees to place 80-100 calls *per day*, and the class period covers four years of calls.

76. **Ascertainability**: The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintains written and electronically stored data showing:

    a. The time period(s) during which Defendant placed its telephone calls;

    b. The telephone numbers to which Defendant placed its telephone calls;

    c. Copies of correspondence (including do not call requests) with prospective class members;

    d. The purpose(s) of such calls;

    e. The names and addresses of Class members.

77. **Commonality**: There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

    a. Whether Defendant maintained a written "do not call" policy;

    b. Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

    c. Whether Defendant recorded or honored "do not call" requests;

    d. Whether Defendant calls telephone numbers on the national "do not call" registry;

    e. Whether Defendant had written procedures to comply with the national "do not call" rules;

    f. Whether defendant trained its personnel on complying with the national "do not call" rules;

    g. Whether Defendant has a process to access the national "do not call" list and ensure persons on this list are not called;

    h. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

    i. Whether Defendant should be enjoined from engaging in such conduct in the future.

78. **Typicality**: Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

79. Plaintiff Davis is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes in a one-year period to her telephone number without having the required policies in place, and Plaintiff's telephone number was on the national "do not call" list and she received calls after she attempted to terminate any established business relationship with Defendant.

80. Plaintiff and all putative Members of the Classes have also necessarily suffered actual damages in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy as they were unable to effectively stop the calls if they wanted to do so, or obtain a "do not call policy" upon which they could rely to stop the calls.

81. **Adequacy**: Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

82. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent themselves and the Classes.

83. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

84. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

85. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

86. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Internal DNC Class)

87. Plaintiff and the proposed Internal DNC Class incorporate the foregoing allegations as if fully set forth herein.

88. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Internal Class Members' telephone numbers.

89. Defendant did so despite not having a written policy pertaining to "do not call" requests.

90. Defendant did so despite not having such a policy available "upon demand."

91. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

92. Defendant did so despite not recording or honoring "do not call" requests.

93. Defendant placed two or more telephone calls to Plaintiff and Internal Class Members in a 12-month period.

94. Plaintiff and Internal DNC Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

95. Plaintiff and Internal DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the External DNC Class)

96. Plaintiff and the proposed External DNC Class incorporate the foregoing allegations as if fully set forth herein.

97. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and External DNC Class Members' telephone numbers.

98. Plaintiff's and External DNC Class Members' telephone numbers were all on the national "do not call" list at the time of the calls.

99. Defendant did not have an established business relationship with Plaintiff or External DNC Class Members.

100. Defendant placed two or more telephone calls to Plaintiff and Internal Class Members in a 12-month period.

101. Plaintiff and External DNC Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5), in addition to and separate from any award for damages related to Defendant's internal DNC list violations.

102. Plaintiff and C Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5), in addition to and separate from any award for damages related to Defendant's internal DNC list violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Davis, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff Davis as the representative of the Classes and appointing her counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § (c);

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages for each violation of 227(c) and the regulations promulgated thereunder;

E. An award of treble damages;

F. An award of reasonable attorneys' fees and costs; and

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** July 31, 2018                s/ Bradford R. Sohn_____
                                        Bradford R. Sohn
                                        Fla. Bar. No. 98788
                                        **THE BRAD SOHN LAW FIRM PLLC**
                                        2600 South Douglas Rd, Suite 1007
                                        Coral Gables, Florida 33134

Tel: 786.708.9750  
Fax: 305.397.0650  
brad@sohn.com

s/ Jeremy M. Glapion_____  
Jeremy M. Glapion  
**THE GLAPION LAW FIRM, LLC**  
1704 Maxwell Drive  
Wall, New Jersey 07719  
Tel: 732.455.9737  
Fax: 732.709.5150  
jmg@glapionlaw.com  
(*Pro Hac Vice* to be filed)