**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| MELANIE DAVIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 18-cv-81004-RLR |
| ) | |
| POST UNIVERSITY, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT POST UNIVERSITY INC.'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Post University Inc. (the "University"), pursuant to Fed. R. Civ. P. 12(b)(6), moves for dismissal of Plaintiff's Class Action Complaint ("Complaint") against it.

This case arises under a particular provision, Subsection (c), of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Through this provision, Congress directed the Federal Communications Commission ("FCC") to develop rules "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving ***telephone solicitations* to which they object**." *Id.* § 227(c)(1) (emphasis added).  As defined by Congress, "telephone solicitations" are a limited subset of telemarketing calls, expressly *excluding* telemarketing calls to, among others, "any person with whom the caller has an established business relationship." *Id.* § 227(a)(4).  In other words, a business calling individuals with whom it has existing relationships is *not* making telephone solicitations actionable under Subsection (c).

Instead, Congress authorized a private right of action if a person "received more than one telephone call within any 12-month period" placed "in violation of the regulations prescribed under this subsection" concerning unwanted telephone solicitations. *Id.* § 227(c)(5).  At the same time, Congress made having "reasonable practices and procedures to effectively

prevent **telephone solicitations** in violation of the regulations prescribed under this subsection" an affirmative defense to any such action. *Id.* § 227(c)(5)(C) (emphasis added). Recognizing mistakes happen and wanting to avoid strict liability for telephone solicitations sent after a call recipient made a do-not-call ("DNC") request, Congress mandated that if a defendant had implemented reasonable practices and procedures to honor DNC requests, this would be a complete bar to Subsection (c) claims. *Id.*

Plaintiff's Complaint turns this balanced framework on its head. The affirmative defense that was meant to be a shield for callers is now being used as a sword by Plaintiff to turn even calls **invited** by her into after-the-fact "invasions of privacy." In short, Plaintiff is effectively claiming that every call ever made by the University – regardless of the context of the particular call – is a DNC violation. Plaintiff advances this theory through the following sleight of hand.

First, Plaintiff makes the sweeping conclusion that all of the University's calls were telemarketing – even those that were in response to Plaintiff's inquiries and placed to assist her through the admissions process. Based on this false premise, Plaintiff then claims that every purported *telemarketing* call, instead of the more limited *telephone solicitations* governed by Subsection (c), placed by the University to her and the classes of individuals she seeks to represent is actionable. According to Plaintiff, this is solely because the University allegedly did not have a written policy for maintaining DNC requests and a University employee allegedly did not provide this policy to her on demand. Plaintiff then leaps to the untenable legal conclusion that every call made by the University is thus a TCPA violation, even if the call recipient expressly invited the call, and even if no DNC request was made. Plaintiff's unbridled theory of relief fails as a matter of law, however, for at least two reasons.

*First*, Plaintiff and the putative class members she seeks to represent do not have

standing to pursue claims for any telephone solicitations placed before making an express DNC request. No one could have suffered any concrete injury traceable to the alleged lack of a written DNC policy *unless and until* a DNC request was actually made, *and* the University failed to honor it by placing a later telephone solicitation.

***Second***, the TCPA only provides a private right of action to seek recovery for *telephone solicitations* to which a call recipient has objected under Subsection (c). The TCPA does not provide a private right of action to enforce the alleged failure to maintain a written DNC policy for *telemarketing* calls, let alone informational calls that are not subject to any DNC obligations.

## REGULATORY BACKGROUND

As noted above, the TCPA authorized the FCC to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving **telephone solicitations to which they object**." 47 U.S.C. § 227(c)(1)(A) (emphasis added). Pursuant to this statutory directive, the FCC promulgated regulations governing various aspects of telephone solicitations. The FCC created a national do-not-call list ("national DNC" or "national registry"), stating that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

Consistent with Congressional intent[1] and the statutory framework, the FCC also included an affirmative defense to DNC claims in their Subsection (c) rules, providing that

---

[1] "We have included a private right of action for consumers harmed by automated or prerecorded calls and a different private right of action for consumers who receive telemarketing solicitations. We have amended this provision in order to give telemarketers an affirmative defense in court **so that this provision does not impose strict liability on any telemarketer that might violate the provisions of the bill**." 137 Cong. Rec. S18783 (Nov. 27, 1991) (emphasis added).

3

"[a]ny person or entity making telephone solicitations . . . will not be liable for violating this requirement if . . . [i]t can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets" a number of "minimum standards," including establishing written procedures to comply with the national DNC rules, training personnel to comply with national DNC procedures, maintaining a DNC list, and using a process to prevent telephone solicitations to any telephone number on any list established pursuant to the DNC rules. 47 C.F.R. § 64.1200(c)(2)(i)(A)-(D).

Relevant to the scope of Subsection (c) private rights of action, the term "telephone solicitation" is defined as:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term **does not include a call or message**:
>     (A) to any person with that **person's prior express invitation or permission**;
>     (B) to any person with whom the caller has **an established business relationship**; or
>     (C) by or on behalf of a tax-exempt nonprofit organization.

47 U.S.C. § 227(a)(4) (emphasis added); *see also* 47 C.F.R. § 64.1200(f)(14). Thus, the TCPA and its implementing regulations establish that:

**Telemarketing** = a call that is encouraging someone to purchase something;

**Telephone solicitation** = telemarketing + (No invitation or No EBR[2]).

Thus, Subsection (c) of the TCPA *and* Subsection (c) of the TCPA's implementing regulation

---

[2] An "established business relationship" ("EBR") is defined in the FCC's rules as: "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

related to telephone solicitations do not encompass telemarketing writ large, but the subset of telemarketing calls that are telephone solicitations.  That is, a telephone solicitation is telemarketing to a stranger, or someone who revoked their permission through a DNC request or who no longer has an EBR.  A telephone solicitation legally *cannot be* placing a telemarketing call to someone who has invited the call or with whom the caller has an EBR.

The FCC separately adopted rules regarding internal do-not-call ("internal DNC") procedures applicable to all telemarketing calls in Subsection (d) of its TCPA regulation, among other technical and procedural rules.  The "internal DNC" regulation states that no person "shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity," and sets forth a number of "minimum standards" that the procedures must meet, including honoring, within a reasonable time, caller-specific do-not-call requests.  *Id*. § 64.1200(d).

Notably, the FCC's rules generally applicable to telemarketing calls in Subsection (d) – unlike the rules in Subsection (c) of Rule 64.1200—do not track the private right of action contained in Subsection (c) of the TCPA applicable to telephone solicitations.  Among other differences, the affirmative defense Congress mandated be available to all callers facing a Subsection (c) claim—*see* 47 U.S.C. § 227(c)(5)(C) —is not available under the technical and procedural rules the FCC adopted for telemarketing calls.  Finally, informational calls placed by businesses are not subject to any DNC requirement, but are regulated, if at all, by the restrictions on autodialers and prerecorded calls found in Subsection (b) of the TCPA, which are not relevant here.

## **PLAINTIFF'S ALLEGATIONS**

Plaintiff filed her Corrected Amended Class Action Complaint on August 1, 2018 (the "Compl."). Dkt. No. 8. For purposes of this Motion only, the University assumes that all facts pled in the Complaint, excluding legal conclusions alleged as facts, are taken as true.

Plaintiff alleges that, on August 9, 2017, *she* initiated contact with the University by calling to inquire about enrolling at the University. Compl. ¶¶ 28-29. Two days later, on August 11, 2017, a University employee called Plaintiff back after previously sending Plaintiff financial aid information to assist her with the enrollment process she initiated. *Id.* ¶¶ 30-32. Plaintiff does not allege any detail concerning this call or how it allegedly constituted telemarketing. *Id.* ¶ 32. Similarly, for the second call Plaintiff alleges she received from the University, Plaintiff only asserts that a University employee expressed reluctance to close her file while acknowledging Plaintiff's email purportedly informing the University that she would "no longer be able to move forward with attending" the University. *Id.* ¶¶ 33, 35. Plaintiff's own allegations thus imply that she previously told the University that she wanted to enroll at the University, which explains why the University was calling and emailing her concerning financial aid paperwork, a standard, transactional part of any college enrollment process. *Id.* ¶ 30.

Following additional emails from University employees, Plaintiff alleges that she made an express request not to receive any future calls or texts from the University on October 11, 2017. *See id.* ¶ 39. Plaintiff asserts that, despite this request, the University attempted to contact her by phone on two separate, additional occasions. The first such attempt occurred on January 11, 2018, although Plaintiff does not allege that she even answered the call, let alone that the University encouraged her to purchase its educational services. *Id.* ¶ 44. The last contact was a "text message exchange" that appears to be a single message broken up into five parts by her

wireless carrier in which a University employee inquired whether Plaintiff was "still interested in earning a Bachelor's degree in Human Services?" *Id.* ¶ 48. After this single text message exchange, Plaintiff also asserts that she requested that the University produce to her its internal policy on maintaining a do-not-call list, and that she did not receive the University's policy. *See id.* ¶¶ 48-54.

Based on these allegations, Plaintiff's Class Action Complaint brings two overlapping claims against the University for damages under the TCPA. Count I seeks damages under 47 U.S.C. § 227(c) of $500 or $1,500 for each telephone call placed by the University "for telemarketing purposes" on behalf of herself and the "Internal DNC Class"[3] for Post University's alleged failure to keep a written policy pertaining to do-not-call requests. Count II seeks damages under 47 U.S.C. § 227(c) on behalf of the "External DNC Class"[4] for allegedly placing telemarketing calls to her and class members despite them being on the national registry. Plaintiff seeks statutory damages "in addition to and separate from any award for damages related to" alleged Count I violations for the same call. Compl. ¶ 101.

---

[3] Plaintiff defines the Internal DNC Class as:
> Since July 30, 2014, Plaintiff and all persons within the United States to whose telephone number Defendant Post University, Inc. placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period." Compl., ¶ 73.

[4] Plaintiff defines the External DNC Class as:
> Since July 30, 2014, Plaintiff and all persons within the United States to whose telephone number Defendant Post University, Inc. placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period, when said telephone number was on the national "Do Not Call" registry at the time of the calls and after the person who Defendant called at that number had asked Defendant to stop calling him or her (or words to that effect). *Id.*

# ARGUMENT

## I.  STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the court "take[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff[]." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint need not contain detailed factual allegations, but the plaintiff cannot rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must disregard legal conclusions, and consider only the facts pled. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II.  PLAINTIFF'S THEORY OF RELIEF IS NOT TETHERED TO CONCRETE INJURY TRACEABLE TO ALLEGED TCPA RULE VIOLATIONS

### A.  **Standing Requirements Under** *Spokeo*

The "irreducible constitutional minimum" of standing consists of three elements: the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*[5]

---

[5] A class also cannot be certified if some class members lack Article III standing. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. The Judiciary's role is limited 'to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1053 (2016) (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).

8

*Spokeo* involved a claim brought under the Fair Credit Reporting Act ("FCRA"). 136 S. Ct. at 1544. The plaintiff claimed that the defendant, which operated a "people search engine," created a profile for the plaintiff that contained inaccurate information about his marital status, age, employment, financial status, and education. *Id.* at 1546. The Ninth Circuit found it irrelevant whether these inaccuracies inflicted any real-world harm on the plaintiff, holding that the allegation of a statutory violation was sufficient to confer Article III standing.

The Supreme Court disagreed and began its analysis by reiterating that injury in fact is the "[f]irst and foremost" of the three elements of standing and is "a constitutional requirement" that Congress "cannot erase." *Id.* at 1547-48. A plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is "concrete" if it is "'*de facto*'; that is, it must actually exist." *Id.* A plaintiff must prove both particularization and concreteness to establish standing. *Id.*

The Supreme Court held that a plaintiff does not "automatically" satisfy "the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* While concrete harm may be based on either a "tangible" or "intangible" injury, "a bare procedural violation, divorced from any concrete harm" is insufficient to "satisfy the injury-in-fact-requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

Even though Spokeo was alleged to have violated the FCRA with respect to information relating to the plaintiff—which was all the statute required to establish a violation—the Court

9

explained that a violation of the FCRA's "procedural requirements may result in no harm." *Id.* at 1550.  For example, the FCRA requires consumer reporting agencies to notify providers and users of consumer information of their statutory responsibilities. *Id.* at 1545.  However, "even if a consumer reporting agency fails to provide the required notice . . . , that information regardless may be entirely accurate." *Id.* at 1550.  The Court also held that "not all inaccuracies cause harm or present any material risk of harm." *Id.*

        **B.**        **Plaintiff's Failure To Establish A Concrete Injury Traceable To The Alleged TCPA Rule Violation**

*Spokeo* is dispositive here. An alleged failure to institute the internal DNC procedures specified by the FCC's regulations results in no harm to a call recipient *unless* the recipient attempted to invoke those procedures, *and* nevertheless received a subsequent telephone solicitation.  Stated differently, absent an express do-not-call request by Plaintiff and each of the putative class members she seeks to represent, the alleged absence of a written DNC policy could only result in a "conjectural or hypothetical" injury that the Supreme Court has ruled is insufficient to confer Article III standing.  *Spokeo*, 136 S. Ct. at 1547-48.

Indeed, *Spokeo* illustrates that alleging a statutory violation does not automatically establish standing.  Instead, Plaintiff still must demonstrate that she, and each member of the class, suffered concrete harm—which is harm that is "actual" and "real."  A "bare procedural violation" does not suffice.  *Id*. at 1549; *see also Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001-03 (11th Cir. 2016) (no concrete harm where mortgage servicer did not record satisfaction of mortgage within time period required by law); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513-15 (D.C. Cir. 2016) (no harm where merchant asked for zip codes in violation of law without any "concrete consequence"); *Braitberg v. Charter Comm'cns, Inc.*, 836 F.3d 925, 929-

10

31 (8th Cir. 2016) (no concrete harm where cable provider retained personally-identifiable information in violation of federal law).

Plaintiff and the putative class members cannot establish the necessary actual harm by relying on the University's alleged failure to establish an internal DNC policy as the fountainhead of all their claims. That failure by itself is an archetypal example of a mere procedural violation that *Spokeo* holds insufficient to satisfy Article III. In fact, the underlying regulation Plaintiff seeks to enforce requires a company to establish procedures for placing a person on an internal DNC list "*[i]f* a person or entity making a call for telemarketing purposes . . . receives a request from a residential telephone subscriber not to receive calls from that person or entity." 47 C.F.R. § 64.1200(d)(3) (emphasis added). The company then "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made," which "period may not exceed thirty days." *Id.* A residential subscriber who has not made any such request, however, has suffered no concrete harm from the failure to create a list.

Without alleging that everyone in the internal DNC class (a) made a do-not-call request to the University, and (b) subsequently received an unwanted call, members of this class could not have suffered a concrete and particularized injury from the University's alleged failure to have procedures in place to process DNC requests. Rather, Plaintiff and the putative class has at most alleged only a bare procedural violation, divorced from the concrete harm the statute is intended to prevent—the receipt of additional calls *after* a company-specific DNC request is made. The purpose of the internal DNC regulations is to prevent calls to which a recipient has affirmatively objected by requesting placement on the internal DNC list. Where no such request is made, the call recipient has suffered no concrete harm.

Plaintiff may attempt to argue that the receipt of a telephone call is an injury satisfying Article III even though the call was not preceded by a do-not-call request. But the Supreme Court's standing test requires a plaintiff to demonstrate that the alleged injury in fact is "fairly traceable" to the defendant's wrongful conduct. *Spokeo*, 136 S. Ct. at 1547. In other words, the plaintiff must establish that the injury would not have happened if the defendant had complied with the law. *See also, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) ("there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant'") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)); *see also St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 504 (8th Cir. 2018) (holding that the plaintiff failed to show that its alleged injury was traceable to the defendant's failure to adhere to a procedural TCPA rule).

Even if the University did not have a written policy regarding do-not-call requests available on demand, that alleged violation of the TCPA Subsection (d) rules is not traceable to any alleged injury Plaintiff or any other putative class member may have suffered until they in fact made a request to the University not to call them again. Indeed, the overbreadth of Plaintiff's theory of relief is amply illustrated by her own allegations. It was *Plaintiff* who first contacted the University to enroll there, and the initial reply communications from University employees sent to her were in direct response to Plaintiff's invitation and in order to guide her through the admissions and financial aid process. Compl. ¶¶ 28-32.

As a threshold matter, such solicited calls "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender **are not advertisements**." *Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th Cir. 2016) (emphasis added) (quoting *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 21 FCC Rcd. 3787, 3812, ¶ 49 (rel. Apr. 6, 2006)).  Because such transactional calls are not even telemarketing messages, they are outside of the FCC's DNC rules all together.  Further, Plaintiff does not allege that she made a do-not-call request until October 11, 2017, Compl. ¶ 39.  The University's alleged lack of a written DNC policy thus could not have conceivably harmed Plaintiff *until after* she made such a request, and the University allegedly sent her additional telephone solicitations.  Here, the only potential telephone solicitation that occurred after this alleged DNC request and which Plaintiff supports with anything other than labels and conclusions is the one text message exchange on July 17, 2018.  *Id.* ¶ 48.  Plaintiff does not—because she cannot—plausibly allege any concrete injury traceable to a violation of the FCC's DNC rules for telemarketing messages before this one text message exchange.  Thus, she does not have Article III standing to pursue relief for any telephone solicitations allegedly sent in violation of Subsection (c) until *after* she made a valid a do-not-call request.  Stated differently, her claims for statutory damages for solicited telephone calls she may have received *before* allegedly making a do-not-call request should be dismissed as a matter of law.

Similarly, Plaintiff also fails to allege that any of the putative Internal DNC Class members told the University not to call them.  Regardless of whether the University complied with the procedural requirements of the regulation, the putative class members would have received calls, because they had an established business relationship with the University and never asked to be added to a company-specific do-not-call list.  Because Plaintiff has not alleged that the alleged harm of the calls are traceable to the alleged failure to have a written policy pursuant to 47 C.F.R. § 64.1200(d)(1), the basis of her claim on behalf of herself and the putative class must also fail.

At bottom, Subsection (c) of the TCPA was never meant to reward plaintiffs for calls they actively invited, but only "telephone solicitations to which they object[ed]." 47 U.S.C. § 227(c)(1). Because Plaintiff's Complaint seeks relief for telephone calls received before any do-not-call requests were made, it is fatally overbroad and should be dismissed on this basis alone.

## III.   PLAINTIFF LACKS A PRIVATE RIGHT OF ACTION UNDER THE TCPA

Plaintiff also lacks standing because she does not have a private right of action under the TCPA for either of her claims as pled. This is because: 1) a violation of § 64.1200(d) of the TCPA regulations is a technical and procedural violation, which can only be enforced by the FCC pursuant to § 227(d) of the TCPA; 2) there is only a private right of action under the TCPA for a subset of telemarketing – telephone solicitations – and Plaintiff fails to allege that the University made telephone solicitations; and 3) the TCPA only concerns telemarketing calls initiated by a seller, and not communications sent by a business in response to information requested by a consumer.

### A.   A Violation Of Subsection (d) Of The Regulations Is A Technical And Procedural Violation

As explained above, Plaintiff's Count I is predicated on the written policy requirement under § 64.1200(d) of the regulations for telemarketing. The written policy requirement is merely a technical or procedural rule that only the FCC can enforce. Plaintiff can only bring a TCPA lawsuit under 47 U.S.C. § 227(c), but technical and procedural violations can only be prosecuted by the FCC under § 227(d) of the TCPA. Consequently, those technical and procedural rules lack a private right of action. Similarly, the regulation's requirement that the policy be produced "upon demand," *see* 47 C.F.R. § 64.1200(d), necessarily refers to the duty to provide the FCC with the policy on its demand in connection with its sole ability to enforce TCPA violations pursuant to § 227(d), not to provide any person who asks for the policy. Such a

14

requirement would become unduly burdensome for the University and any other business.

### B. Plaintiff's Failure To Allege The University Engaged In Telephone Solicitation

Second, Subsection (c) of the TCPA regulation, 47 C.F.R. § 64.1200(c), concerns telephone solicitations and mirrors Subsection(c) of the statute itself, which is also expressly limited to telephone solicitations. Moreover, Subsection (c) in the regulation includes the Congressionally mandated affirmative defense of having a written policy regarding maintaining do-not-call requests for telephone solicitations. Subsection (d) of the TCPA regulation, by contrast, concerns telemarketing broadly and does not mirror Subsection (c) of the TCPA, as it does not provide defendants with an affirmative defense for having a written policy regarding internal do-not-call lists.[6] Simply put, there is nothing in the TCPA or Subsection (d) of the regulation that provides a private party the right to file a claim in court regarding alleged *telemarketing* violations.[7] Rather, the TCPA provides a private right of action for the limited

---

[6] The difference between Subsection (c) and (d) of the regulation is important. The legislative history of the TCPA establish that Congress never intended to allow a private right of action for telemarketing calls under subsection (d). *See* 137 Cong. Rec. 18,781 (1991) (stating that Congress "included a private right of action for consumers harmed by automated or prerecorded calls and a different private right of action for consumers who receive telemarketing solicitations," while giving "telemarketers an affirmative defense in court."). *See Love v. Delta Air Lines*, 310 F.3d 1347, 1357 (11th Cir. 2002) ("The fact that Congress has expressly provided private litigants with one right of action . . . powerfully suggests that Congress did not intend to provide other private rights of action.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.")).

[7] *See, e.g.*, *Holmes, P.C. v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843, 854 (S.D. Ill. 2010) ("Here, although Congress created a private right of action under subsection (b) and subsection (c) of 47 U.S.C. § 227, it did not create such a right under subsection (d) of the statute. Plainly Congress knew how to create a private right of action under the TCPA, and the fact that it did so as to subsection (b) and subsection (c) but not subsection (d) of 47 U.S.C. § 227 ***manifests a legislative intent not to create a private right of action under subsection (d) of the statute.***") (emphasis added).

15

subset of telemarketing calls that are *telephone solicitations*.

Indeed, the Eleventh Circuit has already held that only telephone solicitations, and no other types of calls, can be properly brought under 47 U.S.C. § 227(c). *See Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235–36 (11th Cir. 2011) (Section 227(c)(5) "prohibits an entity from making more than one 'telephone solicitation' to the same person within a twelve-month period."); *see also Mierzwicki v. Citigroup, Inc.*, No. 14CIV61753BLOOMVALLE, 2015 WL 10963619, at *2 (S.D. Fla. Sept. 1, 2015) (a count "brought pursuant to § 227(c) of the TCPA requires a 'telephone solicitation'"). Thus, both of Plaintiff's claims fail as a matter of law because she does not allege that the University engaged in any telephone solicitations, but instead bases both Counts on broader telemarketing that is not actionable under Subsection (c). *See* Compl. ¶ 73 (defining the putative classes as having received "two or more telemarketing telephone calls"); *id.* ¶ 88 (Count I is based on receiving "calls for telemarketing purposes"; *id.* ¶ 97 (Count II is also based on receiving "calls for telemarketing purposes").

### C. Plaintiff's Factual Allegations Show That The University Did Not Engage In Telemarketing

Allowing Plaintiff and the putative classes to pursue recovery for telemarketing calls is not merely semantical as it would necessarily sweep in calls placed by the University to individuals with whom it had an established business relationship. As previously explained, telephone solicitation involves telemarketing *without* express permission or an established business relationship. Moreover, telemarketing itself does *not* include calls "made in direct response to written and oral requests." *Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016). "Such invited calls are not unsolicited telemarketing calls 'initiated' for the purpose of marketing a good or service." *Id.* (citing 47 C.F.R. § 64.1200(f)(12)); *see also Jacobs v. Quicken Loans, Inc.*, No. 15-81386-CIV, 2017 WL

16

4838567, at *3 (S.D. Fla. Oct. 19, 2017), reconsideration denied, 2017 WL 8751757 (S.D. Fla. Dec. 6, 2017) (calls not initiated by defendant does not constitute telemarketing); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *5 (W.D. Wash. July 12, 2017) (message received was aimed at completing commercial transaction that the plaintiff initiated and thus the message did not constitute telemarketing).

Here, Plaintiff alleges under both Count I and Count II that the University placed telemarketing calls to her and the putative class members. However, Plaintiff's factual allegations include calls that were not telemarketing calls but were instead in direct response to her inquiries. That is not telemarketing as a matter of law. Rather, it was simply a transactional customer service call, in response to Plaintiff's request for more information on enrolling at the University. *See Newhart*, 2016 WL 7118998, at *4; *see also Wick v. Twilio Inc.*, No. C16-00914RSL, 2016 WL 6460316, at *2 (W.D. Wash. Nov. 1, 2016). To the extent that any of the calls at issue were responses to direct inquiries, made before any do-not-call request, Plaintiff has no claim as a matter of law.

The facts, as alleged by Plaintiff, also establish that she did not immediately revoke her consent to the alleged calls. Although she requested the University "close [her] file" in connection with her admissions application for the upcoming semester, *See* Compl. ¶ 36, this is not enough to be a "do not call" request under the TCPA. *See Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1278 (11th Cir. 2017) (requiring a "clearly expresse[d] . . . desire not to receive further [calls]") (citing *In the Matter of Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961, 7996, 2015 WL 4387780 (2015) ("the TCPA requires . . . the called party clearly express his or her desire **not to receive further calls**" (emphasis added)).

At bottom, Plaintiff's claims are inherently overbroad as a matter of law and she lacks a

17

private right of action to bring them under the TCPA.  Consequently, her claims as currently pled must be dismissed.

## **CONCLUSION**

For the reasons stated above, Post University respectfully requests that the Court grant its Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and dismiss all claims against it.

Dated: September 14, 2018                                Respectfully submitted,

By: */s/ Mary Joanne Dowd*
Mary Joanne Dowd, # 368970
Adam Bowser, (pro hac vice pending)
Brandi G. Howard, (pro hac vice pending)
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006-5344
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)
mary.dowd@arentfox.com
adam.bowser@arentfox.com
brandi.howard@arentfox.com

*Attorneys for Post University, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 14, 2018, the foregoing was filed electronically with the Clerk of Court to be served by Notice of Electronic Filing from the Court's electronic filing system upon the following:

Bradford R. Sohn
THE BRAD SOHN LAW FIRM PLLC
2600 South Douglas Rd., Suite 1007
Coral Gables, Florida 33134
Tel: (786) 708-9750
Fax: (305) 397-0650
brad@sohn.com

Jeremy M. Glapion
THE GLAPION LAW FIRM, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: (732) 455-9737
Fax: (732) 709-5150
jmg@glapionlaw.com
*Attorneys for Plaintiff*

    /s/ *Mary Joanne Dowd*
      Mary Joanne Dowd