## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, | Civil Case No.: 18-cv-81004 |
| Plaintiff, | |
| v. | Judge: Hon. Robin L. Rosenberg |
| | Magistrate Judge: Hon. Bruce E. Reinhart |
| **POST UNIVERSITY, INC.,** | |
| Defendant. | |

**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Class Action Complaint**

# Contents

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

I.     Plaintiff's Allegations ............................................................................................ 3

II.    The Relevant Provisions of the TCPA ................................................................. 5
       a.     47 U.S.C. § 227(c) ........................................................................................ 5
       b.     47 C.F.R. § 64.1200(d) (Internal Do Not Call List) ...................................... 5

DISCUSSION ................................................................................................................ 7

I.     Private Right of Action For Violations of 47 C.F.R. § 64.1200(d) .................... 7
       a.     The FCC Issued 47 C.F.R. § 64.1200(d) Pursuant to 47 U.S.C. § 227(c) ........ 8
              i.     The Statute ........................................................................................... 8
              ii.    The FCC ................................................................................................ 8
              iii.   Courts .................................................................................................. 10
       b.     Neither § 227(c) nor § 64.1200(d) are Limited to "Telephone Solicitations" ................. 11
       c.     Defendant Cannot Challenge § 64.1200(d) Here ......................................... 14
       d.     Defendant's Arguments About § 227(c)(5)'s Affirmative Defense Are Unpersuasive. .. 15
       e.     Even Crediting All of Defendant's Arguments, its Motion Must Still be Denied ............ 16

II.    Article III Standing ............................................................................................. 16
       a.     Plaintiff Davis Has Article III Standing ....................................................... 16
       b.     Putative Class Members Have Standing, Though the Court Need not Address This Issue
              Now .................................................................................................................. 19

CONCLUSION ............................................................................................................. 20

**Cases**

*Allard v. SCI Direct*, Inc.
  2017 U.S. Dist. LEXIS 107106 (M.D. Ten. July 10, 2017) ................................... 11

*Baxter v. VSC LLC*
  2018 U.S. Dist. LEXIS 41650 (M.D. Fla. Mar. 13, 2018)...................................... 11

*Benzion v. Vivint, Inc.*
  2014 U.S. Dist. LEXIS 187275 (S.D. Fla. Jan. 17, 2014) ..................................... 10

*Burdge v. Ass'n Health Care Mgmt.*
  2011 U.S. Dist. LEXIS 9879 (S.D. Ohio Feb. 2, 2011)......................................... 11

*Charvat v. NMP, LLC*, 656 F.3d 440
  (6th Cir. 2011)...................................................................................................... 10

*Cordoba v. DIRECTV, LLC*
  320 F.R.D. 582 (N.D. Ga. 2017)............................................................ 11, 17, 18

*Cunningham v. Rapid Response Monitoring Servs.*
  251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ........................................................... 10

*Drew v. Lexington Consumer Advocacy, LLC*
  2016 U.S. Dist. LEXIS 52385 (N.D. Cal. Apr. 18, 2016) .................................... 11

*Evankavitch v. Green Tree Servicing, LLC*
  793 F.3d 355 (3d Cir. 2015).................................................................................. 15

*Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*
  858 F.3d 1362 (11th Cir. 2017) ........................................................................... 18

*Krakauer v. Dish Network, L.L.C.*
  311 F.R.D. 384 (M.D.N.C. 2015) .................................................................. 11, 20

*Mais v. Gulf Coast Collection Bureau, Inc.*
  768 F.3d 1110 (11th Cir. 2014) ........................................................................... 14

*Meadows v. Franklin Collection Serv.*
  414 Fed. Appx. 230 (11th Cir. 2011) ................................................................... 13

*Melito v. Am. Eagle Outfitters, Inc.*
  2015 U.S. Dist. LEXIS 160349 (S.D.N.Y. Nov. 30, 2015) .................................. 11

*Mohamed v. Off Lease Only, Inc.*
  2017 U.S. Dist. LEXIS 41023 (S.D. Fla. Mar. 22, 2017)..................................... 17

*Nece v. Quicken Loans, Inc.*
  292 F. Supp. 3d 1274 (M.D. Fla. 2018) ............................................................... 10

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*
    781 F.3d 1245 (11th Cir. 2015) ........................................................................ 18

*Reyes v. BCA Fin. Servs.*
    2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018) .................................... 20

*Rogers v. Capital one Bank (USA), N.A.*
    190 F. Supp. 3d 1144 (N.D. Ga. 2016) ............................................................... 18

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016) ..................................................................................... 17

*United States v. Dish Network, LLC*
    75 F. Supp. 3d 942 (C.D. Ill. 2014) .................................................................. 20

*United States v. Franchi-Forlando*
    838 F.2d 585 (1st Cir. 1988) ............................................................................ 15

*Venerus v. Avis Budget Car Rental, LLC*
    723 Fed. Appx. 807 (11th Cir. 2018) ................................................................. 17

Wagner v. CLC Resorts & Devs., Inc.
    32 F. Supp. 3d 1193 (M.D. Fla. 2014) ............................................................... 10

*Worsham v. Travel Options, Inc.*
    2016 U.S. Dist. LEXIS 118774 (D. Md. Sept. 1, 2016) ........................................ 11

**Statutes**

47 C.F.R. § 64.1200(c) ........................................................................... 4, 5, 6, 7

47 C.F.R. § 64.1200(c)(2) ................................................................................. 7

47 C.F.R. § 64.1200(d)(1) ................................................................................. 6

47 C.F.R. § 64.1200(d)(2) ................................................................................. 6

47 C.F.R. § 64.1200(d)(3) ................................................................................. 6

47 C.F.R. § 64.1200(d)(4) ............................................................................... 11

47 C.F.R. § 64.1200(d)(6) ................................................................................. 6

47 C.F.R. § 64.1200(e) ................................................................................. 6, 9

47 C.F.R. § 64.1200(f)(12) ............................................................................... 6

47 C.F.R. § 64.1200(f)(5)(i) ........................................................................... 16

47 U.S.C. § 227(c)(1) ................................................................................................ 5

47 U.S.C. § 227(c)(1)(A) ........................................................................................ 5, 8

47 U.S.C. § 227(c)(1)(E) ........................................................................................... 5

47 U.S.C. § 227(c)(5) ...................................................................................... 8, 13, 15

47 U.S.C. § 227(d) .................................................................................................... 9

47 U.S.C. § 402(a) .................................................................................................. 14

**Regulations**

18 FCC Rcd. 14014, 2003 FCC LEXIS 3673 (July 3, 2003) ........................... 8, 10, 14

7 FCC Rcd 8752 (Oct. 16, 1992) ........................................................... 7, 8, 10, 11

## INTRODUCTION

Defendant, Post University, Inc., is a for-profit university with a freshman retention rate of 43% and a six-year graduation rate of 36.4%[1], both significantly below the national average. By contrast, Defendant is significantly above the national average at taking student loan money, with tuition and fees of $29,550 per year.[2]

To maintain the constant influx of new students to support this business model, Defendant emphasizes high-pressure outbound calling – sometimes unsolicited, sometimes in response to inquiries – to convince call recipients to attend Post University. The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* regulates such calls. 47 C.F.R. § 64.1200(d), prescribed under 47 U.S.C. § 227(c), requires that Defendant implement and abide by an internal do-not-call list prior to making telemarketing calls. 47 C.F.R. § 64.1200(c), also prescribed under 47 U.S.C. § 227(c), requires that Defendant abide by the national do-not-call registry in making telephone solicitations. Defendant did none of these things. Instead, it called Plaintiff, Melanie Davis, and class members without these policies and procedures in place and continued to call after "do not call" requests were made. In doing so, Defendant violated the legal rights of, and caused harm to, Plaintiff and putative class members.

Ms. Davis is an example of how Defendant's disregard for the law impacts real people. Ms. Davis called Defendant in August 2017. Subsequently, Ms. Davis told Defendant she was not interested and to close her file. The calls did not stop. Eventually, Plaintiff made it even more clear, asking Defendant several times to stop contacting her by phone, email, or text. She told Defendant she would pursue litigation they did not. The calls did not stop. Thereafter, Ms. Davis filed this action. Defendant now moves to dismiss.

---

[1] https://collegescorecard.ed.gov/school/?130183-Post-University
[2] For main campus, full-time undergraduate. https://post.edu/financial-aid/tuition-fees

Defendant's Motion to Dismiss presents two questions:

> (1) Is there a private right of action under 47 U.S.C. § 227(c) of the Telephone Consumer Protection Act ("TCPA") for violations of 47 C.F.R. § 64.1200(d); and

> 2) Does Plaintiff have Article III standing for her claims?

The answer to both is an unequivocal yes.

There is no dispute between the parties that § 227(c) of the TCPA provides for a private right of action. Instead, Defendant's arguments here focus specifically on whether § 64.1200(d) is actionable under § 227(c). Defendant's arguments appear to vacillate between "the FCC exceeded its authority or misspoke" and "the FCC must have implemented these rules pursuant to a different provision of the TCPA". The first argument cannot be made here. Defendant must follow the procedures in the Hobbs Act if it seeks to challenge the FCC's rulemaking.

As for the source of authority for the FCC's implementation of § 64.1200(d), Defendant's suggestion that it did not come from § 227(c) is rebutted by the statute, the unanimity of courts, and the FCC itself. The FCC's rulemaking implementing what is currently codified at § 64.1200(d) was in response to § 227(c)'s statutory mandate to implement rules protecting consumers against unwanted telephone solicitations. To fulfill that mandate, the FCC required companies to implement and maintain an internal do-not-call list prior to making *any* telemarketing calls.[3]

With respect to the second question, Plaintiff Davis has Article III standing, whether considering the actual law or Defendant's overly restrictive interpretation. Numerous courts, including the Eleventh Circuit, have held – both before and after *Spokeo* – that the receipt of a telephone call in violation of the TCPA is sufficient to confer Article III standing. According to

---

[3] While these requirements were initially limited to telephone solicitations, in 2003 they were explicitly expanded to cover all calls for a telemarketing purpose, and § 64.1200(d) was amended accordingly. 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, *150 ¶ 96 (July 3, 2003).

Defendant, however, for Plaintiff to have standing, she must have sought to stop Defendant from placing further calls to her to no avail. But that is exactly what happened: Plaintiff requested that the calls stop and Defendant failed to honor or document her requests. Under the actual law or Defendant's stricter interpretation, Plaintiff has standing. At this stage, this is all that matters. The Court need not evaluate the hypothetical standing of putative class members, especially at this stage of the litigation.

## **BACKGROUND**

### I.   **Plaintiff's Allegations**

Plaintiff filed the operative putative class action complaint on August 1, 2018. [Complaint ("Compl."), Dkt. 8.] Plaintiff alleges that on or about August 9, 2017, she called Defendant to inquire about its for-profit school. [*Id.* at ¶ 28.] Shortly thereafter, Defendant began emailing and calling Plaintiff. [*Id.* at ¶ 30-32.] On August 13, 2017, Plaintiff wrote Defendant via email stating that she would no longer be able to move forward with attending Defendant's school. [*Id.* at ¶ 33.] Defendant's representative called Plaintiff two days later and acknowledged receiving Plaintiff's email but stated that she was reluctant to close Plaintiff's file and encouraged her to continue enrollment. [*Id.* at ¶ 35.]

The next month, Defendant followed up with Plaintiff by email, to which Plaintiff responded again that Defendant should close her file. [*Id.* at ¶ 36.] Nevertheless, Defendant continued to contact Plaintiff. On October 5, 2017, Defendant emailed Plaintiff, to which Plaintiff responded "[p]lease take me off ur[sic] mailing lists." [*Id.* at ¶ 37.] On October 11, 2017, Defendant once again emailed Plaintiff, to which Plaintiff responded, unequivocally, "[p]lease stop emailing, texting, sms, calls, and voicemail. This is the third or fourth time I am asking to be removed from all of your lists!!" [*Id.* at ¶ 39.] On November 8, 2017, Defendant again sent Plaintiff an email encouraging enrollment, and Plaintiff replied "I have asked you and your colleagues to

3

stop calling and emailing me. I was once interested and have had to change my mind. I am no longer interested in applying to attend Post University! Please let this be the last communication regarding your school." [*Id.* at ¶ 41.] On January 4, 2018, Defendant again emailed Plaintiff, to which Plaintiff responded "[p]lease stop contacting me! Not interested!!" [*Id.* at ¶ 43.]

Despite these requests, Defendant called Plaintiff on January 11, 2018 and emailed on April 4, 2018 [*Id.* at ¶¶ 44-45.] Plaintiff again responded to the email, this time threatening legal action if the communications did not stop. [*Id.* at ¶ 45.] Defendant again emailed on June 6, 2018, to which Plaintiff again responded asking Defendant to stop contacting her. [*Id.* at ¶ 46.]

Finally, on July 17, Defendant sent Plaintiff a text message[4] encouraging her enrollment at Post University. [*Id.* at ¶ 48.] Plaintiff responded to this text by again telling Defendant to stop contacting her, and repeatedly asking for Defendant's do-not-call policy. [*Id.*] Defendant declined to provide this policy. [*Id.*] All of Defendant's calls were telemarketing calls made in an effort to convince Plaintiff to enroll in its for-profit university. [*Id.* at ¶ 57.] Calls after Plaintiff revoked her consent also qualify as telephone solicitations, and Plaintiff has been on the national do-not-call list since November 30, 2005. [*Id.* at ¶ 66.]

In response to Defendant's abusive conduct, Plaintiff filed the instant suit alleging two separate violations of the TCPA on behalf of two separate classes. The first alleges Defendant's failure to comply with the minimum policies and procedures required prior to making any telemarketing calls and set forth in 47 C.F.R. § 64.1200(d). The second alleges that Defendant made telephone solicitations to persons on the national do-not-call list, as codified at 47 C.F.R. § 64.1200(c). These violations each and separately entitle Plaintiff and putative class members to

---

[4] Text messages are "calls" under the TCPA. *See, e.g.*, 2003 FCC Order, 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, *269-71, ¶ 165.

$500 per call, or $1,500 per call if the violations are proved to be knowing and/or willful.

## II.   **The Relevant Provisions of the TCPA**

### a.   **47 U.S.C. § 227(c)**

Section 227(c) of the TCPA required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The FCC was explicitly instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems' … )" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id.* at (c)(1)(A) and (E).

Accordingly, the FCC relevantly enacted two distinct sets of requirements: the first, currently codified at 47 C.F.R. § 64.1200(d), requires companies to implement certain minimum policies and procedures for maintaining an internal do-not-call list before making any telemarketing telephone calls. The second is currently codified at 47 C.F.R. § 64.1200(c) and requires companies to implement procedures to honor the national do-not-call registry.

### b.   **47 C.F.R. § 64.1200(d) (Internal Do Not Call List)**

The rule requiring companies to implement certain minimum policies and procedures for maintaining an internal do-not-call list was first put into place in the TCPA's implementing regulation. 7 FCC Rcd 8752, 8753 (Oct. 16, 1992) ("TCPA Implementation Order") ("This proceeding was initiated by passage of the Telephone Consumer Protection Act of 1991[.]"). The FCC, pursuant § 227(c)'s mandate and guidance, found that "the company-specific-do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *TCPA Implementation Order* at 8765, ¶ 23. It further wrote that "we must mandate procedures for establishing company-specific do-not-call lists to ensure

effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24. In other words, the FCC recognized that proactive standards, which companies had the burden to implement, were vital to protecting consumer privacy rights.

While this rule initially required such policies and procedures be implemented prior to any telephone solicitations, it was amended in 2003 to require implementation prior to any telemarketing calls.[5] The rule, as currently codified, provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber[6] unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). These policies and procedures "must meet" minimum standards, including maintaining a written policy, available upon demand, for maintaining a do-not-call list; training and informing personnel engaged in telemarketing on the existence and use of the do-not-call list; recording do-not-call requests when made; and honoring do-not-call requests. *Id.* at (d)(1), (2) , (3) , (6) .

### c. 47 C.F.R. § 64.1200(c) (National Do-Not-Call Registry)

The requirements pertaining to the national do-not-call list came later. In the *TCPA Implementation Order*, the Commission considered, but rejected, the establishment of a national do-not-call registry. It found that "[i]n view of the many drawbacks of a national do-not-call database … we conclude that this alternative is not an efficient, effective, or economic means of avoiding unwanted telephone solicitations." *Id.* at 8761, ¶ 15.

---

[5] "Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(12). "Telephone solicitation" is defined identically but excludes calls with prior express invitation or pursuant to an established business relationship.

[6] Though these regulations use the phrase "residential telephone subscriber" and similar, in 2003 they were expanded to include calls to cellular telephone numbers. 47 C.F.R. § 64.1200(e).

In 2003, however, the FCC changed its mind. In reconsidering its previous rejection of a national do-not-call registry, the FCC wrote that "[a] national do-not-call registry that is supplemented by the amendments made to our existing rules will provide consumers with a variety of options for managing telemarketing calls." 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, *150 ¶ 26 (July 3, 2003). These rules are presently codified at 47 C.F.R. § 64.1200(c). Among other things, these rules prohibit *telephone solicitations* (a subset of telemarketing) to persons on the national do-not-call registry, unless the person or entity making the telephone solicitation has written procedures to comply with the national do-not-call rules, trains personnel on these procedures, maintains and records a list of telephone numbers that the seller may not contact, and maintains access to the national do-not-call database. 47 C.F.R. § 64.1200(c)(2).

### d.  Relationship Between Telemarketing, Solicitations, 64.1200(c), and 64.1200(d)

For the Court's convenience, Plaintiff has attached as "Exhibit A" a flow chart showing the relationship between telemarketing calls, telephone solicitations, § 227(c), § 64.1200(c) and § 64.1200(d), which can easily be overcomplicated.

### DISCUSSION

### I.  Private Right of Action For Violations of 47 C.F.R. § 64.1200(d)

Defendant argues that § 227(c) does not provide a private right of action for violations of § 64.1200(d). Defendant claims, in part, that § 227(c) only provides a private right of action for "telephone solicitations." But the statute speaks for itself:

> (5) **Private right of action** A person who has received **more than one telephone call within any 12-month period** by or on behalf of the same entity **in violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)[.]

47 U.S.C. §. 227(c)(5) (emphasis added).

This is unambiguous: any "person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity *in violation of the regulations prescribed under this subsection*" may maintain a claim. The *only* relevant question then is whether § 64.1200(d) was prescribed under § 227(c). The statute itself is clear that it was, and the FCC and every court to confront this question have also concluded, explicitly or implicitly, that it was.

### a.   The FCC Issued 47 C.F.R. § 64.1200(d) Pursuant to 47 U.S.C. § 227(c).

#### i.   The Statute

The TCPA itself leaves no doubt for the source of the authority for the FCC to implement the company-specific do-not-call requirements found in § 64.1200(d). The statute explicitly requires the FCC to consider "industry-based or company-specific 'do-not-call' systems" as ways to protect consumer privacy. 47 U.S.C. § 227(c)(1)(A). This alone is dispositive of the source of the FCC's authority to implement § 64.1200(d)'s company-specific do-not-call requirements.

#### ii.   The FCC

The FCC also made clear that its authority for implementing § 64.1200(d) came from § 227(c). For starters, the relevant order is conveniently broken down into parts and subparts. Most relevantly, Part III (Discussion), Subpart B is "Procedures for Avoiding Unwanted Telephone Solicitations to Residences."[7] In the first paragraph under Subpart B, the Commission notes that

---

[7] As mentioned, the FCC expanded the protections to cover calls to wireless telephone numbers.

its authority for what follows is derived from § 227(c). *TCPA Implementation Order* at 8756, ¶ 7. The company-specific do-not-call requirements, now codified at § 64.1200(d), are found under subpart B, item 2 ("Alternatives to Restrict Telephone Solicitations to Residences").

By contrast, rules relevant to 47 U.S.C. § 227(d), "Technical and Procedural Standards", which Defendant argues is the source of § 64.1200(d), are found in subpart D, conveniently labeled "Technical and Procedural Standards". The only items discussed thereunder relate to a line-seizure duration limitation and identification requirements for prerecorded calls and faxes.

The FCC also mirrored the language of the statute to make clear the source of its authority. In enacting its company-specific do-not-call rules, the FCC explicitly found that

> …upon **weighing the costs and benefits** of company-specific … do-not-call lists **against the costs and benefits** of the *other alternatives presented in the record*, we conclude that the company-specific do-not-call list alternative is the <u>most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations</u>.

*TCPA Implementation Order* at 8765, ¶ 23. These findings directly correlate to § 227(c)'s mandate for the FCC to initiate a rulemaking to

> protect … telephone subscribers' privacy rights to avoid receiving telephone solicitations [by] *compar[ing] and evaluat[ing] alternative methods and procedures* (including … company-specific 'do not call systems') for their effectiveness in protecting such privacy rights and in terms of their **cost and other advantages and disadvantages**

and to

> develop proposed regulations to implement the methods and procedures that the Commission determines are <u>most effective and efficient to accomplish the purposes of this section</u>.

47 U.S.C. § 227(c)(1)(A), (E) (emphases added for comparison).

---

18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, *274 ¶ 167 (July 3, 2003); 47 C.F.R. § 64.1200(e).

### iii. <u>Courts</u>

Courts nationwide have rejected Defendant's arguments as well. In *Cunningham v. Rapid Response Monitoring Servs.*, the Middle District of Tennessee considered Defendant's arguments that violations of § 64.1200(d) cannot give rise to a cause of action under § 227(c)(5). 251 F. Supp. 3d 1187, 1199-1200 (M.D. Tenn. 2017). The court wrote that "[w]hile many portions of 47 C.F.R. § 64.1200 could arguably be attributed to more than one subsection of the TCPA, the Court ultimately agrees with the Sixth Circuit that the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C § 227(c)'s general mandate to adopt do-not-call regulations. Accordingly, a violation of 47 C.F.R. § 64.1200(d) can give rise to a claim under 47 U.S.C. § 227(c)(5)." *Id.* at 1200-1201. The Sixth Circuit case upon which *Cunningham* relied had expressly referred to 47 C.F.R. § 64.1200(d) as a regulation arising out of 47 U.S.C. § 227(c). *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011).

Closer to home, the court in *Benzion v. Vivint, Inc.* favorably cited *Charvat* and acknowledged that there is a private right of action under § 64.1200(d). Case No. 12-61826, 2014 U.S. Dist. LEXIS 187275, *15-17 (S.D. Fla. Jan. 17, 2014). In *Nece v. Quicken Loans, Inc.*, the court, in granting defendant's motion for summary judgment, did not question the private right of action for violations of § 64.1200(d). 292 F. Supp. 3d 1274, 1283 (M.D. Fla. 2018). The Middle District was more explicit in *Wagner v. CLC Resorts & Devs., Inc.*, where the court denied a motion to dismiss a claim based on 47 C.F.R. § 64.1200(d), citing *Charvat* and writing that "a violation of section 64.1200(d) is the initiation of the phone call without having implemented the minimum procedures." 32 F. Supp. 3d 1193, 1197-98 (M.D. Fla. 2014). The court found that the plaintiff had properly alleged a violation of 47 U.S.C. § 227(c)(5) by alleging that defendant had initiated calls for telemarketing purposes without instituting procedures that complied with the minimum standards. *Id.* Four years later, the Middle District of Florida, in *Baxter v. VSC LLC*,

again found no reason to dismiss a claim under § 227(c) for violations of § 64.1200(d). Case No. 17-cv-1718, 2018 U.S. Dist. LEXIS 41650, *18 (M.D. Fla. Mar. 13, 2018).

In *Cordoba v. DIRECTV, LLC*, the court wrote that "if [the procedures in 47 C.F.R. § 64.1200(d)] are not implemented, each call made by a telemarketer constitutes a violation of the TCPA and the FCC regulations [and] any person who receives two or more such calls has a private right of action." 320 F.R.D. 582, 587 (N.D. Ga. 2017). In *Allard v. SCI Direct, Inc.*, the court wrote that "47 U.S.C. § 227(c) instructs the FCC to regulate unwanted telemarketing calls. 47 C.F.R. § 64.1200(d) fulfilled Congress's legislative purpose by providing rules regarding the company-specific do-not-call list." 16-cv-1033, 2017 U.S. Dist. LEXIS 107106, *16 (M.D. Ten. July 10, 2017). Several other cases hold the same. *See, e.g.*, *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-00200, 2016 U.S. Dist. LEXIS 52385, *16-18 (N.D. Cal. Apr. 18, 2016) (finding plaintiff had stated a claim under § C for violations of § 64.1200(d)); *Melito v. Am. Eagle Outfitters, Inc.*, Case No. 14-02440, 2015 U.S. Dist. LEXIS 160349, *14, n.7 (S.D.N.Y. Nov. 30, 2015) (private right of action under § C for violations of 64.1200(d)); *Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C. 2015) (same).

Defendant has cited no cases finding no private right of action for violations of § 64.1200(d). Such cases do not exist. The only cases in the ballpark are two cases finding no private right of action for violations § 64.1200(d)(4) , which requires telemarketers to identify themselves. *See, e.g.*, *Burdge v. Ass'n Health Care Mgmt.*, Case No. 10-cv-00100, 2011 U.S. Dist. LEXIS 9879, *7-10 (S.D. Ohio Feb. 2, 2011); *Worsham v. Travel Options, Inc.*, Case No. 14-2749, 2016 U.S. Dist. LEXIS 118774, *18-19 (D. Md. Sept. 1, 2016). Other courts disagree. Regardless, this provision is not at issue.

**b.   Neither § 227(c) nor § 64.1200(d) are Limited to "Telephone Solicitations"**

In addition to arguing that there is generally no private right of action under § 227(c) for

11

violations of § 64.1200(d), Defendant argues that there is no cause of action here because § 227(c) is limited to "telephone solicitations", which is a subset of telemarketing calls. This is incorrect. As the law presently standards, except for the affirmative defense clause in § 227(c), neither § 227(c) nor § 64.1200(d) make any reference to "telephone solicitations." The private right of action contained in § 227(c) references "telephone calls" made "in violation of the regulations prescribed under this subsection". Section 64.1200(d) was a regulation prescribed under § 227(c) and requires procedures to be implemented prior to making "any call for telemarketing purposes".

Were this case brought prior to 2003, Defendant would be partially correctly. The FCC's initial implementation of the internal do-not-call list requirements was limited to telephone solicitations (and codified at § 64.1200(e) instead of (d)). *See* 1994 47 C.F.R. § 64.1200(e) ("No person or entity shall initiate any telephone solicitation…"). In 2003, however, the FCC *specifically amended* this provision to apply more broadly to telemarketing calls, writing "we amend the company-specific do-not-call rules to apply to any call for telemarketing purposes."[8] 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, *150 ¶ 96 (July 3, 2003). In support of this amendment, the FCC found that

> [T]he company-specific do-not-call approach has not proven ideal as a stand-alone method to protect consumer privacy…. [T]he increase in telemarketing calls over the last decade now places an extraordinary burden on consumers that do not wish to receive telephone solicitations. These consumers must respond on a case-by-case basis to request that they not be called. The record in this proceeding is replete with examples of consumers that receive numerous unwanted telemarketing calls each day. In addition, the widespread use of predictive dialers now results in many "dead air" or hang-up calls in which consumers do not even have the opportunity to make a do-not-call request. Such calls are particularly burdensome for the elderly and disabled consumers. We believe, however, that the measures adopted elsewhere in this order will enhance the effectiveness of the company-specific list.

*Id.* at *142-43, ¶ 91. One such measure was the expansion of the company-specific do-not-call

---

[8] This amendment also created the definition of "telemarketing" found at § 64.1200(f)(12)

rules to apply to all telemarketing calls, not just telephone solicitations. *Id.* at *150, ¶ 96. In other words, the broader language now found at § 64.1200(d) was not an error or mistake, but a careful, measured, and deliberate decision made pursuant to the FCC's authority under § 227(c).[9]

In support of its position, Defendant cites a series of cases of with no relevance or similarities to the instant case. Defendant cites to *Meadows v. Franklin Collection Serv.*, an unpublished 11th Circuit case, which wrote in dicta that § 227(c)(5) prohibits an entity from making more than one "telephone solicitation" to the same person within a 12-month period. 414 Fed. Appx. 230, 235 (11th Cir. 2011). However, the court did not actually decide this issue, nor could it – it was neither presented to the underlying district court nor to the appellate court. Instead, the court was focused on the fact that the calls were plainly not solicitations or telemarketing – they were debt collection calls. Indeed, the court defined "telephone solicitation" using the definition for "telemarketing." In any event, in the 11th Circuit, "unpublished decisions, with or without opinion, are not precedential and they bind no-one." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1327 (11th Cir. 2017) (citing 11th Cir. R. 36-2). Further, as the 11th Circuit has (bindingly) written, "the role of the judicial branch is to apply statutory language, not to rewrite it." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000). Except for § 227(c)(5)'s affirmative defense, nothing in § 227(c)(5) or § 64.1200(d) is limited to "telephone solicitation."[10]

Finally, Defendant cites to several cases with variously irrelevant or common-sense holdings. For example, *Newhart* and *Jacobs* found that "invited calls" do not constitute "unsolicited telemarketing calls." That is true, by the very definition of "unsolicited." The calls are still telemarketing, which considers only the purpose of the call. *Wick* found that a message aimed

---

[9] *Id.* at *8-9, ¶¶ 5, 39.
[10] Defendant's citation to *Mierzwicki v. Citigroup, Inc.*, a case in which Plaintiff's counsel was briefly involved (before withdrawing) and could write a novel about, is identically flawed.

at completing a commercial transaction that the plaintiff initiated did not constitute telemarketing. Specifically, the *Wick* plaintiff received a text message stating that his order was incomplete after he sought to make a purchase, agreed to the terms and conditions, input his information, and clicked "Rush My Order" before closing the webpage. This has no relevance to the facts at hand.

### c.   Defendant Cannot Challenge § 64.1200(d) Here.

If Defendant is arguing that the FCC exceeded authority or erred in creating § 64.1200(d), its Motion must be denied. A challenge to an FCC order must be made pursuant to the Hobbs Act.

"Section 402(a) of the Communications Act provides that (except in limited circumstances not relevant here) any 'proceeding to enjoin, set aside, annul, or suspend any order of the [Federal Communications] Commission' must be brought under the Hobbs Act. 47 U.S.C. § 402(a)." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014). "The Hobbs Act, in turn, expressly confers on the federal courts of appeals 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such FCC orders." *Id.* at 1119. It is the practical effect of proceeding – not the central purpose or form in which an invalidation request is made – that determines whether the Hobbs Act applies. *Id.* at 1120. To the extent a claim depends "on establishing that all or part of an FCC order … is wrong as a matter of law or is otherwise invalid", the Hobbs Act is implicated. *Id.* (quotations and citations omitted). In other words, "whichever way it is done, to ask the district court to decide whether the regulations are valid violates the statutory requirements." *Id.*

In *Mais*, the district court found the FCC's interpretation of the term "prior express consent" in the TCPA could not be reconciled with the statutory language, and therefore discarded the agency's determination. *Id.* at 1119. The Eleventh Circuit overturned the decision, finding the district court was without jurisdiction to make such a ruling. *Id.* at 1121.

Accordingly, to the extent Defendant's Motion depends on overruling or setting aside the

14

FCC's rulemaking, it should be denied.

### d. Defendant's Arguments About § 227(c)(5)'s Affirmative Defense Are Unpersuasive.

Throughout its brief, Defendant claims that Congress intended for there to be an affirmative defense to claims brought under § 227(c)(5), but, according to Defendant, § 64.1200(d) does not contain such a defense. Therefore, the argument goes, § 64.1200(d) cannot have been prescribed pursuant to § 227(c). This argument is flawed for two reasons.

First, the FCC appears to have incorporated the affirmative defense into § 64.1200(d) directly. As has been quoted throughout, § 64.1200(d) states that "[n]o person or entity shall initiate any call for telemarketing purposes … *unless* such a person or entity has instituted [certain minimum procedures.]" The word "unless" is considered to be "telltale language … indicative of an affirmative defense." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015); *see also, e.g.*, *United States v. Franchi-Forlando*, 838 F.2d 585, 591 (1st Cir. 1988) (Breyer, J.) While Plaintiff has pled her case as though she retains the burden of proof, § 64.1200(d) may most appropriately be read as a blanket prohibition on telemarketing, with the implementation of minimum procedures serving as an affirmative defense to a violation of this provision.

Second, even if proving that Defendant lacked the required policies and procedures is part of Plaintiff's case-in-chief, the defense still exists. For Plaintiff to prevail on a claim for a violation of § 64.1200(d), she must show that Defendant failed to institute the proper procedures prior to the initiation of the calls. As such, "[t]here is no affirmative defense to be asserted. If a defendant can show that it had instituted the proper procedures, plaintiff's claim under subsection (d) must fail for lacking an essential element of the claim." *Simmons v. Charter Communs., Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016). In this scenario, the defense is still present, it is just not affirmative.

      **e.   Even Crediting All of Defendant's Arguments, its Motion Must Still be Denied.**

Assuming, however, that the initial calls to Plaintiff were not telephone solicitations because Plaintiff requested information, and further assuming as true Defendant's argument that only telephone solicitations are actionable, Plaintiff still states a claim. The established business relationship exception to telephone solicitations is terminated by a "seller-specific do-not-call request." § 64.1200(f)(5)(i). As of no later than October 11, 2017, Plaintiff had made such a request, terminating any established business relationship. Nevertheless, Defendant made two subsequent telemarketing calls to Plaintiff. Because those telemarketing calls were made in the absence of consent or an established business relationship, those calls were also telephone solicitations and by themselves satisfy the requirement of more than one call in a 12-month period.

Defendant makes some arguments that the calls were informational, but that question is not proper for a resolution on a Motion to Dismiss. Plaintiff alleges Defendant's calls were an effort to convince Plaintiff to enroll at Defendant's for-profit university. Taken as true, this is telemarketing. Further, an inquiry does not qualify subsequent calls as calls "to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender", as Defendant argues, in reliance on an inapplicable 9th Circuit case. There was no commercial transaction. Defendant's position would essentially mean that no invited call or call with an established business relationship could be telemarketing, thus merging the definitions of "telephone solicitation" and "telemarketing". By the statute, however, those terms are distinct, and a call recipient's prior inquiry is only relevant to whether the calls are telephone solicitations. Telemarketing is exclusively about the purposes and goals of a call.

## II.   <u>Article III Standing</u>

      **a.   Plaintiff Davis Has Article III Standing.**

Defendant argues that neither Plaintiff nor the putative class members can show Article III

standing because any violation of the internal do-not-call requirements found at § 64.1200(d) were bare procedural violations. Presently, however, the only relevant consideration is whether Plaintiff herself has Article III standing. In reversing a district court for conflating Article III standing with Rule 23, the Eleventh Circuit wrote that "[f]or a district court to certify a class action, the named plaintiffs must have standing …." *Venerus v. Avis Budget Car Rental, LLC*, 723 Fed. Appx. 807, 813 (11th Cir. 2018). "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016)); *see also, e.g.*, *Mohamed v. Off Lease Only, Inc.*, Case No. 15-23352, 2017 U.S. Dist. LEXIS 41023, *11 n.1 (S.D. Fla. Mar. 22, 2017) (concluding that because Plaintiff has standing, "Defendant's disputes about the putative class are best reserved for specific class certification proceedings in this case."). Hypothetical issues of standing for putative class members are irrelevant, especially at this stage.

Plaintiff Davis has standing. Courts nationwide have found, both before and after *Spokeo*, that receipt of a call made in violation of the TCPA is sufficient for Article III standing. In *Cordoba v. DIRECTV*, the Northern District of Georgia rejected an argument nearly identical to Defendant's. 320 F.R.D. at 595. The *Cordoba* defendant argued that calls without the internal do-not-call procedures found in § 64.1200(d) constituted "bare procedural violation[s]" within the meaning of *Spokeo*. *Id.* The *Cordoba* defendant argued that "absent a showing the calls were unwanted (which class members could have indicated by requesting placement on the IDNC list), Plaintiff cannot establish that class members suffered a 'concrete and particularized injury.'" *Id.*

The court rejected this argument, finding first that "the Eleventh Circuit has previously rejected the nearly indistinguishable argument [holding] that receipt of a 'junk fax' sent in

violation of the TCPA – even where that fax is never printed or seen by its intended recipient – constitutes sufficient harm to provide standing." *Id.* (citing *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245, 1251-53 (11th Cir. 2015) ).[11] The *Cordoba* court continued that "an overwhelming majority of courts (including at least one court in this district) have continued [post-*Spokeo*] to hold that the mere receipt of faxes, telemarketing calls, and/or text messages in violation of the TCPA constitutes sufficient harm for purposes of Article III standing." *Id.* (citing six different cases, including *Rogers v. Capital one Bank (USA), N.A.*, 190 F. Supp. 3d 1144, 1147 (N.D. Ga. 2016), which concluded, post *Spokeo*, that "[w]ith respect to the TCPA, the Eleventh Circuit has held that the Congress intended to create a concrete injury where the statute was violated, meaning so long as the plaintiff has been affected personally by the conduct that violates the statute, standing exists.")

The *Cordoba* court ultimately found that "a call placed in violation of the TCPA – whether or not a person has taken any affirmative steps to avoid it, like requesting placement on a caller's IDNC list – deprives its recipient of time, mental energy, and privacy." *Id.* at 596. The court concluded that the plaintiff had sufficiently alleged standing, because "a plaintiff alleging a violation under the TCPA … need not allege any additional harm beyond the one Congress has identified in order to establish Article III standing." *Id.* (quotation omitted). While the *Cordoba* decision is not binding on this court, it is thoroughly reasoned, detailed, and sourced, and directly addresses and rejects many of the same arguments Defendant raises here.

Plaintiff plainly alleges that she received telemarketing calls and telephone solicitations in violation of the TCPA – specifically, in violation of the provisions requiring Defendant to maintain

---

[11] The Eleventh Circuit appears to have affirmed its holding in *Palm Beach* in the TCPA context and post-*Spokeo* in a decision the month prior to the *Cordoba* decision. *See Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1365-66 (11th Cir. 2017).

policies and procedures relevant to the internal and external do-not-call lists. [Compl. ¶¶ 28-72.] Plaintiff further pleads invasion of privacy and lost time. [*Id.*].

But even using Defendant's own overly restrictive definition of standing that would find standing only where Plaintiff made a do-not-call request and then received telemarketing calls, Plaintiff has standing because she did just that. Plaintiff made a do-not-call request no later than October 11, 2017, and Plaintiff alleges that she received subsequent telemarketing calls on January 11, 2018 and July 17, 2018. [Dkt. 8, ¶¶ 44, 48, 57.]

### b. Putative Class Members Have Standing, Though the Court Need not Address This Issue Now.

Though the issue need not be decided now (if ever), Defendant's argument against class member standing *implicates the concrete injuries it claims cannot be shown*: the deprivation of the statutory right for Plaintiff and putative class members to control how their phones were used, to stop unwanted telemarketing calls, and to seek redress in court for those violations. Indeed, Defendant causes some of that harm by using its failure to implement legally required policies and procedures as a defense to claims that it did not implement those policies and procedures. This position amounts to "we did not keep records as required by law, and you would need those records to prove your case or that you were harmed, therefore you cannot do either."[12]

As a court in this district recently wrote in the context of class certification:

[T]he Court disagrees with [Defendant]'s position that the limitations in its records keeping … prove fatal to class certification…. [Defendant] is essentially arguing that the contours of the class should be defined by its own recordkeeping. But that would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct.

*Reyes v. BCA Servs.*, Case No. 16-24077, 2018 U.S. Dist. LEXIS 106449, *38-39 (S.D. Fla.

---

[12] Defendant's position is little different than a defendant deleting all evidence of wrongdoing, admitting as much, and moving for summary judgment based on there being no evidence.

June 26, 2018). Similarly, in response to an argument that an internal do-not-call class may include

people who did not ask defendant to stop calling, another court wrote that if it

> …were to deny certification because [Defendant] does not keep an accurate list as
> the regulations require and [Defendant] itself cannot identify which individuals on
> the list actually requested not to be called, it would create a perverse incentive for
> entities to keep poor records and to violate the TCPA's clear requirement that such
> a list be kept.

*Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. at 393; *see also United States v. Dish Network,*

*LLC*, 75 F. Supp. 3d 942, 1014 n.21 (C.D. Ill. 2014) ("[I]f Dish now asserts that its internal do-

not-call list is not properly maintained … all of its outbound telemarketing calls violation [the]

TCPA … [and] all of the 134,295,177 telemarketing calls … violate [the] TCPA[.]").

In any event, this issue, to the extent it is a real issue, should be addressed in the context of

class certification. As it stands, the only question is whether Plaintiff Davis has standing. She does.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss should be denied in full.

**Dated:** September 28, 2018

s/ Bradford R. Sohn_____
Bradford R. Sohn
Fla. Bar. No. 98788
**THE BRAD SOHN LAW FIRM PLLC**
2600 South Douglas Rd, Suite 1007
Coral Gables, Florida 33134
Tel: 786.708.9750
Fax: 305.397.0650
brad@sohn.com

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com
(*Pro Hac Vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, I filed the foregoing Memorandum through the Court's electronic filing system and thereby served all filing users, including Defendant's counsel of record.

**Dated:** September 28, 2018

s/ Bradford R. Sohn_____
Bradford R. Sohn
Fla. Bar. No. 98788
**THE BRAD SOHN LAW FIRM PLLC**
2600 South Douglas Rd, Suite 1007
Coral Gables, Florida 33134
Tel: 786.708.9750
Fax: 305.397.0650
brad@sohn.com

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com
(*Pro Hac Vice*)