**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| MELANIE DAVIS, | ) | Case No. 18-cv-81004-RLR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge: Hon. Robin L. Rosenberg |
| | ) | Magistrate Judge: Hon. Bruce E. Reinhart |
| POST UNIVERSITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT POST UNIVERSITY, INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

In its Motion to Dismiss, Post University, Inc. (the "University") established that Plaintiff cannot pursue her claims under the Telephone Consumer Protection Act ("TCPA") for two independent reasons. First, Plaintiff's Complaint is fatally overbroad because she claims relief for calls that she actively solicited before allegedly making a do-not-call ("DNC") request. Plaintiff cannot ground these distinct claims on the alleged failure of the University to have a written internal DNC policy because she did not, and cannot, allege a cognizable injury traceable to such an alleged procedural violation. Second, Plaintiff lacks a private right of action to bring her "telemarketing" claims under subsection (c) of the TCPA because that authorizes suit only for a subset of telemarketing calls: telephone solicitations. As pled, Plaintiff's claims are simply too broad and conclusory.

In her Opposition, Plaintiff attempts to argue that *all* calls the University placed to her are telemarketing calls subject to the TCPA. But this conclusion is belied by her own allegations. As this Court has already recognized in a directly analogous case, each alleged call is its own separate claim and must be analyzed on its own terms. *See Newhart v. Quicken Loans Inc*., No. 9:15-CV-81250, 2016 WL 7118998, at *3 (S.D. Fla. Oct. 12, 2016) (concluding that analysis under the TCPA requires "examination of individual calls, not the 'overall campaign'"). But lumping all calls together into an "overall campaign" is precisely Plaintiff's theory of the case, and is one which this Court has already rejected. Indeed, Plaintiff's argument is akin to a homeowner inviting someone to her house five times without incident, asking the person to leave on the sixth visit, and then claiming that the first five visits retroactively were "trespasses" entitling her to damages for each visit. This cannot be true as a matter of common sense, and certainly is not as a matter of law. At bottom, Plaintiff's allegations are wholly inadequate to launch a putative nationwide class action encompassing every single telephone call made by the

1

University solely because she allegedly did not receive an internal DNC policy document on

demand. Plaintiff's "gotcha" theory of TCPA recovery must be rejected because it is divorced

from any showing of concrete injury traceable to the procedural rule alleged to be violated.

## I.    PLAINTIFF FAILS TO ESTABLISH CONCRETE INJURY TRACEABLE TO EACH ALLEGED VIOLATION OF THE TCPA

### A.    Plaintiff Does Not Have Roving Article III Standing

The University established that Plaintiff's claims that are based simply on an alleged

failure to institute internal DNC procedures must fail because she has not alleged that *this*

*alleged procedural violation* caused her any cognizable harm. Mem. at 8–14.[1] Fatal to her

claims, Plaintiff stays conspicuously silent on what harm she purportedly suffered by the alleged

failure to institute internal DNC procedures, instead arguing that the mere "receipt of a call"

violates the TCPA and confers her Article III standing writ large. Opp. at 17.[2] But that is not

how Article III standing works.

Instead, Plaintiff must demonstrate standing for *each* claim and *each* theory of relief

sought. *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 153 (2010) (plaintiffs must

demonstrate standing to pursue each form of relief sought); *Davis v. Fed. Election Comm'n*, 554

U.S.724, 734 (2008). There is no "supplemental" standing: standing to assert one claim does not

create standing to assert other claims that do not satisfy "the actual-injury requirement."

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (rejecting "Plaintiffs' theory of

ancillary standing"). Stated differently, "standing is not dispensed in gross." *Lewis v. Casey*, 518

U.S. 343, 358 n.6 (1996).

---

[1] Defendant Post University's Memorandum in Support of Motion to Dismiss (ECF No. 13).
[2] Plaintiff Melanie Davis's Opposition to Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 19).

Under this binding precedent, standing to challenge one form of conduct — receiving calls *after* allegedly making a do-not-call request — does not confer standing to challenge a different form of conduct — receiving calls *before* making a do-not-call request based solely on the predicate allegation that the University did not maintain a written do-not-call policy. But this is exactly what Plaintiff attempts to do here.[3] She attempts to conflate the purported injury she suffered from allegedly receiving two additional calls *after* making a do-not-call request, with her separate theory of relief that she is supposedly entitled to recover even for calls she solicited. As the Supreme Court has repeatedly instructed, however, a plaintiff cannot bootstrap standing from one theory of relief to another simply because they arise out of the same nucleus of operative facts. *DaimlerChrysler*, 547 U.S. at 353.

Rather, as previously demonstrated, Plaintiff still must demonstrate that for each claim, she, and each member of the class, suffered concrete harm—which is harm that is "actual" and "real." A "bare procedural violation" does not suffice. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549–50 (2016); Mem. at 9–11. Plaintiff fails to explain in her Opposition, let alone allege in her Complaint, how the University's alleged failure to have a written internal DNC policy is traceable to any cognizable injury, particularly when she was the one who initiated the relationship with the University. Of course, the inescapable reality of this case is that one cannot suffer an injury *traceable* to a failure to maintain a do-not-call policy *unless and until* someone makes a do-not-call request.

---

[3] *See* Opp. at 4 (Summarizing that her per call claims under the first count are based on "Defendant's failure to comply with the minimum policies and procedures required prior to making any telemarketing calls," while the second count entails recovery for "telephone solicitations to persons on the national do-not-call list." Plaintiff then asserts that "[t]hese violations **each and separately** entitle Plaintiff and the putative class members" to per call damages) (emphasis added).

Thus, the only way to interpret the private right of action in Subsection (c) of TCPA consistent with Article III standing requirements is that Plaintiff only has standing to pursue claims for telephone solicitations received *after* making a do-not-call request. Plaintiff does not have ancillary standing to pursue claims based on the alleged absence of a do-not-call policy for the (solicited) calls she received before she allegedly made the do-not-call request on October 11, 2017. Compl. ¶ 39. Thus, Plaintiff's claims for calls predating her do-not-call request should be dismissed because she lacks standing.

###### B.      Plaintiff's Reliance On Unsolicited Telemarketing Cases Is Misplaced

Plaintiff relies on distinguishable cases involving unsolicited calls, or even more distinguishable Eleventh Circuit cases involving unsolicited faxes. Opp. at 18. Unlike those cases, however, the calls Plaintiff received before allegedly making a do-not-call request were solicited—*she* requested that the University contact her, and it did. For example, Plaintiff relies on *Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 596 (N.D. Ga. 2017), a non-binding case currently on appeal before the Eleventh Circuit, for the proposition that a call placed in violation of the TCPA "deprives its recipient of time, mental energy, and privacy." But the plaintiff in *Cordoba* was subjected to unsolicited calls from DIRECTV's outbound call center. At no point did the plaintiff initiate a relationship with DIRECTV to inquire about becoming a customer. The *Cordoba* Court's conclusion that DIRECTV invaded the plaintiff's privacy makes sense in light of the fact that the plaintiff had *not invited* those calls.[4]

Here, however, Plaintiff's *do*-call-me requests simply cannot be traced to the FCC's *do*-*not*-call rules. Plaintiff cannot claim that the University's telephone calls to her, *in response to*

---

[4]      To be sure, the *Cordoba* decision fails to explain how a person who never asked to be placed on DIRECTV's telemarketer's DNC list would have suffered a concrete injury traceable to the alleged procedural violation of failing to maintain such a list.

*her requests to contact her*,[5] caused her a concrete injury simply because of an alleged lack of a written DNC policy. Moreover, this Court already decided in *Newhart*, 2016 WL 7118998, at *4, that transactional calls made "to facilitate, complete, or confirm [what the plaintiff] had elected to pursue" were not telemarketing calls and thus could not violate the TCPA. Accordingly, the University did not invade her privacy when it returned her call because *she* asked for the enrollment information. At bottom, Plaintiff fails to establish how she was injured from calls *she* solicited, or how she has a legally protectable interest to not receive calls she expressly invited. That is because she cannot do so. None of the authority she cites regarding *unsolicited* calls can possibly be read to confer standing to pursue claims for calls Plaintiff admittedly invited.

## II.     PLAINTIFF FAILS TO SHOW SHE RECEIVED TELEMARKETING CALLS

As explained above, despite Plaintiff's conclusory assertions to the contrary, not all calls made by a for-profit institution are telemarketing. "Telemarketing" is defined in the TCPA regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The University previously established, and Plaintiff does not dispute, that the University's initial reply communications were in direct response to Plaintiff's inquiry about enrolling at the University and to guide her through the admissions process.[6] Mem. at 12–13. Nevertheless, Plaintiff argues that "an inquiry does not qualify

---

[5]     There is no dispute, as Plaintiff herself alleges, that she initially invited the University to call her because she was seeking information about enrollment. *See* Compl. ¶ 28. The University then called her back, pursuant to her request. *Id.* ¶ 32. Only several months later did Plaintiff revoke her consent to be called. *Id.* ¶ 39. Yet, she claims that calls prior to her revocation were actionable telemarketing calls that violated the TCPA because of the University's alleged failure to have an internal DNC policy.

[6]     It should be noted that the service the University offers to its students is the ability to obtain an education in the discipline of their choice. The federal government is in the "business" of providing financial aid. Thus, when the University contacted Ms. Davis to assist her with her

subsequent calls as calls to 'facilitate, complete, or confirm a commercial transaction that the recipient previously agreed to enter into with the sender'" because it would mean that "no invited call or call within an established business relationship could be telemarketing." *See* Opp. at 16. Plaintiff's argument fails as a matter of law.

Plaintiff claims the University's reliance on *Aderhold v. car2go N.A. LLC*, 668 F. App'x 795 (9th Cir. 2016) is misplaced, but that case is anything but "inapplicable." In *Aderhold*, the Ninth Circuit expressly relied on the FCC's own binding interpretation of its regulations. In fact, the court directly quoted the FCC, stating that it "has determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'" *Id.* at 796 (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992)). The FCC further ruled that "[c]ommunications sent to facilitate a loan transaction . . . **are not advertisements** when their purpose is to complete the financial transaction. A travel itinerary for a trip a customer has agreed to take or **is in *the process of negotiating* is *not* an unsolicited advertisement**."[7]

Relying on the FCC's binding interpretation of its own rules, the Ninth Circuit upheld the district court's holding that the text message at issue was not a "telemarketing" message because it was not issued for the purpose of encouraging the purchase of something, but rather was directed for the purpose of completing the registration process that the plaintiff had already initiated. *Aderhold*, 668 F. App'x at 796. This Court already came to the same conclusion in *Newhart*, 2016 WL 7118998, at *4 ("As the FCC and Ninth Circuit have recognized, these calls

---

financial aid questions, the University could not be contacting her to sell anything it offers.

[7]        *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3812–13 (2006) (emphasis added).

6

do not constitute telemarketing because their purpose is not to 'encourage the purchase of any [good or] service.'").

The same conclusion that this Court has already reached must also be applied here. Because each call must be evaluated individually, Plaintiff cannot simply rely on the expedience of making the conclusory assertion that since the University is a business, all of its calls must necessarily be considered telemarketing. Plaintiff concedes that she initiated the transaction by first contacting the University to inquire about enrollment, and that the University responded to her request in an attempt to "complet[e] the registration process initiated by [Plaintiff]." *Aderhold*, 668 F. App'x at 796. Because of this, Plaintiff did not, because she cannot, allege that each of the calls the University placed to her could qualify as telemarketing.

For instance, Plaintiff alleges that when she told the University that she was not going to be able to move forward with her application, an employee of the University told her that she was "reluctant" to close Plaintiff's file. *See* Compl. ¶¶ 33, 35. The University's employee's expression of reluctance while acknowledging Plaintiff's email does not establish the employee *separately* attempted to sell her anything. Again, telemarketing must be for "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Nothing about the employee's statement establishes a purpose to encourage the purchase of the University's services. Accordingly, Plaintiff fails to allege any facts showing that the University engaged in telemarketing prior to her alleged do-not-call request on October 11, 2017. Compl. ¶ 39.

Fatal to her Complaint, Plaintiff also fails to allege facts showing that she received two telephone solicitations *after* this alleged do-not-call request. Plaintiff alleges that the next call the University placed was on January 11, 2018, but she provides absolutely no facts about that call,

or whether she even answered it. *Id.* ¶ 44. Without any allegations about the call, the Court cannot plausibly conclude that it was a telephone solicitation.[8] Subsequently, Plaintiff alleges she received a text message from the University on July 17, 2018. *Id.* ¶ 48. While this text could arguably be deemed telemarketing, that is immaterial because it is only one telephone solicitation after Plaintiff's alleged revocation, when the TCPA requires two telephone solicitations to have a private right of action. *See* 47 U.S.C. § 227(c)(5) (requiring "*more than one* telephone call within any 12-month period") (emphasis added). Accordingly, Plaintiff's failure to establish that each call was a telephone solicitation unravels her complaint, warranting dismissal on this basis alone.

## III.   PLAINTIFF LACKS A PRIVATE RIGHT OF ACTION UNDER THE TCPA

The University established in its Motion that Plaintiff also lacks standing because she does not have a private right of action under the TCPA for either of her claims as pled. Mem. at 14–18. Subsection (c) of the TCPA regulation, 47 C.F.R. § 64.1200(c), concerns telephone solicitations and mirrors Subsection (c) of the statute itself, which is also expressly limited to telephone solicitations. Telephone solicitations are a narrower subset of telemarketing, which requires a violation only when a company places a telemarketing call *but* does not also have an established business relationship with the call recipient. 47 C.F.R. § 64.1200(f)(14). Plaintiff argues that § 227(c) of the TCPA is not limited to telephone solicitations, but telemarketing at large, because the statute only references a telephone call made in violation of the regulations. The FCC's interpretation of its own rules, however, directly contradicts Plaintiff's argument.

---

[8]     *See, e.g.*, *Duran v. Well Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (dismissing TCPA complaint because plaintiff only made conclusory assertions "devoid of any factual allegations to support that claim"); *Margulis v. Generation Life Ins. Co.*, 91 F. Supp. 3d 1165, 1167 (E.D. Mo. 2015) (dismissing TCPA claim because plaintiff did not "provide any information about the content of the call or how she knew it constituted a prerecorded or artificial voice call").

First, despite Plaintiff's arguments to the contrary, the FCC specifically ruled in its 2003 Order that Subsection (c)'s "separate private right of action" is only triggered after a consumer "received more than one telephone call within any 12-month period by or on behalf of the same company in violation of the guidelines for making *telephone solicitations*."[9] This is consistent with the FCC's own long-held interpretation that the private right of action relevant here only provides recovery for claims involving a residential telephone subscriber "receiv[ing] more than one 'live' call within any 12 month period . . . *after* making a do-not-call request."[10]

There is thus no private right to recover for calls received *before* a telephone subscriber makes a do-not-call request under the FCC's own interpretation of the TCPA and its implementing rules.[11] Indeed, according to the FCC, do-not-call policies and procedures are only relevant where the defendant chooses to "present such compliance efforts as an affirmative defense to any action brought against them."[12] Plaintiff ignores the FCC's holdings, which specifically limit the private right of action to *telephone solicitations*—telemarketing calls made to a recipient *without* an established business relationship. *See* Mem. at 3–5.

This not only means that Plaintiff must allege facts establishing that each call made by the University was a *telemarketing* call, but that she must also allege facts establishing that she had no established business relationship with the University for each call. Plaintiff's own allegations, however, demonstrate that she had an established business relationship with the

---

[9]     *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14135 (2003).

[10]    *Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls*, 8 F.C.C. Rcd. 506, 508 (1993) ("Industry Bulletin") (emphasis added).

[11]    As Plaintiff herself concedes, the FCC's interpretation of the TCPA is binding on district courts under the Hobbs Act. Opp. at 14. Accordingly, the FCC's holding that the private right of action is applicable to telephone solicitations—and not telemarketing generally—is controlling.

[12]    Industry Bulletin at 508.

University, as she is the one who solicited the University's calls for the purposes of finding out more information about enrollment. Plaintiff has thus pled herself out of court.

Plaintiff also attempts to use inapposite case law to argue that courts have held that there is a private right of action for § 64.1200(d) violations, but all of the cases are easily distinguishable because they involve telephone solicitations (not telemarketing writ large).[13] Far from helping Plaintiff, the case law she cites establishes that, to have a private right of action under the TCPA's subsection (c), the plaintiff cannot have solicited the calls and cannot have had an established business relationship with the defendant. In other words, Plaintiff only has a private right of action for telephone solicitations made in violation of the TCPA. Because Plaintiff's claims are predicated on telemarketing generally, rather than the much more limited subset of telephone solicitations, Plaintiff's Complaint is fatally overbroad on this independent basis. Accordingly, she lacks a private right of action to bring her claims as pled, and her Complaint must be dismissed.

## <u>CONCLUSION</u>

Post University respectfully requests that the Court grant its Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and dismiss all claims against it.

---

[13]     *See Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1191 (M.D. Tenn. 2017) (telephone solicitations with no established business relationship); *Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531368, at *1 (S.D. Fla. Jan. 17, 2014) (same, involving autodialers); *Drew v. Lexington Consumer Advocacy*, 4:16CV00200, 2016 WL 1559717, at *5 (N.D. Cal. Apr. 18, 2016) (same, involving text messages); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) (same); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 387–88 (M.D.N.C. 2015) ("Calls are also not actionable if a seller has an 'established business relationship' ('EBR') with a person, which is created after an individual makes a purchase, inquiry, or application for products or services and lasts for a certain number of months."); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014) (telephone solicitations with no established business relationship involving an autodialer); *Baxter v. VSC LLC*, 8:17CV01718, Order at 3 (M.D. Fla. Mar. 13, 2018) (same); *Charvat v. NMP, LLC*, 656 F.3d 440, 442 (6th Cir. 2011) (telephone solicitations with no established business relationship).

Dated: October 5, 2018                 Respectfully submitted,

                                       By: */s/ Mary Joanne Dowd*
                                       Mary Joanne Dowd, # 368970
                                       Adam Bowser, (admitted pro hac vice)
                                       Brandi G. Howard, (admitted pro hac vice)
                                       **ARENT FOX LLP**
                                       1717 K Street, N.W.
                                       Washington, DC 20006-5344
                                       (202) 857-6000 (telephone)
                                       (202) 857-6395 (facsimile)
                                       mary.dowd@arentfox.com
                                       adam.bowser@arentfox.com
                                       brandi.howard@arentfox.com

                                       *Attorneys for Post University, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 5, 2018, the foregoing was filed electronically with the Clerk of Court to be served by Notice of Electronic Filing from the Court's electronic filing system upon the following:

Bradford R. Sohn
THE BRAD SOHN LAW FIRM PLLC
2600 South Douglas Rd., Suite 1007
Coral Gables, Florida 33134
Tel: (786) 708-9750
Fax: (305) 397-0650
brad@sohn.com

Jeremy M. Glapion
THE GLAPION LAW FIRM, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: (732) 455-9737
Fax: (732) 709-5150
jmg@glapionlaw.com
*Attorneys for Plaintiff*

/s/ *Mary Joanne Dowd*
  Mary Joanne Dowd