UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  18-81004-CIV-ROSENBERG/REINHART

MELANIE DAVIS,

　　　　　　　　Plaintiff,

v.

POST UNIVERSITY, INC.,

　　　　　　　　Defendant.
_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S RULE 68 OFFER OF JUDGMENT (DE 20)

Oliver Wendell Holmes is reputed to have told a litigant, "This is a court of law, young man, not a court of justice."[1]  That statement accurately captures the concept that federal courts decide actual cases or controversies by applying the rule of law to the specific facts of a particular dispute.  Whatever their personal feelings about the equities of a situation, they do not balance social policies to achieve outcomes that are "just" or "fair."  That policy-making role is reserved to other co-equal branches of our separated Government.

The matter before the Court arises at the confluence of potentially-conflicting social policies.  One is the policy favoring class actions as a desirable means to resolve certain kinds of disputes, as reflected in Federal Rule of Civil Procedure 23.  The other is the policy favoring settlement of civil cases embodied in Federal Rule of Civil Procedure 68.  Plaintiff Melanie Davis makes impassioned arguments why the Defendant should not be allowed to make a binding Rule

---

[1] http://quotegarden.com/justice.html

68 Offer of Judgment prior to a decision on whether the putative class will be certified.  There may be cases where the facts support the result advocated by Davis.  Or, Congress, acting through the procedures of the Rules Enabling Act, 28 U.S.C. § 2072, may amend the Rules of Civil Procedure to adopt Davis' policy perspective.  Nevertheless, applying the existing rules to the facts in the record before it, this Court concludes that *this* Plaintiff in *this* case is not entitled to the relief requested.  It is therefore **RECOMMENDED** that the Plaintiff's Motion to Strike the offer of judgment made by Defendant Post University, Inc. ("the University") (DE 20) be **DENIED**.

This motion was referred to the undersigned by the Hon. Robin L. Rosenberg. DE 27. The undersigned has reviewed the motion, response papers (DE 25), and reply papers (DE 26).  The Court held a hearing on December 12, 2018, and authorized counsel to file supplemental briefs, which they did on December 20, 2018 (DE 31, 32).  This matter is ripe for decision.

## FACTS

On July 30, 2018, Davis filed this putative class action alleging violations of the Telephone Consumer Protections Act (TCPA) on behalf of herself and two classes of similarly situated individuals, who received unwanted telephone solicitations from the University.  DE 1, 8.[2]  On September 14, 2018, the University moved to dismiss the Amended Complaint.  DE 13.  After oral argument, but before the Court ruled on the Motion to Dismiss, Davis requested and received leave to amend the Complaint.  DE 30, 33. On December 26, 2018, Davis filed a First Amended Complaint (FAC).  DE 34.

The facts specific to Davis are that on or about August 9, 2017, she called the University to inquire about enrolling in its for-profit school.  ¶¶ 30-31.[3]  Davis called from her cellular

---

[2] The initial complaint was filed on July 30, 2018.  DE 1.  An Amended Complaint was filed the next day. DE 8.

[3] All paragraph citations (noted as "¶" or "¶¶") are references to the numbered paragraphs in the FAC.

telephone number ending in 4599.  ¶ 32.  The same day, a University employee, Rita Francisco, emailed Davis financial aid paperwork.  ¶ 33.  The following day, another employee, Carissa Valluzzo, sent Davis an email welcoming her to the University.  ¶ 34.

On August 11, 2017, the University called Davis' telephone number ending in 4599 from its telephone number 203-596-8364.  ¶ 35.  Davis' telephone number ending in 4599 has been on the national "Do Not Call" registry since November 30, 2005.  ¶ 119.  Then, on August 13, 2017, Davis wrote Francisco an email stating that she had decided not to attend the University.  ¶ 36. Davis also copied Victoria Meehan, the University's Assistant Director of Admissions, on this email.  ¶¶ 36-37.  On August 15, 2017, Francisco called Davis to acknowledge receipt of her August 13 email, but stated that she was reluctant to close Davis' file.  ¶ 38.  The following day, the University marked Davis as "opportunity lost" in its database to indicate that she was no longer an interested or likely prospective student.  ¶ 40.

Davis received additional emails from the University on August 24th and September 21st to "re-engage" her.  ¶¶ 42, 45-46.  Davis responded to the second email by asking the University to close her file.  ¶ 47.

On October 5, 2017, Kimberly Williams, an Admissions Counselor at the University emailed Davis, who responded "Please take me off ur mailing lists!"  ¶¶ 50, 53, 54.  On October 11, 2017, Assistant Director of Admissions Meehan emailed Davis, who again responded "Please stop emailing, texting, sms, calls, and voicemail! This is the third or fourth time I am asking to be removed from all of your lists!!"  ¶¶ 56, 59.

On October 18, 2017, Meehan emailed and called Davis "to gauage [her] interest in attending classes . . . and to convince her to do so."  ¶¶ 62, 65.

On November 8, 2017, Williams sent another email encouraging Davis to enroll.  ¶ 66. Davis replied "I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind. I am no longer interested in applying to attend Post University! Please let this be the last communication regarding your school."  ¶ 69.  On December 7, 2018, Valluzzo also emailed Davis encouraging her to enroll.  ¶ 72.  On January 4, 2018, Assistant Director Meehan emailed Davis, who again replied "Please stop contacting me! Not interested!!"  ¶¶ 76, 77.

The following week on January 11, 2018, Francisco called Davis' telephone number and "attempted to re-engage [Davis] with Post University, to convince [her] to attend Post University, and to take the necessary steps to enroll in [the] next session." ¶ 80.  On the same day, Davis asked the University to stop calling and contacting her.  ¶ 81.

Three months later, on April 4, 2018, Williams emailed Davis, who responded "This is the 5 or 6th time I have asked Post representatives to stop contacting me. Please close my file!!! I will be forced to obtain legal action."  ¶¶ 84-85.  Williams emailed Davis again on June 6, 2018, and Davis responded "Please stop emailing me! I'm not interested anymore! I have told everyone who has contacted me by phone and email!!"  ¶¶ 88, 90.

On July 17, 2018 a University employee, believed to be Admissions Counselor Connie Reilly, sent a series of five text messages to Davis:

1. Hello Melanie, this is Connie with Post University's Admissions
2. office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were
3. unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?
4. We'd love to help you get back on track towards your educational
5. and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.

¶ 95.[4]

Davis responded:

> I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University. Any further communication from Post will allow me to file a complaint for harassment. I would like to have a copy of Post University's Do-not-call list please! You may send it to my address on your file. Thank you! Melanie Davis.

¶ 95.  Reilly stated, "We do not disclose student information. Your file has been closed." *Id.* Davis advised that she was "not asking for any student information. I am asking for Post University's Do not call Manuel[sic]. My file being closed with your organization did not stop you from contacting me after several requests!" *Id.*  Connie responded, "You will not be contacted by us again." *Id.* Davis stated, "Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school. Thank you." *Id.*

On July 18, 2018, Davis called the University and once again asked for its "Do Not Call" policy.  ¶¶ 97-98.  University employee, Anna Lynn, said, "I'm not sure I have that right here on my computer. If you need your file closed, I can do that for you." ¶ 99. Davis reiterated that she wanted a copy of the policy.  ¶ 100.  After being placed on hold, Davis was told that Lynn did not have the policy on her computer.  She stated that she would have to check with someone else to see if there was such a policy, and that if there was, she could email it to Davis. ¶ 101.  Davis provided her email address, but never received a copy of the policy.  ¶¶ 102-103.  However, she did receive another email from the University's Admissions Counselor, Tashina McInerny, on September 7, 2018, encouraging Davis to complete her financial aid application so she could "see what [her] award will be prior to enrolling in classes." ¶ 105.

---

[4]  The FAC alleges that Davis received this message in a series of five separate texts, each of which constitutes a call under the TCPA. ¶ 95 at n.2.

The FAC asserts that the University violated the relevant federal regulation prohibiting companies from initiating telephone solicitations to any telephone subscriber who registered their number on the national do-not-call registry.  ¶ 27 citing 47 C.F.R. § 64.1200(c).  The FAC further alleges that the University violated the federal regulation requiring telemarketers to maintain a do-not-call list and a written compliance policy, and to properly train employees engaged in telemarketing.  ¶¶ 107-110 citing 47 CFR § 64.1200(d).

Aside from the unsupported claim that "Upon information and belief, [the University] expects each of its outbound call center employees to call 80-100 leads *per day*" (¶ 134) (emphasis in original), the FAC contains no specific factual allegations that the University ever called anyone else improperly.  Nevertheless, the FAC defines two proposed classes as follows:

1.   The "Internal DNC Class"

Since July 30, 2014, Plaintiff and all persons within the United States to whose residential or cellular telephone number Defendant Post University, Inc. placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period, after the person's file was marked as "Opportunity Lost," Opportunity Closed," Opportunity Deferred," or equivalent.

2.   The "External DNC Class"

Since July 30, 2014, Plaintiff and all persons within the United States to whose residential or cellular telephone number Defendant Post University, Inc. placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period, when said telephone number was on the national "Do Not Call" registry at the time of the calls, the associated person's file was marked as "Opportunity Lost," Opportunity Closed," Opportunity Deferred," or equivalent prior to the two calls;

**and** either

1)   That person made a "Do Not Call" request to Defendant prior to the two calls **or**

2)   the two calls occurred at least three months after inquiry or application by that person, without an intervening inquiry or application between the two calls.

¶ 132 (emphasis in original).  Davis contends that she satisfies Rule 23's requirements for class actions, including, numerosity, ascertainability, commonality, typicality, and adequacy.  ¶¶ 134-145.

## THE OFFER OF JUDGMENT

On September 26, 2018, "shortly after Plaintiff served her initial discovery responses and while Defendant's Motion to Dismiss was pending," the University served on Davis an Offer of Judgment for $10,000 inclusive of costs of suit and attorneys' fees ("the Offer").  DE 20-1 at 1, DE 20-2.  Consistent with Rule 68, the Offer expired after 14 days.  Rather than specifically accepting or declining the Offer, on October 2, 2018, Davis filed the instant motion to strike the Offer or invalidate Rule 68's cost-shifting provisions.

Rule 68 states in pertinent part:

(a) Making an Offer. Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

. . .

(d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68.  "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Turner v. Food Corp*., No. 08-61042-CIV, 2009 WL 10668616, at *5 (S.D. Fla. Feb. 3, 2009) (J. Middlebrooks) (citing *Marek v. Chesny*, 473 U.S. 1 (1985) (the Rule "prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of

success upon trial on the merits.")); *see* Advisory Committee Note to 1946 Amendment to Rule 68.

In TCPA cases, Rule 68 potentially shifts a limited amount of costs – not attorney's fees – to the opposing party.  "[T]he term 'costs' in Rule 68 is 'intended to refer to all costs properly awardable under the relevant substantive statute or other authority.'" *Mims v. Arrow Fin. Servs., LLC*, 900 F. Supp. 2d 1336, 1339 (S.D. Fla. 2012) (J. Ungaro) (quoting *Marek*, 473 U.S. at 5). The TCPA does not provide for recovery of any attorney's fees or costs beyond those specified as taxable costs under 28 U.S.C. § 1920.  *See*  47 U.S.C. § 227; *see also Sclafani v. I.C. Sys., Inc.*, 2010 WL 1029345, at *4 (S.D. Fla. Mar. 18, 2010) (J. O'Sullivan) ("absent explicit statutory authorization, federal courts are limited to those costs specifically enumerated in 28 U.S.C. § 1920") (citing *EEOC v. W & O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000)).  Therefore, the only categories of recoverable expenses in the instant case are:

(1)     Fees of the clerk and marshal;

(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)     Fees and disbursements for printing and witnesses;

(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees under section 1923 of this title; and

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

## PLAINTIFF'S MOTION TO STRIKE

Davis moves to "strike or invalidate Defendant's September 26 Offer of Judgment." DE 20 at 1. She alleges that the Offer is a bad faith attempt to defeat a class action by creating a conflict between her (as the class representative) and the putative class members. Davis contends that this Court has the authority to strike the University's Offer under Rule 1, Rule 23(d), and alternatively, under its inherent powers. *Id.* at 10.

The University opposes striking the Offer, arguing that the issue of cost-shifting is not ripe and that Davis seeks an improper advisory opinion. The University contends that Davis' failure to accept the Offer within the 14-day period constituted a rejection of the Offer, which renders it inadmissible, except to determine costs in the event Rule 68's cost-shifting provisions are implicated after final judgment is entered. DE 25 at 3.

In the alternative, Davis asks that the Court extend the time to accept or reject the Offer until a decision is made on class certification. DE 32. At oral argument, Davis' counsel argued for the first time that Federal Rule of Civil Procedure 6 provided the Court with an additional basis to extend the time for her to respond to the Offer. According to Davis, because she filed her motion to strike within the 14-day period after the Offer was made, the University's Offer has not yet expired. She argues that the Court should use Rule 6 to extend the time for her to respond to the Offer until a decision on class certification is rendered. The University objects that this argument is not properly before the Court because it was not raised in Davis' motion papers.

## DISCUSSION

### *Subject Matter Jurisdiction*

The University asserts that because the Offer has expired and the University is not presently attempting to collect costs based on the Offer, the Court is being asked to render an improper

advisory opinion. This argument calls into question the Court's subject matter jurisdiction, which is "a threshold inquiry that a court is required to consider before addressing the merits of any claim." *Carr v. Bombardier Aerospace Corp.*, No. 10-MC-60917, 2010 WL 2220336, at *1 (S.D. Fla. June 3, 2010) (J. Marra) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001)).

As a court of limited jurisdiction, a federal court can only resolve cases or controversies. *Chafin v. Chafin,* 568 U.S. 165, 171 (2013).  Even if a case or controversy exists, there are also considerations of ripeness – here, whether a decision on the validity of the University's offer of judgment at this stage would be premature.  A matter is ripe only if "the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court."  *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

The issue before the Court is justiciable.  An actual and present case or controversy exists as to whether good cause exists to extend the deadline to respond to the Offer.  That situation distinguishes the instant case from other cases that have concluded that "determining the effectiveness of [an unaccepted Rule 68] offer of judgment would be advisory." *Gilmore v. USCB Corp.*, 323 F.R.D. 433, 435 (M.D. Ga. 2017) (quoting *Leahy-Fernandez v. Bayview Loan Servicing, LLC,* 2016 WL 1047159 at *2 (M.D. Fla. 2016)).  The Court declines to decide whether a ripe case or controversy would exist in the absence of the request to extend the Rule 68 deadline. *C.f. Slovin v. Sunrun, Inc*., 2017 WL 2902902, at *5 (N.D. Cal. July 7, 2017) (citation omitted) ("the existence of the offer creates a 'current and meaningful legal dispute arising from the conflict of interests caused by the Rule 68 offer'").

### *Asserted Bases for Relief*

The issue presented here is not new.  For years courts have "acknowledge[d] the tension" that exists between Rules 68 and 23. *Turner*, 2009 WL 10668616, at *4.  Specifically, courts have

recognized that "offers to individual named plaintiffs [have the potential to] undercut close court supervision of class action settlements, create conflicts of interests for named plaintiffs, and encourage premature class certification motions." *Id.* at *5 (quoting *Weiss v. Regal Collections*, 385 F.3d 336, 344, n.12 (3d Cir. 2004)).  Courts have not taken a uniform approach to resolving this issue.  *See Roundtree v. Bush Ross, P.A.*, 2014 WL 12638851, at *1 (M.D. Fla. Apr. 24, 2014) ("Some courts have found that precertification offers of judgment are impermissible attempts to create conflicts of interest between the class representative and absent class members, while others have recognized that neither Rule 68 nor Rule 12 authorizes striking an offer of judgment simply because it is directed to a class representative.") (citing *Mey v. Monitronics Int'l Inc*., 2012 WL 983766, at *2-5 (N.D.W.V. Mar. 22, 2012)).  The "three main approaches" to this dilemma were outlined by the court in *Gilmore v. USCB Corp*., 323 F.R.D. 433, 434 (M.D. Ga. 2017).  One approach is to strike the Rule 68 offer of judgment to "'prevent an improper conflict of interest between a putative class representative and the putative class.'"  *Id.* (citation omitted).  *See Sampaio v. People First Recoveries, LLC*, 2008 WL 509255 (S.D. Fla. Feb. 19, 2008) (J. Ungaro) (holding that defendant's pre-certification Rule 68 offer to a class representative "must now be stricken to prevent it from undermining the use of the class action device.") (citations omitted).  Other courts simply declare the offer "ineffective" to shift costs, because there is "no procedural mechanism to strike an offer of judgment."  *Gilmore*, 323 F.R.D. at 434.  *See also Mavris v. RSI Enterprises Inc*., 303 F.R.D. 561 (D. Ariz. 2014).  A third group of courts opt to "do nothing;" they "decline to declare the offer ineffective, reasoning that, because a defendant has not yet moved for relief under Rule 68, 'determining the effectiveness of [the defendant's] offer of judgment would be advisory.'"  *Gilmore*, 323 F.R.D. at 435 (citation omitted).  *See also Northrup v. Indep. Truckers Grp., Inc*., 2018 WL 1787506, at *2 (M.D. Fla. Apr. 12, 2018).

The courts that have granted relief have not always been clear about the legal basis for the remedy.  *See Sampaio*, 2008 WL 509255 at *1 (not articulating reliance on any specific rule in striking the offer);  *Gilmore*, 323 F.R.D. at 435 (citing *Slovin*, 2017 WL 2902902, at *4-5) (finding the court's jurisdiction to deem the offer ineffective arose from Rule 23(d)(1)(C)'s authority to "impose conditions on the representative parties");  *Mavris*, 303 F.R.D. at 566 (not articulating reliance on any specific rule in declaring the offer ineffective);  *Northrup*, 2018 WL 1787506, at *2 (relying on Rule 1 and the fact that Rule 23 is not exempt from Rule 68 in declining to strike an offer) (citing *Leahy-Fernandez*, 2016 WL 1047159, at *1).  Here, Davis invokes Rule 1, Rule 23, and this Court's inherent authority.

Rule 68 applies to all civil actions filed in federal court.  Fed. R. Civ. P. 1.  The text of Rule 68 does not contain a carve-out for Rule 23 class actions, nor is there any binding case law to support such an exception.  *See Leahy-Fernandez*, 2016 WL 1047159, at *1 ("the Rules of Civil Procedure do not exempt offers of judgment from class actions");  *Turner*, 2009 WL 10668616, at *5 (finding "no precedential case law disallowing Rule 68 offers simply because they were made in a class action case");  *see also Northrup,* 2018 WL 1787506, at *1 (noting that "there is no binding authority" in the Eleventh Circuit "barring offers of judgment in class actions").  The text of Rule 68 also does not contain a mechanism to strike or invalidate an offer.  Moreover, according to Rule 68, an offer of judgment should not be filed unless it is accepted by the plaintiff or it is offered by the defendant to prove costs; for this reason, courts have concluded "there is nothing to strike" at this stage of the proceedings. *Turner*, 2009 WL 10668616, at *5; *see also Roundtree,*

2014 WL 12638851, at *2 ("there is no procedural mechanism in the Federal Rules of Civil Procedure for striking an offer of judgment").[5]

Rule 1 of the Federal Rules of Civil Procedure states that the rules "govern the procedure in all civil actions" and that they "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 1 announces a normative framework for applying other Rules of Civil Procedure. *See Pineda v. Am. Plastics Techs., Inc*., No. 12-21145-CIV, 2014 WL 1946686, at *8 (S.D. Fla. May 15, 2014) (J. Torres) (Rule 1 states the principle that the Federal Rules "were designed to be interdependent, meaning that in interpreting the rules Courts should try and harmonize them with one another."). Rule 1 does not contain any specific enforcement provision, nor has Davis cited to a case that relied on Rule 1 to invalidate a Rule 68 offer.

A court overseeing a class action is authorized to "issue orders that: (A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument." Fed. R. Civ. P. 23(d)(1)(A). It can also issue orders that "deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1)(E). The language of Rule 23 indicates that it applies even before a class is certified. *See* Fed. R. Civ. P. 23(a) (specifying the prerequisites of a class action); *see also Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 764 (6th Cir. 2005) (adopting the "view of the majority of the circuits that Rule 23(e) [court approval of settlements] applies in a precertification context where putative class members are likely to be prejudiced"). Davis argues that Rule 23 provides a valid source of authority for the Court to strike the University's offer or extend the time for Davis to respond to it. Davis argues that invalidating

---

[5] The only motion to strike specifically authorized by the Federal Rules of Civil Procedure is a motion to strike an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P 12(f). Davis does not seek relief under Rule 12(f).

the University's offer of judgment "because of the potential impact on [her] representation of the class" would be akin to "preventing a complication."  DE 26 at 6.  Similarly, Davis contends that "permitting [her] to wait until a decision on class certification before responding" to the Offer falls within the Court's authority to "determin[e] the course of proceedings."  *Id.*

Alternatively, Davis urges the Court to use its inherent authority to strike the Offer.  It is well settled that federal courts possess inherent authority to enforce their own orders and to police their own proceedings.  "The key to invoking [the court's] inherent authority is a finding of bad-faith conduct." *Blanco GmbH±Co. KG v. Vlanco Indus., LLC*, 992 F. Supp. 2d 1225, 1258 (S.D. Fla. 2014) (J. Rosenbaum).  A broad range of remedies, both monetary and equitable, are available to courts invoking their inherent authority to sanction bad faith conduct.  *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 487 (1996) ("district courts retain inherent authority to award any equitable remedy that is not expressly taken away from them by Congress") (citing *Wyandotte Transp. Co. v. United States*, 389 U.S. 191 (1967)).  *See also Christian & Missionary All. Found., Inc. v. Burwell*, 2015 WL 437631, at *4 (M.D. Fla. Feb. 3, 2015) (federal courts have inherent authority to provide injunctive relief to remedy a violation of statutory or constitutional rights) (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)); *Blanco GmbH±Co. KG*, 992 F. Supp. 2d at 1258 ("Bad-faith conduct can be remedied by "making the prevailing party whole for expenses caused by his opponent's obstinacy").

*Merits*

When properly framed, the Motion to Strike presents two familiar questions for resolution. First, did the University make the Offer for an improper purpose (*i.e.*, bad faith)?  Second, does the Offer create a disqualifying conflict or otherwise unduly prejudice the putative class?  This approach -- requiring proof of improper behavior and attendant prejudice -- is an accepted

framework for assessing whether a remedy is warranted.  For example, Rule 37 provides remedies only when electronically stored information (ESI) is lost because "a party failed to take reasonable steps to preserve it," and "upon finding prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e)(1).  Similarly, the *Strickland* standard for determining ineffective assistance of counsel requires both a finding that counsel's representation fell below an objective standard of reasonableness and that the defendant suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668 (1984).  As the party seeking relief, Davis bears the burden of persuasion, by a preponderance of the evidence, on both issues.  *Accord Corley v. United States*, 406 F. App'x 342, 343 (11th Cir. 2010) (applying preponderance of evidence standard to *Strickland* claims); *DVComm, LLC v. Hotwire Commc'ns, LLC*, 2016 WL 6246824, at *6 (E.D. Pa. Feb. 3, 2016) (applying a preponderance of the evidence standard to facts alleging lost ESI).

Turning now to the case at hand, Davis asserts:

- "Defendant's Offer, made to Plaintiff in her individual capacity intentionally injects a conflict into this matter between Plaintiff and the classes she seeks to represent by forcing Plaintiff to either abandon her pursuits or accept the offer, or risk bearing Defendant's costs for litigating this putative class action."  DE 20 at 1.

- The Offer is "an attempt to undermine the class action mechanic [sic] and is inconsistent with the putative class action nature of this case and with the duties of Plaintiff and the Court to safeguard the interests of absent putative class members."  Id. at 1-2.

- The Offer was not made in good faith and represents a "thinly veiled attempt to short circuit the class action mechanic [sic] by pitting [Davis] against the putative classes she seeks to represent."  DE 20-1 at 6, 8.

- "Defendant has intentionally and unilaterally created a conflict between Plaintiff and the class she seeks to represent."  *Id.* at 9.

In sum, Davis' request for relief rests on two premises: (1) the Offer impermissibly creates a conflict between her and the putative class, and (2) the University is acting in bad faith and for an improper purpose.

Davis' first premise is incorrect.  The Offer does not create a previously-nonexistent conflict.  "[A] class representative *always* has a conflict of interest of sorts, because he has an individual as well as a representative interest in the outcome of the case." *Dechert v. Cadle Co.,* 333 F.3d 801, 802-03 (7th Cir. 2003) (emphasis in original).  "To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class."  *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015) (J. Dimitrouleas).  As a fiduciary, and in spite of the inherent conflict of interest, the class representative has a duty to sublimate her personal interests to the interests of the class.  So long as she can do so, the conflict does not prejudice the putative class members or disqualify her from serving as the class representative.

The relevant issue is not whether a theoretical or potential conflict of interest exists between the class representative and the class.  It is whether there is an actual conflict that is so substantial that the class representative cannot subordinate her personal interests to the interests of the class.  In the related context of whether a class representative can adequately protect the

interests of the class, *see* Fed. R. Civ. P. 24(a)(4), the relevant inquiry includes "whether any *substantial* conflicts of interest exist between the representatives and the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (emphasis added). "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Id*.  Similarly, the rules of legal ethics recognize that a conflict of interest does not disqualify a lawyer if the lawyer can nevertheless adequately discharge his duties.  *See* Florida Rule of Professional Conduct 4-1.7(a)(2) (lawyer may represent client so long as no "substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.").

So, the starting point to determine whether Davis is entitled to relief is to assess whether the Offer creates a substantial conflict between Davis and the putative class such that Davis cannot adequately perform her duties as class representative ("a disqualifying conflict") and, if so, whether the University has improperly created this situation in bad faith.  If not, the effect of the Offer is consistent with the purposes of Rule 68 and a consequence of voluntary choices by Davis.

To illustrate this point, it is instructive to examine the context in which Davis brings her motion.  Davis could have brought an individual action seeking the full amount she is legally entitled to recover for the wrongs allegedly done to her.  In that situation, her personal interests would be paramount.  She would bear all of the litigation costs.  Instead, she elected to file a class action, presumably because costs and expenses may be spread among the class members and because, as the class representative, she will receive more than she would have received as a solo plaintiff.  *See, e.g., Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 204-05 (N.D. Ill. 2018) (TCPA class plaintiff received $10,000 incentive award); *Vandervort v. Balboa Capital Corp.,* 8 Fed.

Supp. 3d 100 (C.D. Cal. 2014) (same); *Brown v. Rita's Water Ice Franchise Co. LLC,* 242 F. Supp. 3d 356 (E.D. Pa. 2017) (TCPA class plaintiff received $5,000 incentive award).  That is her right under the Federal Rules of Civil Procedure.  But, that choice has consequences.  If a class is not certified, Davis must, alone, bear the plaintiff's costs of the litigation, including attorney's fees. She also must assume a fiduciary duty to the putative class members and put their needs above her own.  Presumably (or at least implicitly) before filing suit, Davis made the decision that the benefits of bringing a class action and being the class representative outweighed the additional risks.

The Offer changed the state of play by potentially shifting some of the University's costs to Davis.[6]  It potentially pressured Davis to reassess her litigation strategy and forced her to make some difficult decisions.  That is precisely what Rule 68 is supposed to do.  *See Richardson v. National R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995) ("The Rule is [ ] designed to put significant pressure on the plaintiff to think hard about the likely value of its claim as compared to the defendant's offer.").  Being required "to make a difficult choice at an early stage of litigation . . . merely reflects the strategic nature of our adversary system and in no way indicates a defect in the Federal Rules of Civil Procedure."  *Mey*, 2012 WL 983766, at *5.     In sum, despite Davis' protestations that the University is improperly using Rule 68 to force her to think differently about how to proceed with the litigation, there is nothing wrong with a Rule 68 offer causing a litigant to reassess their litigation strategy.  In fact, that is the purpose of Rule 68.  *Pineda,* 2014 WL 1946686, at *6 (the Rule "prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits.") (quoting *Marek*, 473 U.S. at 5).

---

[6] As counsel acknowledged at oral argument, if class certification is granted, it is likely the case will be resolved with the class receiving damages exceeding the University's $10,000.00 offer, particularly given the statutory damages under the TCPA.  So, realistically, the Offer puts Davis at risk only for the University's costs incurred between the time of the Offer and the time of class certification.

Prejudice

The Court now turns to the facts supporting Davis' assertion that the Offer should be stricken or invalidated because it improperly creates a conflict between her and the classes. According to Davis, because of the Offer "each decision [she] makes, no matter how beneficial for the class, will need to be weighed . . . against the corresponding cost increase of that decision for which [she] may ultimately be responsible." DE 20-1 at 9. Davis cites "lengthier" depositions and the briefing of the class certification motion as examples that will "increase costs for all parties." *Id.* Davis argues that by making her "potentially responsible for [the University's] costs if she rejects [its] Offer," she will be "force[d] . . . to weigh her own interests . . . against [her] duty to putative class members." *Id.* at 7.[7]

All of these statements may be true, but they do not address the relevant inquiry – whether after Davis weighs all of these factors she can still prioritize the classes over herself. Put differently, saying that Davis will have to *consider* these factors stops short of saying that these factors preclude her from fairly assessing the Offer or adequately continuing to represent the classes. If she can do both of these things, there is no disqualifying conflict and therefore no prejudice to the classes from the Offer.[8] Rejecting the Offer may put Davis personally at risk of

_____

[7] The University asserts that Davis has not established that she personally will be liable for any costs that are assessed based on Rule 68. DE 25 at 6. Under the Florida Rules of Professional Responsibility, which are applicable to any lawyer practicing before this Court, *see* S.D. Fla. L. R. 11.1, "[a] lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter." Rule 4-1.8(e)(1). If the client obtains a sufficient recovery, the client must repay the costs or expenses advanced by the lawyer. Fla. Bar Ethics Op. 96-1. Therefore, depending on the details of her lawyer's engagement, Davis is potentially (but not necessarily) obligated to pay for all of her costs if the class is not certified. The record is devoid of any evidence about the specifics of Davis' arrangement with counsel regarding financing of costs. Regardless, this issue is not material to the Court's decision on the Motion to Strike.

[8] As used herein, the term "prejudice" refers to *improper or undue* harm. It may be "prejudicial" in a generic sense to require Davis to choose between her personal interests and the class' interests, but (as discussed above) that kind of "prejudice" is inherent in Davis' decision to pursue a class action.

having to pay increased litigation costs, but that is one of the consequences of choosing to be a class representative.

Davis does not argue that the Offer makes her actually unable to put the classes' interests above her own.  In addition, in the FAC, which was filed after the Offer, Davis asserts, "Plaintiff has no interests antagonistic to, or in conflict with, the Classes" (¶ 140), and states that she "will thoroughly and adequately protect the interests of the Classes."  ¶ 141.  This position is fatal to her Motion to Strike. Davis does not articulate how, in the absence of a disqualifying conflict, improper prejudice has occurred.  Without that proof, there is no cognizable harm to be remedied.

Instead, Davis argues for a categorical rule that by definition, in all cases, prejudice automatically arises from a pre-certification offer of judgment to a class representative.  The Court cannot draw that conclusion. Consider the following situations: the class representative is sufficiently wealthy that the possibility of having to pay the opposing party's costs is insignificant; the likelihood of class certification is overwhelming, so the risk of ever having to pay the opposing party's costs is *de minimus*; the representative's personal claims are weak, but the overall class claims are strong; the offer of judgment is made shortly before the class certification hearing and after virtually all transferrable costs already have been accrued. As these examples illustrate, the impact of a particular offer of judgment on a particular representative and the associated class is a fact-specific inquiry.  Therefore, the Court cannot accept Davis' invitation to adopt a categorical *per se* rule that a pre-certification Rule 68 offer always creates prejudice.  The proper approach is to do what courts do every day -- evaluate the individualized facts of each particular case.

Here, Davis does not assert, and the record does not reveal, that the Offer has created a disqualifying conflict or other prejudice.  Even assuming, without deciding, that a Rule 68 offer could be invalidated if it created a disqualifying conflict (even in the absence of bad faith), Davis is not entitled to relief on this basis.

<u>Bad Faith</u>

Davis has not established bad faith.  She summarily accuses the University of trying to strategically "pick off" the class plaintiff to the detriment of the class.  DE 20-1 at n.5.  Without reference to the facts of this case, Davis makes the blanket argument, "Offers of Judgment like Defendant's Offer to Plaintiff here are not made in good faith and should not trigger the cost-shifting provisions of Rule 68."  DE 20-1 at 3.  She further summarily argues, "Defendant's Offer was not intended to resolve the case as pled, or shift costs to a vexatious litigant, but was intended to force a conflict between Plaintiff and the classes she seeks to represent."  *Id.* at 9.  Her argument relies entirely on the theory that other class action "defendants have seized upon [Rule 68] in an effort to undermine and defeat class actions."  DE 20-1 at 7.  She notes that some past class action defendants (not the University) made Rule 68 offers of complete relief to a class plaintiff in an unsuccessful attempt to destroy subject matter jurisdiction, citing *Campbell-Ewald Co. v. Gomez,* __ U.S. __, 136 S. Ct. 663 (2016).  She theorizes that class action defendants generally, and the University specifically, are now using Rule 68 to "inject a conflict between the lead plaintiff and the class or classes she seeks to represent."  DE 20-1 at 7.

Whatever others may have done in the past, the record before this Court does not evince any bad faith by the University.  Davis' maximum damages, assuming willful violations, are in excess of $10,000.  DE 25 at 9, n.3.[9]  The $10,000 settlement offer was for less than the maximum statutory damages that Davis, individually, could receive.  These facts do not create an inference of bad faith.  *C.f. Slovin v. Sunrun, Inc.,* 2017 WL 2902902 (N.D. Ca. July 7, 2017) at *2-3 (finding

---

[9] In the FAC, Davis alleges at least seven telephone calls that the University made in violation of the TCPA (a call on October 18, 2017, another call on January 11, 2018, and five text messages on July 17, 2018).  Assuming Davis is statutorily entitled to $1,500.00 per call for willful violations, Davis' damages would be $10,500.00.  If Davis could not establish willfulness, her damages would be capped at $500.00 per call, totaling $3,500.00.

lack of good faith where class plaintiffs were offered settlement amount "that individual plaintiffs could never realistically hope to obtain, much less exceed, at trial."); *Smith v. NCO Financial Systems, Inc.,* 257 F.R.D. 429, 433-34 (E.D. Pa. 2009) (Rule 68 offer of judgment stricken because it was for twice the statutory damages amount, so Plaintiff could not possibly recover more unless class was certified).

There is also no evidence that the University was trying to create a disqualifying conflict based on Davis' ability to pay any shifted costs. As noted above, the costs that are shifted by Rule 68 do not include attorney's fees and, as a practical matter, are limited to the costs incurred between the time of the Offer and the ruling on class certification. The relevant costs here appear to be transcripts, copying, and witness fees. There is no evidence in the record estimating the magnitude of these costs. There is also no evidence establishing that Davis is obligated to pay those costs, no evidence whether she has the ability to do so, and (most relevant to a bad faith determination) no evidence that the University is aware of, and trying to exploit, these financial arrangements or Davis' financial condition.

In sum, the record does not support a finding that the University's Offer was made in bad faith. There is at least an equal inference that the University in good faith does not want to incur the costs of further class action litigation that it views as lacking in merit.

*Extending the Rule 68 Deadline*

As noted above, at the oral argument Davis' counsel raised for the first time that Federal Rule of Civil Procedure 6 could provide a basis for relief by allowing for an extension of time for her to respond to the University's offer. She asks that the deadline be extended until after class certification is decided. The University objected to the Court considering this belated argument. Although the Court acknowledges that Davis did not specifically reference Rule 6 in her motion

papers, she did cite case law that applied such an extension.[10]  Accordingly, the Court will consider Davis's Rule 6 argument.

Rule 6 states in relevant part: "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires . . ." Fed. R. Civ. P. 6(b).  Rule 6 demands a showing of good cause as a prerequisite before a court may extend the time prescribed by any of the other rules, including the time for a plaintiff to respond to an offer of judgment under Rule 68.  The Eleventh Circuit has held that to establish good cause under Rule 6(b), "the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013).

Davis argues that because she filed her motion before the 14-day period under Rule 68 expired, the Court should grant her an extension.  Another member of this Court has considered the interaction between Rule 6 and Rule 68, as well as the competing concerns of good cause and prejudice to the defendant.

> Where there is nothing on the face of the Rule [68] that precludes an extension of time for good cause shown, we see little reason to find that the Court could not, in a particularly unique case, enlarge the acceptance period under Rule 68.  The Court's discretion under Rule 6(b), however, is quite limited.  An extension of time should not be granted, of course, where doing so would materially prejudice the non-moving party.  So, if a Court were asked to extend the acceptance period for a limited period, during which no other litigation costs would be incurred, there would be little prejudice to a defendant.  But, if an extension was sought for a large or indefinite period, during which the litigation machinery would have to continue and thereby unduly burden the offering defendant, a court could not in fairness grant that extension no matter what the good cause was.

*Pineda,* 2014 WL 1946686, at *9.

---

[10] Davis' motion cited *Jones v. I.Q. Data Int'l, Inc.*, 2014 WL 6891205 (D.N.M. June 23, 2014), wherein the court granted an extension of time for the plaintiff to respond to an offer of judgment (DE 20-1 at p. 16), however, the decision does not reference Rule 6.

Here, Davis has failed to show good cause.  Her argument that she and her attorney are obligated to "protect the legal rights of absent class members" (DE 32 at 3-4) is insufficient to establish good cause for extending the offer's deadline.  Davis does not even argue that she could not meet the Rule 68 deadline.  Davis brought the instant motion before the deadline expired, but did not seek expedited hearing on the motion.  The language of Rule 68 is unambiguous.  The University's offer of judgment expired fourteen days after it was served.  The good cause requirement for invoking Rule 6 has not been satisfied.

In any event, the Court would exercise its discretion not to extend the deadline until after class certification is decided.  That result would be unduly prejudicial to the University, which made its offer relying on Rule 68's plain language: that if the offer was not accepted within 14 days, it would expire.  In essence, Davis advocates a "Heads I win. Tails you lose" approach.  If a class is not certified, she can accept the Offer and avoid cost shifting.  If a class is certified, she can reject the Offer and avoid cost shifting.  Losing the right to collect its costs in the event a class is not certified would deprive the University of the benefit that Rule 68 confers.  The Court declines to shift all of the risk to the University, while allowing Davis to proceed risk-free until class certification is decided.  As the University correctly notes, countenancing this approach would "eviscerate the effect of [Rule 68] and leave it meaningless," essentially taking an offer "intended to avoid costs [and] strip it of its value to the University." DE 31 at 4, 6.  *See Wallert v. Atlan*, 2015 WL 518563, at *1 (S.D.N.Y. Feb. 5, 2015) ("nothing in the text of Rule 68 itself supports allowing a plaintiff to unilaterally modify the expiration date of a defendant's offer;" court declined to extend the offer's effective date until the close of discovery because "potentially quite substantial" litigation costs could accrue).

Additionally, the University made the Offer based upon the allegations in the Amended Complaint. Davis has now filed a First Amended Complaint which contains different allegations, including additional alleged TCPA violations. The University should not be bound by a settlement offer that predated the currently-operative pleading.

## **CONCLUSION**

Having concluded that the deadline for accepting the Offer should not be extended, the Court finds that Davis is not entitled to relief under Rule 68, Rule 1, Rule 23, or the court's inherent authority. Neither the text of Rule 68 nor any controlling precedent instructs that the rule be applied differently in class action cases than in all other civil actions. Similarly, neither the text of Rule 1 nor any controlling precedent creates a substantive right to strike or invalidate a pleading under that rule. Although this Court embraces the general sentiment of Rule 1, that rule does not eradicate a defendant's entitlement to make an offer of judgment under Rule 68. As discussed above, the continual weighing of risk is incumbent upon all parties during all phases of litigation, and an individual plaintiff in a putative class action is not relieved from this burden – certainly not by the catch-all provision of Rule 1. The Court declines to judicially amend these rules to add a non-textual remedy. Because Davis has failed to prove bad faith, there is no basis to exercise the Court's inherent authority. The Court declines to decide whether Rule 23 could be invoked as a remedy in a different case with different facts. Even if Rule 23 could be invoked to strike or invalidate a Rule 68 offer, the Court would decline to do so here because there is no showing of prejudice or bad faith.

In sum, although this Court is mindful of the complications occasioned by a pre-certification Rule 68 offer in a class action case, "[r]ecognizing the existence of a problem does not, without more, give [the court] the authority to craft a solution." *Gilmore,* 323 F.R.D. at 435,

n.4 (quoting *White v. Ally Financial Inc.*, 2012 WL 2994302, at *4 (S.D. W. Va. 2012)).  There may be compelling policy reasons to preclude this kind of pre-certification Rule 68 offer.  If so, Congress and the Judicial Conference's Committee on Rules of Practice and Procedure are the correct bodies to consider that issue.  This Court can only apply the existing rules to the facts before it.  Those facts do not entitle Davis to the relief she requests.

## **RECOMMENDATION**

WHEREFORE, the undersigned **RECOMMENDS** that Davis' Motion to Strike/Invalidate the Offer of Judgment (DE 20) be **DENIED.**

## **NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 1st day of February, 2019, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE