## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>        Defendant. | Civil Case No.: 18-cv-81004-RKA-DLB<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This action arises out of Defendant Post University, Inc.'s ("Defendant") practice of placing telemarketing calls to individuals in the absence of any "do not call" policies, procedures, or training, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Despite Defendant's failure to comply with these legal requirements *prior* to making telemarketing calls, Defendant has placed numerous telemarketing calls to Plaintiff's telephone number.

3. Plaintiff Davis has repeatedly tried to opt out of Defendant's telemarketing calls, only to be met with resistance and continued calls.

4. Accordingly, Plaintiff brings this TCPA action on behalf of herself and a class of similarly situated individuals under 47 U.S.C. § 227(c).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court has jurisdiction over Defendant because Defendant conducts business

transactions in this District and has committed the tortious acts in this District.

7. Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

8. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Boynton Beach, Florida.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is, and at all times mentioned herein was, a Delaware corporation headquartered at 800 Country Club Rd., Waterbury, CT 06708.

11. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## THE TCPA

12. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

13. The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines

are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

15. In the FCC's very first regulation pursuant to the above mandate, established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

16. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

17. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

18. These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

19. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

20. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

21. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

22. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR §

64.1200(e).

## PLAINTIFF'S FACTUAL ALLEGATIONS

23. On or about August 9, 2017, Plaintiff called Defendant.

24. On this call, Plaintiff inquired about enrolling at Defendant's for-profit school.

25. Plaintiff called from her personal cellular telephone number ending in 4599.

26. The same day, Defendant's employee Rita Francisco emailed Plaintiff financial aid paperwork.

27. The following day, Defendant's employee Carissa Valluzzo sent Plaintiff an email welcoming her to post.

28. On August 11, 2017, Defendant called Plaintiff's telephone number ending in 4599 from its telephone number 203-596-8364 to follow up on previously sent paperwork.

29. On August 13, 2017, Plaintiff wrote Defendant's employee Rita Francisco an email stating that she would no longer be able to move forward with attending Post. Defendant's employee Victoria Meehan was copied on this email.

30. Victoria Meehan is not an ordinary employee – she was, at the time, Defendant's Assistant Director of Admissions.

31. On August 15, 2017, Defendant's employee Rita Francisco called Plaintiff's telephone number ending in 4599 from its number 203-596-8364 and left a voicemail acknowledging receipt of the August 13 email, but stating that because they had purportedly gotten "so far in the process", Ms. Francisco was "reluctant to close out [Plaintiff's] file." Ms. Francisco additionally asked for a call back so Plaintiff could explain and justify why she wanted her file closed.

32. Plaintiff did not return Ms. Francisco's phone call.

33. On the following day, August 16, Defendant marked Plaintiff as "opportunity lost" in its database.

34. This designation indicates that Defendant no longer considered Plaintiff to be, at that time, an interested or likely prospective student.

35. However, despite this, Defendant shortly resumed contacting Plaintiff via email and telephone (all at Plaintiff's 4599 number).

36. As detailed more specifically below, all of Defendant's communications after August 16 were attempts to get Plaintiff to "re-engage" with the application process, apply or re-apply to Post University, and enroll in subsequent class "sessions." In other words, to "recapture" the opportunity that it marked as lost.

37. These calls were therefore all telemarketing, as they were intended to encourage Plaintiff to purchase or invest in Defendant's property, goods, or services.

38. **Email:** On August 24, Ms. Meehan emailed Plaintiff to discuss Plaintiff's interest in attending classes beginning on August 28. In this email, Ms. Meehan wrote, in part:

> I wanted to follow up on more time with you regarding your request for information on our online, accelerated program! It's not too late to start this fall at Post University! Classes begin throughout next week. Are you ready to change your life?

39. **Text:** On August 25, Defendant sent Plaintiff a text message stating "[c]lass starts next week for Post U's Online Degree Program! There's still time to get started: call 203-568-1652."

40. **Text:** On August 30, Defendant sent Plaintiff, and Plaintiff received, a text message stating "Post University has not received your 2017/2018 FAFSA. You can access this financial aid application at fafsa.ed.gov (school code: 001401). Class begins this week, so if you need assistance, please call us at 203-568-1652."

41.     **Email**: On September 21, Defendant's employee Carissa Valluzzo emailed Plaintiff, writing, in part:

> A while back, we had received a request for more information regarding Post University's online degree programs. I'm sorry it didn't work out for you for the previous sessions. Our next session is coming up and I was seeing if this was something you were still interested in.

42.     Plaintiff responded to this September 21 email asking Defendant to close her file.

43.     Plaintiff's request to close her file is sufficient to terminate any established business relationship Defendant believed that it had.

44.     Plaintiff's request to close her file was not documented in Defendant's system.

45.     **Email**: On October 5, 2017, Defendant's employee Kimberly Williams emailed Plaintiff, writing, in part:

> This is a friendly reminder from Post University that we have classes starting at the end of this month. With the start of our fall classes just around the corner, it's important to get documents in as quickly as possible. If you are still interested in being recommended for the final session of 2017, please reply back with the following information to set up your advisory session to discuss enrollment steps[.]

46.     This email continued by asking for Plaintiff's telephone number and the best time to call Plaintiff.

47.     Plaintiff provided neither.

48.     At the time, Kimberly Williams listed her position in her email signature as "Admissions Counselor ADP – Team Lead."

49.     Plaintiff responded to the above email with "[p]lease take me off ur mailing lists!"

50.     Plaintiff's request was not documented.

51.     **Email**: On October 11, 2017, Defendant's Assistant Director of Admissions Victoria Meehan emailed Plaintiff stating, in part:

> With the start of classes just around the corner, it's important to understand your financial aid award package and if going to college to change your life will be feasible for you. We have financial aid advisors available 7 days a week to discuss your options with you. To discuss your FAFSA and possibly get started in our October 23rd session, please REPLY BACK.

52.     This email then requested Plaintiff's phone number and best time to call.

53.     Plaintiff provided neither.

54.     **First Revocation**: Plaintiff responded to this email writing "[p]lease stop emailing, texting, sms, calls, and voicemail! This is the third or fourth time I am asking to be removed from all of your lists!!"

55.     Plaintiff's request was not documented, and Defendant continued to contact Plaintiff.

56.     Upon information and belief, Defendant deleted the email from Plaintiff at some point between the email being sent and November 28, 2018.

57.     **Email**: On October 18, 2017, Defendant's Assistant Director of Admissions Victoria Meehan emailed Plaintiff again to follow up on Plaintiff's interest in attending classes on October 23. This email stated, in part

> It is not too late for you to change your life through education! Post University offers 24/7 tutoring, lifelong career services assistance, and unparalleled flexibility and support. Once before you told us that was what you wanted from a school, is that still the case?

58.     This email continued by inviting Plaintiff to provide her telephone number and best time to call in order to get started in Post's October 23rd session. Plaintiff did not do so.

59.     **Call**: On that same day, Kimberly Williams called Plaintiff's telephone number

ending in 4599 and left a voicemail. This call, like all communications around this time, was to gauge Plaintiff's interest in attending classes in an upcoming session (here, the October 23rd session) and to convince her to do so. This call approximated the sentiment, content, and purpose seen in Ms. Meehan's October 18 email to Plaintiff.

60. **Email**: On November 8, 2017, Defendant's Admissions Counselor Team Lead Kimberly Williams sent an email to Plaintiff writing in part:

> You were previously working with our admissions team regarding enrollment for Post University's online accelerated programs. I know timing was off and you were unable to start in 2017. I wanted to let you know Post University is now registering students for courses that begin on January 8th, 2018 and this is the first class of the New Year.

61. The email continued by providing "facts" on Post University and included taglines such as "YOUR FUTURE BEGINS TODAY" and "Don't wait another year to begin working on your dreams!", as well as a call to action to "Get started today by completing your FAFSA."

62. This email also invited Plaintiff to respond to the email if she is no longer interested.

63. **Second Revocation**: Plaintiff replied to this email "I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind. I am no longer interested in applying to attend Post University! Please let this be the last communication regarding your school."

64. Plaintiff's request was not documented, and Defendant continued to contact Plaintiff.

65. Upon information and belief, Defendant deleted the email from Plaintiff at some point between the email being sent and November 28, 2018.

66. **Email**: On December 7, 2018, Carissa Valluzzo sent Plaintiff an email encouraging Plaintiff to enroll in the session beginning January 8, 2018. This email stated, in part:

> XXX[sic], Now's the perfect time to get the education you need on your own time.

> Enroll today to take an important step forward in achieving your personal and professional goals.

67. The email then provided "facts" about "Post" and provided buttons for Plaintiff to "start a new FAFSA" and "Apply Now."

68. The "XXX" typo in the introduction of the email suggests that Defendant had been using template, mail merged emails and sending these emails *en masse*, without regard to previous requests to cease contact.

69. Upon information and belief, all the emails after August 16 were sent using this process.

70. **Email**: On January 4, 2018, Defendant's Assistant Director of Admissions Victoria Meehan emailed Plaintiff, writing, in part:

> Are you snowed in today and want to have a productive day? We can help you get your FAFSA done! … Completing your FAFSA is a very important step in the admissions process and we don't want you to miss out on classes that start January 8, 2018!

71. **Third Revocation**: Plaintiff replied "[p]lease stop contacting me! Not interested!!"

72. Upon information and belief, Defendant deleted the email from Plaintiff at some point between the email being sent and November 28, 2018.

73. Plaintiff's request was not documented, and Defendant continued to contact Plaintiff.

74. **Call**: On January 11, 2018, Defendant called Plaintiff's telephone number ending in 4599 from its telephone number 203-596-8364. Plaintiff answered this call. The content of this telephone call was in line with the email and telephonic communications after August 16. On this call, Rita Francisco attempted to re-engage Plaintiff, to convince Plaintiff to attend Post University, and to take steps (e.g. filling out an application, submitting financial aid forms) to enroll in Defendant's next session.

75. **Fourth Revocation**: On that January 11, 2018 call, Plaintiff once again asked Defendant to stop calling and contacting her.

76. This is the first and only "Do Not Call" request from Plaintiff noted in Defendant's system.

77. Nevertheless, Defendant continued to contact and call Plaintiff after this request was noted.

78. **Email**: On April 4, 2018, Defendant's Admissions Counselor Team Lead Kimberly Williams emailed Plaintiff, writing in part:

> Post University would love to reconnect with you regarding starting online classes…. We have classes beginning on April 30th, 2018, are you interested in starting?

79. **Fifth Revocation**: Plaintiff responded to this email writing "[t]his is the 5 or 6th time I have asked Post representatives to stop contacting me. Please close my file!!! I will be forced to obtain legal action."

80. Plaintiff's request was not documented, and Defendant continued to contact Plaintiff.

81. Upon information and belief, Defendant deleted the email from Plaintiff at some point between the email being sent and November 28, 2018.

82. **Email**: On June 6, 2018, Defendant's Admissions Counselor Team Lead Kimberly Williams emailed Plaintiff, again seeking to convince Plaintiff to take steps to enroll in an upcoming session. This email stated, in part:

> Not too long ago you considered Post University for your education, I am touching base with you because we have not given up on you and your goals! … Classes start at the end of this month and Post U requires just two applications to have your file reviewed.

83. This email then asked Plaintiff to provide the best time and phone number at which

to reach her. Plaintiff did not do so.

84. **Sixth Revocation**: Plaintiff responded "Please stop emailing me! I'm not interested anymore! I have told everyone who has contacted me by phone and email!!"

85. Plaintiff's request was not documented, and Defendant continued to contact Plaintiff.

86. Upon information and belief, Defendant deleted the email from Plaintiff at some point between the email being sent and November 28, 2018.

87. Notably, all of Defendant's emails included indications that those emails were being monitored (and none of Plaintiff's emails bounced back, as they would to an email address that could not accept incoming messages). For example, some of the emails included language that "[i]f you are no longer interested in completing your degree, please respond to this email and I will update our records." Others contained language asking the recipient to inform the sender via return email if the recipient was not the intended recipient.

88. **Text:** Despite these six revocations, on July 17, Defendant, through its employee Connie Reilly sent, and Plaintiff received, a series of text messages[1] from telephone number 203-802-5819 to Plaintiff's telephone number ending in 4599. The following is that text message exchange:

- *Defendant*: (1/5) Hello Melanie, this is Connie with Post University's Admissions
- *Defendant*: (2/5) office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were
- *Defendant*: (3/5) unable to begin with us last year. Are you still interested in earning

---

[1] Text messages are "calls" under the TCPA. *See, e.g.*, 2003 FCC Order, 18 FC Rcd. 14014, ¶ 165

- a Bachelor's degree in Human Services?
- *Defendant*: (4/5) We'd love to help you get back on track towards your educational
- *Defendant*: (5/5) and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.
- **Seventh Revocation**. *Plaintiff*: I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University. Any further communication from Post will allow me to file a complaint for harassment.
- **First DNC policy request**. *Plaintiff*: I would like to have a copy of Post University's Do-not-call list please! You may send it to my address on your file. Thank you! Melanie Davis.
- *Defendant*: We do not disclose student information. Your file has been closed.
- **Second DNC policy request.** *Plaintiff*: I'm am[sic] not asking for any student information. I am asking for Post University's Do not call Manuel[sic]. My file being closed with your organization did not stop you from contacting me after several requests!
- *Defendant*: You will not be contacted by us again
- **Third DNC policy request**. *Plaintiff*: Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school. Thank you.

89. Defendant did not document this revocation or Plaintiff's policy requests in its system.

90. On July 18, 2018, Plaintiff called Defendant's telephone number at 203-591-5047, and spoke with Defendant's employee Anna Lynn.

91. **Fourth DNC policy request**: On this call, Plaintiff identified herself and once again asked for Defendant's "do not call" policy.

92. Defendant stated "I'm not sure I have that right here on my computer. If you need your file closed, I can do that for you", or words to that effect.

93. Plaintiff again reiterated her request for Defendant's "do not call" policy.

94. Defendant's employee placed Plaintiff on hold. When Defendant's employee returned to the phone, she stated that she did not have that on her computer and would have to check in with an unspecified "him" to see if there was a policy. She offered to email it to Plaintiff when she got it from "him."

95. Plaintiff provided her email address, which Defendant's employee read back to confirm.

96. To date, however, Plaintiff has not received any policy.

97. Remarkably, after all the above – the requests via phone, text, and email to stop contacting Plaintiff, the threatened litigation, the requests for the "do not call" policy – Defendant *continued* to contact Plaintiff.

98. **Email**: On September 7, Defendant's Admission Counselor Tashina McInerny emailed Plaintiff writing in part:

> I know that the main concern about attending school is the cost of tuition. Submit your FAFSA and see what your award will be prior to enrolling in classes. … I look forward to being able to help you reach your long term educational goals.

99. As discussed, the TCPA prohibits making "any call for telemarketing purposes" unless the caller has met the affirmative defense of instituting certain minimum standards for maintaining an internal do-not-call list.

100. These standards include, among others, keeping a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in telemarketing on the existence and use of the do-not-call list, and recording and honoring "do not call" requests. 47 CFR § 64.1200(d).

101. At the time of its calls to Plaintiff, Defendant did not have such a written policy, nor did it train personnel engaged in telemarketing on the existence and use of the do-not-call list.

102. Even if Defendant did have a such a policy in place at the time of the calls, Defendant's failure and refusal to produce that policy make it not "available upon demand".

103. Furthermore, Defendant's employees are not trained on honoring "do not call" requests or any internal "do not call policy".

104. To the contrary, Defendant encourages its employees and agents to use high-pressure sales tactics, overcome objections, convert a certain number of leads, and to call leads a certain number of times before that lead can be closed.

105. Furthermore, Defendant did not record and/or honor "do not call" requests, as seen in Plaintiff's futile efforts to stop the calls.

106. As discussed, only one of Plaintiff's seven "do not contact" requests was documented.

107. Accordingly, all of Defendant's telemarketing calls to anyone, in the absence of such a policy, and regardless of consent or equipment used, violate 47 U.S.C. § 227(c).

108. All of Defendant's calls to Plaintiff after she was marked as "Opportunity Lost" on August 16 were to convince Plaintiff to enroll in its for-profit university, which is telemarketing.

109. Plaintiff has pled more than one such call within a 12-month period.

110. Plaintiff is entitled to up to $500 for each call placed to her telephone number in

violation of regulation 47 C.F.R. § 64.1200(d), prescribed pursuant to 47 U.S.C. § 227(c).

111. Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the violations were knowing and/or willful.

112. Plaintiff has suffered concrete injury because of Defendant's telemarketing telephone calls, including, but not limited to:

- Device storage;
- Lost time tending to and responding to the calls;
- Invasion of Privacy;
- Nuisance;
- Deprivation of the right to request, receive, and act in accordance with the mandated "do not call" policy to stop further calls.
- Increased risk of all the above.

113. These forms of concrete injury are sufficient for Article III standing purposes.

## CLASS ACTION ALLEGATIONS

114. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class, defined as follows:

Since July 30, 2014, all persons within the United States who, on their residential or cellular telephone number, received more than one telephone call from Defendant in a 12-month period, while the entry or file in Defendant's CRM system associated with that person was marked as, flagged as, or considered a "Rejected Lead" or "Opportunity Lost".

("Class")

115. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom

this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

116. **Numerosity**: The Class Members for whose benefit this action is brought are so numerous that joinder of all members is impracticable. The Class contains thousands of members.

117. **Ascertainability**: The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant maintains written and electronically stored data showing:

   a. The time period(s) during which Defendant placed its telephone calls;

   b. The telephone numbers to which Defendant placed its telephone calls;

   c. The dates Defendant placed telephone calls to each Class Member;

   d. The date each Class Member was marked or flagged as "Rejected Lead" and "Opportunity Lost".

   e. The names and addresses of Class Members.

118. **Commonality**: There are common questions of law and fact affecting the rights of the Class Members, including, *inter alia*, the following:

   a. Whether Defendant made telemarketing calls;

   b. Whether Defendant maintained a written "do not call" policy;

   c. Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

   d. Whether Defendant recorded or honored "do not call" requests;

   e. Whether Plaintiff and the Class Members were damaged thereby, and the extent of damages for such violations; and

   f. Whether Defendant should be enjoined from engaging in such conduct in the future.

119. **Typicality**: Plaintiff's claims are typical of the claims of Class Members in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims. Plaintiff Davis is a member and her claims are typical of the Class because Defendant placed more than one call for telemarketing purposes in a one-year period to her telephone number without having the required policies, procedures, and training in place.

120. Plaintiff and all Class Members have also necessarily concrete injury, as all Members spent time tending to Defendant's calls, lost space on their devices, had their phone lines tied up, and suffered a nuisance and an invasion of their privacy as they were unable to effectively stop the calls if they wanted to do so, or obtain a "do not call policy" upon which they could rely to stop the calls.

121. **Adequacy**: Plaintiff has no interests antagonistic to, or in conflict with, the Class.

122. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent themselves and the Class.

123. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

124. Common questions will predominate, and there will be no unusual manageability issues.

125. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class Member make individual actions uneconomical, and the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Class)**

126.    Plaintiff and the proposed Class incorporate the foregoing allegations as if fully set forth herein.

127.    Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Class Members' telephone numbers.

128.    Defendant did so despite not having a written policy pertaining to "do not call" requests.

129.    Defendant did so despite not having such a policy available "upon demand."

130.    Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

131.    Defendant did so despite not recording or honoring "do not call" requests.

132.    Defendant placed more than one telephone call to Plaintiff and each Class Member in a 12-month period.

133.    Plaintiff and Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

134.    Plaintiff and Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Davis, individually and on behalf of the Class, prays for the following relief:

A.    An order certifying the Class as defined above, appointing Plaintiff Davis as the representative of the Class and appointing her counsel as Class Counsel;

B.    An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § (c);

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages for each violation of 227(c) and the regulations promulgated thereunder;

E. An award of treble damages;

F. An award of reasonable attorneys' fees and costs; and

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** June 28, 2019

s/ Bradford R. Sohn_____
Bradford R. Sohn
Fla. Bar. No. 98788
**THE BRAD SOHN LAW FIRM PLLC**
2600 South Douglas Rd, Suite 1007
Coral Gables, Florida 33134
Tel: 786.708.9750
Fax: 305.397.0650
brad@sohn.com

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com
(*Pro Hac Vice*)