## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, <br><br>          Plaintiff, <br><br> v. <br><br> **POST UNIVERSITY, INC.,** <br><br>          Defendant. | Civil Case No.: 18-cv-81004-RKA <br><br> Judge: Hon. Roy K Altman <br> Magistrate Judge: Hon. Dave Lee Brannon |

**<u>Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss</u>**

## Contents

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.    Plaintiff's Allegations ................................................................................................. 2

II.   Defendant's Mischaracterizations of Plaintiff's Allegations ...................................... 3

DISCUSSION .................................................................................................................... 4

I.    Provenance of § 64.1200(d) ....................................................................................... 4
   a.    47 U.S.C. § 227(c) ............................................................................................... 4
   b.    Section 64.1200(d) .............................................................................................. 5
   c.    Section 64.1200(d) was Prescribed Under § 227(c). ........................................... 7
      i.    The Statute is Clear. ...................................................................................... 7
      ii.   The FCC Was Clear. ...................................................................................... 7
      iii.  Authority for the 2003 Amendment ............................................................... 8
      iv.   Courts are Unanimous .................................................................................... 8
   d.    Defendant's Arguments. ..................................................................................... 10
      i.    The Original Regulation (§ 64.1200(e)) Became § 64.1200(d), not § 64.1200(c). ...... 10
      ii.   Defendant Cannot Challenge the FCC's 2003 Amendment Here. ................. 10
      iii.  The 2003 Amendment was not Prescribed Under § 227(d). ........................... 11

II.   The Private Right of Action of § 227(c) .................................................................. 12

III.  Regulating "Telemarketing" Calls Also Regulates "Telephone Solicitations." ........... 13

IV.   Consent is Irrelevant to § 64.1200(d) ..................................................................... 15

V.    Standing .................................................................................................................. 16
   a.    Plaintiff Davis Has Article III Standing .............................................................. 16
   b.    Plaintiff Davis has Statutory Standing. ............................................................... 19
   c.    While not Relevant on This Motion, Putative Class Members Have Standing. ........ 20

CONCLUSION ................................................................................................................ 20

## INTRODUCTION

The arguments Defendant makes in its convoluted and oddly timed Motion to Dismiss are wrong. Predicated on misrepresentations and, at times, outright fabrications, they amount to the legal equivalent of Defendant closing its eyes and shouting abracadabra in hopes that the monsters under its bed—the case law, the statute, the complaint, the record, and its blatant violations of the law—are not real. But they are real, and Defendant's approach is a surefire way to get eaten.

Defendant so thoroughly ties itself into knots that one of its arguments relies on what amounts to statutory time-travel. Defendant argues that because § 227(c), which provided the FCC with the authority to implement the company-specific do-not-call regulation at issue here, also stated that the FCC "shall conclude the rulemaking proceeding" by the middle of 1992, we can only consider the regulation as it existed at that point, rather than the regulation as it was amended in 2003. Notwithstanding the fact that Congress passed a law permitting and requiring the FCC to issue its 2003 amendment, Defendant cannot challenge the FCC's authority here.

And consider Defendant's Article III standing argument. Not only is it wrong, it is wrong in ways directly addressed by the 11th Circuit's binding decision in *Muransky*, decided just three months ago. *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1188 (11th Cir. 2019). In *Muransky*, the Court held "[i]f Congress adopts procedures designed to minimize the risk of harm to a concrete interest, then a violation of that procedure that causes even a marginal increase in the risk of harm to the interest is sufficient to constitute concrete injury." *Id.* at 1188. Remarkably, though it was quoted and cited at length in Plaintiff's Motion for Class Certification filed more than a week ago, Defendant completely ignores *Muransky*.

Defendant's statutory standing argument is equally unavailing. Defendant argues that Plaintiff, who alleges she received more than one telemarketing call from Defendant despite Defendant not having policies, procedures, and training for implementing a do-not-call list, cannot

1

bring a claim under a statute that prohibits a company from initiating a telemarketing call without having policies, procedures, and training for implementing a do-not-call list.

Defendant also spends page after page of its brief arguing that Congress and the FCC meant to regulate "telephone solicitations", so the statute at issue, which covers all telemarketing calls, cannot mean what it says. It is unclear if Defendant believes the statutory language to be inadvertent (not challengeable here and contradicted by the FCC) or subsequently abrogated. In either event, there is no disconnect between the mandate to protect consumers from "telephone solicitations"—a subset of telemarketing—and the FCC's decision to fulfill it by regulating all telemarketing calls.

The Court need not take Plaintiff's word for it. As discussed below, the statute is clear, the FCC is clear, and every single court to consider Defendant's arguments has rejected them. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Motion in full.

## **BACKGROUND**

### I. **Plaintiff's Allegations.**

Plaintiff called PU on August 9, 2017. [Second Am. Compl. ("SAC"), Dkt. 67, ¶ 23.] On this call, Plaintiff inquired about enrolling at PU. *Id.* at ¶¶ 24. Plaintiff placed this telephone call from her cell phone number ending in 4599. *Id.* at ¶ 25. On August 11, 2017, PU called Plaintiff on her cell phone to follow up on previously sent financial aid paperwork. *Id.* at ¶ 28. On August 13, 2017, Plaintiff wrote an email to PU's employees Rita Francisco and Victoria Meehan stating she would no longer be able to move forward with attending Post. *Id.* at ¶ 29. Victoria Meehan is one of PU's Assistant Directors of Admissions. *Id.* at ¶ 30. On August 15, 2017, PU called Plaintiff on her cell phone and acknowledged receipt of the August 13 email, but stated that they had proceeded "so far in the process" that PU was "reluctant to close out" Plaintiff's file. *Id.* at ¶ 31. On August 16, 2017, PU marked Plaintiff's file as "Opportunity Lost" in its CRM system. *Id.* at ¶

33. Despite this, PU shortly resumed contacting Plaintiff via email and on her cell phone. *Id.* at ¶ 35. All communications after Plaintiff was marked as "Opportunity Lost" were attempts to get Plaintiff to "re-engage" with PU and enroll at PU. *Id.* at ¶ 36.

PU texted Plaintiff on August 25, 2017 and August 30, 2017. *Id.* at ¶¶ 39-40. On October 11, 2017, in response to an email encouraging enrollment, Plaintiff wrote PU an email stating "[p]lease stop emailing, texting, sms, calls, and voicemail! This is the third or fourth time I am asking to be removed from all of your lists." *Id.* at ¶¶ 51-54. Plaintiff made at least five other similar requests: on November 8, 2017 ("I have asked you and your colleagues to stop calling … Please let this be the last communication regarding your school."), January 4, 2018 ("Please stop contacting me! Not interested!!"), January 11, 2018 (on an inbound phone call), April 4, 2018 (threatening legal action if contact did not stop), June 6, 2018 ("I'm not interested anymore! I have told everyone who has contacted me by phone and email!!"), and July 17, 2018 ("Please do not contact me regarding enrollment to Post University.") *Id.* at ¶¶ 63, 71, 75, 79, 88.

Nevertheless, in addition to the two texts mentioned above, PU called or texted Plaintiff on October 18, 2017, January 11, 2018, and July 17, 2018 and sent Plaintiff at least 11 marketing emails. *Id.* at ¶¶ 41-98. Plaintiff received these communications. *Id.* These communications were attempts to get Plaintiff to enroll at Post University. *Id.* at ¶¶ 36, 108.

During the July 17 text exchange, Plaintiff asked for PU's do-not-call policy. *Id.* Instead of providing this information, PU wrote that it does not disclose student information, and that Plaintiff would not be contacted again. *Id.* Subsequently, Plaintiff placed a telephone call to PU's main office to again ask for its do-not-call policy. *Id.* at ¶¶ 90-91. PU offered to email the policy to Plaintiff if it existed, but to date, Plaintiff has received no such policy. *Id.* at ¶ 94-96.

**II.**   **Defendant's Mischaracterizations of Plaintiff's Allegations**

Defendant claims that "Plaintiff makes the sweeping conclusion that all of the University's

calls were telemarketing—even those that were in response to Plaintiff's inquiries and placed to keep her informed of deadlines associated with the admission process she began." [Def.'s Brief, p. 3.] Not true. Instead, what Plaintiff alleges is that all of Defendant's telephone calls to Plaintiff *after she was marked in Defendant's system in a way that indicated Defendant no longer considered her to be interested* were telemarketing. [SAC, ¶¶ 33-37.] Even Plaintiff's proposed class definition is restricted as such. [*Id.* at ¶ 114; Dkt. 68.]

Defendant also states that Plaintiff's claim is solely based on Defendant's lack of a written do-not-call policy. [Def.'s Brief, pp. 3, 16.] Not true. Plaintiff specifically alleges not only that Defendant did not have a written do-not-call policy, but that, as part of its high-pressure sales tactics, Defendant failed to train its employees on honoring do-not-call requests or on any do-not-call policy and failed to honor and record do-not-call requests. [SAC at ¶¶ 101-106.]

Finally, Defendant claims that "extensive discovery did not reveal any records of the University placing calls to other individuals who made a DNC request[.]" [Def.'s Brief, p. 7.] Not true, as even a cursory glance at page 1 of Plaintiff's Motion for Class Certification shows. Therein, Plaintiff describes two persons who were threatened with fees after making a do-not-call request, and a third who was called a "b**ch" for making a do-not-call request and whose request was ignored. [Dkt. 68-1, p. 1.] But even if Defendant was correct, it would not matter. Defendant had no policy to document and honor do-not-call requests. The absence of evidence of other persons harassed after making a do-not-call request would indicates that Defendant was thorough in breaking the law, not that those persons do not exist.

## **DISCUSSION**

I.  **Provenance of § 64.1200(d)**

a.  **47 U.S.C. § 227(c)**

Like most of the TCPA, § 227(c) is intended to protect consumer privacy rights. 47 U.S.C.

§ 227(c). It compelled the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The FCC was explicitly instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems' … )" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id.* at (c)(1)(A) and (E). Section 227(c) contains a private right of action. It provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action to recover $500 to $1,500 per call. 47 U.S.C. § 227(c)(5).

**b. Section 64.1200(d)**

The rule requiring companies to implement certain minimum policies and procedures for maintaining an internal do-not-call list was first put into place in the TCPA's implementing regulation. 7 FCC Rcd 8752, 8753 (Oct. 16, 1992) ("1992 TCPA Order"). The FCC, pursuant to § 227(c)'s mandate and guidance, found that "the company-specific-do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *1992 TCPA Order* at 8765, ¶ 23. It further wrote that "we must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24. The regulation was initially codified at § 64.1200(e), and provided that:

> No person or entity shall initiate any telephone solicitation to a residential telephone subscriber (1) before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location), and (2) unless such person or entity has instituted procedures for maintaining a list of persons who do not wish to receive telephone solicitations made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

5

The regulation then proceeded to list six minimum standards that the procedures implemented must meet. *Id.* at (e)(i-vi).

The FCC revisited this regulation in 2002. In a Notice of Proposed Rulemaking, it sought comment on whether to amend the company-specific do-not-call approach, which it identified as having been enacted in the *1992 TCPA Order* and being then codified at § 64.1200(e). *2002 NPRM*, 17 FCC Rcd. 17459, 17463 ¶ 4 ns. 15, 17, 18, ¶¶ 14-17 (Sept. 18, 2002). In the ensuing 2003 order, the FCC began its discussion on the company-specific do-not-call list by noting that "[i]n the 1992 TCPA Order, the Commission adopted a 'company-specific do-not-call' approach to protect residential telephone subscriber privacy[.]" *2003 TCPA Order*, 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, *136 ¶ 86 (July 3, 2003). It again identified these rules as being then codified at § 47 C.F.R. § 64.1200(e). *Id.* at *9-10 ns. 12, 14, 15. The FCC found that

> [T]he company-specific do-not-call approach has not proven ideal as a stand-alone method to protect consumer privacy…. [T]he increase in telemarketing calls over the last decade now places an extraordinary burden on consumers that do not wish to receive telephone solicitations… In addition, the widespread use of predictive dialers now results in many "dead air" or hang-up calls in which consumers do not even have the opportunity to make a do-not-call request. Such calls are particularly burdensome for the elderly and disabled consumers. We believe, however, that the measures adopted elsewhere in this order will enhance the effectiveness of the company-specific list.

*Id.* at *142-43, ¶ 91. It then *specifically amended* the company-specific do-not-call rules "to apply to any call for telemarketing purposes."[1] *Id.* at *150 ¶ 96.

The amended rule was moved from § 64.1200(e) to (d). It currently provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber[2] unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

---

[1] This amendment also created the definition of "telemarketing" found at § 64.1200(f)(12)

[2] Though these regulations use the phrase "residential telephone subscriber", in 2003 they were expanded to include calls to cellular telephone subscribers. 47 C.F.R. § 64.1200(e).

47 C.F.R. § 64.1200(d). This is nearly identical to the previous regulation, with the exceptions that "telephone solicitation" was replaced with "call for telemarketing purposes" and the time-of-day requirement was moved under § 64.1200(c) which deals with telephone solicitations and the National Do-Not-Call Registry. The policies and procedures required "must meet" minimum standards, including maintaining a written policy, available upon demand, for maintaining a do-not-call list; training and informing personnel engaged in telemarketing on the existence and use of the do-not-call list; recording do-not-call requests when made; and honoring do-not-call requests. *Id.* at (d)(1), (2) , (3) , (6).

### c.  Section 64.1200(d) was Prescribed Under § 227(c).

The private right of action in § 227(c) allows persons to enforce regulations prescribed under § 227(c). Section 64.1200(d) was prescribed under § 227(c).

#### i.  The Statute is Clear.

The TCPA itself leaves no doubt for the source of the authority for the FCC to implement the company-specific do-not-call requirements presently found in § 64.1200(d). The statute requires the FCC to consider "industry-based or company-specific 'do-not-call' systems" as ways to protect consumer privacy. 47 U.S.C. § 227(c)(1)(A). This alone is dispositive of the source of the FCC's authority to implement § 64.1200(d).

#### ii.  The FCC Was Clear.

The FCC also made clear its authority for implementing § 64.1200(d). In the Notice of Proposed Rulemaking prior to the initial creation of § 64.1200(d) (then § 64.1200(e)), the FCC quoted § 227(c)(1)(A) and stated that it had identified five potential mechanisms to comply, one of which was company specific do-not-call lists. 7 FCC Rcd. 2736, 2742 ¶¶ 27, 32 (April 17, 1992). The ensuing order is broken down into parts and subparts. Most relevantly, Part III, Subpart B is "Procedures for Avoiding Unwanted Telephone Solicitations to Residences." *1992 TCPA*

7

*Order* at 8755. In the first paragraph under Subpart B, the Commission notes that its authority for what follows is derived from § 227(c). *Id.* at 8756, ¶ 7. The company-specific do-not-call requirements are found thereunder. *Id.* at 8764-67, ¶¶ 20-24.

### iii.   Authority for the 2003 Amendment

Much of Defendant's brief hinges on this notion that because § 227(c)(2) stated that "the Commission shall conclude the rulemaking proceeding initiated" thereunder "not later than 9 months after December 20, 1991", the FCC's 2003 amendment to the company-specific do-not-call rules was either improper or must have been authorized by some other provision of the TCPA. These arguments are addressed below. But whatever Defendant may believe, the FCC made clear that it believed its authority for the 2003 amendment was found in § 227(c). In beginning its discussion of the company-specific do-not-call rules, the FCC explicitly referenced adopting "in the *1992 TCPA Order*" the company-specific do-not-call rules it was amending. *2003 TCPA Order*, 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673 at *136 ¶ 86. It identified those rules as being then codified at § 64.1200(e). *Id.* at n. 272.

Furthermore, and wholly unaddressed in Defendant's Motion, Congress not only was aware of the FCC's 2002 NPRM which led to the 2003 amendment, it passed a law setting a timeline for the FCC to issue its final order. 15 U.S.C. § 6153 ("Not later than 180 days after March 11, 2003, the Federal Communications Commission shall issue a final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, under the Telephone Consumer Protection Act (47 U.S.C. § 227 et seq.).)"). This would be an odd law for Congress to pass if the FCC had overstepped its authority in considering amendments to the *1992 TCPA Order*.

### iv.   Courts are Unanimous.

Courts have unanimously agreed that § 64.1200(d) was prescribed under § 227(c). For example, the Southern District of Florida favorably cited and agreed with a Sixth Circuit case

which found that § 64.1200(d) was a regulation arising out of § 227(c). *Benzion v. Vivint, Inc.*, Case No. 12-61826, 2014 U.S. Dist. LEXIS 187275, *15-17 (S.D. Fla. Jan. 17, 2014) (citing *Charvat v. GVN Mich.*, Inc., 561 F.3d 623, 632 (6th Cir. 2009) ("Charvat I")). The Sixth Circuit reiterated this holding two years later. *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011).

The Middle District of Florida similarly denied a motion to dismiss a claim based on 47 C.F.R. § 64.1200(d) and cited *Charvat I* for the principle that "a violation of section 64.1200(d) is the initiation of the phone call without having implemented the minimum procedures." *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1197-98 (M.D. Fla. 2014). The court found that the plaintiff had properly alleged a violation of 47 U.S.C. § 227(c)(5) by alleging that defendant had initiated calls for telemarketing purposes without instituting procedures that complied with the minimum standards. *Id.*; *cf., e.g.*, *Nece v. Quicken Loans, Inc.*, 292 F. Supp. 3d 1274, 1283 (M.D. Fla. 2018) (not questioning the private right of action for violations of § 64.1200(d)); *Baxter v. VSC LLC*, Case No. 17-cv-1718, 2018 U.S. Dist. LEXIS 41650, *18 (M.D. Fla. Mar. 13, 2018) (refusing to dismiss § 64.1200(d) claim).

The Northern District of Georgia also held that "if [the procedures in 47 C.F.R. § 64.1200(d)] are not implemented, each call made by a telemarketer constitutes a violation of the TCPA and the FCC regulations [and] any person who receives two or more such calls has a private right of action." *Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 587 (N.D. Ga. 2017).

Several other cases nationwide have held the same. *See, e.g.*, *Melito v. Am. Eagle Outfitters, Inc.*, Case No. 14-02440, 2015 U.S. Dist. LEXIS 160349, *14, n.7 (S.D.N.Y. Nov. 30, 2015) (private right of action under § 227(c) for violations of 64.1200(d)); *Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C. 2015) (same); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1199-1200 (M.D. Tenn. 2017); *Allard v. SCI Direct*,

9

Inc., 16-cv-1033, 2017 U.S. Dist. LEXIS 107106, *16 (M.D. Tenn. July 10, 2017).

Defendant cites no cases in support of its position to the contrary, because no case supports Defendant's position.

### d. Defendant's Arguments.

#### i. The Original Regulation (§ 64.1200(e)) Became § 64.1200(d), not § 64.1200(c).

Throughout, Defendant claims that that company-specific do-not-call rules that were originally codified at § 64.1200(e) became § 64.1200(c) and not § 64.1200(d). [Def.'s Brief, pp. 5, 18.] This is incorrect. As set forth at length above, what was § 64.1200(e) became nearly verbatim what is currently § 64.1200(d), with the main difference being that § 64.1200(d) prohibits initiating any "call for telemarketing purposes"—rather than just "telephone solicitations"— without implementing the minimum policies and procedures.

In addition, what is now § 64.1200(c) deals not with company-specific do-not-call rules as § 64.1200(e) did, but with the National Do-Not-Call Registry, which the FCC declined to implement in the *1992 TCPA Order*. 7 FCC Rcd. at 8760-61 ¶¶ 14-15.

Should this all be very confusing, that is by Defendant's design. To simplify:

|  | 1992 | 2003 |
|---|---|---|
| Company-specific do-not-call rules | § 64.1200(e) | § 64.1200(d) |
| National Do-Not-Call Registry | n/a | § 64.1200(c) |

#### ii. Defendant Cannot Challenge the FCC's 2003 Amendment Here.

Defendant argues that because § 227(c) states that the FCC "shall conclude the rulemaking proceeding" no later than nine months after December 20, 1991, only the regulations it passed during that time frame, as they were passed during that time frame, can be considered under § 227(c)—*not* subsequent amendments to those initial regulations or relying on § 227(c). [Def.'s Brief, pp. 4-6.] But Defendant's DeLorean has malfunctioned, and this statutory time-travel argument must be rejected.

10

Though it carefully avoids saying so, Defendant's argument would require setting aside nearly 27 years of FCC regulations issued under § 227(c). Fortunately for all of us tired of incessant telemarketing calls, Defendant's challenge is precluded by the Hobbs Act, as even it acknowledges. [Def.'s Brief, p. 20.] "Section 402(a) of the Communications Act provides that (except in limited circumstances not relevant here) any 'proceeding to enjoin, set aside, annul, or suspend any order of the [Federal Communications] Commission' must be brought under the Hobbs Act. 47 U.S.C. § 402(a)." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014). "The Hobbs Act, in turn, expressly confers on the federal courts of appeals 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such FCC orders." *Id.* at 1119. It is the practical effect of proceeding—not the central purpose or form in which an invalidation request is made—that determines whether the Hobbs Act applies. *Id.* at 1120. To the extent a claim depends "on establishing that all or part of an FCC order … is wrong as a matter of law or is otherwise invalid", the Hobbs Act is implicated. *Id.* (quotations and citations omitted). In other words, "whichever way it is done, to ask the district court to decide whether the regulations are valid violates the statutory requirements." *Id.*

Accordingly, to the extent Defendant's Motion depends on overruling or setting aside the FCC's 2003 amendment, it should be denied.

### iii.  The 2003 Amendment was not Prescribed Under § 227(d)

Perhaps hoping to avoid the applicability of the Hobbs Act, Defendant also argues that because, in its view, the FCC did not have the authority to issue new regulations under § 227(c), the current § 64.1200(d) must have been prescribed under § 227(d). [Def.'s Brief, pp. 5-6.] As discussed at length, this is incorrect. Notably, though much of Defendant's brief deals with its interpretation of the textual limitations on the FCC's authority, Defendant completely omits any discussion of which part of § 227(d) would even remotely authorize a company-specific do-not-

11

call list. The only grants of regulatory authority under § 227(d) are § 227(d)(2) (requiring the FCC to set certain technical and procedural standards for fax machines) and § 227(d)(3) (requiring the FCC to prescribe technical and procedural standards related to caller identification requirements and line seizure limitations for calls made using an autodialer or a prerecorded voice).

Further, in the *1992 TCPA Order*, rules relevant to 47 U.S.C. § 227(d), titled "Technical and Procedural Standards", are found in subpart D, conveniently labeled "Technical and Procedural Standards". 7 FCC Rcd at 8778. The only items discussed relate to a line-seizure duration limitation and identification requirements for prerecorded calls and faxes.

## II.     The Private Right of Action of § 227(c)

Defendant argues that § 227(c) cannot provide a private right of action for violations of § 64.1200(d), because § 227(c) only provides a private right of action for "telephone solicitations." But the statute speaks for itself:

> (5) **Private right of action** A person who has received **more than one telephone call within any 12-month period** by or on behalf of the same entity **in violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

47 U.S.C. §. 227(c)(5) (emphasis added).

The *only* relevant question then is whether § 64.1200(d) was prescribed under § 227(c). As discussed above, it was.

Defendant also claims that Congress intended for there to be an affirmative defense to claims brought under § 227(c)(5). Defendant's argument continues that while § 64.1200(c)(2)(i) contains such a defense, § 64.1200(d) ostensibly does not, and, therefore, § 64.1200(d) cannot have been prescribed pursuant to § 227(c). [Def.'s Brief pp. 2, 5-6.] This argument is flawed for three reasons.

First, § 227(c)(5) already provides the affirmative defense. Why, then, is it necessary for

regulations issued pursuant to § 227(c) to repeat that affirmative defense? It is naturally read into every cause of action arising under § 227(c). If Defendant believes it can establish the affirmative defense, it should try to do so.

Second, the FCC appears to have incorporated the affirmative defense into § 64.1200(d) directly. The statute at issue here prohibits calls for a telemarketing purpose "***unless*** such person or entity has instituted procedures…" 47 C.F.R. § 64.1200(d) (emphasis added). The word "unless" is considered to be "telltale language … indicative of an affirmative defense." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015); *see also, e.g.*, *United States v. Franchi-Forlando*, 838 F.2d 585, 591 (1st Cir. 1988) (Breyer, J.).

Indeed, in the Notice of Proposed Rulemaking preceding the initial creation of the company-specific do-not-call list requirements, the FCC wrote, in a paragraph labeled "Company Specific Do Not Call Lists", that "[i]f a complaint is received regarding the telemarketing practices of a company, the company would be required to produce evidence of compliance with this requirement." *1992 NPRM*, 7 FCC Rcd. 2736, 2742 ¶ 32 (April 17, 1992). The final order concludes similarly. *1992 TCPA Order* at 8767 ¶ 24.

Finally, even if proving that Defendant lacked the required policies and procedures is part of Plaintiff's case-in-chief, the defense still exists because for Plaintiff to prevail on a claim for a violation of § 64.1200(d), she must show that Defendant failed to institute the proper procedures prior to the initiation of the call. As such, "[t]here is no affirmative defense to be asserted. If a defendant can show that it had instituted the proper procedures, plaintiff's claim under subsection (d) must fail for lacking an essential element of the claim." *Simmons v. Charter Communs., Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016).

## III.  <u>Regulating "Telemarketing" Calls Also Regulates "Telephone Solicitations."</u>

When a statute is clear, "the role of the judicial branch is to apply statutory language, not

to rewrite it." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000). Nevertheless, despite the clear statutory language, Defendant spends much of its brief emphasizing *dicta* that § 227(c) is meant to protect against unwanted telemarketing calls (i.e. "telephone solicitations"). Defendant's argument hinges various references to "telephone solicitations" in the FCC's orders, but it leans most heavily on the FCC's language in the *2003 TCPA Order* that "[a] separate private right of action permits a consumer to file suit … if he or she has received more than one telephone call within any 12-month period … in violation of the guidelines for making telephone solicitations." *2003 TCPA Order* at *325 ¶ 204. What Defendant omits, however, is the FCC's statement two paragraphs later that it "declines to make any determination about the specific contours of the TCPA's right of action …. The Commission believes it is for Congress, not the Commission, to either clarify or limit this right of action." *Id.* at ¶ 206.

Even considering ¶ 204's language on its face does not lead to Defendant's conclusion. The Congressional mandate to issue rules to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" can certainly be fulfilled by regulating telemarketing calls, which necessarily encompass unwanted telemarketing calls (i.e. "telephone solicitations"). If a company must have policies and procedures for honoring do-not-call requests prior to making telemarketing calls, then either it cannot make telemarketing calls at all (if it does not implement the policies and procedures), thus protecting consumers from unwanted telemarketing calls, or it has implemented the policies and procedures, thus protecting consumers from unwanted telemarketing calls by giving them a meaningful opportunity to stop such calls.

In other words, the company-specific do-not-call rules applying to all calls for "telemarketing purposes" *is* a guideline for making "telephone solicitations", because "telephone

solicitations" are a subset of "telemarketing calls." Nothing in the statute requires the FCC to use a scalpel if it determines that a hammer is "most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(e). The FCC's approach may be broader than Defendant prefers, but its remedy lies with the FCC or Congress, not the Court.

It is also instructive, if not dispositive, to consider one of the reasons the FCC expanded the company-specific do-not-call provision. As quoted above, the FCC found the original iteration to be ineffective due, in part, to calls on which consumers do not even have the opportunity to make a do-not-call request." *2003 TCPA Order* at *142-43, ¶ 91. If the FCC expanded the regulation to, in part, protect those who were unable to make a do-not-call request, how could it be that the expanded regulation requires a do-not-call request in order to be actionable?

Defendant's position that "telephone solicitations" can only be addressed by regulations that specifically target only "telephone solicitations" also stands in contrast to what the company-specific do-not-call provision seeks to accomplish. If a company was only required to maintain the policies and procedures prior to making unwanted telemarketing calls—i.e. telephone solicitations—it avoids liability under the statute by doing exactly what is prohibited: failing to keep records of which of its calls were unwanted. A hypothetical litigant in such a scenario must either be extraordinarily diligent in documenting each do-not-call request made, or risk losing his case because it is his word against the telemarketer's. Avoiding placing such a burden on consumers is explicitly one of the reasons the FCC provided for amending the company-specific do-not-call rules. *2003 TCPA Order*, at 142, ¶ 91.

## IV.   <u>Consent is Irrelevant to § 64.1200(d)</u>

Defendant argues that because it believes plaintiff initially consented to the calls or established a business relationship ("EBR") with Defendant, subsequent telemarketing calls cannot be actionable until she revoked that consent or terminated that relationship. Plaintiff

15

addressed this argument at length in her Motion for Class Certification. [Dkt. 68-1, pp. 5-8.] To summarize, under the plain language of § 64.1200(d), neither consent nor an EBR is relevant to a claim under § 64.1200(d). This is further demonstrated by the FCC's expansion of the regulation and its language in the *2003 TCPA Order* that "[t]he 'established business relationship' … is not an exception to the company-specific do-not-call rules." *2003 TCPA Order* at *170 n.351. Further, "prior express invitation or permission" *is* explicitly a defense to another type of claim under § 227(c) related to the failure to honor the National Do-Not-Call Registry (which is not at issue here). 47 CFR § 64.1200(c)(2)(ii). Congress and the FCC were therefore capable of allowing for a "consent" defense yet chose not to do so for § 64.1200(d).

Courts have rejected Defendant's argument. Most directly, the Middle District of Tennessee denied a defendant's motion for summary judgment in a § 64.1200(d) TCPA case and rejected its consent argument by holding "[t]he Court cannot disregard the plain language of 47 C.F.R. § 64.1200(d) …. [E]ven if [defendant] only initiates telemarketing calls to customers who have given permission to receive such calls, it would still be required to maintain a do-not-call list to permit those customers to opt-out of getting telemarketing calls if they so desire." *Allard*, 2017 U.S. Dist. LEXIS at *16-17; *United States v. Dish Network, LLC*, 75 F. Supp. 3d 942, 1014 n.21 (C.D. Ill. 2014) ("[I]f Dish now asserts that its internal do-not-call list is not properly maintained … all of its outbound telemarketing calls … violate [the] TCPA[.]").

## V.     Standing

### a.    Plaintiff Davis Has Article III Standing.

For Plaintiff to have Article III standing, she "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

Where an intangible harm has a close relationship to a harm that has traditionally been

regarded as providing a basis for a lawsuit, "a plaintiff may show injury in fact by alleging [that] the violation of a procedural right granted by statute poses a 'risk of real harm' to a concrete interest." *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1186 (11th Cir. 2019)[3] (citing *Spokeo*, 136 S. Ct. at 1549). "[A] great risk is not necessary to satisfy Article III's minimal demand for an identifiable trifle." *Id.* at 1188. "If Congress adopts procedures designed to minimize the risk of harm to a concrete interest, then a violation of that procedure that causes even a marginal increase in the risk of harm to the interest is sufficient to constitute a concrete injury." *Id.*

That is precisely what Congress did here. In Congressional findings accompanying the TCPA, Congress found that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" 105 Stat. 2394, § 2, ¶ 5; *see also Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1276 (11th Cir. 2017) ("The TCPA was enacted to address certain invasive practices related to 'unrestricted telemarketing[.]'). Intrusions upon seclusion were long recognized in tort law. *See, e.g.* Restatement (Second) of Torts, § 652B. Intrusions could be made via telephone calls. *Id.* The policies and procedures found in § 64.1200(d) are meant to minimize the risk of invasion of privacy from unwanted telemarketing calls. PU's failure to implement the required policies and procedures, at minimum, increased the risk that a call recipient's privacy would be invaded. This increased risk of harm is directly attributable to Defendant's failures.

Courts nationwide have found that receipt of a call made in violation of the TCPA is sufficient for Article III standing. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019) (finding standing in a § 227(c) case and writing "[t]he straightforward application of *Spokeo* … resolves this matter[.]"); *Cordoba*, 320 F.R.D. 582; *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037,

_____

[3] *Muransky*, decided after (and interpreting) *Spokeo*, is binding in this Circuit.

17

1043 (9th Cir. 2017).

Plaintiff alleges that she received more than one call from Defendant in a 12-month period. [SAC, ¶¶ 40, 59, 74, 88.]. These calls—August 30, 2017, October 18, 2017, January 11, 2018, and July 17, 2018—were received after Plaintiff was marked as a "Lost Opportunity" on August 16, 2017. *Id.* at ¶ 33. Plaintiff has alleged that these calls were telemarketing. *Id.* at ¶¶ 34-88, 108. Plaintiff has alleged that Defendant failed to implement, prior to making its calls, at least some of the policies and procedures required under the TCPA to ensure do-not-call requests are properly documented and honored. *Id.* at ¶¶ 100-106. These failures created a risk of real harm that Plaintiff's privacy would be invaded and that she would suffer a nuisance. *Id.* at 112. This increased risk of harm satisfies *Muransky*. In addition, far from being speculative, these risks came to pass. Plaintiff alleges that she made numerous written do-not-call requests, including as early as October 11, but continued to receive calls from Defendant. *Id.* at ¶ 54-88.

Finally, the ability of a court to award statutory damages establishes redressability. *See Muransky*, 922 F.3d at 1185. Accordingly, Plaintiff has Article III standing.

Defendant's citation to *Newhart* misses the mark. *Newhart v. Quicken Loans Inc.*, Case No. 15-cv-81250, 2016 U.S. Dist. LEXIS 168721, *7-8 (S.D. Fla. Oct. 12, 2016). First, its relevance to Plaintiff's *individual* claim is unclear. In *Newhart*, the court was dealing with a motion for class certification and held that because the purpose of the calls indisputably varied between putative class members, they were "not uniform in purpose" and therefore "the telemarketing issue cannot be resolved by common, classwide evidence." *Id.* at *11. Plaintiff specifically pleads that each call to her after August 16 was telemarketing. Second, to the extent this is a backdoor argument against class certification, Plaintiff has already addressed this issue in her pending Motion and will not do so again here. Suffice it to say that the record in this matter demonstrates

18

that the calls to Class members were uniform in purpose.

### b. Plaintiff Davis has Statutory Standing.

Defendant argues that Plaintiff lacks statutory standing to bring a claim under § 227(c) and § 64.1200(d) for any call made prior to her do-not-call request. [Def.'s Brief, p. 11.] As discussed at length above, the present regulation prohibits initiating a call for telemarketing purposes without the minimum policies and procedures in place. Any person who receives more than one such call in a 12-month period may bring a claim. Plaintiff pleads that she received more than one telemarketing call in a 12-month period from Defendant despite Defendant lacking the required policies and procedures. This is sufficient for statutory standing.

Defendant's reliance on the Fourth Circuit's decision in *Krakauer* is misplaced for two main reasons. *Krakauer*, 925 F.3d 643. First, the Fourth Circuit's opinion, including the statement that the statute requires a plaintiff to have previously taken steps to avoid certain calls, relate to § 64.1200(c) and the National Do-Not-Call Registry. *Id.* at 652 ("To fall within the class certified below, a person had to receive two calls within one year to a number that was listed on the Do-Not-Call registry …. The question for us is whether this class definition … stated an injury that is sufficient to support federal jurisdiction."). Section 64.1200(c) explicitly prohibits "telephone solicitations" to telephone numbers on the National Do-Not-Call Registry and is not at issue here.

Second, the underlying District Court opinion which was upheld did certify a class under § 64.1200(d) and, in so doing, rejected  arguments that because the class might include persons who did not make a do-not-call request, class certification was inappropriate. *Krakauer*, 311 F.R.D. at 392-94. The court wrote that if it

> …were to deny certification because [Defendant] does not keep an accurate list as the regulations require and [Defendant] itself cannot identify which individuals on the list actually requested not to be called, it would create a perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept.

*Id.* at 393; *see also United States v. Dish*, 75 F. Supp. 3d at 1014 n.21. The Fourth Circuit opinion did not address this class or holding.

### c.   While not Relevant on This Motion, Putative Class Members Have Standing.

Presently, the only relevant consideration is whether Plaintiff herself has standing. Defendant's Motion to Dismiss pertains, as it must, solely to Plaintiff's individual claims. If Defendant wants to argue that the Class must show standing, it can do so in Plaintiff's already-filed Motion for Class Certification. With that said, while unnamed Class members do not need to show standing, the same logic outlined in *Muransky* applies to them. Congress adopted procedures designed to minimize the risk of harm to a concrete interest (privacy). If Defendant failed to comply with those procedures, that failure, at minimum, *actually* invaded the privacy of those absent Class members who revoked consent and continued to receive calls, and increased the risk of such invasion for everyone else. *Muransky*, 922 F.3d at 1186.

Defendant would, of course, *love* for the class be limited to those who made a do-not-call request and subsequently received a call, because it knows that it did not keep the records to identify such persons. As a court in this district recently wrote:

> [Defendant] is essentially arguing that the contours of the class should be defined by its own recordkeeping. But that would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct.

*Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, *38-39 (S.D. Fla. June 26, 2018).

In any event, Defendant can make its arguments the context of class certification. On this Motion, the only question is whether Plaintiff Davis has standing. She does.

### <u>CONCLUSION</u>

Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in full.

**Dated:** July 13, 2019

s/ Bradford R. Sohn_____
Bradford R. Sohn
Fla. Bar. No. 98788
**THE BRAD SOHN LAW FIRM PLLC**
2600 South Douglas Rd, Suite 1007
Coral Gables, Florida 33134
Tel: 786.708.9750
Fax: 305.397.0650
brad@sohn.com

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com
(*Pro Hac Vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2019, I filed the foregoing Memorandum through the Court's electronic filing system and thereby served all filing users, including Defendant's counsel of record.

**Dated:** July 13, 2019

s/ Bradford R. Sohn_____
Bradford R. Sohn
Fla. Bar. No. 98788
**THE BRAD SOHN LAW FIRM PLLC**
2600 South Douglas Rd, Suite 1007
Coral Gables, Florida 33134
Tel: 786.708.9750
Fax: 305.397.0650
brad@sohn.com

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com
(*Pro Hac Vice*)