UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>                    Defendant. | Civil Case No.: 18-cv-81004-RKA<br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

**Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment**

1. Defendant, Post University, Inc. ("PU") is a for-profit university. [Post Depo. Tr., 41:3-7.]

2. PU's primary source of revenue is tuition. [Post Depo. Tr. 45:3-18.]

3. Tuition is the payment to purchase educational services from PU. [Post Depo. Tr. 46:17-47:5; 287:3-10.]

4. PU's enrollment process for the majority of its students is depicted in documents PU00011106. [Glapion Decl., Ex. A (PU00011106); Post Depo. Tr. 82:23-83:22, 85:3-86:10.]

5. This enrollment process shows the process by which the majority of PU's prospective students would purchase PU's educational services. [Glapion Decl., Ex. A (PU00011106); Post Depo. Tr. 70:16-72:9, 78:6-81:10, 82:23-84:10, 86:21-88:6, 151:18-152:5.]

6. While there are some variations of this enrollment process, those variations primarily relate to how payment will be made, but the general flow remains the same. [Post Depo. Tr. 83:10-85:2, 279:22-282:6.]

7. Admissions Counselors are PU employees primarily responsible for handling outreach to prospective students. [Post Depo. Tr. 128:21-129:7.]

8. Admissions Counselors were evaluated in part by how well they moved prospective students through the enrollment process. [Glapion Decl., Ex. B (PU00000038-39); Post Depo. Tr. 88:21-91:8, 99:2-100:22.]

9. PU categorizes prospective students into "Leads" and "Opportunities." [Post Depo. Tr. 106:11-107:8.]

10. "Leads" and "Opportunities" are tracked in PU's CRM system. [Post Depo. Tr. 60:8-12; 246:12-13.]

11. PU differentiates a "Lead" from an "Opportunity" according to progress made in the enrollment process. [Post Depo. Tr. 106:11-107:8.]

12. "Leads" can be marked as "Rejected". [Post Depo. Tr. 107:9-109:16.]

13. "Opportunities" can be marked as "Lost." [*Id.*]

14. "Rejected Leads" are those who never made it to the opportunity stage and, among other things, were called ten times without being reached, said they are not interested, had an out-of-service telephone number for an extended period of time, or did not want to pay and/or use financial aid to attend Post. [*Id.*; Post Depo. Tr. 119:13-22.]

15. "Lost Opportunities" are those persons made it to the opportunity stage, but then gave PU some reason to believe they were no longer interested or able to attend, such as by going unresponsive, deciding not to move forward at that time, inability to pay, and family issues. [Post Depo. Tr. 109:6-16, 119:13-22]

16. On August 9, 2017 Plaintiff called PU to inquire about enrolling at PU. [Def.'s Response to Interrogatory No. 4.]

17. Plaintiff placed this telephone call from her telephone number ending in 4599. [Glapion Decl., Ex C (MD000887), Row 2; Ex. D (MD000907-910).]

18. Plaintiff's telephone number ending 4599 is and was at the time a cellular telephone number. [Glapion Decl., Ex. E (MD000009), Right Box; Davis Decl., ¶¶ 2-4.]

19. On August 13, 2017, Plaintiff wrote and sent an email to PU's employees Rita Francisco and Victoria Meehan stating, in part, she would no longer be able to move forward with attending PU. [Glapion Decl., Ex. F (MD000199-200), p. 2.]

20. At the time, Victoria Meehan's title at PU was "Assistant Director of Admissions." [Meehan Depo. Tr. 7:8-11.]

21. On August 16, 2017, PU marked Plaintiff's file as "Opportunity Lost" in its CRM system. [Glapion Decl., Ex. G (PU00000003); Def.'s Response to Interrogatory 10.]

22. On August 25, 2017, PU sent Plaintiff a text message to Plaintiff's 4599 number stating "Class starts next week for Post U's Online Degree Program! There's still time to get started: call 203-568-1652. TextSTOP2end". [Glapion Decl., Ex. H (PU00000028).]

23. On August 30, 2017, PU sent Plaintiff a text message to Plaintiff's 4599 number stating "Post University has not received your 2017/2018 FAFSA. You can access this financial aid application at fafsa.ed.gov (school code: 001401). Class begins this week, so if you need assistance, please call us at 203-568-1652." [Glapion Decl., Ex. C (MD000887), Rows 15-16, Ex. H (PU00000028).]

24. Plaintiff replied "STOP" to this August 30, 2017 text message. [Glapion Decl., Ex. C (MD000887), Row 17, Ex. H (PU00000028).]

25. On September 21, 2017, PU sent Plaintiff an email to gauge her interest in attending an upcoming class session. [Glapion Decl., Ex. I (PU00000062-64), p. 2.]

26. Plaintiff responded to this email by writing, in part, "[y]ou may close my file." [*Id.* at p. 1.]

27. On October 11, 2017, PU sent Plaintiff an email with the subject "Your FAFSA is Here!" and, in this email, invited Plaintiff to reply to "discuss [her] FAFSA and possibly get started in [Post's] October 23rd session." [Glapion Decl., Ex. J (MD000396-398), at MD000396.]

28. Plaintiff responded to this email by writing, in part, "[p]lease stop emailing, texting, sms, calls and voicemail!!! This is the third or fourth time I am asking to be removed from all of your lists!! Thank you!" [*Id.* at MD000397.]

29. PU considers this to be a do-not-call request. [Post Depo. Tr. 249:5-253:19.]

4

30. PU did not document a do-not-call request from Plaintiff on or around October 11, 2017. [*Id.*]

31. On October 18, 2017, PU called Plaintiff at her telephone number ending in 4599 and left a voicemail. [Glapion Decl., Ex. C (MD000887), Rows 17-19; Ex. D (MD000907-910), p. 2 ¶ 1; Ex. G (PU00000003), Row 2; Def.'s Response to Interrogatory 10.]

32. After that call, and on that same date, PU, through Victoria Meehan, sent Plaintiff an email with the subject line "It's Not Too Late *Please Reply*" and invited Plaintiff to reply to potentially get started in Post's October 23 class session. [Glapion Decl., Ex. K (MD000413-414).]

33. On November 8, 2017, PU emailed Plaintiff with the subject "New Year, New You-Classes now forming at Post University!" [Glapion Decl., Ex. L (MD000308-311).]

34. This email informed Plaintiff that Post University was registering students for classes beginning on January 8, 2018, provided some facts about Post University, invited Plaintiff to get started by completing her FAFSA, and encouraged her to not wait "another year to begin working on your dreams!" [*Id.*]

35. At the bottom of this email, it stated "[i]f you are no longer interested in completing your degree, please respond to this email and I will update our records." [*Id.* at MD000309.]

36. Plaintiff responded to this email by writing, in part, "I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind. I am no longer interested in applying to attend Post University. Please let this be the last communication regarding your school." [*Id.* at MD000310.]

37. PU considers this to be a do-not-call request. [Post Depo. Tr. 254:22-255:20.]

38. PU did not document a do-not-call request from Plaintiff on or around November 8, 2017. [Post Depo. Tr. 255:21-25.]

39. On December 7, 2017, PU emailed Plaintiff with the subject "New Year, New You, Don't Miss Out!" and which encouraged Plaintiff to enroll in classes beginning on January 8th. [Glapion Decl., Ex. M (MD000232-33).]

40. On January 4, 2018, PU, through Victoria Meehan, sent Plaintiff an email with the subject "Snowed In? We Can Help with Your FASFA[sic]!" [Glapion Decl., Ex. N (MD000247-248).]

41. This email offered to help Plaintiff complete her FAFSA, and stated "[c]ompleting your FAFSA is a very important step in the admissions process and we don't want you to miss out on classes that start on January 8, 2018." [*Id.*]

42. Plaintiff replied to this email by writing, in part, "Please stop contacting me! Not interested!!" [*Id.* at MD000248.]

43. PU considers this to be a do-not-call request. [Post Depo. Tr. 256:13-257:20.]

44. PU did not document a do-not-call request from Plaintiff on January 4, 2018. [Post Depo. Tr. 257:21-259:22.]

45. On January 11, 2018, PU called Plaintiff at her telephone number ending in 4599. [Glapion Decl., Ex. C (MD000887), Row 20; Ex. D (MD000907-910), p. 1; Ex. G (PU00000003), Row 1; Def.'s Response to Interrogatory 10.]

46. On this call, Plaintiff made a do-not-call request which PU documented in its CRM system. [Glapion Decl., Ex. G (PU00000003), Row 1; Def.'s Response to Interrogatory 10.]

47. On April 4, 2018, PU sent Plaintiff an email with the subject "Post University would love to reconnect with you!" [Glapion Decl., Ex. O (MD000121-23).]

6

48. This email stated, in part, "Post University would love to reconnect with you regarding starting online classes" and invited Plaintiff to reply if she was interested in getting started in classes on April 30, 2018. [*Id.*]

49. Plaintiff replied to this email by writing, in part, "[t]his is the 5th or 6th time I have asked Post representatives to stop contacting me. Please close my file!!! I will be forced to obtain legal action." [*Id.* at MD000123.]

50. On June 6, 2018, PU sent Plaintiff an email with a subject line of "Post U has not forgotten about you!" [Glapion Decl., Ex. P (MD000280-82).]

51. In this email, PU invited Plaintiff to reply to get started in the June 25, 2018 class session. [*Id.*]

52. Plaintiff replied to this email by writing, in part, "[p]lease stop emailing me! I'm not interested anymore! I have told everyone who has contacted me by phone and email!!!" [*Id.* at MD000282.]

53. On July 17, 2018, Plaintiff was sent a series of text messages at her telephone number ending in 4599. [Ex. C (MD000887), Rows 21-32; Ex. D (MD000907-910), p. 1, Ex. Q (MD000001-4).]

54. These text messages said, in part, "Are you still interested in earning a Bachelor's degree in Human Services?" and "We'd love to help you get back on track towards your educational career goals. Reply back to this text message to discuss enrollment options for Fall 2018." [Glapion Decl., Ex. Q (MD000001-4).]

55. These text messages were sent from 203-802-5819, which, at the time, belonged to PU employee Constance Reilly and was used in her capacity as an Admissions Counselor for PU. [Reilly Depo. Tr. 15:2-15:13; Def.'s Responses to Requests for Admission 48, 49.]

56. Plaintiff replied to these text messages by writing, in part, "do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment." [Glapion Decl., Ex. Q (MD000001-4), MD0000003.]

57. Plaintiff then asked for a copy of Post's do-not-call policy. [*Id.* at MD000003-4.]

58. Plaintiff subsequently called Defendant to ask for its written do-not-call policy. [Glapion Decl., Ex. C (MD000887), Row 33; Ex. R (PU00011779); Davis Decl., ¶ 26; Post Depo. Tr. 209:24-210:8.]

59. PU did not provide any such policy to Ms. Davis. [Davis Decl., ¶ 27; Post Depo. Tr. 209:24-210:8]

60. On September 7, 2018, PU emailed Plaintiff and invited her to submit her FAFSA to see what her award would be prior to enrolling in classes. [Glapion Decl., Ex. S (MD000509-510.]

61. PU makes telephone calls to "Leads" and "Opportunities" as part of its efforts to increase enrollment. [Post Depo. Tr. 101:25-102:8, 132:21-135:9.]

62. These calls are marketing. [Post Depo. Tr. 137:19-138:2.]

63. These calls are part of PU's sales process. [Post Depo. Tr. 141:16-142:2.]

64. One of the goals of calls to leads is to enroll that student at Post. [Post Depo. Tr. 153:13-23, 156:12-16.]

65. PU placed telephone calls to some "Rejected Leads" and "Lost Opportunities. [Post Depo. Tr. 288:16-18, 290:3-6.]

66. PU considered "Rejected Leads" and "Lost Opportunities" to be potential new enrollments. [Post Depo. Tr. 117:5-16.]

67. One of the purposes of all calls to "Rejected Leads" were to re-engage those persons. [Post Depo. Tr. 167:13-168:16; Markham Decl., ¶ 44; Shigo Decl., ¶ 50.]

68. One of the purposes of all calls to "Rejected Leads" was to see if they had any interest in enrolling at PU. [Post Depo. Tr. 167:13-168:16; Markham Decl., ¶ 44; Shigo Decl., ¶ 50.]

69. One of the purposes of all calls to "Rejected Leads" was to convert them into enrolled students. [Post Depo. Tr. 187:9-12, 207:4-10; Markham Decl., ¶ 44; Shigo Decl., ¶ 50.]

70. One of the purposes of all calls to "Rejected Leads" was to get them into the enrollment process outlined in PU0011106. [Glapion Decl., Ex. A (PU0011106); Post Depo. Tr. 3:23-25, 186:4-11, 204:10-15, 289:21-25.]

71. One of the purposes of at least 90 percent of calls to "Lost Opportunities" was to see if it was a better time for that person to move forward with their education with PU. [Post Depo. Tr. 164:23-165:16, 166:2-16, 192:13-193:4, 200:22-201:5; Meehan Depo. Tr. 85:9-13; Markham Decl., ¶ 44; Shigo Decl., ¶ 50.]

72. One of the purposes of at least 90 percent of calls to "Lost Opportunities" was to see if they had any interest in enrolling at PU. [Post Depo. Tr. 164:23-165:16, 209:1-16; Meehan Depo. Tr. 85:9-13; Markham Decl., ¶ 44; Shigo Decl., ¶ 50.]

73. Almost always, one of the purposes of the calls to "Lost Opportunities" was to get them into the enrollment process outlined in PU0011106. [Glapion Decl., Ex. A (PU0011106), Post Depo. Tr. 3:23-25, 165:21-166:16, 195:8-12, 200:22-201:5, 209:1-16; 290:7-11]

74. One of the purposes of at least 90 percent of calls to "Lost Opportunities" was to convert them into enrolled students. [Post Depo. Tr. 192:13-25, 209:1-16; Markham Decl., ¶ 44; Shigo Decl., ¶ 50.]

75. To the extent there were non-enrollment calls to "Lost Opportunities", they were outliers, were extremely infrequent, and were only made in "relatively … extreme and unique circumstances." [Post Depo. Tr. 193:25-194:6, 199:18-200:15.]

76. The sole trained reasons for calls to "Lost Opportunities" was to re-engage them and get them back into the enrollment process. [Post Depo. Tr. 194:7-195:25, 200:22-201:5.]

77. PU's witness Sean Cooley did not provide any specific example of non-enrollment a call to a "Lost Opportunity". [Post Depo. Tr. 196:1-199:15.]

78. Such "non-enrollment" calls are fairly characterized as "checkup" calls. [Post Depo. Tr. 157:4-158:1, 161:4-163:13, 193:25-194:6.]

79. All calls, texts, and emails PU sent to Plaintiff after August 16, 2017 were to gauge her interest in enrolling in upcoming class sessions and/or to encourage her to take steps to enroll. [*Supra*, ¶¶ 70-74; Davis Decl., ¶ 28; Glapion Decl. Ex. H (PU00000028), Ex. I (PU00000062-64), Ex. J (MD000396-398), Ex. K (MD000413-414), Ex. L (MD000308-311), Ex. M (MD000232-33), Ex. N (MD000247-248), Ex. O (MD000121-23), Ex. P (MD000280-282), Ex. Q (MD000001-4), Ex. S (MD000509-510).]

80. PU may not currently records of some of the emails discussed above, but PU's employees may have deleted these emails. [Post Depo. Tr. 271:10-273:14; Meehan Depo. Tr. 111:14-112:15, 113:12-21, 115:9-116:1, 117:7-25, 119:19-120:8.]

| | |
|---|---|
| **Dated:** July 19, 2019 | s/ Bradford R. Sohn_____ |
| | Bradford R. Sohn |
| | Fla. Bar. No. 98788 |
| | **THE BRAD SOHN LAW FIRM PLLC** |
| | 2600 South Douglas Rd, Suite 1007 |
| | Coral Gables, Florida 33134 |
| | Tel: 786.708.9750 |
| | Fax: 305.397.0650 |
| | brad@sohn.com |
| | |
| | s/ Jeremy M. Glapion_____ |
| | Jeremy M. Glapion |
| | **THE GLAPION LAW FIRM, LLC** |
| | 1704 Maxwell Drive |
| | Wall, New Jersey 07719 |
| | Tel: 732.455.9737 |
| | Fax: 732.709.5150 |
| | jmg@glapionlaw.com |
| | (*Pro Hac Vice*) |