

1704 Maxwell Drive
Wall, NJ 07719
P: 732.455.9737
F: 732.709.5150


Jeremy M. Glapion
Partner/Founder
jmg@glapionlaw.com

July 19, 2019

**Via ECF & USPS**

The Honorable Roy K. Altman
U.S. Federal Building and Courthouse
299 East Broward Boulevard
Chambers 207B
Fort Lauderdale, Florida 33301

Re:    **Plaintiff's Motion for Summary Judgment
Statement of Facts Exhibit Binder**

Dear Judge Altman:

The following "Statement of Facts Exhibit Binder" is intended to serve as an optional (but hopefully convenient) way for the Court to review Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment, which cites exclusively to Plaintiff's "Statement of Facts", which itself cites to the specific documents supporting Plaintiff's Motion.

In this binder, each statement in the statement of facts has its own cover page, followed by each exhibit cited thereunder. For example, Exhibit A and certain excerpts from Post's deposition transcript are relevant to paragraph 4, so those documents are attached under the "SOF ¶ 4, Supporting Exhibits" cover page. This also means several exhibits are attached multiple times throughout, including, at times, consecutively. For example, because Exhibit Q is cited in paragraphs 53 through 57, it is attached under the section for each paragraph (i.e. five times in a row). This was done so whenever the Court turns to a paragraph, the documents relevant to that exhibit are right there.

If the Court is reviewing this binder electronically, the Table of Contents is clickable, and clicking on a heading will go directly to that page in the PDF (though it is possible the ECF filing may have stripped this functionality).

A tabbed courtesy copy of this binder will follow.

If you have any questions or concerns, please do not hesitate to contact me. Thank you for your time and attention to this matter.

Sincerely,

Jeremy M. Glapion

## Table of Contents

**Letter** (1)

**SOF ¶ 1** (5)

**SOF ¶ 2** (8)

**SOF ¶ 3** (11)

**SOF ¶ 4** (17)

**SOF ¶ 5** (26)

**SOF ¶ 6** (48)

**SOF ¶ 7** (58)

**SOF ¶ 8** (62)

**SOF ¶ 9** (74)

**SOF ¶ 10** (78)

**SOF ¶ 11** (83)

**SOF ¶ 12** (87)

**SOF ¶ 13** (92)

**SOF ¶ 14** (97)

**SOF ¶ 15** (104)

**SOF ¶ 16** (109)

**SOF ¶ 17** (114)

**SOF ¶ 18** (122)

**SOF ¶ 19** (127)

**SOF ¶ 20** (131)

**SOF ¶ 21** (134)

**SOF ¶ 22** (142)

**SOF ¶ 23** (145)

**SOF ¶ 24** (150)

**SOF ¶ 25** (155)

**SOF ¶ 26** (160)

**SOF ¶ 27** (165)

**SOF ¶ 28** (170)

**SOF ¶ 29** (175)

**SOF ¶ 30** (182)

**SOF ¶ 31** (189)

**SOF ¶ 32** (204)

**SOF ¶ 33** (208)

**SOF ¶ 34** (214)

**SOF ¶ 35** (220)

**SOF ¶ 36** (226)

**SOF ¶ 37** (232)

**SOF ¶ 38** (236)

**SOF ¶ 39** (239)

**SOF ¶ 40** (243)

**SOF ¶ 41** (247)

**SOF ¶ 42** (251)

**SOF ¶ 43** (255)

**SOF ¶ 44** (259)

**SOF ¶ 45** (264)

**SOF ¶ 46** (279)

**SOF ¶ 47** (287)

**SOF ¶ 48** (292)

**SOF ¶ 49** (297)

**SOF ¶ 50** (302)

**SOF ¶ 51** (307)

**SOF ¶ 52** (312)

**SOF ¶ 53** (317)

**SOF ¶ 54** (330)

**SOF ¶ 55** (336)

**SOF ¶ 56** (342)

**SOF ¶ 57** (348)

**SOF ¶ 58** (354)

**SOF ¶ 59** (365)

**SOF ¶ 60** (372)

**SOF ¶ 61** (376)

**SOF ¶ 62** (385)

**SOF ¶ 63** (389)

**SOF ¶ 64** (393)

**SOF ¶ 65** (398)

**SOF ¶ 66** (403)

**SOF ¶ 67** (406)

**SOF ¶ 68** (416)

**SOF ¶ 69** (426)

**SOF ¶ 70** (437)

**SOF ¶ 71** (448)

**SOF ¶ 72** (468)

**SOF ¶ 73** (482)

**SOF ¶ 74** (499)

**SOF ¶ 75** (510)

**SOF ¶ 76** (517)

**SOF ¶ 77** (524)

**SOF ¶ 78** (530)

**SOF ¶ 79** (541)

**SOF ¶ 80** (585)

# SOF ¶ 1
# Supporting Exhibits

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3    -----------------------------)

 4    MELANIE DAVIS,               )    CASE NO.:

 5           Plaintiff,            )    18-81004-CIV

 6         vs.                     )

 7    POST UNIVERSITY, INC.,       )

 8           Defendant.            )

 9    -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25
```

Page 41

1    exceed expectations?

2         A.    No.

3         Q.    You can set these aside now.  We are done

4    with those.

5               Is Post University a for-profit university

6    or nonprofit?

7         A.    For profit.

8         Q.    What does that mean for Post to be a

9    for-profit university?

10        A.    It means that we need to hold ourselves to

11   a higher standard.

12        Q.    Are you saying nonprofit universities

13   don't hold themselves to a higher standard?

14        A.    No.

15        Q.    Are you saying that Post has to hold

16   itself to a higher standard than, say, Harvard?

17        A.    In some ways, I believe so.

18        Q.    Does it also mean that the business side

19   of Post is -- excuse me, the business motivations at

20   Post are different than a nonprofit?

21        A.    I don't feel that way.

22        Q.    I'm not asking what you feel at this time.

23   I'm asking, does Post's business model as a

24   for-profit university differ from a nonprofit

25   university?

# SOF ¶ 2
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )    CASE NO.:

5            Plaintiff,            )    18-81004-CIV

6        vs.                       )

7    POST UNIVERSITY, INC.,        )

8            Defendant.            )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16            WYNDHAM SOUTHBURY

17            1284 Strongtown Road

18            Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1    an educational service?

2        A.    Yes.

3        Q.    Does Post currently generate revenue?

4        A.    Yes.

5        Q.    What are its primary sources of revenue

6    generation?

7        A.    Title IV funding.  That's --

8        Q.    Are -- I apologize, continue.

9        A.    That's federal aid.  Tuition assistance,

10   GI Bill.

11       Q.    Are those what you would consider to be

12   the big -- so essentially tuition would be Post's

13   largest source of revenue; is that fair?

14       A.    Cash as well.

15       Q.    Cash.  So these sources of revenue all

16   essentially relate to the payment of tuition and

17   fees to Post; correct?

18       A.    Correct.

19       Q.    And when a student pays tuition to Post,

20   they might get federal aid; correct?

21              MR. BOWSER:  Objection to form,

22   foundation.

23       Q.    You can answer that question.

24       A.    Can you repeat it, please.

25       Q.    When a student pays tuition to Post, they

# SOF ¶ 3
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )   CASE NO.:

5          Plaintiff,              )   18-81004-CIV

6        vs.                       )

7    POST UNIVERSITY, INC.,        )

8            Defendant.            )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1    may get federal aid for that, to help with that

2    tuition?

3         A.    Yes.

4         Q.    And they may get tuition assistance to

5    help pay for that tuition; correct?

6         A.    They may, yes.

7         Q.    And they may get help through the GI Bill;

8    correct?

9         A.    They may, yes.

10        Q.    Or they may just pay cash; correct?

11        A.    Correct.

12        Q.    And students do pay tuition to Post;

13   correct?  Excuse me, enrolling students and enrolled

14   students continue to pay?

15        A.    If you are a student at Post University

16   taking classes, you pay tuition, yes.

17        Q.    And when a student pays tuition to Post,

18   they are essentially paying for Post's educational

19   services; correct?

20        A.    Correct.

21        Q.    And compared to another transaction, a

22   student is essentially purchasing educational

23   services from Post; is that accurate?

24        A.    They are purchasing an experience.

25   Education is delivered throughout that experience.

Page 47

1      Q.      But they are purchasing something, and

2    whether it be an experience or we call it an

3    educational service, they are purchasing something

4    from Post; correct?

5      A.      Correct.

6      Q.      Under its current business model, could

7    Post stay in business without new students

8    continuing to enroll?

9      A.      I can't say for certain.

10     Q.      If no students enrolled at Post anymore,

11   could Post stay in business with its current

12   business model?

13     A.      I don't believe so.

14     Q.      And could Post stay in business without

15   students continuing to purchase education services

16   from Post?

17     A.      No.

18     Q.      And so it's necessary then that for Post

19   to stay in business that students continue to pay

20   Post, whether with financial aid or otherwise;

21   correct?

22     A.      Correct.

23     Q.      Is Post profitable?

24     A.      Yes.

25     Q.      Do you know what Post's revenue was last

Page 287

1    education services provided by Post?

2         A.    Yes.

3         Q.    So these education services are offered by

4    Post; correct?

5         A.    Yes.

6         Q.    And they are offered for a fee; correct?

7         A.    The tuition is the fee.

8         Q.    Correct.   And so the tuition is payment

9    for the education services; is that correct?

10        A.    Correct.

11        Q.    So these are prospective students who

12   become enrolled students bought education services;

13   is that correct?

14        A.    Yes.

15        Q.    And those education services were offered

16   to those students by Post; is that correct?

17        A.    Yes.

18        Q.    And as part of this process shown on 16,

19   and as part of the enrollment process -- well, we

20   will take it piece by piece.

21              As part of this process shown on 16, Post

22   makes outbound telephone calls; is that correct?

23        A.    It depends, but yes.

24        Q.    We discussed before that the primary

25   source of outreach was telephone calls; is that

# SOF ¶ 4
# Supporting Exhibits

# EXHIBIT A



**New Lead Arrives**

**Status: Qualifying**

10 attempts are made to contact lead

Lead is not contacted or is contacted but is not qualified/interested

**Status: Rejected**

Contact made

Interest confirmed

Lead is Converted

Lead becomes an Opportunity

**Sales Category: Qualify**

**Sales Stage: Interviewing**

Interview Opportunity Assessment

**Sales Category: Qualify**

**Sales Stage: Qualified**

Send Application

**Sales Category: Documents**

Manually Change **Sales Stage: Application Sent**

*Possible Sales Stage at any time: Request Transfer Eval

**Sales Category: Documents**

**Sales Stage: Financial Plan Determined**

FAFSA arrives but FAA needs more info need to ATP

Receive Application
**Sales Category: Documents**
Create plan to receive FAFSA
Write and send Recommendation

All info comes in and Student is ATP'd

FAFSA arrives, all docs in. Student is ATP'd

FAFSA arrives, is not able to be ATP'd

FAFSA does not arrive

**Sales Category: Enroll**

**Sales Stage: Ready to Enroll**

Student does Not Participate

**Manually Change Sales Stage Action to Closed/Lost**

**Sales Category: Lost**

**Sales Category: Register**

**Sales Stage: Student Package Created**

Register Student

**Sales Category: Attend**

**Sales Stage: Anticipating Orientation**

Student Participates

**Sales Category: Attend**

**Sales Stage: Closed/Won**

PU00011106

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3     -----------------------------)

4     MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,           )    18-81004-CIV

6         vs.                       )

7     POST UNIVERSITY, INC.,        )

8              Defendant.           )

9     -----------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 82

1      student to enroll at Post or a prospective student?

2          A.    Yes, a system funnel.

3          Q.    What do you mean by "system funnel"?

4          A.    These are the different system stages and

5      categories to get from prospective student to start.

6          Q.    And when you say "system," are you talking

7      the CRM system?

8          A.    Yes.

9          Q.    So these are different tags, if you will,

10     of the various stages throughout that system;

11     correct?

12         A.    Yes.

13         Q.    But this outlines the process from a new

14     lead arriving to finally being a participating and

15     attending student; correct?

16         A.    Correct.

17         Q.    And this, as you testified to a moment

18     ago, outlines the enrollment process.

19              Want some water?

20         A.    Yeah, if you don't mind.  Thank you.

21                        (Pause.)

22     BY MR. GLAPION:

23         Q.    So this document, as you testified a

24     moment ago, outlines the enrollment process?

25         A.    Yes.

Page 83

1      Q.    And this is the process that every

2   prospective student must follow; correct?

3      A.    Yes.

4      Q.    And this is the process for purchasing

5   educational services from Post; correct?

6      A.    Repeat the question.

7      Q.    And this is the process for purchasing

8   education services from Post; correct?

9      A.    Yes.

10      Q.    So anyone who purchases education services

11   from Post has to go through each of these steps;

12   correct?

13              MR. BOWSER:   Objection, compound.

14      Q.    You can answer.

15      A.    It depends.

16      Q.    You said a moment ago, and maybe my

17   interpretation --

18      A.    I'm looking at this.  This speaks to the

19   undergrad population.  It doesn't seem to -- there

20   is different steps for military students.  A lot of

21   them don't require a FAFSA, so this is more of an

22   overview of the common, the majority population.

23      Q.    So we will focus there and then we will

24   narrow it down a little bit.  So the majority of the

25   population that this deals with, this is how the

1    they could pay; correct?

2        A.    Correct.

3        Q.    Is this document an accurate reflection of

4    the enrollment process between July 30th, 2014 and

5    July 30th, 2018?

6        A.    No.

7        Q.    Can you elaborate on that?

8        A.    I'm not sure when the cutoff was, but we

9    referenced ITE before, and we moved away from that,

10   and that's not reflected in this document.

11       Q.    So where in this would ITE fall?  Would it

12   be between the green and the yellow, after the

13   yellow, etcetera, approximately?

14       A.    It would live with the -- in the

15   application area.

16       Q.    So it would be once you are already --

17       A.    An interview had been conducted.

18       Q.    So you are not a lead anymore; it's after

19   being a lead?

20       A.    Correct.

21       Q.    So you are in the blue pretty much?

22       A.    ITE, when it was in circulation, captured

23   the pipeline.

24       Q.    I understand.  Does this --

25       A.    Which in this document application would.

Page 86

1      Q.    Do you remember when ITE became

2   application?

3      A.    There was always an application.  There

4   was just an ITE as well.

5      Q.    Do you remember when the ITE stopped being

6   used?

7      A.    I can't say for certain.

8      Q.    Do you remember a year?

9      A.    2015 or '16.  In-between that time frame

10  would be my best guess.

11     Q.    Why don't we go back to -- and I dread it,

12  but I want to go back to the discussion of the sales

13  categories and sales stages.

14         Who came up with -- who determined to call

15  them sales categories?

16     A.    I don't know.

17     Q.    Who determined to call them sale stages?

18     A.    I don't know.  That is how the system was

19  always -- it was always designed that way; it was

20  always there from when I began using it.

21     Q.    So it was difficult, but we established

22  that Post sells education services to students;

23  correct?

24     A.    Yes.

25     Q.    And we also established that this is the

# SOF ¶ 5
# Supporting Exhibits

# EXHIBIT A



PU00011106

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3   ------------------------------)

 4   MELANIE DAVIS,                )   CASE NO.:

 5           Plaintiff,            )   18-81004-CIV

 6       vs.                       )

 7   POST UNIVERSITY, INC.,        )

 8           Defendant.            )

 9   ------------------------------)

10

11

12       DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16             WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25
```

1    When a student moved further down the funnel, they

2    systemically could be in a pipeline, but they were

3    referred to in different categories, registered,

4    ability to pay.

5         Q.    It's a different category, you said;

6    correct?

7         A.    Correct.

8         Q.    But are those categories within the

9    prospective student pipeline, we'll call it?

10        A.    Those categories live within the

11   opportunity file.

12        Q.    So when -- actually, we will make this

13   easier.

14             Let's look at -- I've got to give it to

15   you.

16             MR. GLAPION:   Can we mark this as

17   Exhibit 16 once I find it?

18                  THE REPORTER:   Sure.

19                  (Exhibit 16, Document bearing

20                  Bates Number PU00011106, marked for

21                  identification.)

22   BY MR. GLAPION:

23        Q.    Have you seen this document before?

24        A.    I believe so.

25        Q.    Did you review this document in

Page 71

1    preparation for this deposition?

2         A.    I can't be certain.

3         Q.    Take a moment to look over this document,

4    get familiar with it.  Let me know when you've had a

5    chance to or when you have an understanding of what

6    the document is.

7         A.    I have an understanding of what it is.

8         Q.    Does this document capture what we've been

9    calling the pipeline?

10        A.    It captures part.  It captures a lot more

11   than that.

12        Q.    The term "pipeline" does you mean or the

13   document does?

14        A.    This document.

15        Q.    Which parts of this document are not

16   considered to be part of the pipeline, or which

17   categories of this document?

18        A.    Anything that says Lead.

19        Q.    So the green?

20        A.    Green.  I'm just reviewing to see when it

21   becomes a pipeline, so just give me a moment.

22              Right in the middle of the page where it

23   says Receive Application, Sales Category:

24   Documents, at that point it becomes a pipeline.

25        Q.    So if this doesn't depict the pipeline,

1    what does this depict?

2         A.    If what doesn't depict the pipeline?

3         Q.    If this document depicts more than what

4    you are describing as the pipeline, then what is

5    this document depicting?

6         A.    It depicts the operational journey from

7    inquiry to participation.

8         Q.    So the enrollment process?

9         A.    The enrollment process.

10        Q.    Throughout it mentions categories and

11   stages.

12              Do you see that?

13        A.    Yes.

14        Q.    So under the first blue box, it says Sales

15   Category:  Qualify.

16              Do you see that?

17        A.    Yes.

18        Q.    And Sales Stage:  Interviewing.

19              Do you see that?

20        A.    Yes.

21        Q.    And all throughout this, from the first

22   blue box to the last yellow box, they are divided

23   into Sales Category and Sales Stage; correct?

24        A.    Correct.

25        Q.    So the last stage is the Sales Stage:

1    sale could be a discount at Best Buy; correct?

2        A.    Correct.

3        Q.    And that's not what is being used in here;

4    correct?

5        A.    Correct.

6        Q.    What is another definition of sales that

7    may fit into this document?

8        A.    Selling a product.

9        Q.    Or in Post's case a service; correct?

10       A.    Correct.

11       Q.    And we've established earlier that

12   students purchase a service, educational services

13   from Post; correct?

14       A.    Yes.

15       Q.    And the corollary of that is that Post

16   sells educational services to students; correct?

17       A.    Post provides education.

18       Q.    For free?

19       A.    They provide a service, they provide

20   education, and that has a monetary fee to it.

21       Q.    Is there a difference between what you

22   just said and what I said when I said that Post

23   sells educational services to students?

24       A.    I don't know.

25       Q.    You rephrased it and used a phrase much

1   more complex than Post sells educational services to

2   students, so I'm presuming it has a meaning given

3   your self-evaluation of how good you are with your

4   oral presentation, so I am curious about what the

5   difference is in what you said versus what I said.

6               MR. BOWSER:   Objection to form.

7        Q.    You can answer.

8        A.    I believe you had a negative undertone to

9   it.

10       Q.    The tone of my voice or the phrase?

11       A.    Right.

12       Q.    I'm not sure.  Let me ask you directly

13  again:  Does Post sell educational services to

14  students?

15              MR. BOWSER:   Objection, compound.

16       Q.    Or excuse me.  Does Post sell educational

17  services to prospective students?

18       A.    Post provides education; they provide a

19  service.  That service costs money.

20       Q.    When you provide a service for a fee, is

21  that called selling something?

22       A.    Yes.

23       Q.    So when you say that Post provides

24  education; they provide a service and that service

25  costs money, what you are saying is that Post sells

Page 80

1   education services; correct?

2       A.    I am saying that Post provides education

3   to students that are interested in moving forward

4   with their education.

5       Q.    For a fee?

6       A.    For a fee.

7       Q.    Tell me which part of the sentence Post

8   sells education services to students you disagree

9   with.

10      A.    I don't feel like that is what we do on a

11  day-to-day.

12      Q.    This is your testimony on behalf of Post,

13  not your subjective feelings.

14            What -- well, it is.  I apologize.  I

15  asked for which part of the sentence Post sells

16  education services to students that you disagree

17  with.  So which part of that sentence -- I'm not

18  talking about my tone; I'm not talking about

19  undercurrents or subjectively.  I'm asking for what

20  part of that sentence do you disagree with.

21      A.    Sells.

22      Q.    So what is the difference between selling

23  educational services and providing educational

24  services for a fee?

25      A.    I guess -- I guess there isn't.

Page 81

1    Q.    So then it's fair to say, with your

2  disagreement as to the phrasing noted, but with

3  having established the synonyms that Post sells

4  education services to students?

5    A.    Yes.

6    Q.    And at what point does Post stop selling

7  educational services to prospective students in

8  terms of looking at this 11106 pipeline; at what

9  point does that sales process stop?

10    A.    When they are no longer a student.

11    Q.    So the last category says Sales Category:

12  Attend, Sales Stage: Closed/Won, so there seems to

13  be -- is there a transition there from, now that

14  they are attending, there is a different sort of

15  pipeline and flowchart of how those students are

16  dealt with?

17    A.    Yes.  This is an admissions document.

18    Q.    So this only deals with prospective

19  students?

20    A.    Correct.

21    Q.    And when Post is dealing with the

22  prospective student, this document outlines the

23  process for that student to enroll in Post; correct?

24    A.    Yes.  These are system processes.

25    Q.    Correct.  This is the process for a

Page 82

1    student to enroll at Post or a prospective student?

2         A.    Yes, a system funnel.

3         Q.    What do you mean by "system funnel"?

4         A.    These are the different system stages and

5    categories to get from prospective student to start.

6         Q.    And when you say "system," are you talking

7    the CRM system?

8         A.    Yes.

9         Q.    So these are different tags, if you will,

10   of the various stages throughout that system;

11   correct?

12        A.    Yes.

13        Q.    But this outlines the process from a new

14   lead arriving to finally being a participating and

15   attending student; correct?

16        A.    Correct.

17        Q.    And this, as you testified to a moment

18   ago, outlines the enrollment process.

19              Want some water?

20        A.    Yeah, if you don't mind.  Thank you.

21                   (Pause.)

22   BY MR. GLAPION:

23        Q.    So this document, as you testified a

24   moment ago, outlines the enrollment process?

25        A.    Yes.

Page 83

1     Q.    And this is the process that every

2  prospective student must follow; correct?

3     A.    Yes.

4     Q.    And this is the process for purchasing

5  educational services from Post; correct?

6     A.    Repeat the question.

7     Q.    And this is the process for purchasing

8  education services from Post; correct?

9     A.    Yes.

10    Q.    So anyone who purchases education services

11 from Post has to go through each of these steps;

12 correct?

13              MR. BOWSER:   Objection, compound.

14    Q.    You can answer.

15    A.    It depends.

16    Q.    You said a moment ago, and maybe my

17 interpretation --

18    A.    I'm looking at this.  This speaks to the

19 undergrad population.  It doesn't seem to -- there

20 is different steps for military students.  A lot of

21 them don't require a FAFSA, so this is more of an

22 overview of the common, the majority population.

23    Q.    So we will focus there and then we will

24 narrow it down a little bit.  So the majority of the

25 population that this deals with, this is how the

Page 84

1   majority of the population purchases education

2   services from Post; correct?

3       A.    This is how they go through to the funnel

4   to go from the lead stage to beginning with us,

5   starting with us, classes with us, yes.

6       Q.    I don't want to go through this debate

7   over meanings again.  Is there a difference between

8   going from the lead stage to beginning with us and

9   purchasing education services from Post?

10      A.    No.

11      Q.    And you said that other populations may

12  not have to deal with all of these steps.  For

13  example, you said military may not need the FAFSA;

14  correct?

15      A.    Correct.

16      Q.    So after Receive Application, the various

17  FAFSA arrows coming off of that would be different.

18  They would be GI bills, something like that;

19  correct?

20      A.    A lot of these would be the same.  There

21  would be slight deviations based on population.

22      Q.    It's generally very similar; correct?

23      A.    Correct.

24      Q.    And conceptually it's similar in terms of

25  you get the application and then you determine if

Page 86

1      Q.    Do you remember when ITE became
2    application?
3      A.    There was always an application.  There
4    was just an ITE as well.
5      Q.    Do you remember when the ITE stopped being
6    used?
7      A.    I can't say for certain.
8      Q.    Do you remember a year?
9      A.    2015 or '16.  In-between that time frame
10   would be my best guess.
11     Q.    Why don't we go back to -- and I dread it,
12   but I want to go back to the discussion of the sales
13   categories and sales stages.
14           Who came up with -- who determined to call
15   them sales categories?
16     A.    I don't know.
17     Q.    Who determined to call them sale stages?
18     A.    I don't know.  That is how the system was
19   always -- it was always designed that way; it was
20   always there from when I began using it.
21     Q.    So it was difficult, but we established
22   that Post sells education services to students;
23   correct?
24     A.    Yes.
25     Q.    And we also established that this is the

Page 87

1    enrollment process; correct?

2         A.    Yes.

3         Q.    Is it fair to characterize this as the

4    sales process as well?

5         A.    I don't believe so.

6         Q.    So at Post, is there another process by

7    which --

8         A.    This is the enrollment process; that's

9    what this is.

10        Q.    So everything Post does with respect to

11   selling education services to students is

12   encapsulated in this document for the majority of

13   the population?

14        A.    Repeat the question, I apologize.

15        Q.    So the steps Post takes to sell

16   educational services to students is captured in this

17   document; correct?  For the majority of the

18   population; correct?

19        A.    Yes.

20        Q.    So if Post sells education services to

21   students, this is that process by which they sell

22   those education services; correct?

23        A.    That's semantics, but yes.

24        Q.    So then is it fair to say this is the

25   sales process for the majority of prospective

1    students?

2         A.    I see this and I see the enrollment

3    process from lead to start.

4         Q.    But someone at Post saw it as involving

5    sales; can we agree on that?

6         A.    Yes.

7         Q.    And you have no understanding of who

8    drafted this document?

9         A.    I don't know who drafted it.  I can say

10   with -- I'm pretty confident it's someone in the

11   admissions department, since this is the enrollment

12   process for the admissions team.

13        Q.    What is a KPI?  Have you heard the term

14   "KPI"?

15        A.    I have.

16        Q.    What is a KPI?  What does the acronym

17   stand for?

18        A.    Key performance indicator.

19        Q.    We are going to be referring back to 11106

20   quite a bit so don't let it go too far.

21              MR. GLAPION:  Can you please mark

22   this as Exhibit 17 I believe and hand it to the

23   witness.

24              (Exhibit 17, Post University - End

25              of MOD Assessment, Bates Numbers PU

1   without a seller of something, of a product?

2        A.    Can you have a buyer --

3        Q.    Sure.  It might some like unreal, but I'm

4   curious.  If someone buys something, can you buy

5   something without there being a seller?

6        A.    No, by definition.

7        Q.    Okay.  So we've established then that this

8   process is the process by which a prospective

9   student purchases education services from Post;

10  correct?

11                  MR. BOWSER:  Objection, compound.

12       Q.    Is that correct?

13       A.    That's subjective, but yes.

14       Q.    It's a simple yes or no question.  Is this

15  the process by which the majority of the population

16  purchases education services from Post?

17       A.    It depends.

18       Q.    What does it depend on?  We said the

19  majority of the population.  I restricted this to

20  the majority of the population.  I'm not talking

21  about the GI Bill; I'm talking about the majority of

22  the population.

23                  Is it encapsulated on that document the

24  process by which they purchase education services

25  from Post?

Page 152

1      A.      Yes.

2      Q.      So by corollary, this is also the process

3   by which Post sells to the majority of the

4   population?

5      A.      Yes.

6      Q.      So then this, as much as you hate the

7   term, is the sales process?

8      A.      That's your definition, but yes.

9      Q.      Does Post enroll students without speaking

10  to them first?  When I say "speaking," I include

11  email in that.

12     A.      No.

13     Q.      And Post speaks with students via

14  telephone, text message and email, we established;

15  correct?

16     A.      Correct.

17     Q.      And Post on those calls with prospective

18  students provides information about Post; correct?

19     A.      Correct.

20     Q.      And we've established that providing

21  information has a marketing aspect to it; correct?

22              MR. BOWSER:  Objection, compound.

23     Q.      This was your testimony, that's not me

24  making it up.

25     A.      That depends.  I think that providing

# SOF ¶ 6
# Supporting Exhibits

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3    -----------------------------)

 4    MELANIE DAVIS,               )    CASE NO.:

 5             Plaintiff,          )    18-81004-CIV

 6        vs.                      )

 7    POST UNIVERSITY, INC.,       )

 8             Defendant.          )

 9    -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17             1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25
```

```
 1        Q.    And this is the process that every
 2   prospective student must follow; correct?
 3        A.    Yes.
 4        Q.    And this is the process for purchasing
 5   educational services from Post; correct?
 6        A.    Repeat the question.
 7        Q.    And this is the process for purchasing
 8   education services from Post; correct?
 9        A.    Yes.
10        Q.    So anyone who purchases education services
11   from Post has to go through each of these steps;
12   correct?
13                  MR. BOWSER:   Objection, compound.
14        Q.    You can answer.
15        A.    It depends.
16        Q.    You said a moment ago, and maybe my
17   interpretation --
18        A.    I'm looking at this.  This speaks to the
19   undergrad population.  It doesn't seem to -- there
20   is different steps for military students.  A lot of
21   them don't require a FAFSA, so this is more of an
22   overview of the common, the majority population.
23        Q.    So we will focus there and then we will
24   narrow it down a little bit.  So the majority of the
25   population that this deals with, this is how the
```

Page 84

1   majority of the population purchases education

2   services from Post; correct?

3        A.    This is how they go through to the funnel

4   to go from the lead stage to beginning with us,

5   starting with us, classes with us, yes.

6        Q.    I don't want to go through this debate

7   over meanings again.  Is there a difference between

8   going from the lead stage to beginning with us and

9   purchasing education services from Post?

10       A.    No.

11       Q.    And you said that other populations may

12   not have to deal with all of these steps.  For

13   example, you said military may not need the FAFSA;

14   correct?

15       A.    Correct.

16       Q.    So after Receive Application, the various

17   FAFSA arrows coming off of that would be different.

18   They would be GI bills, something like that;

19   correct?

20       A.    A lot of these would be the same.  There

21   would be slight deviations based on population.

22       Q.    It's generally very similar; correct?

23       A.    Correct.

24       Q.    And conceptually it's similar in terms of

25   you get the application and then you determine if

1    they could pay; correct?

2        A.    Correct.

3        Q.    Is this document an accurate reflection of

4    the enrollment process between July 30th, 2014 and

5    July 30th, 2018?

6        A.    No.

7        Q.    Can you elaborate on that?

8        A.    I'm not sure when the cutoff was, but we

9    referenced ITE before, and we moved away from that,

10   and that's not reflected in this document.

11       Q.    So where in this would ITE fall?  Would it

12   be between the green and the yellow, after the

13   yellow, etcetera, approximately?

14       A.    It would live with the -- in the

15   application area.

16       Q.    So it would be once you are already --

17       A.    An interview had been conducted.

18       Q.    So you are not a lead anymore; it's after

19   being a lead?

20       A.    Correct.

21       Q.    So you are in the blue pretty much?

22       A.    ITE, when it was in circulation, captured

23   the pipeline.

24       Q.    I understand.  Does this --

25       A.    Which in this document application would.

```
 1   still considers them to be a lost opportunity;

 2   correct?

 3       A.   Correct.

 4            MR. GLAPION:  I'm going to just tidy

 5   up one last section.  A lot of it was presumably

 6   asked and answered, just sort of spread all over the

 7   place.  So I'll give you a standing

 8   asked-and-answered objection to save your voice and

 9   save you from doing it.

10            MR. BOWSER:  Is this about sales?

11            MR. GLAPION:  It's about sales, I'm

12   sorry.  I'm sorry, I have to do it.

13   BY MR. GLAPION:

14       Q.   Okay.  So just follow this with me and

15   I'll try to break it down in a way that's relatively

16   agreeable.  I know it took a little while.

17            So prospective students, one way or

18   another, reach out to Post; correct?

19       A.   Correct.

20       Q.   And at that point, they become leads?

21       A.   Correct.

22       Q.   And those leads by going through the

23   process in --

24       A.   16.

25       Q.   -- in 16, ultimately that's the process
```

Page 280

1   they follow to enroll at Post; correct?

2        A.    Correct.

3        Q.    And that's for the majority of

4   students with --

5        A.    The majority of the undergraduate

6   population.

7        Q.    The difference is primarily relating to

8   how the prospective student is ATP'd; correct?

9        A.    Yeah, how the student --

10       Q.    Pays.

11       A.    -- provides their method of payment.

12   Sometimes the student doesn't pay at all.  Sometimes

13   the GI Bill or tuition assistance will cover all of

14   the tuition.  We have a senior discount where a Pell

15   Grant -- which is part of the tuition assistance,

16   part of Title IV funding, federal student aid.

17   People are eligible for grant money, and sometimes

18   that grant money, especially with our senior

19   discount, it will cover the entirety of the

20   student's tuition, so there are no fees for them, so

21   they are not paying anything.

22       Q.    So the main difference for the majority

23   population and other various populations of

24   prospective students relates to how they are

25   ultimately going to afford their education?

Page 281

1       A.      Excuse me?

2       Q.      The main difference from what you see in

3    Exhibit 16, which you said is the majority

4    population, to other populations, primarily relates

5    to how they are going to pay?

6       A.      Right.

7       Q.      And I recognize your --

8               MR. BOWSER:   Object to the form.

9       Q.      -- testimony that they may not pay;

10   correct?  Because -- is that correct?

11      A.      Right.

12      Q.      Because a third party such as the

13   government may pay for them; correct?

14      A.      So to actually circle back to your

15   question, can you have a buyer without a seller, in

16   those situations, you almost can.

17      Q.      That's such a minor side quest at this

18   point.  Come on, let's keep this flowing; we're

19   almost done.

20              This is the process, though, for the

21   majority of students and generally for all

22   prospective students on how they would enroll at

23   Post?

24      A.      For the majority of the population, that's

25   the enrollment process that they go through.

Page 282

1    Q.    And the enrollment process, and this is

2    what I was just trying to establish, the enrollment

3    process difference with respect to say military, the

4    difference comes into play in terms of how they pay?

5    A.    The primary difference would be the method

6    of payment.

7    Q.    And this process to enroll at Post, when a

8    prospective student follows this process and enrolls

9    at Post, Post generates revenue from that; correct?

10    A.    It depends.

11    Q.    What does that depend on?

12    A.    If a student begins classes and

13    participates and decides during that first week that

14    this is not something that they are wanting to do,

15    we don't charge them for the class.  We give them

16    that opportunity.  We give them that grace period.

17    Q.    Would they be moved into the closed/won

18    state of Exhibit 16?

19    A.    If they participated, they would be moved

20    into closed/won, but there is other identifiers that

21    would help back them out of that systemically.

22    Q.    But this is the process if a person is

23    going to buy or, excuse me, enroll at Post

24    University, for the majority of the population, this

25    is the process that's followed?

# SOF ¶ 7
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------)

4     MELANIE DAVIS,                 )   CASE NO.:

5             Plaintiff,             )   18-81004-CIV

6         vs.                        )

7     POST UNIVERSITY, INC.,         )

8             Defendant.             )

9     ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                 HELD AT:

16             WYNDHAM SOUTHBURY

17             1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 128

```
 1        A.    Yes.
 2        Q.    The same way, you would change the --
 3   essentially a toggle would it be?
 4        A.    There is a couple of additional steps, but
 5   it follows the same logic.
 6        Q.    And you said closed and lost are the same
 7   thing, so I won't carry it down further.
 8              MR. GLAPION:  Do you want to go off
 9   the record for a minute, please.
10     (Recess taken from 11:38 a.m. to 11:49 a.m.)
11   BY MR. GLAPION:
12        Q.    Before I asked, and I don't recall your
13   answer and I couldn't find it in the realtime, so
14   I'll ask again, are closed opportunities considered
15   part of the pipeline that we discussed previously?
16        A.    No.
17        Q.    And rejected leads, if I recall, you said
18   are not part of that pipeline because they were
19   never in that pipeline; correct?
20        A.    Correct.
21        Q.    And we've established that Post makes
22   outbound telephone calls to prospective students;
23   correct?
24        A.    Yes.
25        Q.    And which employee groups are primarily
```

1    responsible for making those telephone calls?

2        A.    To prospective students?

3        Q.    Yes.

4        A.    Admissions.

5        Q.    So that would be admissions counselors;

6    correct?

7        A.    Correct.

8        Q.    And team leads; correct?

9        A.    It depends.

10        Q.    But team leads could and would on occasion

11    pitch in to make calls; correct?

12        A.    Correct.

13        Q.    Would assistant directors of admissions?

14        A.    Yes.

15        Q.    When I say "telephone calls," unless I

16    break it out, for convenience, I'm referring to both

17    calls and text messages, so if I say "does Post make

18    telephone calls" and it doesn't include texts, if

19    you could just let me know on that.  But in this

20    scenario they do make text messages; correct?

21        A.    Correct.

22        Q.    Would you consider outbound telephone

23    calls to be the main outreach to prospective

24    students?

25        A.    It depends.

# SOF ¶ 8
# Supporting Exhibits

# EXHIBIT B

Associate Name: _____          Today's Date: _____

Supervisor Name: _____          Next Review: _____

## Post University – End of Mod Assessment

| Key Performance Indicators | Behaviors | Behavioral Benchmark | Actual |
|---|---|---|---|
| Lead-to-PCAS | Lead Management | 12% | |
| PCAS-to-APP | Interview Acumen | 60% | |
| APP-to-FAFSA | Collaboration/Outreach | 70% | |
| FAFSA-to-ATP | Collaboration/Outreach | 80% | |
| ATP-to-START | Stitch-In/Follow-Up | 80% | |
| START-to-Persistence | Student Support/Connections | 75% | |

### Professional Goals/Motivations
In reviewing the Mid Mod Assessment, did I meet or exceed my professional goals? Why or why not?

### Talents/Strengths to Maximize
In reviewing the Mid Mod Assessment, did you maximize your talents and strengths? How?

### Development Opportunities
In reviewing the Mid Mod Assessment, did you improve on the Key Performance Indicators that you identified?

### Individual Development Plan/Action Items
How will I build upon this past Mod's results to start off this Mod strong?

Associate Signature: _____          Supervisor Signature: _____

Today's Date: _____          Today's Date: _____

PU00000038

Associate Name: _____          Today's Date: _____

Supervisor Name: _____          Next Review: _____

### Post University – End of Mod Assessment

### Non-Negotiable Behaviors

| Non-Negotiable Behaviors | Meets Expectations | Needs Development | Notes |
|---|---|---|---|
| Make it an Extraordinary Experience | | | |
| Authentic… Keep It Real | | | |
| KISS (Keep It Simple) | | | |
| Explain "Why" Seek 1st to Understand, then to be understood | | | |
| Integrity | | | |
| Trust | | | |
| Professionalism | | | |
| Every Student Matters | | | |
| Respectful | | | |
| Straight Talk/Be Transparent | | | |
| Own the Moment | | | |
| No Victims/Hierarchy/Heroes | | | |
| Accountable | | | |
| Lead through Innovation | | | |

PU00000039

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    -----------------------------)

4    MELANIE DAVIS,                )   CASE NO.:

5            Plaintiff,            )   18-81004-CIV

6        vs.                       )

7    POST UNIVERSITY, INC.,        )

8            Defendant.            )

9    -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14               DATE:  APRIL 11, 2019

15                    HELD AT:

16               WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1   students?

2       A.    I see this and I see the enrollment

3   process from lead to start.

4       Q.    But someone at Post saw it as involving

5   sales; can we agree on that?

6       A.    Yes.

7       Q.    And you have no understanding of who

8   drafted this document?

9       A.    I don't know who drafted it.  I can say

10  with -- I'm pretty confident it's someone in the

11  admissions department, since this is the enrollment

12  process for the admissions team.

13      Q.    What is a KPI?  Have you heard the term

14  "KPI"?

15      A.    I have.

16      Q.    What is a KPI?  What does the acronym

17  stand for?

18      A.    Key performance indicator.

19      Q.    We are going to be referring back to 11106

20  quite a bit so don't let it go too far.

21              MR. GLAPION:  Can you please mark

22  this as Exhibit 17 I believe and hand it to the

23  witness.

24                      (Exhibit 17, Post University - End

25                      of MOD Assessment, Bates Numbers PU

Page 89

1                    00000038 through 39, marked for

2                    identification.)

3    BY MR. GLAPION:

4        Q.    So this is a two-page document.  Let me

5    know when you've had a chance to take a look at it.

6        A.    Yeah -- yes, I've seen it.

7        Q.    What does this document appear to be?

8        A.    It appears to be an end of a module

9    assessment.

10       Q.    Who would be the assessees for this

11   document?

12       A.    The admissions counselors.

13       Q.    And who would be the supervisors?  What

14   role are the supervisors?

15       A.    They are assistant directors.

16       Q.    So it wouldn't be team leads; it would be

17   the assistant directors?

18       A.    I don't know.  This is a fairly newer

19   document.  It could have been conducted by team

20   leads, ADs, a collaborative.

21       Q.    Just so I understand, I think I sort of

22   assumed this from previous depositions, but I'll get

23   it here, is the hierarchy within the admissions

24   department: there are admissions counselors; there

25   are team leads; there are assistant director of

Page 90

1  admissions, and then there are director of

2  admissions?

3      A.    Yes.

4      Q.    And then who is after that again, the vice

5  president of admissions; is that correct?

6      A.    Correct.

7      Q.    And who does the vice president of

8  admissions report to?

9      A.    Chief officer of operations.

10      Q.    Which would be Reese?

11      A.    Correct.

12      Q.    And you will see top left of this document

13  Key Performance Indicators; correct?

14      A.    Yes.

15      Q.    And when I asked about KPI, that's what

16  KPI stands for; correct?  KPI stands for that, key

17  performance indicators?

18      A.    Yes.

19      Q.    What is meant by key performance

20  indicators?

21      A.    On this document or in general?

22      Q.    In general, yes.

23      A.    Metrics that are looked at to see

24  benchmarks towards goals, run rates, things of that

25  nature, key performance indicators.  Those are

Page 91

1    things that are reviewed that have a weight on one's

2    success.

3         Q.    So there is six of them; correct?

4         A.    Yes.

5         Q.    And so it's fair to characterize what you

6    just said as those are six metrics by which

7    admissions counselors would be evaluated?

8         A.    Correct.

9         Q.    And we are going to jump back and forth

10   between 11106 and this document; you might want them

11   side by side just for convenience.

12          You will see the first key performance

13   indicator is Lead to PCAS.

14          Do you see that?

15        A.    Yes.

16        Q.    What is P-C-A-S or PCAS?

17        A.    It is a Professional College Advisory

18   Session.

19        Q.    Is that an interview?

20        A.    That's an interview.

21        Q.    So on 11106, the first blue arrow says

22   Interview and Opportunity Assessment.

23          Is that the PCAS?

24        A.    Yes, it is.

25        Q.    So the first green box is Lead and then

1      A.    Correct.

2      Q.    So when we talk about the evaluation of

3  admissions counselors according to these KPIs, Post

4  is really looking at how they are moving people

5  along from one category to another; is that

6  accurate?

7      A.    How they are moving down the funnel, yes.

8      Q.    So the leads that come into an admissions

9  counselor that they are handling, it's looking at

10  how well that admissions counselor is moving these

11  leads into the opportunity stage and throughout this

12  process?

13      A.    Yes.

14      Q.    And when I say "this process," I'm talking

15  about the one on 11106 just to be clear.

16          And with the exception of the lead stage,

17  all of the stages, as we just discussed, PCAS to APP

18  all the way down to ATP to Start, all have, at least

19  in this document, sales categories and sales --

20  sales categories and/or sale stages attached;

21  correct?

22      A.    Yeah, I believe we've covered that, yes.

23      Q.    So the evaluation for the key performance

24  indicators is evaluating how well prospective

25  students are moved through the various sales

Page 100

1  categories and stages; correct?

2      A.      Admissions, when they are looking at a

3  pipeline of a student, an opportunity file,

4  application, FAFSA, ATP, those are the metrics that

5  they look at.  Those are the metrics that they speak

6  to.  These categories and stages are

7  behind-the-scene systemic triggers.  I just want

8  that to be clear.

9      Q.      I understand.  But they do have -- whether

10 you agree or disagree that they should -- they do

11 have something attached to each of these stages that

12 is either a sales category --

13     A.      Yes, the word "sales" is appended to

14 "category" and "stage" throughout this entire chart,

15 yes.

16     Q.      So when we are talking about evaluating

17 admissions counselors on going through these various

18 stages, it's at least whoever wrote this document

19 and whoever programmed the system, it's moving

20 them -- according to them, it's moving through

21 various sales stages and sales categories; correct?

22     A.      Yes.

23     Q.   Does Post conduct marketing -- and we can

24 set these documents aside for a moment.  Again, we

25 will come back to 11106.

# SOF ¶ 9
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,          )    18-81004-CIV

6         vs.                      )

7    POST UNIVERSITY, INC.,        )

8              Defendant.          )

9    ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                  DATE:  APRIL 11, 2019

15                       HELD AT:

16                  WYNDHAM SOUTHBURY

17                  1284 Strongtown Road

18                  Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 106

1      A.    Yes.

2      Q.    And you said, I believe, that previously

3   your CRM system was Oracle On Demand?

4      A.    Yes.

5      Q.    And now it is CampusNexus Management?

6      A.    Yes.

7      Q.    Have you ever heard the term -- and I know

8   you have because you mentioned it -- but the term

9   "opportunity"?

10     A.    Yes.

11     Q.    What is an opportunity?

12     A.    An opportunity in Oracle is a lead that

13  someone has spoken to and expressed interest.  At

14  that point, they are converted from a lead into an

15  opportunity.

16     Q.    And that's reflected on 11106 that we

17  talked about --

18     A.    Correct.

19     Q.    -- where Contact Made, Interest Confirmed,

20  Lead is Converted to an opportunity; correct?

21     A.    Yes.  It's right before they become

22  qualified, in that middle area, that's where the

23  opportunity begins.

24     Q.    So the lead stops and opportunity begins

25  after that down green arrow Contact Made, Interest

1    Confirmed, Lead is Converted; correct?

2         A.    That's when they become an opportunity.

3         Q.    That's what I'm asking.

4         A.    Correct.

5         Q.    So the difference then between a lead and

6    an opportunity is that a lead hadn't yet confirmed

7    their interest and an opportunity had?

8         A.    Correct.

9         Q.    What is a rejected lead?

10               MR. BOWSER:   Objection, compound.

11        Q.    You can answer.

12        A.    It could be many different things.

13        Q.    But what is it?  Not the reasons for a

14   rejected lead, but I'm asking, what is a rejected

15   lead?  Have you heard the term before?

16        A.    Of course.

17        Q.    So what is a rejected lead?

18        A.    It is a lead that has been rejected.

19        Q.    And what are some of the reasons a lead

20   could be rejected?

21        A.    There are many reasons.

22        Q.    We've got a while.

23        A.    It could be -- the most common is 10

24   attempts.  We will reject a lead if -- definitely if

25   they've expressed that they are not interested; if

# SOF ¶ 10
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )    CASE NO.:

5            Plaintiff,            )    18-81004-CIV

6        vs.                       )

7    POST UNIVERSITY, INC.,        )

8            Defendant.            )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 60

1      Q.    Did Post add references to the CRM system?

2      A.    Yes.

3      Q.    Did Post add references to the CRM system

4  in any way that -- let me rephrase this question.

5            Did Post add references to the CRM system

6  with their own entry?

7      A.    Can you expand on what that means?

8      Q.    The CRM system, correct me if I'm wrong --

9  we will take it piece by piece.

10           The CRM system has essentially files for

11  each lead; is that correct?

12     A.    Yes.

13     Q.    When Post received a reference, did it

14  create a file for the reference in that CRM system?

15           MR. BOWSER:   Objection, compound.

16     A.    There was an area within the original

17  inquiries record to add that reference's information

18  so that they can review it to call upon it.  They

19  didn't always speak to them at first attempt of

20  outreach.

21     Q.    The question was:  Did Post create a file

22  for the reference in the CRM system?  Did it?

23     A.    It could.

24     Q.    But I'm not asking if it could or I'm not

25  asking were there fields to do it.  I'm asking, when

Page 246

```
 1      A.    Yes.

 2      Q.    Excuse me, the audit trail?

 3      A.    Yes.

 4            MR. GLAPION:  I'm going to hand you

 5   what will be marked as Exhibit 31.

 6              (Exhibit 31, Opportunity Detail,

 7              Bates Numbers PU00005403 through

 8              5405, marked for identification.)

 9   BY MR. GLAPION:

10      Q.    Do you recognize this document?

11      A.    Yes.

12      Q.    What do you recognize this document to be?

13      A.    Ms. Davis's opportunity record in CRM.

14      Q.    And if you look --

15      A.    Oracle CRM.

16      Q.    This is the old CRM; correct?

17      A.    Correct.

18      Q.    The one that was during the time period?

19      A.    Correct.

20      Q.    If you look at the last page of this

21   document marked 5405, at the bottom you will see

22   something that says Audit Trail; correct?

23      A.    Yes.

24      Q.    Above that, you will see something that

25   says -- excuse me, below that, you will see
```

# SOF ¶ 11
# Supporting Exhibits

```
                                                      Page 1

 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3     ------------------------------)

 4     MELANIE DAVIS,                 )   CASE NO.:

 5            Plaintiff,              )   18-81004-CIV

 6        vs.                         )

 7     POST UNIVERSITY, INC.,         )

 8            Defendant.              )

 9     ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13     AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16               WYNDHAM SOUTHBURY

17               1284 Strongtown Road

18               Southbury, Connecticut

19

20

21

22

23

24     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25
```

Page 106

1      A.    Yes.

2      Q.    And you said, I believe, that previously

3  your CRM system was Oracle On Demand?

4      A.    Yes.

5      Q.    And now it is CampusNexus Management?

6      A.    Yes.

7      Q.    Have you ever heard the term -- and I know

8  you have because you mentioned it -- but the term

9  "opportunity"?

10      A.    Yes.

11      Q.    What is an opportunity?

12      A.    An opportunity in Oracle is a lead that

13  someone has spoken to and expressed interest.  At

14  that point, they are converted from a lead into an

15  opportunity.

16      Q.    And that's reflected on 11106 that we

17  talked about --

18      A.    Correct.

19      Q.    -- where Contact Made, Interest Confirmed,

20  Lead is Converted to an opportunity; correct?

21      A.    Yes.  It's right before they become

22  qualified, in that middle area, that's where the

23  opportunity begins.

24      Q.    So the lead stops and opportunity begins

25  after that down green arrow Contact Made, Interest

Page 107

1    Confirmed, Lead is Converted; correct?

2        A.    That's when they become an opportunity.

3        Q.    That's what I'm asking.

4        A.    Correct.

5        Q.    So the difference then between a lead and

6    an opportunity is that a lead hadn't yet confirmed

7    their interest and an opportunity had?

8        A.    Correct.

9        Q.    What is a rejected lead?

10              MR. BOWSER:   Objection, compound.

11       Q.    You can answer.

12       A.    It could be many different things.

13       Q.    But what is it?  Not the reasons for a

14   rejected lead, but I'm asking, what is a rejected

15   lead?  Have you heard the term before?

16       A.    Of course.

17       Q.    So what is a rejected lead?

18       A.    It is a lead that has been rejected.

19       Q.    And what are some of the reasons a lead

20   could be rejected?

21       A.    There are many reasons.

22       Q.    We've got a while.

23       A.    It could be -- the most common is 10

24   attempts.  We will reject a lead if -- definitely if

25   they've expressed that they are not interested; if

# SOF ¶ 12
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3      -----------------------------)

4      MELANIE DAVIS,                )    CASE NO.:

5             Plaintiff,             )    18-81004-CIV

6         vs.                        )

7      POST UNIVERSITY, INC.,        )

8             Defendant.             )

9      -----------------------------)

10

11

12          DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13     AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                 DATE:  APRIL 11, 2019

15                     HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1    Confirmed, Lead is Converted; correct?

2        A.    That's when they become an opportunity.

3        Q.    That's what I'm asking.

4        A.    Correct.

5        Q.    So the difference then between a lead and

6    an opportunity is that a lead hadn't yet confirmed

7    their interest and an opportunity had?

8        A.    Correct.

9        Q.    What is a rejected lead?

10            MR. BOWSER:   Objection, compound.

11       Q.    You can answer.

12       A.    It could be many different things.

13       Q.    But what is it?   Not the reasons for a

14   rejected lead, but I'm asking, what is a rejected

15   lead?   Have you heard the term before?

16       A.    Of course.

17       Q.    So what is a rejected lead?

18       A.    It is a lead that has been rejected.

19       Q.    And what are some of the reasons a lead

20   could be rejected?

21       A.    There are many reasons.

22       Q.    We've got a while.

23       A.    It could be -- the most common is 10

24   attempts.   We will reject a lead if -- definitely if

25   they've expressed that they are not interested; if

Page 108

1    the number is not in service for an extended period

2    of time, which happens; sometimes people are unaware

3    that education isn't free, and they are not happy

4    with the idea of needing to use federal aid, so

5    there is a reject reason for that.

6        Q.    And those are the most prominent reject

7    reasons you can think of at the moment?

8        A.    Yeah.  I mean, the big --

9        Q.    I'm not trying a trick question here; I'm

10   just making sure we get through the list.

11       A.    There is a lot, so --

12       Q.    Have you ever heard the term "lost

13   opportunity"?

14       A.    Yes.

15       Q.    Is it properly called within Post lost or

16   closed opportunity?

17       A.    It's closed lost.

18       Q.    So it's closed/lost?

19       A.    Closed/lost in Oracle is the stage

20   closed/lost.

21       Q.    What's your preferred nomenclature on

22   that?

23       A.    Closed/lost.

24       Q.    Closed/lost, okay.  We will do

25   closed/lost.

Page 109

1      A.    Closed/lost is fine.

2      Q.    If I ever slip and say lost and not closed

3   or closed and not lost, treat it as closed/lost,

4   please.

5      A.    I'll know what you mean, yeah.

6      Q.    Under what circumstances, give me again

7   the top five let's say, would a certain opportunity

8   be closed/lost?

9      A.    If a prospect goes unresponsive; if

10  someone determines that they are not ready to move

11  forward at that time; if someone can't complete

12  their method of payment; someone is unhappy with

13  their transfer evaluation; any sort of familial

14  issues, anything mitigating.  There is a multitude

15  of different reject reasons that capture all of

16  those things as well.

17     Q.    Going back to 11106, there is only --

18  there is a red box in the bottom right that says

19  Sales Category:  Lost, Manually Change Sales Stage

20  Action to Closed/Lost.

21           Do you see that?

22     A.    Yes.

23     Q.    There are only three arrows feeding into

24  that; correct?

25     A.    Yes.

# SOF ¶ 13
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )   CASE NO.:

5              Plaintiff,          )   18-81004-CIV

6         vs.                      )

7    POST UNIVERSITY, INC.,        )

8              Defendant.          )

9    ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 107

1  Confirmed, Lead is Converted; correct?

2       A.     That's when they become an opportunity.

3       Q.     That's what I'm asking.

4       A.     Correct.

5       Q.     So the difference then between a lead and

6  an opportunity is that a lead hadn't yet confirmed

7  their interest and an opportunity had?

8       A.     Correct.

9       Q.     What is a rejected lead?

10                    MR. BOWSER:   Objection, compound.

11      Q.     You can answer.

12      A.     It could be many different things.

13      Q.     But what is it?   Not the reasons for a

14  rejected lead, but I'm asking, what is a rejected

15  lead?   Have you heard the term before?

16      A.     Of course.

17      Q.     So what is a rejected lead?

18      A.     It is a lead that has been rejected.

19      Q.     And what are some of the reasons a lead

20  could be rejected?

21      A.     There are many reasons.

22      Q.     We've got a while.

23      A.     It could be -- the most common is 10

24  attempts.   We will reject a lead if -- definitely if

25  they've expressed that they are not interested; if

Page 108

1   the number is not in service for an extended period

2   of time, which happens; sometimes people are unaware

3   that education isn't free, and they are not happy

4   with the idea of needing to use federal aid, so

5   there is a reject reason for that.

6       Q.    And those are the most prominent reject

7   reasons you can think of at the moment?

8       A.    Yeah.  I mean, the big --

9       Q.    I'm not trying a trick question here; I'm

10  just making sure we get through the list.

11      A.    There is a lot, so --

12      Q.    Have you ever heard the term "lost

13  opportunity"?

14      A.    Yes.

15      Q.    Is it properly called within Post lost or

16  closed opportunity?

17      A.    It's closed lost.

18      Q.    So it's closed/lost?

19      A.    Closed/lost in Oracle is the stage

20  closed/lost.

21      Q.    What's your preferred nomenclature on

22  that?

23      A.    Closed/lost.

24      Q.    Closed/lost, okay.  We will do

25  closed/lost.

1    A.    Closed/lost is fine.

2    Q.    If I ever slip and say lost and not closed

3  or closed and not lost, treat it as closed/lost,

4  please.

5    A.    I'll know what you mean, yeah.

6    Q.    Under what circumstances, give me again

7  the top five let's say, would a certain opportunity

8  be closed/lost?

9    A.    If a prospect goes unresponsive; if

10  someone determines that they are not ready to move

11  forward at that time; if someone can't complete

12  their method of payment; someone is unhappy with

13  their transfer evaluation; any sort of familial

14  issues, anything mitigating.  There is a multitude

15  of different reject reasons that capture all of

16  those things as well.

17    Q.    Going back to 11106, there is only --

18  there is a red box in the bottom right that says

19  Sales Category:  Lost, Manually Change Sales Stage

20  Action to Closed/Lost.

21        Do you see that?

22    A.    Yes.

23    Q.    There are only three arrows feeding into

24  that; correct?

25    A.    Yes.

# SOF ¶ 14
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3      -----------------------------)

4      MELANIE DAVIS,                )   CASE NO.:

5             Plaintiff,             )   18-81004-CIV

6         vs.                        )

7      POST UNIVERSITY, INC.,        )

8             Defendant.             )

9      -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13     AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                DATE:  APRIL 11, 2019

15                     HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 107

1   Confirmed, Lead is Converted; correct?

2        A.    That's when they become an opportunity.

3        Q.    That's what I'm asking.

4        A.    Correct.

5        Q.    So the difference then between a lead and

6   an opportunity is that a lead hadn't yet confirmed

7   their interest and an opportunity had?

8        A.    Correct.

9        Q.    What is a rejected lead?

10             MR. BOWSER:   Objection, compound.

11       Q.    You can answer.

12       A.    It could be many different things.

13       Q.    But what is it?  Not the reasons for a

14   rejected lead, but I'm asking, what is a rejected

15   lead?  Have you heard the term before?

16       A.    Of course.

17       Q.    So what is a rejected lead?

18       A.    It is a lead that has been rejected.

19       Q.    And what are some of the reasons a lead

20   could be rejected?

21       A.    There are many reasons.

22       Q.    We've got a while.

23       A.    It could be -- the most common is 10

24   attempts.  We will reject a lead if -- definitely if

25   they've expressed that they are not interested; if

Page 108

1  the number is not in service for an extended period

2  of time, which happens; sometimes people are unaware

3  that education isn't free, and they are not happy

4  with the idea of needing to use federal aid, so

5  there is a reject reason for that.

6      Q.   And those are the most prominent reject

7  reasons you can think of at the moment?

8      A.   Yeah.  I mean, the big --

9      Q.   I'm not trying a trick question here; I'm

10 just making sure we get through the list.

11     A.   There is a lot, so --

12     Q.   Have you ever heard the term "lost

13 opportunity"?

14     A.   Yes.

15     Q.   Is it properly called within Post lost or

16 closed opportunity?

17     A.   It's closed lost.

18     Q.   So it's closed/lost?

19     A.   Closed/lost in Oracle is the stage

20 closed/lost.

21     Q.   What's your preferred nomenclature on

22 that?

23     A.   Closed/lost.

24     Q.   Closed/lost, okay.  We will do

25 closed/lost.

Page 109

1        A.     Closed/lost is fine.

2        Q.     If I ever slip and say lost and not closed

3    or closed and not lost, treat it as closed/lost,

4    please.

5        A.     I'll know what you mean, yeah.

6        Q.     Under what circumstances, give me again

7    the top five let's say, would a certain opportunity

8    be closed/lost?

9        A.     If a prospect goes unresponsive; if

10   someone determines that they are not ready to move

11   forward at that time; if someone can't complete

12   their method of payment; someone is unhappy with

13   their transfer evaluation; any sort of familial

14   issues, anything mitigating.  There is a multitude

15   of different reject reasons that capture all of

16   those things as well.

17       Q.     Going back to 11106, there is only --

18   there is a red box in the bottom right that says

19   Sales Category:  Lost, Manually Change Sales Stage

20   Action to Closed/Lost.

21              Do you see that?

22       A.     Yes.

23       Q.     There are only three arrows feeding into

24   that; correct?

25       A.     Yes.

Page 119

1      A.    Yes.

2      Q.    What is the technically proper way that

3  Melanie Davis's file should have been marked after

4  this email was received?

5      A.    Closed/deferred I would think, but again,

6  anything, closed/lost.

7      Q.    I understand your testimony that

8  closed/lost was primarily used, but based on the

9  wording of this email, the technically proper way,

10  your testimony is that it would be closed/deferred;

11  correct?

12     A.    Yes.

13     Q.    Is it fair to categorize rejected leads

14  and lost/closed opportunities as people who were

15  once in the enrollment pipeline and are no longer in

16  the enrollment pipeline?

17     A.    For closed opportunities?

18     Q.    Closed opportunities, yes.

19     A.    Yes.

20     Q.    And the same for rejected leads?

21     A.    The leads never made it to the pipeline,

22  but yes.

23     Q.    When a lead or opportunity expressed

24  disinterest when you -- actually, let's do a lead.

25          When a lead said, you know what, I'm no

# SOF ¶ 15
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------)

4     MELANIE DAVIS,                 )   CASE NO.:

5            Plaintiff,              )   18-81004-CIV

6        vs.                         )

7     POST UNIVERSITY, INC.,         )

8            Defendant.              )

9     ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 109

1     A.    Closed/lost is fine.

2     Q.    If I ever slip and say lost and not closed

3   or closed and not lost, treat it as closed/lost,

4   please.

5     A.    I'll know what you mean, yeah.

6     Q.    Under what circumstances, give me again

7   the top five let's say, would a certain opportunity

8   be closed/lost?

9     A.    If a prospect goes unresponsive; if

10  someone determines that they are not ready to move

11  forward at that time; if someone can't complete

12  their method of payment; someone is unhappy with

13  their transfer evaluation; any sort of familial

14  issues, anything mitigating.    There is a multitude

15  of different reject reasons that capture all of

16  those things as well.

17    Q.    Going back to 11106, there is only --

18  there is a red box in the bottom right that says

19  Sales Category:  Lost, Manually Change Sales Stage

20  Action to Closed/Lost.

21          Do you see that?

22    A.    Yes.

23    Q.    There are only three arrows feeding into

24  that; correct?

25    A.    Yes.

Page 119

```
 1        A.    Yes.
 2        Q.    What is the technically proper way that
 3   Melanie Davis's file should have been marked after
 4   this email was received?
 5        A.    Closed/deferred I would think, but again,
 6   anything, closed/lost.
 7        Q.    I understand your testimony that
 8   closed/lost was primarily used, but based on the
 9   wording of this email, the technically proper way,
10   your testimony is that it would be closed/deferred;
11   correct?
12        A.    Yes.
13        Q.    Is it fair to categorize rejected leads
14   and lost/closed opportunities as people who were
15   once in the enrollment pipeline and are no longer in
16   the enrollment pipeline?
17        A.    For closed opportunities?
18        Q.    Closed opportunities, yes.
19        A.    Yes.
20        Q.    And the same for rejected leads?
21        A.    The leads never made it to the pipeline,
22   but yes.
23        Q.    When a lead or opportunity expressed
24   disinterest when you -- actually, let's do a lead.
25              When a lead said, you know what, I'm no
```

# SOF ¶ 16
# Supporting Exhibits

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**MELANIE DAVIS,**

Plaintiff,

v.

**POST UNIVERSITY, INC.**

Defendant.

Civil Case No.: 18-cv-81004-RLR

**Defendant's Responses to Plaintiff's Second Set of Interrogatories**

PROPOUNDING PARTY:   Melanie Davis ("Plaintiff")

RESPONDING PARTIES:   Post University, Inc. ("Defendant")

SET NUMBER:           One (1)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Post University, Inc., through counsel, hereby responds to the Second Set of Interrogatories ("Interrogatories") propounded to it by Plaintiff Melanie Davis ("Plaintiff").

These responses are made solely for the purpose of the above-captioned proceeding.  Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Interrogatories. All responses are given on the basis of a good faith effort to locate requested information.  Upon additional information being located throughout the course of discovery, Defendant will supplement its responses.

### RESPONSES AND OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 4

Identify each and every instance and occasion, by date and source (phone, application, letter, email, web-form, etc) on which YOU believe Plaintiff provided You with consent for DIALED CALLS to the CELLULAR TELEPHONE NUMBER.

### RESPONSE TO INTERROGATORY NO. 4

Post University objects to Plaintiff's definition of "Dialed Calls" because this term, as defined by Plaintiff, is not limited to telemarketing calls, and thus includes informational

1

telephone calls that are not actionable under the TCPA, even under Plaintiff's apparent interpretation of it.  Moreover, telemarketing does not include calls "made in direct response to written and oral requests."  *Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016).  "Such invited calls are not unsolicited telemarketing calls 'initiated' for the purpose of marketing a good or service."  *Id.* (citing 47 C.F.R. § 64.1200(f)(12)); *see also Jacobs v. Quicken Loans, Inc.*, No. 15-81386-CIV, 2017 WL 4838567, at *3 (S.D. Fla. Oct. 19, 2017), reconsideration denied, 2017 WL 8751757 (S.D. Fla. Dec. 6, 2017) (calls not initiated by defendant does not constitute telemarketing); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *5 (W.D. Wash. July 12, 2017) (message received was aimed at completing commercial transaction that the plaintiff initiated and thus the message did not constitute telemarketing).  For the avoidance of doubt, the University is thus responding to this request by using the definition supplied by Plaintiff, but in so doing, the University is not conceding that any particular "Dialed Call" is either a telemarketing call or a telephone solicitation.

Subject to and without waiving this objection, on August 9, 2017, Plaintiff called Post University directly to inquire about enrolling at Post University.  That same day, Plaintiff filled out, completed, and submitted an electronically signed Post University Application for Admission.  As part of this Application for Admission, Plaintiff voluntarily disclosed her telephone number (among other personal details), and agreed that "[b]y signing this Application for Admission, … I agree to receive email communications and phone calls from Post University for the purpose of enrolling into Post University at the numbers provided on this application, including wireless numbers if provided."

## INTERROGATORY NO. 5

State the full name, job title(s), dates of employment, and last known address of each person who, on YOUR behalf, received, handled, initiated, spoke on, or otherwise was a participant on any DIALED CALL made to the CELLULAR TELEPHONE NUMBER by YOU or from the CELLULAR TELEPHONE NUMBER to YOU, or who received an email from or sent an email to mdspecialist21@gmail.com.

## RESPONSE TO INTERROGATORY NO. 5

Post University incorporates its objection to Plaintiff's definition of "Dialed Calls" stated in response to Interrogatory No. 4 as if fully stated here.  Subject to and without waiving this objection, the following individuals were participants in interactions with Plaintiff:

1. Rita Francisco, Admissions Counselor, 8/11/14 to 4/3/18;

2. Kimberly Williams, Admissions Counselor – ADP Team Lead, 3/15/10 to present;

3. Nicole Sciascia, Enrollment Coordinator, 8/17/10 to present;

4. Carissa Wasikowski, Financial Aid Advisor, 6/19/2017 to present;

5. Victoria Meehan, Assistant Director of Admissions ADP, 6/16/14 to present; and

2

Dated: December 10, 2018                    Respectfully submitted,

                                            By: */s/ Adam Bowser*                    
                                            Adam Bowser
                                            **ARENT FOX LLP**
                                            1717 K Street, N.W.
                                            Washington, DC 20006-5344
                                            (202) 857-6000 (telephone)
                                            (202) 857-6395 (facsimile)
                                            adam.bowser@arentfox.com

                                            *Attorney for Post University, Inc.*

## **<u>VERIFICATION</u>**

I, Elaine Neely, Chief Regulatory Officer for Post University, Inc., believe, based on

reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge,

information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on the 10th day of December, 2018.

Elaine Neely, Chief Regulatory Officer, Post University

/s/ *Elaine Neely*
Elaine Neely

5

# SOF ¶ 17
# Supporting Exhibits

# EXHIBIT C

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | CALLING_NBR | CALLED_NBR | DIALED_DIGITS | MOBILE ROLE | START_DATE | END_DATE | DURATION (SEC) | Call Type | NEID |
| 2 | ████-4599 | (844) 246-9758 | (1844) 246-9758 | Outbound | 08/09/2017 17:39:48 | 08/09/2017 18:22:07 | 2539 | Voice | 207 |
| 3 | (203) 564-9763 | ████-4599 | | Inbound | 08/09/2017 18:33:10 | 08/09/2017 18:33:10 | 0 | Text Detail | 198 |
| 4 | (203) 564-9763 | 6-4599 | | Inbound | 08/09/2017 18:33:11 | 08/09/2017 18:33:11 | 0 | Text Detail | 198 |
| 5 | (203) 596-8364 | ████-4599 | -325 | Inbound | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 6 | (203) 596-8364 | ████-325 | ████-4599 | Routed_Call | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 7 | (203) 596-4625 | (6245000) 000-0901 | ████-4599 | Routed_Call | 08/13/2017 15:40:56 | 08/13/2017 15:42:29 | 93 | Voice | 207 |
| 8 | (203) 596-8364 | (6245000) 000-0901 | ████-4599 | Routed_Call | 08/14/2017 15:55:18 | 08/14/2017 16:00:21 | 303 | Voice | 207 |
| 9 | (203) 596-8364 | (6245000) 000-0901 | ████-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 10 | (203) 596-8364 | ████-4599 | ████-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 11 | (203) 596-8364 | ████-4599 | -459 | Undetermined | 08/15/2017 15:49:14 | 08/15/2017 15:49:27 | 13 | Voice | 207 |
| 12 | (203) 596-4625 | ████-4599 | ████-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 13 | (203) 596-4625 | (6245000) 000-0901 | ████-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 14 | (203) 596-4625 | ████-4599 | -554 | Undetermined | 08/15/2017 16:58:59 | 08/15/2017 16:59:26 | 27 | Voice | 207 |
| 15 | (203) 433-7705 | ████-4599 | | Inbound | 08/30/2017 17:42:23 | 08/30/2017 17:42:23 | 0 | Text Detail | 547 |
| 16 | (203) 433-7705 | ████-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:24 | 0 | Text Detail | 547 |
| 17 | ████-4599 | (203) 433-7705 | | Inbound | 08/30/2017 12:43:17 | 08/30/2017 12:43:17 | 0 | Text Detail | 229 |
| 18 | (203) 591-5144 | (6245000) 000-0901 | ████-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 19 | (203) 591-5144 | ████-4599 | ████-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 20 | (203) 591-5144 | ████-4599 | -191 | Undetermined | 10/18/2017 14:57:29 | 10/18/2017 14:57:52 | 23 | Voice | 207 |
| 21 | (203) 596-8364 | ████-4599 | ████-4599 | Inbound | 01/11/2018 18:56:22 | 01/11/2018 18:58:03 | 101 | Voice | 207 |
| 22 | (203) 802-5819 | ████-4599 | | Inbound | 07/17/2018 15:56:45 | 07/17/2018 15:56:45 | 0 | Text Detail | 552 |
| 23 | (203) 802-5819 | ████-4599 | | Inbound | 07/17/2018 15:56:51 | 07/17/2018 15:56:51 | 0 | Text Detail | 552 |
| 24 | (203) 802-5819 | ████-4599 | | Inbound | 07/17/2018 15:56:59 | 07/17/2018 15:56:59 | 0 | Text Detail | 552 |
| 25 | (203) 802-5819 | ████-4599 | | Inbound | 07/17/2018 15:57:05 | 07/17/2018 15:57:05 | 0 | Text Detail | 552 |
| 26 | (203) 802-5819 | ████-4599 | | Inbound | 07/17/2018 15:57:12 | 07/17/2018 15:57:12 | 0 | Text Detail | 552 |
| 27 | ████-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:22 | 07/17/2018 16:00:22 | 0 | Text Detail | 558 |
| 28 | ████-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:23 | 07/17/2018 16:00:23 | 0 | Text Detail | 558 |
| 29 | ████-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:01:34 | 07/17/2018 17:01:34 | 0 | Text Detail | 558 |
| 30 | ████-4599 | (203) 802-5819 | | Inbound | 07/17/2018 17:03:09 | 07/17/2018 17:03:09 | 0 | Text Detail | 552 |
| 31 | ████-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:05:31 | 07/17/2018 17:05:31 | 0 | Text Detail | 558 |
| 32 | (203) 802-5819 | ████-4599 | | Inbound | 07/17/2018 17:09:04 | 07/17/2018 17:09:04 | 0 | Text Detail | 552 |
| 33 | ████-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:13:28 | 07/17/2018 17:13:28 | 0 | Text Detail | 558 |
| 34 | ████-4599 | (203) 591-5047 | (1203) 591-5047 | Outbound | 07/18/2018 10:18:07 | 07/18/2018 10:21:22 | 195 | Voice | 207 |

MD000887 (Subset)

# EXHIBIT D



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports

**Calling number:**    This column reflects the number placing the call (the individual who initiated the call).    If the call is an outgoing call, this will be the Sprint PCS target number.

**Called number:**    This column reflects the number actually called.    In most cases this number will be the same as the number in the "Dialed Digits" column.    If the number has been forwarded, or if there is a routing number, then this will be reflected. If the number has a 11 in front of the area code, that means the call rolled to voicemail and was NOT answered by the customer.

**Dialed digits:**    This column reflects the digits that the caller enters into the keypad of the phone.    If the call is an incoming call, this will be the Sprint PCS target number.

**Mobile Role:**    Mobile Role (Type of Call).    Listed as outgoing, incoming, routed call or undetermined.

**Start Date:**    Date and time the call was initiated.

**End Date:**    Date and time the call was ended.

**Duration:**    Duration of call, in seconds.

**Call Type:**    Indicates the type of transaction on the network.    This includes, but not limited to: Voice, Text Detail, WiFi and Airave.

**NEID:**    This reflects which network element handled the call.

MD000907



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports, cont.

*Routed calls come in several varieties.    A TLDN (Temporary Local Directory Number) may be considered to be a bridge/router number to complete a call.    A TLDN will be represented by a number that may range from 3 to 10 digits in length.    Similar to TLDN, an IMRN (IP Multimedia Routing Number), will be used to route Apple WiFi Calls.    Another scenario is when a call is not answered, but is routed to voicemail. Calls routed straight to voicemail    may also have an "11" before the number indicated in the "Called_Nbr" column. For handsets using visual voicemail, these numbers may replace the "11" in the called number column: (800) 877-2400, (866) 677-8204, (866) 222-2604, and (877) 836-4746    The indicator that Sprint's Visual Voicemail platform was used within the session appears as 624500000XXXXXXX.

*WiFi Call Type: Please note that Sprint does not have the capability to determine the time stamp. These calls can be reflected in Switch time or GMT.

*The CDMA call detail report may indicate the sending and receipt of text messages and e-mail.    While not flagged as text messages, the line will indicate no duration, the dialed digits column will either be blank or will show an e-mail address, and the NEID column may contain one of the following numbers: 191-198 226-229 291-294

* On the CDMA network, Sprint maintains Gateway, SWATs (Soft Wireless Access Tandem) and MCGs (Media Gateway Controllers)    networks in areas where there are large Sprint customer populations. These provide the required extra space that helps Sprint maintain all of the calls.    When a call moves through a gateway or SWAT cell site information is not retained and is not recoverable.    NEIDs for Gateways 124-125, SWATs are 96, 184-190, 263, 363-365 and MGCs are 366-371

* Time Zones: Beginning 10/20/17 through present SMS text message time stamps are in Central. From 05/31/2017 through 10/19/2017, text message time stamps may have been GMT.    An indicator of GMT time zones include the NEID range of 540-559.    From October 12, 2010 through May of 2017 text message time stamps were kept in Central time zone. Records prior to October 12, 2010 are either in Central or Eastern time zone.    Sprint is unable to determine which time zone is reflected in records older than October 12, 2010.

*Please be advised: The time stamp reflected on call detail reports for Sprint CDMA during the time frame of 02/04/2018 through 02/28/2018 may have been affected by a storage related upgrade. During this period, transactions may be reflected in GMT instead of the time stamp native to the switch utilized in the transaction.    This includes, but is not limited to, Voice calls and SMS transactions.

MD000908



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports, cont.

*Short codes, also known as short numbers, are special telephone codes, significantly shorter than full telephone numbers, which can also be used to address SMS and MMS messages from mobile phones or fixed phones. Short codes are often associated with automated services. An automated program can handle the response and typically requires the sender to start the message with a command word or prefix. A list of short codes is not maintained by Sprint as number of short codes is extensive and constantly growing. Example of a short code- the customer may want updates pertaining to their favorite sports team.   The customer would sign up with that team in order to receive text message updates relevant to the team.

* Please Note - Calls made on another carrier's network, will not appear on our CDR records.   If you suspect the device was roaming on another network, please obtain those records from the other carrier.

* Please Note - As of approximately September 2018, Sprint performed a soft-launch of a voice-over-LTE product.    Because of this launch, certain calls are routed through a specific network element that time-stamps these transactions in central time.    These transactions will not have location information and may appear on the records as call type 42 or Voice.

MD000909



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330   Fax: 816-600-3111

# Star Codes

Your request has been fulfilled, at least in part, by what is known as a CDMA CDR Report.    A CDMA CDR Report lists information about incoming/outgoing calls including the digits dialed on the handset.    As a dialing shortcut, PCS subscribers may use star codes (an asterisk (*) plus a short number sequence) when using our wireless telephones.    On call detail reports the star may be indicated by a letter "B". This code will appear in the dialed digits column of the CDMA CDR Report.    Following is a list of the most common star codes.    Additional star codes may exist in the market from which the call is made. Please contact the Subpoena Compliance Group at the number listed above for more information concerning star codes.

>    *18 - Ping the nearest tower, call delivery activate
>    *180 - Call delivery deactivate
>    *2 - Customer Care
>    *3 - Payment Center
>    *31 - Three Way Calling
>    *4 - Account information
>    *5 - Spanish Customer care
>    *67 - Caller ID block
>    *68 - Override caller ID block
>    *70 - Cancel call waiting for that call
>    *711 - Customer Care
>    *72 - Activates call forwarding
>    *720 - Deactivates call forwarding
>    *73 - Call forwarding no answer
>    *74 - Call forward busy
>    *811 - Customer Care
>    *82 - Override caller ID block- for that call
>    *911 - 911
>    *073 - Cancel call forward no answer
>    *074 - Cancel call forward busy

Other numbers which may appear in the dialed digits column:

>    411 - Directory assistance
>    611 - Customer Care
>    711 - Telecommunications Relay Service (hearing impaired)
>    911 - Can also dial 0911 or 1911
>    c777 - Web Browsing (SINS)

MD000910

# SOF ¶ 18
# Supporting Exhibits

# EXHIBIT E

5 of 15

Account Number: ████ 12
Bill Period: Sep 09 - Oct 08, 2017

## Equipment Payment Schedule

| ████ 41 | Apple iPhone 7 128GB |
|---|---|
| Lease Contract | WEB-L-48146128 |
| Lease Charge (9 of 17) | $34.59 |
| Remaining Lease Commitment | $276.72 |
| Purchase Option Price | $182.00 |
| Payments Remaining | 8 |
| Total Lease Amount Due - Includes unpaid charges & taxes | $111.06 |

**Sprint owns this device while you are leasing. Cancelling services will result in being charged the remaining monthly lease payments plus the device purchase option price. The Lease Charge does not reflect any promotional discounts.**

| ████ -4599 | Apple iPhone 6 Plus 64GB Gold Pre-owned |
|---|---|
| Installment Contract | WEB-48146126 |
| Amount Financed (Principal Amount) | $314.76 |
| Principal Amount (9 of 24) | $13.12 |
| Paid to Date (Principal Amount) | $104.96 |
| Payments Remaining | 15 |
| Payoff Amount (Principal) | $236.04 |
| Total Principal Amount Due | $39.36 |

**The Principal Amount does not reflect any promotional discounts.**

MD000009

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>          Defendant. | Civil Case No.: 18-cv-81004-RKA<br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## DECLARATION OF MELANIE DAVIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.      My name is Melanie Davis and I declare, under penalty of perjury, that the following is true and correct.

2.      The telephone number ending in 4599 is my personal cellular telephone number.

3.      It was my personal cellular telephone number prior to my first contact with Post University, and remains so to this day.

4.      The document labeled MD000009 is a true and accurate copy of a page from my Sprint bill that I took directly from my online account portal, with part of my account number and another telephone number on my account redacted.

5.      Post University continued to call, text, and email me after I had expressed that I was unable to move forward, and after numerous do-not-call requests.

6.      On August 13, I replied to an email from Post University informing it I would no longer be able to move forward with school.

7.      A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000199-200.

enrollment process that I had said I did not intend to continue, and/or gauge my interest in enrolling

in an upcoming class session.

    29.    If called upon, I could testify about the matters set forth herein.


I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____ (date).
7/18/2019


DocuSigned by:

*Melanie Davis*

Melanie Davis

# SOF ¶ 19
# Supporting Exhibits

# EXHIBIT F

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

## URGENT: RECOMMENDATION STARTED. MELANIE DAVIS. PLEASE CALL ADMISSIONS UNLESS APPT IS SET. 203-596-8364 PLEASE SUBMIT FAFSA.

2 messages

**Francisco, Rita** <RFrancisco@post.edu>                         Fri, Aug 11, 2017 at 3:46 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>
Cc: "Meehan, Victoria" <VMeehan@post.edu>

RECOMMENDATION: POST UNVIRSITY STUDENT BIO.

*Melanie Davis*

*Melanie is extremely motivated to go back to school and graduate with her Bachelors degree in Human Services from Post University. Melanie seemed a bit reluctant at first to learn about POSTU. A unfamiliar school yet, once she saw how personal we make it, how supportive we are, and the resources we have, she was open to learn more. Melanie has a passion in serving the community through counseling. She is very motivated to get her degree and counsel since she has some previous college credits and is ready to excel. She seems very caring and genuine, dedicated, and diligent. Melanie is excited about the program, especially the fact that there are no set log in times, tutoring, and Career Services to assist in finding a job as soon as she becomes a student. Melanie has a passion for helping those in need to and would be a great addition to Post University. I strongly recommend her for the Bachelors of Science in HS program that begins on August 28th.*

*To be continued…..*

**\*IF STUDENT IS  INTERESTED IN ENROLLING RECOMMNEDATION WILL BE SUBMITTED. APPT MADE FOR 8/13. PLEASE SUBMIT FAFSA AND CALL 203-591-5144 IF YOU NEED ASSISTANCE TOMORROW\*\***



**Rita Francisco**
ADP Admissions Counselor
RFrancisco@Post.edu
**w.** 203.596.8364

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

MD000199

**Melanie Davis** <mdspecialist21@gmail.com>                    Sun, Aug 13, 2017 at 8:44 PM
To: "Francisco, Rita" <RFrancisco@post.edu>
Cc: "Meehan, Victoria" <VMeehan@post.edu>

Hello Rita!

Although I was very impressed with the information I was given on our call, things have changed from my original plan.  Apparently I was a bit too eager for knowledge and jumped the gun so to speak.  Unaware of things taking place, I now have time constraints and scheduling issues that will not allow me to move forward with school. This is the reason why fasfa was not completed.  I will keep the information you have given me for my future, should things change back to what they were before.

I do appreciate the time and effort you have put into providing me with such a fantastic outlook on your school program!

Thank you!

Melanie
[Quoted text hidden]

MD000200

# SOF ¶ 20
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT
2              SOUTHERN DISTRICT OF FLORIDA
3    _____

     MELANIE DAVIS,                )Civil Case
4                                  )No.: 18-cv-81004-RLR
                   Plaintiffs,)
5                                  )
     v.                            )
6                                  )
     POST UNIVERSITY, INC.,        )
7                                  )
                   Defendants.)
8                                  )
     _____)
9
10
11         DEPOSITION OF VICTORIA L. MEEHAN
12
13
14
15   DATE:            February 8, 2019
16   TIME:            11:35 a.m.
17   HELD AT:         Wyndham Southbury
                      Southbury, Connecticut
18
19
         By:          Sarah J. Miner, RPR, LSR #238
20
21
22
23
24
25

Page 7

1          Q. Your attorney may object to questions that I

2     ask you.  Unless Adam specifically instructs you not

3     to answer, you can answer the question regardless of

4     objections.

5          A. Okay.

6          Q. What is your date of birth?

7          A. 9/18/90.

8          Q. What is your title at Post University?

9          A. Assistant director of admissions.

10          Q. How long have you had that title at Post?

11          A. Going on two years.

12          Q. Have you had any other titles at Post?

13          A. Yes.

14          Q. What were those titles?

15          A. Team lead and admissions counselor.

16          Q. How long have you been at Post?

17          A. Four and a half years.

18          Q. Did you start as an admissions counselor?

19          A. I did.

20          Q. How long were you an admissions counselor?

21          A. 18 months.

22          Q. Then you became a team lead?

23          A. Yes.

24          Q. How long were you a team lead?

25          A. For the difference.

# SOF ¶ 21
# Supporting Exhibits

# EXHIBIT G

**Activities List** | Back to Opportunity Detail

Help | Printer Friendly

**Completed Activities** | Log A Call

All 0-9 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z [          ] Go

| | Subject | Type | Activity | Due Date | Completed Date ▼ | Status | Alias | Created: Date | Created By |
|---|---|---|---|---|---|---|---|---|---|
| Edit ▾ | DO NOT CALL- NOT INTERESTED | Call | Task | 1/11/2018 | 1/11/2018 06:58 PM | Completed | Rita Francisco | 1/11/2018 06:58 PM | Rita Francisco |
| Edit ▾ | voicemail | Call | Task | 10/18/2017 | 10/18/2017 02:57 PM | Completed | Kimberly Williams | 10/18/2017 02:57 PM | Kimberly Williams |
| Edit ▾ | EC: Opportunity Lost - Close/Complete all tasks related to transcripts. | To Do | Task | 8/15/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | HS Trans/Lost Recd Ofc HS Trans/Graduated 1993 | Document | Task | 8/10/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/10/2017 08:42 AM | Nicole Sciascia |
| Edit ▾ | Tuition Planner:  Opportunity Closed/Deferred or Closed/Lost | To Do | Task | 8/15/2017 | 8/15/2017 05:09 PM | Completed | Carissa Wasikowski | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | Vm | Call | Task | 8/15/2017 | 8/15/2017 05:00 PM | Completed | Victoria Meehan | 8/15/2017 05:00 PM | Victoria Meehan |
| Edit ▾ | LVM about student calling me to start next MOD or see what she is so nervous about. | Call | Task | 8/15/2017 | 8/15/2017 03:51 PM | Completed | Rita Francisco | 8/15/2017 03:51 PM | Rita Francisco |
| Edit ▾ | N/A to Google Voice Call | Call | Task | 8/15/2017 | 8/15/2017 12:19 PM | Completed | Rita Francisco | 8/15/2017 12:19 PM | Rita Francisco |
| Edit ▾ | Vm and text about FAFSA | Call | Task | 8/13/2017 | 8/13/2017 03:43 PM | Completed | Victoria Meehan | 8/13/2017 03:43 PM | Victoria Meehan |
| Edit ▾ | recommendation | Call | Task | 8/11/2017 | 8/11/2017 03:46 PM | Completed | Rita Francisco | 8/11/2017 03:46 PM | Rita Francisco |
| Edit ▾ | I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8./11 | Call | Task | 8/11/2017 | 8/11/2017 02:55 PM | Completed | Rita Francisco | 8/11/2017 02:55 PM | Rita Francisco |
| Edit ▾ | Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Call | Task | 8/11/2017 | 8/11/2017 02:16 PM | Completed | Nicole Sciascia | 8/11/2017 02:16 PM | Nicole Sciascia |
| Edit ▾ | Sent recommendation/welcome text | Call | Task | 8/11/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/11/2017 09:11 AM | Victoria Meehan |
| Edit ▾ | Application Received - Contact Student (Manager Task) | To Do | Task | 8/9/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Send Online Application Link to Prospective Student | To Do | Task | 8/9/2017 | 8/10/2017 02:00 PM | Completed | Rita Francisco | 8/9/2017 06:13 PM | Rita Francisco |
| Edit ▾ | Application Received | To Do | Task | 8/9/2017 | 8/10/2017 01:37 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Financial Aid Advisor: Application Received - Contact Student | To Do | Task | 8/10/2017 | 8/10/2017 11:00 AM | Completed | Carissa Wasikowski | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | NOTES>> | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | Appt 8/11 to discuss FAFSA | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | EC: Transcript Request Form | HS Transcript Request | Task | 8/9/2017 | 8/10/2017 08:42 AM | Completed | Nicole Sciascia | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Completed TRF | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Completed Application | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Student has completed the Online Application | Other | Task | 8/9/2017 | 8/9/2017 06:53 PM | Completed | Rita Francisco | 8/9/2017 06:53 PM | Integration User |
| Edit ▾ | Student has started the Application | Other | Task | 8/9/2017 | 8/9/2017 06:43 PM | Completed | Rita Francisco | 8/9/2017 06:43 PM | Integration User |

All 0-9 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

Number of records displayed: 75 ▾

PU00000003

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| **MELANIE DAVIS,**<br><br>          Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.**<br><br>          Defendant. | Civil Case No.: 18-cv-81004-RLR<br><br>**Defendant's Responses to Plaintiff's Third Set of Interrogatories** |

PROPOUNDING PARTY:   Melanie Davis ("Plaintiff")

RESPONDING PARTIES:   Post University, Inc. ("Defendant")

SET NUMBER:   Three (3)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Post University, Inc., through counsel, hereby responds to the Third Set of Interrogatories ("Interrogatories") propounded to it by Plaintiff Melanie Davis ("Plaintiff").

These responses are made solely for the purpose of the above-captioned proceeding. Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Interrogatories. All responses are given on the basis of a good faith effort to locate requested information. Upon additional information being located throughout the course of discovery, Defendant will supplement its responses.

### RESPONSES AND OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 8

Explain the distinction between an "opportunity" and a "lead", if any, and list and describe any other similar designations or categories which were or could be assigned to prospective students.

### RESPONSE TO INTERROGATORY NO. 8

A "lead" refers to a situation in which an individual requests information from Post University about its educational offerings. An "opportunity" refers to a situation in which the

1

University has had the opportunity to follow up and speak with the individual who reached out for additional information to confirm that individual's interest in pursuing their education at Post University.

**INTERROGATORY NO. 9**

Explain why and when an "opportunity" would be considered "lost", "deferred", and/or "closed".

**RESPONSE TO INTERROGATORY NO. 9**

"Lost" or "closed" opportunities are considered one in the same.  Lost or closed opportunities may occur when the prospective student has provided their consent for the University to contact that individual regarding the University's educational offerings, but the University is unsuccessful in speaking with that individual again.  Lost or closed opportunities may also occur when a prospective student states that they are not currently interested in attending the University, but would like the University to continue to follow up with them because they may be interested at a future time.  Opportunities may also be lost or closed if the prospective student has stated that they no longer are interested in attending the University.  Ultimately, the reason that a given prospective student may be designated as lost or closed depends on the facts and circumstances surrounding the particular prospective student.

Deferred opportunities occur when a prospective student desires to attend the University, but has stated that he or she does not intend to do so until a specified school term in the future, rather than the current term.

**INTERROGATORY NO. 10**

Explain the meaning of each item, sentence, phrase, and/or abbreviation under the "Subject" fields of PU00000003 and PU00000008-09.

**RESPONSE TO INTERROGATORY NO. 10**

| Subject | Explanation |
|---|---|
| DO NOT CALL – NOT INTERESTED | Ms. Davis asked that the University not call her anymore |
| Voicemail | The University left Ms. Davis a voicemail |
| EC: Opportunity Lost – Close/Complete all tasks related to transcripts | System-generated subject line stating that the opportunity was lost and alerting admissions counselors to complete all tasks related to transcripts |

| | |
|---|---|
| HS Trans/Lost Recd Ofc HS Trans/Graduated 1993 | System-generated note generating task before opportunity is lost |
| Tuition Planner: Opportunity Closed/Deferred or Closed/Lost | System-generated note generating task before opportunity is lost |
| Vm | Note that a voicemail was left for Ms. Davis |
| LVM about student calling me to start next MOD or see what she is so nervous about. | Note that a voicemail was left for Ms. Davis about starting the next term |
| N/A to Google Voice call | Note that there was no answer after call to Ms. Davis |
| Vm and text about FAFSA | Note that a voicemail was left and text submitted to Ms. Davis concerning the FAFSA application |
| Recommendation | Note that call was made regarding recommendation |
| I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8/11 | Note that Ms. Davis was told that her file would be closed for the current term if she did not submit the necessary FAFSA information |
| Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Note that Ms. Davis's transcript request form was sent to the Retention Center at Olympic Heights High School |
| Sent recommendation/welcome text | Note that a welcome text was sent to Ms. Davis |
| Application Received – Contact Student (Manager Task) | System-generated note after initial interview with Ms. Davis |
| Send Online Application Link to Prospective Student | System-generated note after initial interview with Ms. Davis |
| Application Received | System-generated note to admissions counselors that Ms. Davis's application was received |

3

| | |
|---|---|
| Financial Aid Advisor: Application Received – Contact Student | System-generated note to admissions counselors to contact Ms. Davis since her application was received |
| NOTES>> | Notes about the call with Ms. Davis |
| Appt 8/11 to discuss FAFSA | Note that admissions counselor scheduled an appointment on 8/11 with Ms. Davis to discuss the FAFSA application |
| EC: Transcript Request Form | Allows admissions counselor to obtain Ms. Davis's Transcript Request Form |
| Completed TRF | System-generated note with Ms. Davis's completed Transcript Request Form |
| Completed Application | System-generated note with Ms. Davis's completed online application attached |
| Student has completed the Online Application | System-generated note that Ms. Davis completed the online application to Post University |
| Student has started the Application | System-generated note that Ms. Davis started an application to Post University |

Dated: January 7, 2018

Respectfully submitted,

By: */s/ Adam Bowser*
Adam Bowser
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006-5344
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)
adam.bowser@arentfox.com

*Attorney for Post University, Inc.*

## **<u>VERIFICATION</u>**

I, Elaine Neely, Chief Regulatory Officer for Post University, Inc., believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on the 7th day of January, 2019.

Elaine Neely, Chief Regulatory Officer, Post University

/s/ Elaine Neely
Elaine Neely

# SOF ¶ 22
# Supporting Exhibits

GZJ KDKV'J "

Date - 2017-08-25T14:51:11
Message - Class starts next week for Post U's Online Degree Program! There's still time to get started: call 203-568-1652. TxtSTOP2end
From number - +12034337702

Date - 2017-08-30T17:42:24
Message - Post University has not received your 2017/2018 FAFSA. You can access this financial aid application at fafsa.ed.gov (school code: 001401). Class begins this week, so if you need assistance, please call us at 203-568-1652 Msg&DataRatesMayApply
From number - +12034337705

<span style="color:red">Date - 2017-08-30T17:43:18
Message - STOP
To Number - +12034337705</span>

Date - 2017-08-30T17:43:20
Message - You have been opted out of all subscriptions: Post_University_Info_Alerts. No more messages will be sent. Help at www.truedialog.com/help or 877-501-4276
From Number - +12034337705

PU00000028

# SOF ¶ 23
# Supporting Exhibits

# EXHIBIT C

| | A CALLING_NBR | B CALLED_NBR | C DIALED_DIGITS | D MOBILE ROLE | E START_DATE | F END_DATE | G DURATION (SEC) | H Call Type | I NEID |
|---|---|---|---|---|---|---|---|---|---|
| 2 | ███-4599 | (844) 246-9758 | (1844) 246-9758 | Outbound | 08/09/2017 17:39:48 | 08/09/2017 18:22:07 | 2539 | Voice | 207 |
| 3 | (203) 564-9763 | ███-4599 | | Inbound | 08/09/2017 18:33:10 | 08/09/2017 18:33:10 | 0 | Text Detail | 198 |
| 4 | (203) 564-9763 | 6-4599 | | Inbound | 08/09/2017 18:33:11 | 08/09/2017 18:33:11 | 0 | Text Detail | 198 |
| 5 | (203) 596-8364 | ███-4599 | -325 | Inbound | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 6 | (203) 596-8364 | -325 | ███-4599 | Routed_Call | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 7 | (203) 596-4625 | (6245000) 000-0901 | ███-4599 | Routed_Call | 08/13/2017 15:40:56 | 08/13/2017 15:42:29 | 93 | Voice | 207 |
| 8 | (203) 596-8364 | (6245000) 000-0901 | ███-4599 | Routed_Call | 08/14/2017 15:55:18 | 08/14/2017 16:00:21 | 303 | Voice | 207 |
| 9 | (203) 596-8364 | (6245000) 000-0901 | ███-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 10 | (203) 596-8364 | ███-4599 | ███-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 11 | (203) 596-4625 | ███-4599 | -459 | Undetermined | 08/15/2017 15:49:14 | 08/15/2017 15:49:27 | 13 | Voice | 207 |
| 12 | (203) 596-4625 | ███-4599 | ███-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 13 | (203) 596-4625 | (6245000) 000-0901 | ███-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 14 | (203) 596-4625 | ███-4599 | -554 | Undetermined | 08/15/2017 16:58:59 | 08/15/2017 16:59:26 | 27 | Voice | 207 |
| 15 | (203) 433-7705 | ███-4599 | | Inbound | 08/30/2017 17:42:23 | 08/30/2017 17:42:23 | 0 | Text Detail | 547 |
| 16 | (203) 433-7705 | ███-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:24 | 0 | Text Detail | 547 |
| 17 | ███-4599 | (203) 433-7705 | | Outbound | 08/30/2017 12:43:17 | 08/30/2017 12:43:17 | 0 | Text Detail | 229 |
| 18 | (203) 591-5144 | (6245000) 000-0901 | ███-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 19 | (203) 591-5144 | ███-4599 | ███-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 20 | (203) 591-5144 | ███-4599 | -191 | Undetermined | 10/18/2017 14:57:29 | 10/18/2017 14:57:52 | 23 | Voice | 207 |
| 21 | (203) 596-8364 | ███-4599 | ███-4599 | Inbound | 01/11/2018 18:56:22 | 01/11/2018 18:58:03 | 101 | Voice | 207 |
| 22 | (203) 802-5819 | ███-4599 | | Inbound | 07/17/2018 15:56:45 | 07/17/2018 15:56:45 | 0 | Text Detail | 552 |
| 23 | (203) 802-5819 | ███-4599 | | Inbound | 07/17/2018 15:56:51 | 07/17/2018 15:56:51 | 0 | Text Detail | 552 |
| 24 | (203) 802-5819 | ███-4599 | | Inbound | 07/17/2018 15:56:59 | 07/17/2018 15:56:59 | 0 | Text Detail | 552 |
| 25 | (203) 802-5819 | ███-4599 | | Inbound | 07/17/2018 15:57:05 | 07/17/2018 15:57:05 | 0 | Text Detail | 552 |
| 26 | (203) 802-5819 | ███-4599 | | Inbound | 07/17/2018 15:57:12 | 07/17/2018 15:57:12 | 0 | Text Detail | 552 |
| 27 | ███-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:22 | 07/17/2018 16:00:22 | 0 | Text Detail | 558 |
| 28 | ███-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:23 | 07/17/2018 16:00:23 | 0 | Text Detail | 558 |
| 29 | ███-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:01:34 | 07/17/2018 17:01:34 | 0 | Text Detail | 558 |
| 30 | ███-4599 | (203) 802-5819 | | Inbound | 07/17/2018 17:03:09 | 07/17/2018 17:03:09 | 0 | Text Detail | 552 |
| 31 | ███-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:05:31 | 07/17/2018 17:05:31 | 0 | Text Detail | 558 |
| 32 | (203) 802-5819 | ███-4599 | | Inbound | 07/17/2018 17:09:04 | 07/17/2018 17:09:04 | 0 | Text Detail | 552 |
| 33 | ███-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:13:28 | 07/17/2018 17:13:28 | 0 | Text Detail | 558 |
| 34 | ███-4599 | (203) 591-5047 | (1203) 591-5047 | Outbound | 07/18/2018 10:18:07 | 07/18/2018 10:21:22 | 195 | Voice | 207 |

# MD000887 (Subset)

GZJ KDKV'J ''

Date - 2017-08-25T14:51:11
Message - Class starts next week for Post U's Online Degree Program! There's still time to get started: call 203-568-1652. TxtSTOP2end
From number - +12034337702

Date - 2017-08-30T17:42:24
Message - Post University has not received your 2017/2018 FAFSA. You can access this financial aid application at fafsa.ed.gov (school code: 001401). Class begins this week, so if you need assistance, please call us at 203-568-1652 Msg&DataRatesMayApply
From number - +12034337705

Date - 2017-08-30T17:43:18
Message - STOP
To Number - +12034337705

Date - 2017-08-30T17:43:20
Message - You have been opted out of all subscriptions: Post_University_Info_Alerts. No more messages will be sent. Help at www.truedialog.com/help or 877-501-4276
From Number - +12034337705

PU00000028

# SOF ¶ 24
# Supporting Exhibits

# EXHIBIT C

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | CALLING_NBR | CALLED_NBR | DIALED_DIGITS | MOBILE ROLE | START_DATE | END_DATE | DURATION (SEC) | Call Type | NEID |
| 2 | ▓-4599 | (844) 246-9758 | (1844) 246-9758 | Outbound | 08/09/2017 17:39:48 | 08/09/2017 18:22:07 | 2539 | Voice | 207 |
| 3 | (203) 564-9763 | ▓-4599 | | Inbound | 08/09/2017 18:33:10 | 08/09/2017 18:33:10 | 0 | Text Detail | 198 |
| 4 | (203) 564-9763 | ▓6-4599 | | Inbound | 08/09/2017 18:33:11 | 08/09/2017 18:33:11 | 0 | Text Detail | 198 |
| 5 | (203) 596-8364 | ▓-4599 | -325 | Inbound | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 6 | (203) 596-8364 | -325 | ▓-4599 | Routed_Call | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 7 | (203) 596-4625 | (6245000) 000-0901 | ▓-4599 | Routed_Call | 08/13/2017 15:40:56 | 08/13/2017 15:42:29 | 93 | Voice | 207 |
| 8 | (203) 596-8364 | (6245000) 000-0901 | ▓-4599 | Routed_Call | 08/14/2017 15:55:18 | 08/14/2017 16:00:21 | 303 | Voice | 207 |
| 9 | (203) 596-8364 | (6245000) 000-0901 | ▓-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 10 | (203) 596-8364 | ▓-4599 | ▓-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 11 | (203) 596-4625 | ▓-4599 | -459 | Undetermined | 08/15/2017 15:49:14 | 08/15/2017 15:49:27 | 13 | Voice | 207 |
| 12 | (203) 596-4625 | ▓-4599 | ▓-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 13 | (203) 596-4625 | (6245000) 000-0901 | ▓-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 14 | (203) 596-4625 | ▓-4599 | -554 | Undetermined | 08/15/2017 16:58:59 | 08/15/2017 16:59:26 | 27 | Voice | 207 |
| 15 | (203) 433-7705 | ▓-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:23 | 0 | Text Detail | 547 |
| 16 | (203) 433-7705 | ▓-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:24 | 0 | Text Detail | 547 |
| 17 | ▓-4599 | (203) 433-7705 | | Outbound | 08/30/2017 12:43:17 | 08/30/2017 12:43:17 | 0 | Text Detail | 229 |
| 18 | (203) 591-5144 | (6245000) 000-0901 | ▓-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 19 | (203) 591-5144 | ▓-4599 | ▓-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 20 | (203) 591-5144 | ▓-4599 | -191 | Undetermined | 10/18/2017 14:57:29 | 10/18/2017 14:57:52 | 23 | Voice | 207 |
| 21 | (203) 596-8364 | ▓-4599 | ▓-4599 | Inbound | 01/11/2018 18:56:22 | 01/11/2018 18:58:03 | 101 | Voice | 207 |
| 22 | (203) 802-5819 | ▓-4599 | | Inbound | 07/17/2018 15:56:45 | 07/17/2018 15:56:45 | 0 | Text Detail | 552 |
| 23 | (203) 802-5819 | ▓-4599 | | Inbound | 07/17/2018 15:56:51 | 07/17/2018 15:56:51 | 0 | Text Detail | 552 |
| 24 | (203) 802-5819 | ▓-4599 | | Inbound | 07/17/2018 15:56:59 | 07/17/2018 15:56:59 | 0 | Text Detail | 552 |
| 25 | (203) 802-5819 | ▓-4599 | | Inbound | 07/17/2018 15:57:05 | 07/17/2018 15:57:05 | 0 | Text Detail | 552 |
| 26 | (203) 802-5819 | ▓-4599 | | Inbound | 07/17/2018 15:57:12 | 07/17/2018 15:57:12 | 0 | Text Detail | 552 |
| 27 | ▓-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:22 | 07/17/2018 16:00:22 | 0 | Text Detail | 558 |
| 28 | ▓-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:23 | 07/17/2018 16:00:23 | 0 | Text Detail | 558 |
| 29 | ▓-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:01:34 | 07/17/2018 17:01:34 | 0 | Text Detail | 558 |
| 30 | ▓-4599 | ▓-4599 | | Inbound | 07/17/2018 17:03:09 | 07/17/2018 17:03:09 | 0 | Text Detail | 552 |
| 31 | ▓-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:05:31 | 07/17/2018 17:05:31 | 0 | Text Detail | 558 |
| 32 | (203) 802-5819 | ▓-4599 | | Inbound | 07/17/2018 17:09:04 | 07/17/2018 17:09:04 | 0 | Text Detail | 552 |
| 33 | ▓-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:13:28 | 07/17/2018 17:13:28 | 0 | Text Detail | 558 |
| 34 | ▓-4599 | (203) 591-5047 | (1203) 591-5047 | Outbound | 07/18/2018 10:18:07 | 07/18/2018 10:21:22 | 195 | Voice | 207 |

# MD000887 (Subset)

GZJ KDKV'J "

Date - 2017-08-25T14:51:11
Message - Class starts next week for Post U's Online Degree Program! There's still time to get started: call 203-568-1652. TxtSTOP2end
From number - +12034337702

Date - 2017-08-30T17:42:24
Message - Post University has not received your 2017/2018 FAFSA. You can access this financial aid application at fafsa.ed.gov (school code: 001401). Class begins this week, so if you need assistance, please call us at 203-568-1652 Msg&DataRatesMayApply
From number - +12034337705

Date - 2017-08-30T17:43:18
Message - STOP
To Number - +12034337705

Date - 2017-08-30T17:43:20
Message - You have been opted out of all subscriptions: Post_University_Info_Alerts. No more messages will be sent. Help at www.truedialog.com/help or 877-501-4276
From Number - +12034337705

PU00000028

# SOF ¶ 25
# Supporting Exhibits

# EXHIBIT I

**From:**             Melanie Davis <mdspecialist21@gmail.com>
**Sent:**             Thursday, September 21, 2017 2:56 PM
**To:**               Valluzzo, Carissa
**Subject:**        Re: *Urgent*-Response Required - No
**Attachments:**    image001.png

Hello Carissa!

Thank you for following up with me.  I am unable to attend school at time.  I was very interested at the time I contacted your school.  Shortly afterwards, my life was interrupted by unpleasant events and I am no longer able to continue my plans for school.

You may close my file.

Thank you!

Melanie


On Thu, Sep 21, 2017 at 10:20 AM Valluzzo, Carissa <CValluzzo@post.edu> wrote:



To Whom It May Concern:

PU00000062

A while back, we had received a request for more information regarding Post University's online degree programs. I'm sorry it didn't work out for you for the previous sessions. Our next session is coming up and I was seeing if this was something you were still interested in! I would be happy to answer any questions that you have and tell you more about the University at your earliest convenience! **You are welcome to call me at 203.596-4673 or text me at 860-407-4413.**

**Post University has classes beginning on October 23rd with plenty of time to get your file finalized!**

Please use one of the following responses so I can update our records:

If **YES**, please reply YES.

If **NO**, please reply to this email with: Close File.

Post University's online degree program courses are offered in eight-week modules, six times a year. You'll find that our program offers:

- Flexibility and convenience -- without sacrificing quality

- A chance to engage in highly interactive and relevant courses taught by professors skilled at stepping outside the text and into the real-world

- The benefits of a traditional New England college experience -- without having to go to campus
- Immediate opportunities to apply what you're learning in class to your career
- Access to a team of academic and student support specialists whose sole purpose is to be a champion of your success
- A chance to transfer credits from other accredited colleges and universities as they fit into your degree plan.

If you have any questions at all or would like to get your future started please do not hesitate to contact me. I look forward to assisting you as you make strides toward your academic and career goals!

Sincerely,

**Carissa Valluzzo**

Admissions Counselor

PU00000063





**Carissa Valluzzo**
ADP Admissions Counselor
CValluzzo@Post.edu
**w.** 203.596.4673

**Post Makes It Personal**

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

PU00000064

# SOF ¶ 26
# Supporting Exhibits

# EXHIBIT I

| | |
|---|---|
| **From:** | Melanie Davis <mdspecialist21@gmail.com> |
| **Sent:** | Thursday, September 21, 2017 2:56 PM |
| **To:** | Valluzzo, Carissa |
| **Subject:** | Re: *Urgent*-Response Required - No |
| **Attachments:** | image001.png |

Hello Carissa!

Thank you for following up with me.  I am unable to attend school at time.  I was very interested at the time I contacted your school.  Shortly afterwards, my life was interrupted by unpleasant events and I am no longer able to continue my plans for school.

You may close my file.

Thank you!

Melanie

On Thu, Sep 21, 2017 at 10:20 AM Valluzzo, Carissa <CValluzzo@post.edu> wrote:



To Whom It May Concern:

PU00000062

A while back, we had received a request for more information regarding Post University's online degree programs. I'm sorry it didn't work out for you for the previous sessions. Our next session is coming up and I was seeing if this was something you were still interested in! I would be happy to answer any questions that you have and tell you more about the University at your earliest convenience! **You are welcome to call me at 203.596.4673 or text me at 860-407-4413.**

**Post University has classes beginning on October 23rd with plenty of time to get your file finalized!**

Please use one of the following responses so I can update our records:

If **YES**, please reply YES.

If **NO**, please reply to this email with: Close File.

Post University's online degree program courses are offered in eight-week modules, six times a year. You'll find that our program offers:

- Flexibility and convenience -- without sacrificing quality

- A chance to engage in highly interactive and relevant courses taught by professors skilled at stepping outside the text and into the real-world

- The benefits of a traditional New England college experience -- without having to go to campus
- Immediate opportunities to apply what you're learning in class to your career
- Access to a team of academic and student support specialists whose sole purpose is to be a champion of your success
- A chance to transfer credits from other accredited colleges and universities as they fit into your degree plan.

If you have any questions at all or would like to get your future started please do not hesitate to contact me. I look forward to assisting you as you make strides toward your academic and career goals!

Sincerely,

**Carissa Valluzzo**

Admissions Counselor

PU00000063





**Carissa Valluzzo**
ADP Admissions Counselor
CValluzzo@Post.edu
**w.** 203.596.4673

**Post Makes It Personal**

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

PU00000064

# SOF ¶ 27
# Supporting Exhibits

# GZJ KDKV'L''

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

---

**Your FAFSA is Here!**
3 messages

---

**Meehan, Victoria** <VMeehan@post.edu>                                          Wed, Oct 11, 2017 at 12:24 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

Follow us on social media:





Dear Melanie,

The good news is you have done the hard part!

**Your 1718 FAFSA is currently on file at Post University.**


With the start of classes just around the corner, it's important to understand your financial aid award package and if going to college to change your life will be feasible for you. We have financial aid advisors available 7 days a week to discuss your options with you.


**To discuss your FAFSA and possibly get started in our October 23rd session please REPLY BACK:**


**The best phone number to reach me is: _____**


**The best time to call me is: _____**


Sincerely

*V Meehan*

Assistant Director of Admissions

MD000396



Follow us on social media:





**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

📄 **image006.emz**
2K

---

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Oct 11, 2017 at 6:42 PM
To: "Meehan, Victoria" <VMeehan@post.edu>

Please stop emailing, texting, sms, calls and voicemail!!

This is the third or fourth time I am asking to be removed from all of your lists!!

Thank you!
[Quoted text hidden]

---

**11 attachments**

 **image002.png**
3K

 **image003.png**
2K

 **image002.png**
3K

 **image001.png**
2K

 **image008.jpg**
13K

MD000397



**image004.png**
3K

**image005.png**
31K

**image007.png**
2K

**image001.png**
2K

**image003.png**
2K

**image004.png**
3K

---

**Melanie Davis** <mdspecialist21@gmail.com>
To: Jeremy Glapion <jmg@glapionlaw.com>

Wed, Jul 18, 2018 at 10:09 AM



MD000398

# SOF ¶ 28
# Supporting Exhibits

# GZJ KKV'L''

 **Gmail**

Melanie Davis <mdspecialist21@gmail.com>

---

**Your FAFSA is Here!**
3 messages

---

**Meehan, Victoria** <VMeehan@post.edu>
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

Wed, Oct 11, 2017 at 12:24 PM

Follow us on social media:





Dear Melanie,

The good news is you have done the hard part!

**Your 1718 FAFSA is currently on file at Post University.**

With the start of classes just around the corner, it's important to understand your financial aid award package and if going to college to change your life will be feasible for you. We have financial aid advisors available 7 days a week to discuss your options with you.

<u>**To discuss your FAFSA and possibly get started in our October 23rd session please REPLY BACK:**</u>

**The best phone number to reach me is: _____**

**The best time to call me is: _____**

Sincerely

*V Meehan*

Assistant Director of Admissions

MD000396



Follow us on social media:





**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

📄 **image006.emz**
2K

---

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Oct 11, 2017 at 6:42 PM
To: "Meehan, Victoria" <VMeehan@post.edu>

Please stop emailing, texting, sms, calls and voicemail!!

This is the third or fourth time I am asking to be removed from all of your lists!!

Thank you!
[Quoted text hidden]

---

**11 attachments**

 **image002.png**
3K

 **image003.png**
2K

 **image002.png**
3K

 **image001.png**
2K

 **image008.jpg**
13K

MD000397



image004.png
3K

image005.png
31K

image007.png
2K

image001.png
2K

image003.png
2K

image004.png
3K

---

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Jul 18, 2018 at 10:09 AM
To: Jeremy Glapion <jmg@glapionlaw.com>



MD000398

# SOF ¶ 29
# Supporting Exhibits

Page 1

1                 UNITED STATES DISTRICT COURT

2                 SOUTHERN DISTRICT OF FLORIDA

3      -----------------------------)

4      MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,            )    18-81004-CIV

6          vs.                       )

7      POST UNIVERSITY, INC.,        )

8              Defendant.            )

9      -----------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                 DATE:  APRIL 11, 2019

15                      HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

```
                                                  Page 249

1                    (Exhibit 33, Emails, Bates Numbers

2                    MD000396 through 398, marked for

3                    identification.)

4     BY MR. GLAPION:

5          Q.     This appears to be an email chain between

6     Victoria Meehan and someone at the email address

7     mdspecialist21@gmail.com; correct?

8          A.     Yes.

9          Q.     And the email is initially from Ms. Meehan

10    to mdspecialist; correct?

11         A.     Yes.

12         Q.     And I'll represent to you that

13    mdspecialist21@gmail.com is Melanie Davis's email

14    address just so we don't have to call her

15    mdspecialist for the rest of this segment.

16         A.     Fair enough.

17         Q.     If you look at the page marked MD397, it

18    appears to be a response email from Melanie Davis to

19    Victoria Meehan.

20                Do you see that?

21         A.     I do.

22         Q.     In that email, Melanie Davis writes,

23    Please stop emailing, texting, SMS, calls and

24    voicemail.

25                Do you see that?
```

Page 250

1        A.      I do.

2        Q.      Does Post consider that to be a Do Not

3    Call request?

4        A.      Yes.

5        Q.      Would you consider this to be a Do Not

6    Call request?

7        A.      Yes.

8        Q.      According to your previous testimony, how

9    should this email have been treated?   Excuse me.

10   According to your previous testimony, how should the

11   request made in this email have been treated?

12       A.      Records should have been rejected as Not

13   Interested, Remove From List and all of the other

14   detail that follows.

15       Q.      And if we go to -- and actually if you

16   look at the dates of this email, it appears to be on

17   October 11, 2017; correct?

18       A.      Pardon me?

19       Q.      This email exchange happened on

20   October 11, 2017; correct?

21       A.      Yes.

22       Q.      And if we look at 17440, which is the

23   expanded audit trail, does this appear as you would

24   expect an expanded audit trail to look?

25       A.      Yes.

Page 251

1      Q.     And it has columns with headers such as

2  User Sign In, ID, The Operation, Field Modified, Old

3  Value, New Value, and Date.

4         Do you see that?

5      A.     I do.

6      Q.     It also has columns for Last Name and

7  First Name of what seems to be Post employees;

8  correct?

9      A.     Yes.

10     Q.     And generally speaking, is that how an

11  audit trail works, it logs which employee takes

12  which action with respect to a file?

13     A.     Yes.

14     Q.     And I will scroll to the right to show the

15  columns Field Modified, Old Value and New Value.

16  Excuse me, I'll scroll to Old Value and New Value,

17  because Old Value and New Value, those would reflect

18  what it was and what it was changed to; correct?

19     A.     Correct.

20     Q.     So if Ms. Davis was marked as Remove From

21  List, it would reflect in an old value becoming --

22  one of the old values becoming Remove From List; is

23  that accurate?

24     A.     Yes.

25     Q.     And if we look at the rightmost column,

Page 252

1   Date, we established that this email exchange was

2   dated October 11, 2017.

3           Do you see any old values or new values or

4   any indication that Ms. Davis was marked as Remove

5   From List on October 11, 2017?  And I can scroll

6   left or right as needed.

7       A.    No.  I see that Ms. Davis's FAFSA arrived.

8   That's the --

9       Q.    Which time stamp is that, if you don't

10  mind?

11      A.    12:35, FAFSA is here, mail merge 1011 V.

12  So that would suggest that Ms. Davis filled out her

13  free application for federal student aid, put our

14  school code on it, and we received it, which is why

15  V reached out to her via email.  That's what I would

16  deduce from that.

17      Q.    Correct.  This email that we discussed

18  that is marked Exhibit 33, the subject is Your FAFSA

19  is here.

20          Do you see that?

21      A.    Yes.

22      Q.    So this email, the field you just

23  mentioned that said FAFSA is here, mail merge

24  corresponds with this email; is that --

25      A.    Yes.

1    Q.    So it would have been after this email was

2  sent on October 11 that Ms. Davis, per your

3  testimony, should have been marked as Remove From

4  List; correct?

5    A.    Well, there is a notation of the fact that

6  the FAFSA is here, so she sent an email to let her

7  know -- Ms. Davis know that her FAFSA was here, and

8  it takes one to two days to fill out a FAFSA, and

9  you need to put a specific school code, specific to

10  each institution.  So within two days, Ms. Davis had

11  filled out her FAFSA and put our school code on it.

12    Q.    My question though is nothing about what

13  Ms. Davis did or didn't do with the school code.  My

14  question is, based on your testimony that Ms. Davis

15  should have been marked as Remove From List, among

16  other things, and I'm asking if in this audit trail

17  do you see on October 11th Ms. Davis being marked as

18  Remove From List?

19    A.    I do not.

20    Q.    And I'm going to hand you another exhibit,

21  if I can find it.

22              MR. GLAPION:  If we can mark this as

23  Exhibit 34, please.

24              (Exhibit 34, Emails, Bates Numbers

25              MD000308 through 311, marked for

# SOF ¶ 30
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------)

4     MELANIE DAVIS,                 )    CASE NO.:

5             Plaintiff,             )    18-81004-CIV

6         vs.                        )

7     POST UNIVERSITY, INC.,         )

8             Defendant.             )

9     ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 249

```
 1              (Exhibit 33, Emails, Bates Numbers
 2              MD000396 through 398, marked for
 3              identification.)
 4   BY MR. GLAPION:
 5       Q.    This appears to be an email chain between
 6   Victoria Meehan and someone at the email address
 7   mdspecialist21@gmail.com; correct?
 8       A.    Yes.
 9       Q.    And the email is initially from Ms. Meehan
10   to mdspecialist; correct?
11       A.    Yes.
12       Q.    And I'll represent to you that
13   mdspecialist21@gmail.com is Melanie Davis's email
14   address just so we don't have to call her
15   mdspecialist for the rest of this segment.
16       A.    Fair enough.
17       Q.    If you look at the page marked MD397, it
18   appears to be a response email from Melanie Davis to
19   Victoria Meehan.
20              Do you see that?
21       A.    I do.
22       Q.    In that email, Melanie Davis writes,
23   Please stop emailing, texting, SMS, calls and
24   voicemail.
25              Do you see that?
```

Page 250

1      A.    I do.

2      Q.    Does Post consider that to be a Do Not

3  Call request?

4      A.    Yes.

5      Q.    Would you consider this to be a Do Not

6  Call request?

7      A.    Yes.

8      Q.    According to your previous testimony, how

9  should this email have been treated?   Excuse me.

10  According to your previous testimony, how should the

11  request made in this email have been treated?

12      A.    Records should have been rejected as Not

13  Interested, Remove From List and all of the other

14  detail that follows.

15      Q.    And if we go to -- and actually if you

16  look at the dates of this email, it appears to be on

17  October 11, 2017; correct?

18      A.    Pardon me?

19      Q.    This email exchange happened on

20  October 11, 2017; correct?

21      A.    Yes.

22      Q.    And if we look at 17440, which is the

23  expanded audit trail, does this appear as you would

24  expect an expanded audit trail to look?

25      A.    Yes.

Page 251

1    Q.    And it has columns with headers such as

2    User Sign In, ID, The Operation, Field Modified, Old

3    Value, New Value, and Date.

4          Do you see that?

5    A.    I do.

6    Q.    It also has columns for Last Name and

7    First Name of what seems to be Post employees;

8    correct?

9    A.    Yes.

10   Q.    And generally speaking, is that how an

11   audit trail works, it logs which employee takes

12   which action with respect to a file?

13   A.    Yes.

14   Q.    And I will scroll to the right to show the

15   columns Field Modified, Old Value and New Value.

16   Excuse me, I'll scroll to Old Value and New Value,

17   because Old Value and New Value, those would reflect

18   what it was and what it was changed to; correct?

19   A.    Correct.

20   Q.    So if Ms. Davis was marked as Remove From

21   List, it would reflect in an old value becoming --

22   one of the old values becoming Remove From List; is

23   that accurate?

24   A.    Yes.

25   Q.    And if we look at the rightmost column,

1    Date, we established that this email exchange was

2    dated October 11, 2017.

3              Do you see any old values or new values or

4    any indication that Ms. Davis was marked as Remove

5    From List on October 11, 2017?  And I can scroll

6    left or right as needed.

7       A.    No.  I see that Ms. Davis's FAFSA arrived.

8    That's the --

9       Q.    Which time stamp is that, if you don't

10   mind?

11      A.    12:35, FAFSA is here, mail merge 1011 V.

12   So that would suggest that Ms. Davis filled out her

13   free application for federal student aid, put our

14   school code on it, and we received it, which is why

15   V reached out to her via email.  That's what I would

16   deduce from that.

17      Q.    Correct.  This email that we discussed

18   that is marked Exhibit 33, the subject is Your FAFSA

19   is here.

20              Do you see that?

21      A.    Yes.

22      Q.    So this email, the field you just

23   mentioned that said FAFSA is here, mail merge

24   corresponds with this email; is that --

25      A.    Yes.

Page 253

1      Q.    So it would have been after this email was

2   sent on October 11 that Ms. Davis, per your

3   testimony, should have been marked as Remove From

4   List; correct?

5      A.    Well, there is a notation of the fact that

6   the FAFSA is here, so she sent an email to let her

7   know -- Ms. Davis know that her FAFSA was here, and

8   it takes one to two days to fill out a FAFSA, and

9   you need to put a specific school code, specific to

10  each institution.  So within two days, Ms. Davis had

11  filled out her FAFSA and put our school code on it.

12     Q.    My question though is nothing about what

13  Ms. Davis did or didn't do with the school code.  My

14  question is, based on your testimony that Ms. Davis

15  should have been marked as Remove From List, among

16  other things, and I'm asking if in this audit trail

17  do you see on October 11th Ms. Davis being marked as

18  Remove From List?

19     A.    I do not.

20     Q.    And I'm going to hand you another exhibit,

21  if I can find it.

22              MR. GLAPION:  If we can mark this as

23  Exhibit 34, please.

24              (Exhibit 34, Emails, Bates Numbers

25              MD000308 through 311, marked for

# SOF ¶ 31
# Supporting Exhibits

# EXHIBIT C

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | CALLING_NBR | CALLED_NBR | DIALED_DIGITS | MOBILE ROLE | START_DATE | END_DATE | DURATION (SEC) | Call Type | NEID |
| 2 | ■-4599 | (844) 246-9758 | (1844) 246-9758 | Outbound | 08/09/2017 17:39:48 | 08/09/2017 18:22:07 | 2539 | Voice | 207 |
| 3 | (203) 564-9763 | ■-4599 | | Inbound | 08/09/2017 18:33:10 | 08/09/2017 18:33:10 | 0 | Text Detail | 198 |
| 4 | (203) 564-9763 | ■6-4599 | | Inbound | 08/09/2017 18:33:11 | 08/09/2017 18:33:11 | 0 | Text Detail | 198 |
| 5 | (203) 596-8364 | ■-4599 | -325 | Inbound | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 6 | (203) 596-8364 | -325 | ■-4599 | Routed_Call | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 7 | (203) 596-4625 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/13/2017 15:40:56 | 08/13/2017 15:42:29 | 93 | Voice | 207 |
| 8 | (203) 596-8364 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/14/2017 15:55:18 | 08/14/2017 16:00:21 | 303 | Voice | 207 |
| 9 | (203) 596-8364 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 10 | (203) 596-8364 | ■-4599 | ■-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 11 | (203) 596-4625 | ■-4599 | -459 | Undetermined | 08/15/2017 15:49:14 | 08/15/2017 15:49:27 | 13 | Voice | 207 |
| 12 | (203) 596-4625 | ■-4599 | | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 13 | (203) 596-4625 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 14 | (203) 596-4625 | ■-4599 | -554 | Undetermined | 08/15/2017 16:58:59 | 08/15/2017 16:59:26 | 27 | Voice | 207 |
| 15 | (203) 433-7705 | ■-4599 | | Inbound | 08/30/2017 17:42:23 | 08/30/2017 17:42:23 | 0 | Text Detail | 547 |
| 16 | (203) 433-7705 | ■-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:24 | 0 | Text Detail | 547 |
| 17 | ■-4599 | (203) 433-7705 | | Outbound | 08/30/2017 12:43:17 | 08/30/2017 12:43:17 | 0 | Text Detail | 229 |
| 18 | (203) 591-5144 | (6245000) 000-0901 | ■-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 19 | (203) 591-5144 | ■-4599 | ■-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 20 | (203) 591-5144 | ■-4599 | -191 | Undetermined | 10/18/2017 14:57:29 | 10/18/2017 14:57:52 | 23 | Voice | 207 |
| 21 | (203) 596-8364 | ■-4599 | ■-4599 | Inbound | 01/11/2018 18:56:22 | 01/11/2018 18:58:03 | 101 | Voice | 207 |
| 22 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:56:45 | 07/17/2018 15:56:45 | 0 | Text Detail | 552 |
| 23 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:56:51 | 07/17/2018 15:56:51 | 0 | Text Detail | 552 |
| 24 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:56:59 | 07/17/2018 15:56:59 | 0 | Text Detail | 552 |
| 25 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:57:05 | 07/17/2018 15:57:05 | 0 | Text Detail | 552 |
| 26 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:57:12 | 07/17/2018 15:57:12 | 0 | Text Detail | 552 |
| 27 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:22 | 07/17/2018 16:00:22 | 0 | Text Detail | 558 |
| 28 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:23 | 07/17/2018 16:00:23 | 0 | Text Detail | 558 |
| 29 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:01:34 | 07/17/2018 17:01:34 | 0 | Text Detail | 558 |
| 30 | ■-4599 | (203) 802-5819 | | Inbound | 07/17/2018 17:03:09 | 07/17/2018 17:03:09 | 0 | Text Detail | 552 |
| 31 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:05:31 | 07/17/2018 17:05:31 | 0 | Text Detail | 558 |
| 32 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 17:09:04 | 07/17/2018 17:09:04 | 0 | Text Detail | 552 |
| 33 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:13:28 | 07/17/2018 17:13:28 | 0 | Text Detail | 558 |
| 34 | ■-4599 | (203) 591-5047 | (1203) 591-5047 | Outbound | 07/18/2018 10:18:07 | 07/18/2018 10:21:22 | 195 | Voice | 207 |

MD000887 (Subset)

# EXHIBIT D



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330   Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports

**Calling number:**     This column reflects the number placing the call (the individual who initiated the call).     If the call is an outgoing call, this will be the Sprint PCS target number.

**Called number:**     This column reflects the number actually called.     In most cases this number will be the same as the number in the "Dialed Digits" column.     If the number has been forwarded, or if there is a routing number, then this will be reflected. If the number has a 11 in front of the area code, that means the call rolled to voicemail and was NOT answered by the customer.

**Dialed digits:**     This column reflects the digits that the caller enters into the keypad of the phone.     If the call is an incoming call, this will be the Sprint PCS target number.

**Mobile Role:**     Mobile Role (Type of Call).     Listed as outgoing, incoming, routed call or undetermined.

**Start Date:**     Date and time the call was initiated.

**End Date:**     Date and time the call was ended.

**Duration:**     Duration of call, in seconds.

**Call Type:**     Indicates the type of transaction on the network.     This includes, but not limited to: Voice, Text Detail, WiFi and Airave.

**NEID:**     This reflects which network element handled the call.

MD000907



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports, cont.

*Routed calls come in several varieties.    A TLDN (Temporary Local Directory Number) may be considered to be a bridge/router number to complete a call.    A TLDN will be represented by a number that may range from 3 to 10 digits in length.    Similar to TLDN, an IMRN (IP Multimedia Routing Number), will be used to route Apple WiFi Calls.    Another scenario is when a call is not answered, but is routed to voicemail. Calls routed straight to voicemail    may also have an "11" before the number indicated in the "Called_Nbr" column. For handsets using visual voicemail, these numbers may replace the "11" in the called number column: (800) 877-2400, (866) 677-8204, (866) 222-2604, and (877) 836-4746    The indicator that Sprint's Visual Voicemail platform was used within the session appears as 624500000XXXXXXX.

*WiFi Call Type: Please note that Sprint does not have the capability to determine the time stamp. These calls can be reflected in Switch time or GMT.

*The CDMA call detail report may indicate the sending and receipt of text messages and e-mail.    While not flagged as text messages, the line will indicate no duration, the dialed digits column will either be blank or will show an e-mail address, and the NEID column may contain one of the following numbers: 191-198 226-229 291-294

* On the CDMA network, Sprint maintains Gateway, SWATs (Soft Wireless Access Tandem) and MCGs (Media Gateway Controllers)    networks in areas where there are large Sprint customer populations. These provide the required extra space that helps Sprint maintain all of the calls.    When a call moves through a gateway or SWAT cell site information is not retained and is not recoverable.    NEIDs for Gateways 124-125, SWATs are 96, 184-190, 263, 363-365 and MGCs are 366-371

* Time Zones: Beginning 10/20/17 through present SMS text message time stamps are in Central. From 05/31/2017 through 10/19/2017, text message time stamps may have been GMT.    An indicator of GMT time zones include the NEID range of 540-559.    From October 12, 2010 through May of 2017 text message time stamps were kept in Central time zone. Records prior to October 12, 2010 are either in Central or Eastern time zone.    Sprint is unable to determine which time zone is reflected in records older than October 12, 2010.

*Please be advised: The time stamp reflected on call detail reports for Sprint CDMA during the time frame of 02/04/2018 through 02/28/2018 may have been affected by a storage related upgrade. During this period, transactions may be reflected in GMT instead of the time stamp native to the switch utilized in the transaction.    This includes, but is not limited to, Voice calls and SMS transactions.



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports, cont.

*Short codes, also known as short numbers, are special telephone codes, significantly shorter than full telephone numbers, which can also be used to address SMS and MMS messages from mobile phones or fixed phones. Short codes are often associated with automated services. An automated program can handle the response and typically requires the sender to start the message with a command word or prefix. A list of short codes is not maintained by Sprint as number of short codes is extensive and constantly growing. Example of a short code- the customer may want updates pertaining to their favorite sports team.   The customer would sign up with that team in order to receive text message updates relevant to the team.

* Please Note - Calls made on another carrier's network, will not appear on our CDR records.   If you suspect the device was roaming on another network, please obtain those records from the other carrier.

* Please Note - As of approximately September 2018, Sprint performed a soft-launch of a voice-over-LTE product.    Because of this launch, certain calls are routed through a specific network element that time-stamps these transactions in central time.    These transactions will not have location information and may appear on the records as call type 42 or Voice.

MD000909



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

# Star Codes

Your request has been fulfilled, at least in part, by what is known as a CDMA CDR Report.    A CDMA CDR Report lists information about incoming/outgoing calls including the digits dialed on the handset.    As a dialing shortcut, PCS subscribers may use star codes (an asterisk (*) plus a short number sequence) when using our wireless telephones.    On call detail reports the star may be indicated by a letter "B". This code will appear in the dialed digits column of the CDMA CDR Report.    Following is a list of the most common star codes.    Additional star codes may exist in the market from which the call is made. Please contact the Subpoena Compliance Group at the number listed above for more information concerning star codes.

> *18 - Ping the nearest tower, call delivery activate
> *180 - Call delivery deactivate
> *2 - Customer Care
> *3 - Payment Center
> *31 - Three Way Calling
> *4 - Account information
> *5 - Spanish Customer care
> *67 - Caller ID block
> *68 - Override caller ID block
> *70 - Cancel call waiting for that call
> *711 - Customer Care
> *72 - Activates call forwarding
> *720 - Deactivates call forwarding
> *73 - Call forwarding no answer
> *74 - Call forward busy
> *811 - Customer Care
> *82 - Override caller ID block- for that call
> *911 - 911
> *073 - Cancel call forward no answer
> *074 - Cancel call forward busy

Other numbers which may appear in the dialed digits column:

> 411 - Directory assistance
> 611 - Customer Care
> 711 - Telecommunications Relay Service (hearing impaired)
> 911 - Can also dial 0911 or 1911
> c777 - Web Browsing (SINS)

MD000910

# EXHIBIT G

**Activities List** | Back to Opportunity Detail                                                                Help | Printer Friendly

**Completed Activities**   [Log A Call]

All 0-9 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z [____] [Go]

| | Subject | Type | Activity | Due Date | Completed Date ▼ | Status | Alias | Created: Date | Created By |
|---|---|---|---|---|---|---|---|---|---|
| Edit ▾ | DO NOT CALL- NOT INTERESTED | Call | Task | 1/11/2018 | 1/11/2018 06:58 PM | Completed | Rita Francisco | 1/11/2018 06:58 PM | Rita Francisco |
| Edit ▾ | voicemail | Call | Task | 10/18/2017 | 10/18/2017 02:57 PM | Completed | Kimberly Williams | 10/18/2017 02:57 PM | Kimberly Williams |
| Edit ▾ | HS Trans/Lost Recd Ofc HS Trans/Graduated 1993 | Document | Task | 8/10/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/10/2017 08:42 AM | Nicole Sciascia |
| Edit ▾ | EC: Opportunity Lost - Close/Complete all tasks related to transcripts. | To Do | Task | 8/15/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | Tuition Planner:  Opportunity Closed/Deferred or Closed/Lost | To Do | Task | 8/15/2017 | 8/15/2017 05:09 PM | Completed | Carissa Wasikowski | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | Vm | Call | Task | 8/15/2017 | 8/15/2017 05:00 PM | Completed | Victoria Meehan | 8/15/2017 05:00 PM | Victoria Meehan |
| Edit ▾ | LVM about student calling me to start next MOD or see what she is so nervous about. | Call | Task | 8/15/2017 | 8/15/2017 03:51 PM | Completed | Rita Francisco | 8/15/2017 03:51 PM | Rita Francisco |
| Edit ▾ | N/A to Google Voice Call | Call | Task | 8/15/2017 | 8/15/2017 12:19 PM | Completed | Rita Francisco | 8/15/2017 12:19 PM | Rita Francisco |
| Edit ▾ | Vm and text about FAFSA | Call | Task | 8/13/2017 | 8/13/2017 03:43 PM | Completed | Victoria Meehan | 8/13/2017 03:43 PM | Victoria Meehan |
| Edit ▾ | recommendation | Call | Task | 8/11/2017 | 8/11/2017 03:46 PM | Completed | Rita Francisco | 8/11/2017 03:46 PM | Rita Francisco |
| Edit ▾ | I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8./11 | Call | Task | 8/11/2017 | 8/11/2017 02:55 PM | Completed | Rita Francisco | 8/11/2017 02:55 PM | Rita Francisco |
| Edit ▾ | Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Call | Task | 8/11/2017 | 8/11/2017 02:16 PM | Completed | Nicole Sciascia | 8/11/2017 02:16 PM | Nicole Sciascia |
| Edit ▾ | Sent recommendation/welcome text | Call | Task | 8/11/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/11/2017 09:11 AM | Victoria Meehan |
| Edit ▾ | Application Received - Contact Student (Manager Task) | To Do | Task | 8/9/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Send Online Application Link to Prospective Student | To Do | Task | 8/9/2017 | 8/10/2017 02:00 PM | Completed | Rita Francisco | 8/9/2017 06:13 PM | Rita Francisco |
| Edit ▾ | Application Received | To Do | Task | 8/9/2017 | 8/10/2017 01:37 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Financial Aid Advisor: Application Received - Contact Student | To Do | Task | 8/10/2017 | 8/10/2017 11:00 AM | Completed | Carissa Wasikowski | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | NOTES>> | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | Appt 8/11 to discuss FAFSA | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | EC: Transcript Request Form | HS Transcript Request | Task | 8/9/2017 | 8/10/2017 08:42 AM | Completed | Nicole Sciascia | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Completed TRF | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Completed Application | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Student has completed the Online Application | Other | Task | 8/9/2017 | 8/9/2017 06:53 PM | Completed | Rita Francisco | 8/9/2017 06:53 PM | Integration User |
| Edit ▾ | Student has started the Application | Other | Task | 8/9/2017 | 8/9/2017 06:43 PM | Completed | Rita Francisco | 8/9/2017 06:43 PM | Integration User |

All 0-9 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

Number of records displayed: [75 ▾]

PU00000003

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS,** | Civil Case No.: 18-cv-81004-RLR |
| Plaintiff, | **Defendant's Responses to Plaintiff's Third Set of Interrogatories** |
| v. | |
| **POST UNIVERSITY, INC.** | |
| Defendant. | |

PROPOUNDING PARTY:    Melanie Davis ("Plaintiff")

RESPONDING PARTIES:    Post University, Inc. ("Defendant")

SET NUMBER:                  Three (3)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Post University, Inc., through counsel, hereby responds to the Third Set of Interrogatories ("Interrogatories") propounded to it by Plaintiff Melanie Davis ("Plaintiff").

These responses are made solely for the purpose of the above-captioned proceeding. Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Interrogatories. All responses are given on the basis of a good faith effort to locate requested information. Upon additional information being located throughout the course of discovery, Defendant will supplement its responses.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 8

Explain the distinction between an "opportunity" and a "lead", if any, and list and describe any other similar designations or categories which were or could be assigned to prospective students.

### RESPONSE TO INTERROGATORY NO. 8

A "lead" refers to a situation in which an individual requests information from Post University about its educational offerings. An "opportunity" refers to a situation in which the

University has had the opportunity to follow up and speak with the individual who reached out for additional information to confirm that individual's interest in pursuing their education at Post University.

**INTERROGATORY NO. 9**

Explain why and when an "opportunity" would be considered "lost", "deferred", and/or "closed".

**RESPONSE TO INTERROGATORY NO. 9**

"Lost" or "closed" opportunities are considered one in the same.  Lost or closed opportunities may occur when the prospective student has provided their consent for the University to contact that individual regarding the University's educational offerings, but the University is unsuccessful in speaking with that individual again.  Lost or closed opportunities may also occur when a prospective student states that they are not currently interested in attending the University, but would like the University to continue to follow up with them because they may be interested at a future time.  Opportunities may also be lost or closed if the prospective student has stated that they no longer are interested in attending the University.  Ultimately, the reason that a given prospective student may be designated as lost or closed depends on the facts and circumstances surrounding the particular prospective student.

Deferred opportunities occur when a prospective student desires to attend the University, but has stated that he or she does not intend to do so until a specified school term in the future, rather than the current term.

**INTERROGATORY NO. 10**

Explain the meaning of each item, sentence, phrase, and/or abbreviation under the "Subject" fields of PU00000003 and PU00000008-09.

**RESPONSE TO INTERROGATORY NO. 10**

| Subject | Explanation |
|---|---|
| DO NOT CALL – NOT INTERESTED | Ms. Davis asked that the University not call her anymore |
| Voicemail | The University left Ms. Davis a voicemail |
| EC: Opportunity Lost – Close/Complete all tasks related to transcripts | System-generated subject line stating that the opportunity was lost and alerting admissions counselors to complete all tasks related to transcripts |

2

| HS Trans/Lost Recd Ofc HS Trans/Graduated 1993 | System-generated note generating task before opportunity is lost |
|---|---|
| Tuition Planner: Opportunity Closed/Deferred or Closed/Lost | System-generated note generating task before opportunity is lost |
| Vm | Note that a voicemail was left for Ms. Davis |
| LVM about student calling me to start next MOD or see what she is so nervous about. | Note that a voicemail was left for Ms. Davis about starting the next term |
| N/A to Google Voice call | Note that there was no answer after call to Ms. Davis |
| Vm and text about FAFSA | Note that a voicemail was left and text submitted to Ms. Davis concerning the FAFSA application |
| Recommendation | Note that call was made regarding recommendation |
| I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8/11 | Note that Ms. Davis was told that her file would be closed for the current term if she did not submit the necessary FAFSA information |
| Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Note that Ms. Davis's transcript request form was sent to the Retention Center at Olympic Heights High School |
| Sent recommendation/welcome text | Note that a welcome text was sent to Ms. Davis |
| Application Received – Contact Student (Manager Task) | System-generated note after initial interview with Ms. Davis |
| Send Online Application Link to Prospective Student | System-generated note after initial interview with Ms. Davis |
| Application Received | System-generated note to admissions counselors that Ms. Davis's application was received |

3

| | |
|---|---|
| Financial Aid Advisor: Application Received – Contact Student | System-generated note to admissions counselors to contact Ms. Davis since her application was received |
| NOTES>> | Notes about the call with Ms. Davis |
| Appt 8/11 to discuss FAFSA | Note that admissions counselor scheduled an appointment on 8/11 with Ms. Davis to discuss the FAFSA application |
| EC: Transcript Request Form | Allows admissions counselor to obtain Ms. Davis's Transcript Request Form |
| Completed TRF | System-generated note with Ms. Davis's completed Transcript Request Form |
| Completed Application | System-generated note with Ms. Davis's completed online application attached |
| Student has completed the Online Application | System-generated note that Ms. Davis completed the online application to Post University |
| Student has started the Application | System-generated note that Ms. Davis started an application to Post University |

Dated: January 7, 2018

Respectfully submitted,

By: */s/ Adam Bowser*
Adam Bowser
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006-5344
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)
adam.bowser@arentfox.com

*Attorney for Post University, Inc.*

## <u>VERIFICATION</u>

I, Elaine Neely, Chief Regulatory Officer for Post University, Inc., believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on the 7th day of January, 2019.

Elaine Neely, Chief Regulatory Officer, Post University


/s/ Elaine Neely
Elaine Neely

# SOF ¶ 32
# Supporting Exhibits

# EXHIBIT K



Melanie Davis <mdspecialist21@gmail.com>

**It's Not Too Late *Please Reply***
1 message

**Meehan, Victoria** <VMeehan@post.edu>                                    Wed, Oct 18, 2017 at 8:37 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



Dear Melanie,

It is not too late for you to change your life through education!

Post University offers 24/7 tutoring, lifelong career services assistance and unparalleled flexibility and support.

Once before you told us that was what you wanted from a school, is that still the case?

**To get started in our October 23rd session please REPLY BACK:**

**The best phone number to reach me is:** _____

**The best time to call me is:** _____

Sincerely

*V Meehan*

Assistant Director of Admissions

MD000413



Follow us on social media:





**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**image002.emz**
2K

# SOF ¶ 33
# Supporting Exhibits

# EXHIBIT L

 **Gmail**                                Melanie Davis <mdspecialist21@gmail.com>

---

## New Year, New You- Classes now forming at Post University!

2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                 Wed, Nov 8, 2017 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>





Melanie,

I hope this email finds you well.  You were previously working with our admissions team regarding enrollment for Post University's online accelerated programs. I know timing was off and you were unable to start in 2017. I wanted to let you know Post University is now registering students for courses that begin on January 8th 2018 and this is the first class of the New Year!

**Here are a few facts about Post University:**

MD000308

- We are regionally accredited.
- Our sessions are 8 weeks long (accelerated to help you finish quickly).
- NO set login times! You will not be required to be online at a specific time during the week.
- You can take 1 or 2 classes per 8 weeks.
- We have NO application fee.
- Please take a few moments to look over our website and our program offerings - PROGRAMS

## YOUR FUTURE BEGINS TODAY!

### Get started today by completing your FAFSA.

And you can complete your 2017/2018 FAFSA at

www.fafsa.ed.gov

Post University school code 001401

*Don't wait another year to begin working on your dreams! 2018 is a new year and a new you!*

If you are no longer interested in completing your degree, please respond to this email and I will update our records.

I look forward to assisting you with your goals. Feel free to reach me directly:

*Kimberly Williams*

*203.591.5144*

MD000309



**Kimberly Williams**

Admissions Counselor ADP - Team Lead

KWilliams@Post.edu

**w.** 203.591.5144

**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                Wed, Nov 8, 2017 at 4:04 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Kimberly Williams, I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind.  I am no longer interested in applying to attend Post University!

Please let this be the last communication regarding your school.

Thank you!

[Quoted text hidden]

**3 attachments**


**image003.jpg**
12K


**image002.jpg**
17K

MD000310



**image001.png**
36K

MD000311

# SOF ¶ 34
# Supporting Exhibits

# EXHIBIT L

 Melanie Davis <mdspecialist21@gmail.com>

## New Year, New You- Classes now forming at Post University!

2 messages

**Williams, Kimberly** <KWilliams@post.edu>                    Wed, Nov 8, 2017 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>





Melanie,

I hope this email finds you well.  You were previously working with our admissions team regarding enrollment for Post University's online accelerated programs. I know timing was off and you were unable to start in 2017. I wanted to let you know Post University is now registering students for courses that begin on January 8th 2018 and this is the first class of the New Year!

**Here are a few facts about Post University:**

MD000308

- We are regionally accredited.

- Our sessions are 8 weeks long (accelerated to help you finish quickly).

- NO set login times! You will not be required to be online at a specific time during the week.

- You can take 1 or 2 classes per 8 weeks.

- We have NO application fee.

- Please take a few moments to look over our website and our program offerings - PROGRAMS

# YOUR FUTURE BEGINS TODAY!

## Get started today by completing your FAFSA.

And you can complete your 2017/2018 FAFSA at

www.fafsa.ed.gov

Post University school code 001401

*Don't wait another year to begin working on your dreams! 2018 is a new year and a new you!*

If you are no longer interested in completing your degree, please respond to this email and I will update our records.

I look forward to assisting you with your goals. Feel free to reach me directly:

*Kimberly Williams*

*203.591.5144*

MD000309



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

---

**Melanie Davis** <mdspecialist21@gmail.com>                     Wed, Nov 8, 2017 at 4:04 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Kimberly Williams, I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind.  I am no longer interested in applying to attend Post University!

Please let this be the last communication regarding your school.

Thank you!

[Quoted text hidden]

---

**3 attachments**


**image003.jpg**
12K


**image002.jpg**
17K

MD000310



**image001.png**
36K

MD000311

# SOF ¶ 35
# Supporting Exhibits

# EXHIBIT L

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

## New Year, New You- Classes now forming at Post University!

2 messages

**Williams, Kimberly** <KWilliams@post.edu>
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

Wed, Nov 8, 2017 at 3:47 PM





Melanie,

I hope this email finds you well.  You were previously working with our admissions team regarding enrollment for Post University's online accelerated programs. I know timing was off and you were unable to start in 2017. I wanted to let you know Post University is now registering students for courses that begin on January 8th 2018 and this is the first class of the New Year!

**Here are a few facts about Post University:**

MD000308

- We are regionally accredited.

- Our sessions are 8 weeks long (accelerated to help you finish quickly).

- NO set login times! You will not be required to be online at a specific time during the week.

- You can take 1 or 2 classes per 8 weeks.

- We have NO application fee.

- Please take a few moments to look over our website and our program offerings - PROGRAMS

# YOUR FUTURE BEGINS TODAY!

## Get started today by completing your FAFSA.

And you can complete your 2017/2018 FAFSA at

www.fafsa.ed.gov

Post University school code 001401

*Don't wait another year to begin working on your dreams! 2018 is a new year and a new you!*

If you are no longer interested in completing your degree, please respond to this email and I will update our records.

I look forward to assisting you with your goals. Feel free to reach me directly:

*Kimberly Williams*

*203.591.5144*

MD000309



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

---

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Nov 8, 2017 at 4:04 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Kimberly Williams, I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind.  I am no longer interested in applying to attend Post University!

Please let this be the last communication regarding your school.

Thank you!

[Quoted text hidden]

---

**3 attachments**


**image003.jpg**
12K


**image002.jpg**
17K

MD000310



**image001.png**
36K

MD000311

# SOF ¶ 36
# Supporting Exhibits

# EXHIBIT L

 Gmail

**Melanie Davis <mdspecialist21@gmail.com>**

---

## New Year, New You- Classes now forming at Post University!

2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                     Wed, Nov 8, 2017 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>





Melanie,

I hope this email finds you well.  You were previously working with our admissions team regarding enrollment for Post University's online accelerated programs. I know timing was off and you were unable to start in 2017. I wanted to let you know Post University is now registering students for courses that begin on January 8th 2018 and this is the first class of the New Year!

**Here are a few facts about Post University:**

MD000308

- We are regionally accredited.
- Our sessions are 8 weeks long (accelerated to help you finish quickly).
- NO set login times! You will not be required to be online at a specific time during the week.
- You can take 1 or 2 classes per 8 weeks.
- We have NO application fee.
- Please take a few moments to look over our website and our program offerings - PROGRAMS

## YOUR FUTURE BEGINS TODAY!

### Get started today by completing your FAFSA.

And you can complete your 2017/2018 FAFSA at

www.fafsa.ed.gov

Post University school code 001401

*Don't wait another year to begin working on your dreams! 2018 is a new year and a new you!*

If you are no longer interested in completing your degree, please respond to this email and I will update our records.

I look forward to assisting you with your goals. Feel free to reach me directly:

*Kimberly Williams*

*203.591.5144*

MD000309



**Kimberly Williams**
**Admissions Counselor ADP - Team Lead**
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Nov 8, 2017 at 4:04 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Kimberly Williams, I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind.  I am no longer interested in applying to attend Post University!

Please let this be the last communication regarding your school.

Thank you!

[Quoted text hidden]

**3 attachments**


**image003.jpg**
12K


**image002.jpg**
17K



**image001.png**
36K

MD000311

# SOF ¶ 37
# Supporting Exhibits

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3    -----------------------------)

 4    MELANIE DAVIS,               )   CASE NO.:

 5           Plaintiff,            )   18-81004-CIV

 6        vs.                      )

 7    POST UNIVERSITY, INC.,       )

 8           Defendant.            )

 9    -----------------------------)

10

11

12       DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16               WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25
```

Page 254

```
 1              identification.)
 2   BY MR. GLAPION:
 3        Q.    Before I ask about this document, if
 4   Ms. Davis had been marked as Remove From List, it
 5   would reflect on this audit trail; correct?
 6        A.    Yes.
 7        Q.    Is there any way to manually delete
 8   entries from the audit trail?
 9        A.    No.
10        Q.    Why would Ms. Davis not have been marked
11   as Remove From List after emailing Victoria Meehan?
12        A.    Victoria more than likely missed this
13   email response.
14        Q.    And then if we look at the exhibit that
15   you were just handed, Exhibit 34, this appears to be
16   another email, but this time between Kimberly
17   Williams and Melanie Davis; correct?
18        A.    Correct.
19        Q.    And the front page email is dated
20   November 8, 2017; correct?
21        A.    Pardon me?
22        Q.    The email is dated November 8, 2017;
23   correct?
24        A.    Correct.
25        Q.    And if you turn to the page marked MD310,
```

1    at the bottom, you see a response from Melanie Davis

2    to Kimberly Williams.

3            Do you see that?

4      A.    I do.

5      Q.    And in that email, Ms. Davis writes, I've

6    asked you and your colleagues to stop calling me and

7    emailing -- excuse me, to stop calling and emailing

8    me.  I was once interested and have had to change my

9    mind.  I am no longer interested in applying to

10   attend Post University.  Please let this be my last

11   communication regarding your school.

12           Does Post consider this to be a Do Not

13   Call request?

14     A.    I would say that this falls into that

15   category, yes.

16     Q.    And therefore, according to your previous

17   testimony, Ms. Davis should have been marked as

18   Remove From List in response to this request;

19   correct?

20     A.    Yes.

21     Q.    And if we go back to the audit trail, do

22   you see anything on or about November 8th, 2017 that

23   indicates that Ms. Davis was marked as Remove From

24   List?

25     A.    No.

# SOF ¶ 38
# Supporting Exhibits

Page 1

1               UNITED STATES DISTRICT COURT

2               SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )   CASE NO.:

5              Plaintiff,          )   18-81004-CIV

6         vs.                      )

7    POST UNIVERSITY, INC.,        )

8              Defendant.          )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                 DATE:  APRIL 11, 2019

15                     HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 255

1    at the bottom, you see a response from Melanie Davis

2    to Kimberly Williams.

3            Do you see that?

4        A.    I do.

5        Q.    And in that email, Ms. Davis writes, I've

6    asked you and your colleagues to stop calling me and

7    emailing -- excuse me, to stop calling and emailing

8    me.  I was once interested and have had to change my

9    mind.  I am no longer interested in applying to

10   attend Post University.  Please let this be my last

11   communication regarding your school.

12           Does Post consider this to be a Do Not

13   Call request?

14       A.    I would say that this falls into that

15   category, yes.

16       Q.    And therefore, according to your previous

17   testimony, Ms. Davis should have been marked as

18   Remove From List in response to this request;

19   correct?

20       A.    Yes.

21       Q.    And if we go back to the audit trail, do

22   you see anything on or about November 8th, 2017 that

23   indicates that Ms. Davis was marked as Remove From

24   List?

25       A.    No.

# SOF ¶ 39
# Supporting Exhibits

# GZJ KDKV'O '''



Melanie Davis <mdspecialist21@gmail.com>

---

**New Year, New You, Don't Miss Out!**
1 message

---

**Valluzzo, Carissa** <CValluzzo@post.edu>                          Thu, Dec 7, 2017 at 11:28 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

---



# POST UNIVERSITY

**Don't Wait Another Minute, Classes Begin January 8th!**

XXX,

Now's the perfect time to get the education you need on your own time.

**Enroll today** to take an important step forward in achieving your personal and professional goals.  We offer:

- 100% accelerated online classes
- The highest level of college accreditation & are ranked top 20 in the U.S.
- A career-focused education, and high employment rates for students
- Small class sizes in a personalized setting
- A program that is based on our 125-year-old traditional campus—your degree **WILL NOT** specify that you completed your degree online



**Melanie,Dear Melanie,**
**Contact me today at (203) 596-4673 for assistance, or get started on your own using the buttons above.**

I look forward to welcoming you to the Post University family! ☺

*Carissa Valluzzo* | ADP Admissions Counselor

800 Country Club Road • Waterbury, CT 06723 • post.edu/online



**Carissa Valluzzo**
ADP Admissions Counselor
CValluzzo@Post.edu
**w.** 203.596.4673

MD000232



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

MD000233

# SOF ¶ 40
# Supporting Exhibits

# EXHIBIT N

 **Gmail**                                                                 Melanie Davis <mdspecialist21@gmail.com>

---

**Snowed In? We Can Help with Your FASFA!**

2 messages

---

**Meehan, Victoria** <VMeehan@post.edu>                                        Thu, Jan 4, 2018 at 9:24 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

Hi Melanie!


# Are you snowed in today and want to have a productive day?

## We can help you get your FAFSA done!

Meghan, our FAFSA Specialist is available!  Call (646)535-2426 or text (860) 554-1473 and she would be happy to help you!


You can also reach the Assistant Director of Admissions for assistance today at 203-529-5596.


Completing your FAFSA is a very important step in the admissions process and we don't want you to miss out on classes that start January 8, 2018!

MD000247



**Victoria Meehan**

Assistant Director of ADP Admissions

VMeehan@Post.edu

**w.** 203.596.4625
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                    Thu, Jan 4, 2018 at 10:53 AM
To: "Meehan, Victoria" <VMeehan@post.edu>

Please stop contacting me!  Not interested!!

Melanie
[Quoted text hidden]



**image001.jpg**
22K

MD000248

# SOF ¶ 41
# Supporting Exhibits

# EXHIBIT N

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

**Snowed In? We Can Help with Your FASFA!**

2 messages

**Meehan, Victoria** <VMeehan@post.edu>                    Thu, Jan 4, 2018 at 9:24 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

# Hi Melanie!

# Are you snowed in today and want to have a productive day?

## We can help you get your FAFSA done!



Meghan, our FAFSA Specialist is available!  Call (646)535-2426 or text (860) 554-1473 and she would be happy to help you!

You can also reach the Assistant Director of Admissions for assistance today at 203-529-5596.

Completing your FAFSA is a very important step in the admissions process and we don't want you to miss out on classes that start January 8, 2018!

MD000247



**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

**Post Makes It Personal**

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                    Thu, Jan 4, 2018 at 10:53 AM
To: "Meehan, Victoria" <VMeehan@Post.edu>

Please stop contacting me!  Not interested!!

Melanie
[Quoted text hidden]



**image001.jpg**
22K

MD000248

# SOF ¶ 42
# Supporting Exhibits

# EXHIBIT N



Melanie Davis <mdspecialist21@gmail.com>

---

**Snowed In? We Can Help with Your FASFA!**
2 messages

---

**Meehan, Victoria** <VMeehan@post.edu>                    Thu, Jan 4, 2018 at 9:24 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

## Hi Melanie!

# Are you snowed in today and want to have a productive day?

# We can help you get your FAFSA done!



Meghan, our FAFSA Specialist is available!  Call (646)535-2426 or text (860) 554-1473 and she would be happy to help you!

You can also reach the Assistant Director of Admissions for assistance today at 203-529-5596.

Completing your FAFSA is a very important step in the admissions process and we don't want you to miss out on classes that start January 8, 2018!

MD000247



**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

Post Makes It Personal

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                    Thu, Jan 4, 2018 at 10:53 AM
To: "Meehan, Victoria" <VMeehan@Post.edu>

Please stop contacting me!  Not interested!!

Melanie
[Quoted text hidden]



**image001.jpg**
22K

MD000248

# SOF ¶ 43
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                 )   CASE NO.:

5              Plaintiff,           )   18-81004-CIV

6         vs.                       )

7    POST UNIVERSITY, INC.,         )

8              Defendant.           )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 256

```
 1        Q.    And why would that be?

 2        A.    I believe this response was missed by

 3   Kimberly Williams.

 4              MR. GLAPION:  This could be marked as

 5   Exhibit 35, please.

 6                   (Exhibit 35, Emails, Bates Numbers

 7                   MD000247 through 248, marked for

 8                   identification.)

 9   BY MR. GLAPION:

10        Q.    From the fact that you're looking at the

11   exhibit, I think you know where the line of

12   questioning is going, but we will work through it.

13              This appears to be an email from Victoria

14   Meehan to Melanie Davis; correct?

15        A.    Yes.

16        Q.    Dated January 4, 2018, at 9:24 a.m.?

17        A.    Correct.

18        Q.    On the second page of the exhibit, there

19   appears to be a response from Melanie Davis to

20   Victoria Meehan.

21              Do you see that?

22        A.    Yes.

23        Q.    And in this response Ms. Davis writes,

24   Please stop contacting me, not interested.

25              Do you see that?
```

Page 257

1       A.      Yes.

2       Q.      Does Post consider this to be a Do Not

3  Call request?

4       A.      It depends.

5       Q.      Do you consider this to be a Do Not Call

6  request?

7       A.      It's not very explicit.

8       Q.      Is it your testimony that it depends on

9  whether Post treats the phrase "Please stop

10 contacting me" as a Do Not Call list -- excuse me.

11              Is it your testimony that Post considers

12 "Please stop contacting me" to be ambiguous?

13      A.      This would warrant our Do Not Call policy

14 as well.

15      Q.      So Post would consider this to be a Do Not

16 Call request?

17      A.      Yes.

18      Q.      And again, per your testimony, this should

19 have been marked as Remove From List; correct?

20      A.      Yes.

21      Q.      And do you see anything on the audit trail

22 on our about January 4th, 2018 marking Ms. Davis as

23 Remove From List?

24      A.      Can you scroll to the left?

25              No.

# SOF ¶ 44
# Supporting Exhibits

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3   -----------------------------)

 4   MELANIE DAVIS,                )   CASE NO.:

 5           Plaintiff,            )   18-81004-CIV

 6       vs.                       )

 7   POST UNIVERSITY, INC.,        )

 8           Defendant.            )

 9   -----------------------------)

10

11

12       DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17             1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25
```

Page 257

1      A.    Yes.

2      Q.    Does Post consider this to be a Do Not

3  Call request?

4      A.    It depends.

5      Q.    Do you consider this to be a Do Not Call

6  request?

7      A.    It's not very explicit.

8      Q.    Is it your testimony that it depends on

9  whether Post treats the phrase "Please stop

10  contacting me" as a Do Not Call list -- excuse me.

11          Is it your testimony that Post considers

12  "Please stop contacting me" to be ambiguous?

13      A.    This would warrant our Do Not Call policy

14  as well.

15      Q.    So Post would consider this to be a Do Not

16  Call request?

17      A.    Yes.

18      Q.    And again, per your testimony, this should

19  have been marked as Remove From List; correct?

20      A.    Yes.

21      Q.    And do you see anything on the audit trail

22  on our about January 4th, 2018 marking Ms. Davis as

23  Remove From List?

24      A.    Can you scroll to the left?

25          No.

Page 258

1        Q.     I apologize if you were still looking.

2    Does that scroll look right there?

3        A.     Yes.

4        Q.     And do you see anything marking her as

5    Remove From List?

6        A.     No.

7        Q.     And you see that Ms. Davis's response,

8    Please stop contacting me, not interested, was sent

9    according to this at 10:53 a.m.?

10       A.     Yes.

11       Q.     Four minutes later, it appears that

12   there's two entries made on January 4, 2018 at

13   10:57.

14              Do you see that?  There's four entries

15   made, but there are two that appear to involve

16   reject reasons.

17       A.     Yes.

18       Q.     And I'm going to scroll to the left, and

19   it appears that those entries were made by Victoria

20   Meehan.

21              Do you see that?

22       A.     Yes.

23       Q.     And those entries were for the fields

24   Reason Lost and Reason Lost Detail.

25              Do you see that?

Page 259

1      A.      Yes.

2      Q.      And the Reason Lost provided the new value

3   was technical.

4              Do you see that?

5      A.      Yes.

6      Q.      And then Reason Lost Detail was duplicate

7   opportunity.

8              Do you see that?

9      A.      Yes.

10     Q.      So why would Ms. Meehan not have marked

11  this as a Remove From List?

12     A.      I can't say.

13     Q.      It appears though that from the time stamp

14  of this action that she likely saw this email.

15              Do you agree with that?

16     A.      I can't say.

17     Q.      This email was sent at 10:53 and then

18  Ms. Meehan took action on the reject reason at

19  10:57.

20              Do you believe that could be a

21  coincidence?

22     A.      I can't say with certainty.

23     Q.      What was the reject reason -- excuse me.

24              What was the Reason Lost technical tag

25  intended to be used for?

# SOF ¶ 45
# Supporting Exhibits

# EXHIBIT C

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | CALLING_NBR | CALLED_NBR | DIALED_DIGITS | MOBILE ROLE | START_DATE | END_DATE | DURATION (SEC) | Call Type | NEID |
| 2 | -4599 | (844) 246-9758 | (1844) 246-9758 | Outbound | 08/09/2017 17:39:48 | 08/09/2017 18:22:07 | 2539 | Voice | 207 |
| 3 | (203) 564-9763 | -4599 | | Inbound | 08/09/2017 18:33:10 | 08/09/2017 18:33:10 | 0 | Text Detail | 198 |
| 4 | (203) 564-9763 | 6-4599 | | Inbound | 08/09/2017 18:33:11 | 08/09/2017 18:33:11 | 0 | Text Detail | 198 |
| 5 | (203) 596-8364 | -4599 | | Inbound | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 6 | (203) 596-8364 | -325 | -4599 | Routed_Call | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 7 | (203) 596-4625 | (6245000) 000-0901 | -4599 | Routed_Call | 08/13/2017 15:40:56 | 08/13/2017 15:42:29 | 93 | Voice | 207 |
| 8 | (203) 596-8364 | (6245000) 000-0901 | -4599 | Routed_Call | 08/14/2017 15:55:18 | 08/14/2017 16:00:21 | 303 | Voice | 207 |
| 9 | (203) 596-8364 | (6245000) 000-0901 | -4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 10 | (203) 596-8364 | -4599 | -4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 11 | (203) 596-4625 | -4599 | -459 | Undetermined | 08/15/2017 15:49:14 | 08/15/2017 15:49:27 | 13 | Voice | 207 |
| 12 | (203) 596-4625 | -4599 | | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 13 | (203) 596-4625 | (6245000) 000-0901 | -4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 14 | (203) 596-4625 | -4599 | -554 | Undetermined | 08/15/2017 16:58:59 | 08/15/2017 16:59:26 | 27 | Voice | 207 |
| 15 | (203) 433-7705 | -4599 | | Inbound | 08/30/2017 17:42:23 | 08/30/2017 17:42:23 | 0 | Text Detail | 547 |
| 16 | (203) 433-7705 | -4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:24 | 0 | Text Detail | 547 |
| 17 | -4599 | (203) 433-7705 | | Outbound | 08/30/2017 12:43:17 | 08/30/2017 12:43:17 | 0 | Text Detail | 229 |
| 18 | (203) 591-5144 | (6245000) 000-0901 | -4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 19 | (203) 591-5144 | -4599 | -4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 20 | (203) 591-5144 | -4599 | -191 | Undetermined | 10/18/2017 14:57:29 | 10/18/2017 14:57:52 | 23 | Voice | 207 |
| 21 | (203) 596-8364 | -4599 | -4599 | Inbound | 01/11/2018 18:56:22 | 01/11/2018 18:58:03 | 101 | Voice | 207 |
| 22 | (203) 802-5819 | -4599 | | Inbound | 07/17/2018 15:56:45 | 07/17/2018 15:56:45 | 0 | Text Detail | 552 |
| 23 | (203) 802-5819 | -4599 | | Inbound | 07/17/2018 15:56:51 | 07/17/2018 15:56:51 | 0 | Text Detail | 552 |
| 24 | (203) 802-5819 | -4599 | | Inbound | 07/17/2018 15:56:59 | 07/17/2018 15:56:59 | 0 | Text Detail | 552 |
| 25 | (203) 802-5819 | -4599 | | Inbound | 07/17/2018 15:57:05 | 07/17/2018 15:57:05 | 0 | Text Detail | 552 |
| 26 | (203) 802-5819 | -4599 | | Inbound | 07/17/2018 15:57:12 | 07/17/2018 15:57:12 | 0 | Text Detail | 552 |
| 27 | -4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:22 | 07/17/2018 16:00:22 | 0 | Text Detail | 558 |
| 28 | -4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:23 | 07/17/2018 16:00:23 | 0 | Text Detail | 558 |
| 29 | -4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:01:34 | 07/17/2018 17:01:34 | 0 | Text Detail | 558 |
| 30 | -4599 | (203) 802-5819 | | Inbound | 07/17/2018 17:03:09 | 07/17/2018 17:03:09 | 0 | Text Detail | 552 |
| 31 | -4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:05:31 | 07/17/2018 17:05:31 | 0 | Text Detail | 558 |
| 32 | (203) 802-5819 | -4599 | | Inbound | 07/17/2018 17:09:04 | 07/17/2018 17:09:04 | 0 | Text Detail | 552 |
| 33 | -4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:13:28 | 07/17/2018 17:13:28 | 0 | Text Detail | 558 |
| 34 | -4599 | (203) 591-5047 | (1203) 591-5047 | Outbound | 07/18/2018 10:18:07 | 07/18/2018 10:21:22 | 195 | Voice | 207 |

# MD000887 (Subset)

# EXHIBIT D



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330   Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports

**Calling number:**  This column reflects the number placing the call (the individual who initiated the call).    If the call is an outgoing call, this will be the Sprint PCS target number.

**Called number:**  This column reflects the number actually called.    In most cases this number will be the same as the number in the "Dialed Digits" column.    If the number has been forwarded, or if there is a routing number, then this will be reflected. If the number has a 11 in front of the area code, that means the call rolled to voicemail and was NOT answered by the customer.

**Dialed digits:**  This column reflects the digits that the caller enters into the keypad of the phone.    If the call is an incoming call, this will be the Sprint PCS target number.

**Mobile Role:**  Mobile Role (Type of Call).    Listed as outgoing, incoming, routed call or undetermined.

**Start Date:**  Date and time the call was initiated.

**End Date:**  Date and time the call was ended.

**Duration:**  Duration of call, in seconds.

**Call Type:**  Indicates the type of transaction on the network.    This includes, but not limited to: Voice, Text Detail, WiFi and Airave.

**NEID:**  This reflects which network element handled the call.

MD000907



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330     Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports, cont.

*Routed calls come in several varieties.    A TLDN (Temporary Local Directory Number) may be considered to be a bridge/router number to complete a call.    A TLDN will be represented by a number that may range from 3 to 10 digits in length.    Similar to TLDN, an IMRN (IP Multimedia Routing Number), will be used to route Apple WiFi Calls.    Another scenario is when a call is not answered, but is routed to voicemail. Calls routed straight to voicemail    may also have an "11" before the number indicated in the "Called_Nbr" column. For handsets using visual voicemail, these numbers may replace the "11" in the called number column: (800) 877-2400, (866) 677-8204, (866) 222-2604, and (877) 836-4746    The indicator that Sprint's Visual Voicemail platform was used within the session appears as 624500000XXXXXXX.

*WiFi Call Type: Please note that Sprint does not have the capability to determine the time stamp. These calls can be reflected in Switch time or GMT.

*The CDMA call detail report may indicate the sending and receipt of text messages and e-mail.    While not flagged as text messages, the line will indicate no duration, the dialed digits column will either be blank or will show an e-mail address, and the NEID column may contain one of the following numbers: 191-198 226-229 291-294

* On the CDMA network, Sprint maintains Gateway, SWATs (Soft Wireless Access Tandem) and MCGs (Media Gateway Controllers)    networks in areas where there are large Sprint customer populations. These provide the required extra space that helps Sprint maintain all of the calls.    When a call moves through a gateway or SWAT cell site information is not retained and is not recoverable.    NEIDs for Gateways 124-125, SWATs are 96, 184-190, 263, 363-365 and MGCs are 366-371

* Time Zones: Beginning 10/20/17 through present SMS text message time stamps are in Central. From 05/31/2017 through 10/19/2017, text message time stamps may have been GMT.    An indicator of GMT time zones include the NEID range of 540-559.    From October 12, 2010 through May of 2017 text message time stamps were kept in Central time zone. Records prior to October 12, 2010 are either in Central or Eastern time zone.    Sprint is unable to determine which time zone is reflected in records older than October 12, 2010.

*Please be advised: The time stamp reflected on call detail reports for Sprint CDMA during the time frame of 02/04/2018 through 02/28/2018 may have been affected by a storage related upgrade. During this period, transactions may be reflected in GMT instead of the time stamp native to the switch utilized in the transaction.    This includes, but is not limited to, Voice calls and SMS transactions.

MD000908



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

### Key to Understanding CDMA Call Detail Reports, cont.

*Short codes, also known as short numbers, are special telephone codes, significantly shorter than full telephone numbers, which can also be used to address SMS and MMS messages from mobile phones or fixed phones. Short codes are often associated with automated services. An automated program can handle the response and typically requires the sender to start the message with a command word or prefix. A list of short codes is not maintained by Sprint as number of short codes is extensive and constantly growing. Example of a short code- the customer may want updates pertaining to their favorite sports team.   The customer would sign up with that team in order to receive text message updates relevant to the team.

* Please Note - Calls made on another carrier's network, will not appear on our CDR records.   If you suspect the device was roaming on another network, please obtain those records from the other carrier.

* Please Note - As of approximately September 2018, Sprint performed a soft-launch of a voice-over-LTE product.    Because of this launch, certain calls are routed through a specific network element that time-stamps these transactions in central time.    These transactions will not have location information and may appear on the records as call type 42 or Voice.

MD000909



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

# Star Codes

Your request has been fulfilled, at least in part, by what is known as a CDMA CDR Report.    A CDMA CDR Report lists information about incoming/outgoing calls including the digits dialed on the handset.    As a dialing shortcut, PCS subscribers may use star codes (an asterisk (*) plus a short number sequence) when using our wireless telephones.    On call detail reports the star may be indicated by a letter "B". This code will appear in the dialed digits column of the CDMA CDR Report.    Following is a list of the most common star codes.    Additional star codes may exist in the market from which the call is made. Please contact the Subpoena Compliance Group at the number listed above for more information concerning star codes.

> *18 - Ping the nearest tower, call delivery activate
> *180 - Call delivery deactivate
> *2 - Customer Care
> *3 - Payment Center
> *31 - Three Way Calling
> *4 - Account information
> *5 - Spanish Customer care
> *67 - Caller ID block
> *68 - Override caller ID block
> *70 - Cancel call waiting for that call
> *711 - Customer Care
> *72 - Activates call forwarding
> *720 - Deactivates call forwarding
> *73 - Call forwarding no answer
> *74 - Call forward busy
> *811 - Customer Care
> *82 - Override caller ID block- for that call
> *911 - 911
> *073 - Cancel call forward no answer
> *074 - Cancel call forward busy

Other numbers which may appear in the dialed digits column:

> 411 - Directory assistance
> 611 - Customer Care
> 711 - Telecommunications Relay Service (hearing impaired)
> 911 - Can also dial 0911 or 1911
> c777 - Web Browsing (SINS)

MD000910

# EXHIBIT G

**Activities List** | Back to Opportunity Detail

Help | Printer Friendly

**Completed Activities**   [ Log A Call ]

All  0-9  A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  X  Y  Z  [          ]  [ Go ]

| | | Subject | Type | Activity | Due Date | Completed Date ▼ | Status | Alias | Created: Date | Created By |
|---|---|---|---|---|---|---|---|---|---|---|
| Edit ▾ | | DO NOT CALL- NOT INTERESTED | Call | Task | 1/11/2018 | 1/11/2018 06:58 PM | Completed | Rita Francisco | 1/11/2018 06:58 PM | Rita Francisco |
| Edit ▾ | | voicemail | Call | Task | 10/18/2017 | 10/18/2017 02:57 PM | Completed | Kimberly Williams | 10/18/2017 02:57 PM | Kimberly Williams |
| Edit ▾ | | HS Trans/Lost Recd Ofc HS Trans related to transcripts. | To Do | Task | 8/15/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | | EC: Opportunity Lost - Close/Complete all tasks related to transcripts. | Document | Task | 8/10/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/10/2017 08:42 AM | Nicole Sciascia |
| Edit ▾ | | Tuition Planner:  Opportunity Closed/Deferred or Closed/Lost | To Do | Task | 8/15/2017 | 8/15/2017 05:09 PM | Completed | Carissa Wasikowski | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | | Vm | Call | Task | 8/15/2017 | 8/15/2017 05:00 PM | Completed | Victoria Meehan | 8/15/2017 05:00 PM | Victoria Meehan |
| Edit ▾ | | LVM about student calling me to start next MOD or see what she is so nervous about. | Call | Task | 8/15/2017 | 8/15/2017 03:51 PM | Completed | Rita Francisco | 8/15/2017 03:51 PM | Rita Francisco |
| Edit ▾ | | N/A to Google Voice Call | Call | Task | 8/15/2017 | 8/15/2017 12:19 PM | Completed | Rita Francisco | 8/15/2017 12:19 PM | Rita Francisco |
| Edit ▾ | | Vm and text about FAFSA | Call | Task | 8/13/2017 | 8/13/2017 03:43 PM | Completed | Victoria Meehan | 8/13/2017 03:43 PM | Victoria Meehan |
| Edit ▾ | | recommendation | Call | Task | 8/11/2017 | 8/11/2017 03:46 PM | Completed | Rita Francisco | 8/11/2017 03:46 PM | Rita Francisco |
| Edit ▾ | | I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8./11 | Call | Task | 8/11/2017 | 8/11/2017 02:55 PM | Completed | Rita Francisco | 8/11/2017 02:55 PM | Rita Francisco |
| Edit ▾ | | Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Call | Task | 8/11/2017 | 8/11/2017 02:16 PM | Completed | Nicole Sciascia | 8/11/2017 02:16 PM | Nicole Sciascia |
| Edit ▾ | | Sent recommendation/welcome text | Call | Task | 8/11/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/11/2017 09:11 AM | Victoria Meehan |
| Edit ▾ | | Application Received - Contact Student (Manager Task) | To Do | Task | 8/9/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | | Send Online Application Link to Prospective Student | To Do | Task | 8/9/2017 | 8/10/2017 02:00 PM | Completed | Rita Francisco | 8/9/2017 06:13 PM | Rita Francisco |
| Edit ▾ | | Application Received | To Do | Task | 8/9/2017 | 8/10/2017 01:37 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | | Financial Aid Advisor: Application Received - Contact Student | To Do | Task | 8/10/2017 | 8/10/2017 11:00 AM | Completed | Carissa Wasikowski | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | | NOTES>> | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | | Appt 8/11 to discuss FAFSA | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | | EC: Transcript Request Form | HS Transcript Request | Task | 8/9/2017 | 8/10/2017 08:42 AM | Completed | Nicole Sciascia | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | | Completed TRF | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | | Completed Application | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | | Student has completed the Online Application | Other | Task | 8/9/2017 | 8/9/2017 06:53 PM | Completed | Rita Francisco | 8/9/2017 06:53 PM | Integration User |
| Edit ▾ | | Student has started the Application | Other | Task | 8/9/2017 | 8/9/2017 06:43 PM | Completed | Rita Francisco | 8/9/2017 06:43 PM | Integration User |

All  0-9  A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  X  Y  Z

Number of records displayed: 75 ▾

**PU00000003**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**MELANIE DAVIS,**

                              Plaintiff,

v.

**POST UNIVERSITY, INC.**

                    Defendant.

Civil Case No.: 18-cv-81004-RLR

**Defendant's Responses to Plaintiff's Third Set of Interrogatories**

PROPOUNDING PARTY:   Melanie Davis ("Plaintiff")

RESPONDING PARTIES:   Post University, Inc. ("Defendant")

SET NUMBER:             Three (3)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Post University, Inc., through counsel, hereby responds to the Third Set of Interrogatories ("Interrogatories") propounded to it by Plaintiff Melanie Davis ("Plaintiff").

These responses are made solely for the purpose of the above-captioned proceeding.  Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Interrogatories. All responses are given on the basis of a good faith effort to locate requested information.  Upon additional information being located throughout the course of discovery, Defendant will supplement its responses.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 8

Explain the distinction between an "opportunity" and a "lead", if any, and list and describe any other similar designations or categories which were or could be assigned to prospective students.

### RESPONSE TO INTERROGATORY NO. 8

A "lead" refers to a situation in which an individual requests information from Post University about its educational offerings.  An "opportunity" refers to a situation in which the

1

University has had the opportunity to follow up and speak with the individual who reached out for additional information to confirm that individual's interest in pursuing their education at Post University.

**INTERROGATORY NO. 9**

Explain why and when an "opportunity" would be considered "lost", "deferred", and/or "closed".

**RESPONSE TO INTERROGATORY NO. 9**

"Lost" or "closed" opportunities are considered one in the same.  Lost or closed opportunities may occur when the prospective student has provided their consent for the University to contact that individual regarding the University's educational offerings, but the University is unsuccessful in speaking with that individual again.  Lost or closed opportunities may also occur when a prospective student states that they are not currently interested in attending the University, but would like the University to continue to follow up with them because they may be interested at a future time.  Opportunities may also be lost or closed if the prospective student has stated that they no longer are interested in attending the University.  Ultimately, the reason that a given prospective student may be designated as lost or closed depends on the facts and circumstances surrounding the particular prospective student.

Deferred opportunities occur when a prospective student desires to attend the University, but has stated that he or she does not intend to do so until a specified school term in the future, rather than the current term.

**INTERROGATORY NO. 10**

Explain the meaning of each item, sentence, phrase, and/or abbreviation under the "Subject" fields of PU00000003 and PU00000008-09.

**RESPONSE TO INTERROGATORY NO. 10**

| Subject | Explanation |
|---|---|
| DO NOT CALL – NOT INTERESTED | Ms. Davis asked that the University not call her anymore |
| Voicemail | The University left Ms. Davis a voicemail |
| EC: Opportunity Lost – Close/Complete all tasks related to transcripts | System-generated subject line stating that the opportunity was lost and alerting admissions counselors to complete all tasks related to transcripts |

2

| | |
|---|---|
| HS Trans/Lost Recd Ofc HS Trans/Graduated 1993 | System-generated note generating task before opportunity is lost |
| Tuition Planner: Opportunity Closed/Deferred or Closed/Lost | System-generated note generating task before opportunity is lost |
| Vm | Note that a voicemail was left for Ms. Davis |
| LVM about student calling me to start next MOD or see what she is so nervous about. | Note that a voicemail was left for Ms. Davis about starting the next term |
| N/A to Google Voice call | Note that there was no answer after call to Ms. Davis |
| Vm and text about FAFSA | Note that a voicemail was left and text submitted to Ms. Davis concerning the FAFSA application |
| Recommendation | Note that call was made regarding recommendation |
| I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8/11 | Note that Ms. Davis was told that her file would be closed for the current term if she did not submit the necessary FAFSA information |
| Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Note that Ms. Davis's transcript request form was sent to the Retention Center at Olympic Heights High School |
| Sent recommendation/welcome text | Note that a welcome text was sent to Ms. Davis |
| Application Received – Contact Student (Manager Task) | System-generated note after initial interview with Ms. Davis |
| Send Online Application Link to Prospective Student | System-generated note after initial interview with Ms. Davis |
| Application Received | System-generated note to admissions counselors that Ms. Davis's application was received |

3

| | |
|---|---|
| Financial Aid Advisor: Application Received – Contact Student | System-generated note to admissions counselors to contact Ms. Davis since her application was received |
| NOTES>> | Notes about the call with Ms. Davis |
| Appt 8/11 to discuss FAFSA | Note that admissions counselor scheduled an appointment on 8/11 with Ms. Davis to discuss the FAFSA application |
| EC: Transcript Request Form | Allows admissions counselor to obtain Ms. Davis's Transcript Request Form |
| Completed TRF | System-generated note with Ms. Davis's completed Transcript Request Form |
| Completed Application | System-generated note with Ms. Davis's completed online application attached |
| Student has completed the Online Application | System-generated note that Ms. Davis completed the online application to Post University |
| Student has started the Application | System-generated note that Ms. Davis started an application to Post University |

Dated: January 7, 2018                 Respectfully submitted,

By: */s/ Adam Bowser*
Adam Bowser
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006-5344
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)
adam.bowser@arentfox.com

*Attorney for Post University, Inc.*

## <u>VERIFICATION</u>

I, Elaine Neely, Chief Regulatory Officer for Post University, Inc., believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on the 7th day of January, 2019.

Elaine Neely, Chief Regulatory Officer, Post University


/s/ Elaine Neely
Elaine Neely

# SOF ¶ 46
# Supporting Exhibits

# EXHIBIT G

**Activities List** | Back to Opportunity Detail

Help | Printer Friendly

**Completed Activities**   Log A Call

All 0-9 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z [ ] Go

| | Subject | Type | Activity | Due Date | Completed Date ▼ | Status | Alias | Created: Date | Created By |
|---|---|---|---|---|---|---|---|---|---|
| Edit ▾ | DO NOT CALL- NOT INTERESTED | Call | Task | 1/11/2018 | 1/11/2018 06:58 PM | Completed | Rita Francisco | 1/11/2018 06:58 PM | Rita Francisco |
| Edit ▾ | voicemail | Call | Task | 10/18/2017 | 10/18/2017 02:57 PM | Completed | Kimberly Williams | 10/18/2017 02:57 PM | Kimberly Williams |
| Edit ▾ | EC: Opportunity Lost - Close/Complete all tasks related to transcripts. | To Do | Task | 8/15/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | HS Trans/Lost Recd Ofc HS Trans/Graduated 1993 | Document | Task | 8/10/2017 | 8/16/2017 07:22 AM | Completed | Nicole Sciascia | 8/10/2017 08:42 AM | Nicole Sciascia |
| Edit ▾ | Tuition Planner:  Opportunity Closed/Deferred or Closed/Lost | To Do | Task | 8/15/2017 | 8/15/2017 05:09 PM | Completed | Carissa Wasikowski | 8/15/2017 05:02 PM | Victoria Meehan |
| Edit ▾ | LVM about student calling me to start next MOD or see what she is so nervous about. | Call | Task | 8/15/2017 | 8/15/2017 03:51 PM | Completed | Victoria Meehan | 8/15/2017 03:51 PM | Rita Francisco |
| Edit ▾ | N/A to Google Voice Call | Call | Task | 8/15/2017 | 8/15/2017 12:19 PM | Completed | Rita Francisco | 8/15/2017 12:19 PM | Rita Francisco |
| Edit ▾ | Vm and text about FAFSA | Call | Task | 8/13/2017 | 8/13/2017 03:43 PM | Completed | Victoria Meehan | 8/13/2017 03:43 PM | Victoria Meehan |
| Edit ▾ | recommendation | Call | Task | 8/11/2017 | 8/11/2017 03:46 PM | Completed | Rita Francisco | 8/11/2017 03:46 PM | Rita Francisco |
| Edit ▾ | I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8./11 | Call | Task | 8/11/2017 | 8/11/2017 02:55 PM | Completed | Rita Francisco | 8/11/2017 02:55 PM | Rita Francisco |
| Edit ▾ | Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Call | Task | 8/11/2017 | 8/11/2017 02:16 PM | Completed | Nicole Sciascia | 8/11/2017 02:16 PM | Nicole Sciascia |
| Edit ▾ | Sent recommendation/welcome text | Call | Task | 8/11/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/11/2017 09:11 AM | Victoria Meehan |
| Edit ▾ | Application Received - Contact Student (Manager Task) | To Do | Task | 8/9/2017 | 8/11/2017 09:11 AM | Completed | Victoria Meehan | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Send Online Application Link to Prospective Student | To Do | Task | 8/9/2017 | 8/10/2017 02:00 PM | Completed | Rita Francisco | 8/9/2017 06:13 PM | Rita Francisco |
| Edit ▾ | Application Received | To Do | Task | 8/9/2017 | 8/10/2017 01:37 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Financial Aid Advisor: Application Received - Contact Student | To Do | Task | 8/10/2017 | 8/10/2017 11:00 AM | Completed | Carissa Wasikowski | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | NOTES>> | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | Appt 8/11 to discuss FAFSA | Call | Task | 8/10/2017 | 8/10/2017 09:12 AM | Completed | Rita Francisco | 8/10/2017 09:12 AM | Rita Francisco |
| Edit ▾ | EC: Transcript Request Form | HS Transcript Request | Task | 8/9/2017 | 8/10/2017 08:42 AM | Completed | Nicole Sciascia | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Completed TRF | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Completed Application | Document | Task | 8/9/2017 | 8/9/2017 06:54 PM | Completed | Rita Francisco | 8/9/2017 06:54 PM | Integration User |
| Edit ▾ | Student has completed the Online Application | Other | Task | 8/9/2017 | 8/9/2017 06:53 PM | Completed | Rita Francisco | 8/9/2017 06:53 PM | Integration User |
| Edit ▾ | Student has started the Application | Other | Task | 8/9/2017 | 8/9/2017 06:43 PM | Completed | Rita Francisco | 8/9/2017 06:43 PM | Integration User |

All 0-9 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

Number of records displayed: 75 ▾

**PU00000003**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS,** | Civil Case No.: 18-cv-81004-RLR |
| Plaintiff, | **Defendant's Responses to Plaintiff's Third Set of Interrogatories** |
| v. | |
| **POST UNIVERSITY, INC.** | |
| Defendant. | |

PROPOUNDING PARTY:   Melanie Davis ("Plaintiff")

RESPONDING PARTIES:   Post University, Inc. ("Defendant")

SET NUMBER:          Three (3)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Post University, Inc., through counsel, hereby responds to the Third Set of Interrogatories ("Interrogatories") propounded to it by Plaintiff Melanie Davis ("Plaintiff").

These responses are made solely for the purpose of the above-captioned proceeding. Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Interrogatories. All responses are given on the basis of a good faith effort to locate requested information. Upon additional information being located throughout the course of discovery, Defendant will supplement its responses.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 8

Explain the distinction between an "opportunity" and a "lead", if any, and list and describe any other similar designations or categories which were or could be assigned to prospective students.

### RESPONSE TO INTERROGATORY NO. 8

A "lead" refers to a situation in which an individual requests information from Post University about its educational offerings. An "opportunity" refers to a situation in which the

1

University has had the opportunity to follow up and speak with the individual who reached out for additional information to confirm that individual's interest in pursuing their education at Post University.

**INTERROGATORY NO. 9**

Explain why and when an "opportunity" would be considered "lost", "deferred", and/or "closed".

**RESPONSE TO INTERROGATORY NO. 9**

"Lost" or "closed" opportunities are considered one in the same.  Lost or closed opportunities may occur when the prospective student has provided their consent for the University to contact that individual regarding the University's educational offerings, but the University is unsuccessful in speaking with that individual again.  Lost or closed opportunities may also occur when a prospective student states that they are not currently interested in attending the University, but would like the University to continue to follow up with them because they may be interested at a future time.  Opportunities may also be lost or closed if the prospective student has stated that they no longer are interested in attending the University. Ultimately, the reason that a given prospective student may be designated as lost or closed depends on the facts and circumstances surrounding the particular prospective student.

Deferred opportunities occur when a prospective student desires to attend the University, but has stated that he or she does not intend to do so until a specified school term in the future, rather than the current term.

**INTERROGATORY NO. 10**

Explain the meaning of each item, sentence, phrase, and/or abbreviation under the "Subject" fields of PU00000003 and PU00000008-09.

**RESPONSE TO INTERROGATORY NO. 10**

| Subject | Explanation |
|---|---|
| DO NOT CALL – NOT INTERESTED | Ms. Davis asked that the University not call her anymore |
| Voicemail | The University left Ms. Davis a voicemail |
| EC: Opportunity Lost – Close/Complete all tasks related to transcripts | System-generated subject line stating that the opportunity was lost and alerting admissions counselors to complete all tasks related to transcripts |

| | |
|---|---|
| HS Trans/Lost Recd Ofc HS Trans/Graduated 1993 | System-generated note generating task before opportunity is lost |
| Tuition Planner: Opportunity Closed/Deferred or Closed/Lost | System-generated note generating task before opportunity is lost |
| Vm | Note that a voicemail was left for Ms. Davis |
| LVM about student calling me to start next MOD or see what she is so nervous about. | Note that a voicemail was left for Ms. Davis about starting the next term |
| N/A to Google Voice call | Note that there was no answer after call to Ms. Davis |
| Vm and text about FAFSA | Note that a voicemail was left and text submitted to Ms. Davis concerning the FAFSA application |
| Recommendation | Note that call was made regarding recommendation |
| I told student AD will close out file by Monday if FAFSA is not submitted this weekend 8/11 | Note that Ms. Davis was told that her file would be closed for the current term if she did not submit the necessary FAFSA information |
| Faxed TRF to Retention Center at Olympic Heights HS, FL 8/11 | Note that Ms. Davis's transcript request form was sent to the Retention Center at Olympic Heights High School |
| Sent recommendation/welcome text | Note that a welcome text was sent to Ms. Davis |
| Application Received – Contact Student (Manager Task) | System-generated note after initial interview with Ms. Davis |
| Send Online Application Link to Prospective Student | System-generated note after initial interview with Ms. Davis |
| Application Received | System-generated note to admissions counselors that Ms. Davis's application was received |

3

| | |
|---|---|
| Financial Aid Advisor: Application Received – Contact Student | System-generated note to admissions counselors to contact Ms. Davis since her application was received |
| NOTES>> | Notes about the call with Ms. Davis |
| Appt 8/11 to discuss FAFSA | Note that admissions counselor scheduled an appointment on 8/11 with Ms. Davis to discuss the FAFSA application |
| EC: Transcript Request Form | Allows admissions counselor to obtain Ms. Davis's Transcript Request Form |
| Completed TRF | System-generated note with Ms. Davis's completed Transcript Request Form |
| Completed Application | System-generated note with Ms. Davis's completed online application attached |
| Student has completed the Online Application | System-generated note that Ms. Davis completed the online application to Post University |
| Student has started the Application | System-generated note that Ms. Davis started an application to Post University |

Dated: January 7, 2018

Respectfully submitted,

By: */s/ Adam Bowser* _____
Adam Bowser
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006-5344
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)
adam.bowser@arentfox.com

*Attorney for Post University, Inc.*

## <u>VERIFICATION</u>

I, Elaine Neely, Chief Regulatory Officer for Post University, Inc., believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on the 7th day of January, 2019.

Elaine Neely, Chief Regulatory Officer, Post University

/s/ Elaine Neely

Elaine Neely

# SOF ¶ 47
# Supporting Exhibits

GZJ KFKV'Q'''

 **Melanie Davis <mdspecialist21@gmail.com>**

---

**Post University would love to reconnect with you!**
2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                               Wed, Apr 4, 2018 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



Melanie

Post University would love to reconnect with you regarding starting online classes. At Post
University, our online classes are accelerated and have no set login times. This flexibility is designed
for you and your busy schedule!

We have classes beginning on **April 30th, 2018**, are you interested in starting?

Please use one of the following responses so I can update our records:

If **YES**, please respond with "YES" and I will contact you to get started.

If you are choosing to use Financial Aid, please fill out your 2017-2018 Financial Aid Application at
www.fafsa.ed.gov and add our school code:  **001401**

TOP TEN REASONS TO BECOME A STUDENT AT POST U

MD000121

1.    We aren't an "online school", we have a **campus that has been in located in Connecticut since 1890** and we offer the same classes online as on our campus so your diploma will not say that you earned your degree online.

2.    **Our university is small and private**, offering students a more personable experience from start to graduation

3.    We were just recently **ranked one of the Top 10 Programs in the Country for Return on Investment**. Meaning you are much more likely to make back the money you put into your education if you graduate from Post.

4.    We hold a regional accreditation by NEASC, the **highest accreditation a university can have**.

5.    We're also accredited with the Better Business Bureau and **have an A- rating**

6.    Students can **graduate at a quicker pace than at other universities** – usually at least 6 months to 1 year faster.

7.    Our online classes are extremely flexible allowing students to learn on their own time each week—**there are no set login times or live lectures.**

8.    When online students graduate, they are given the opportunity to **come to campus and attend graduation in person.**

9.    We're top ranked for the percentage of students that receive financial aid.

10.   Our professors are all experts working in their field so you will receive the most up to date information available from those most qualified to give it.

If **NO**, please reply to this email with: Close File.

Sincerely,

**Kimberly Williams**

Admissions Counselor



Follow us on social media:





**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                                    Wed, Apr 4, 2018 at 5:34 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

This is the 5 or 6th time I have asked Post representatives to stop contacting me.

Please close my file!!!  I will be forced to obtain legal action.

Melanie
[Quoted text hidden]

MD000123

# SOF ¶ 48
# Supporting Exhibits

# GZJ KDKV'Q'''

 **Gmail**

Melanie Davis <mdspecialist21@gmail.com>

---

**Post University would love to reconnect with you!**
2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                          Wed, Apr 4, 2018 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



Melanie

Post University would love to reconnect with you regarding starting online classes. At Post University, our online classes are accelerated and have no set login times. This flexibility is designed for you and your busy schedule!

We have classes beginning on **April 30th, 2018**, are you interested in starting?

Please use one of the following responses so I can update our records:

If **YES**, please respond with "YES" and I will contact you to get started.

If you are choosing to use Financial Aid, please fill out your 2017-2018 Financial Aid Application at www.fafsa.ed.gov and add our school code:  **001401**

TOP TEN REASONS TO BECOME A STUDENT AT POST U

MD000121

1. We aren't an "online school", we have a **campus that has been in located in Connecticut since 1890** and we offer the same classes online as on our campus so your diploma will not say that you earned your degree online.

2. **Our university is small and private**, offering students a more personable experience from start to graduation

3. We were just recently **ranked one of the Top 10 Programs in the Country for Return on Investment**. Meaning you are much more likely to make back the money you put into your education if you graduate from Post.

4. We hold a regional accreditation by NEASC, the **highest accreditation a university can have**.

5. We're also accredited with the Better Business Bureau and **have an A- rating**

6. Students can **graduate at a quicker pace than at other universities** – usually at least 6 months to 1 year faster.

7. Our online classes are extremely flexible allowing students to learn on their own time each week—**there are no set login times or live lectures.**

8. When online students graduate, they are given the opportunity to **come to campus and attend graduation in person.**

9. We're top ranked for the percentage of students that receive financial aid.

10. Our professors are all experts working in their field so you will receive the most up to date information available from those most qualified to give it.

If **NO**, please reply to this email with: Close File.

Sincerely,

**Kimberly Williams**

Admissions Counselor



Follow us on social media:





**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Apr 4, 2018 at 5:34 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

This is the 5 or 6th time I have asked Post representatives to stop contacting me.

Please close my file!!!  I will be forced to obtain legal action.

Melanie
[Quoted text hidden]

MD000123

# SOF ¶ 49
# Supporting Exhibits

GZJ KDKV'Q'''

 **Melanie Davis <mdspecialist21@gmail.com>**

---

**Post University would love to reconnect with you!**
2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                            Wed, Apr 4, 2018 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



Melanie

Post University would love to reconnect with you regarding starting online classes. At Post University, our online classes are accelerated and have no set login times. This flexibility is designed for you and your busy schedule!

We have classes beginning on **April 30th, 2018**, are you interested in starting?

Please use one of the following responses so I can update our records:

If **YES**, please respond with "YES" and I will contact you to get started.

If you are choosing to use Financial Aid, please fill out your 2017-2018 Financial Aid Application at www.fafsa.ed.gov and add our school code:  **001401**

TOP TEN REASONS TO BECOME A STUDENT AT POST U

MD000121

1.  We aren't an "online school", we have a **campus that has been in located in Connecticut since 1890** and we offer the same classes online as on our campus so your diploma will not say that you earned your degree online.

2.  **Our university is small and private**, offering students a more personable experience from start to graduation

3.  We were just recently **ranked one of the Top 10 Programs in the Country for Return on Investment**. Meaning you are much more likely to make back the money you put into your education if you graduate from Post.

4.  We hold a regional accreditation by NEASC, the **highest accreditation a university can have**.

5.  We're also accredited with the Better Business Bureau and **have an A- rating**

6.  Students can **graduate at a quicker pace than at other universities** – usually at least 6 months to 1 year faster.

7.  Our online classes are extremely flexible allowing students to learn on their own time each week—**there are no set login times or live lectures.**

8.  When online students graduate, they are given the opportunity to **come to campus and attend graduation in person.**

9.  We're top ranked for the percentage of students that receive financial aid.

10.  Our professors are all experts working in their field so you will receive the most up to date information available from those most qualified to give it.


If **NO**, please reply to this email with: Close File.

Sincerely,

**Kimberly Williams**

Admissions Counselor



Follow us on social media:





**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                                    Wed, Apr 4, 2018 at 5:34 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

This is the 5 or 6th time I have asked Post representatives to stop contacting me.

Please close my file!!!  I will be forced to obtain legal action.

Melanie
[Quoted text hidden]

MD000123

# SOF ¶ 50
# Supporting Exhibits

# EXHIBIT P



Melanie Davis <mdspecialist21@gmail.com>

---

## Post U has not forgotten about you!
2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                                    Wed, Jun 6, 2018 at 12:09 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

---

Post University Accelerated Degree Program  |  Unleash Potential, Create Possibility, Change Lives | Since 1890



Hello,

Not too long ago you considered Post University for your education, I am touching base with you because we have not given up on you and your goals! We want to make sure you hadn't either.

Classes start at the end of this month and Post U requires just two applications to have your file reviewed.

To get started with our upcoming June 25th session please respond to this email with the *best time and number today* for us to connect or if you prefer you can call me directly at 203-591-5144.

I look forward to helping you achieve your academic and career goals!

**All the best!**



Sincerely,
Kimberly Williams, Admissions Advisor

**P. 203.591.5144**

Follow us on social media:



Post University Accelerated Degree Program  | Unleash Potential, Create Possibility, Change Lives | Since 1890



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

MD000281

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.



**image002.png**
59K

---

**Melanie Davis** <mdspecialist21@gmail.com>                                      Wed, Jun 6, 2018 at 12:17 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Please stop emailing me! I'm not interested anymore!  I have told everyone who has contacted me by phone and email!!
[Quoted text hidden]

MD000282

# SOF ¶ 51
# Supporting Exhibits

# EXHIBIT P

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

---

## Post U has not forgotten about you!

2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                                     Wed, Jun 6, 2018 at 12:09 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

---

Post University Accelerated Degree Program  |  Unleash Potential, Create Possibility, Change Lives | Since 1890



Hello,

Not too long ago you considered Post University for your education, I am touching base with you because we have not given up on you and your goals! We want to make sure you hadn't either.

Classes start at the end of this month and Post U requires just two applications to have your file reviewed.

To get started with our upcoming June 25th session please respond to this email with the *best time and number today* for us to connect or if you prefer you can call me directly at 203-591-5144.

I look forward to helping you achieve your academic and career goals!

MD000280

**All the best!**



Sincerely,
Kimberly Williams, Admissions Advisor

**P. 203.591.5144**

Follow us on social media:



Post University Accelerated Degree Program  | Unleash Potential, Create Possibility, Change Lives | Since 1890



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

MD000281

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.



**image002.png**
59K

---

**Melanie Davis** <mdspecialist21@gmail.com>     Wed, Jun 6, 2018 at 12:17 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Please stop emailing me! I'm not interested anymore!  I have told everyone who has contacted me by phone and email!!
[Quoted text hidden]

MD000282

# SOF ¶ 52
# Supporting Exhibits

# EXHIBIT P



Melanie Davis <mdspecialist21@gmail.com>

---

**Post U has not forgotten about you!**
2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                                          Wed, Jun 6, 2018 at 12:09 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

---

Post University Accelerated Degree Program  |  Unleash Potential, Create Possibility, Change Lives | Since 1890



Hello,

Not too long ago you considered Post University for your education, I am touching base with you because we have not given up on you and your goals! We want to make sure you hadn't either.

Classes start at the end of this month and Post U requires just two applications to have your file reviewed.

To get started with our upcoming June 25th session please respond to this email with the *best time and number today* for us to connect or if you prefer you can call me directly at 203-591-5144.

I look forward to helping you achieve your academic and career goals!

MD000280

**All the best!**



Sincerely,
Kimberly Williams, Admissions Advisor

**P. 203.591.5144**

Follow us on social media:



Post University Accelerated Degree Program  | Unleash Potential, Create Possibility, Change Lives | Since 1890



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

MD000281

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.



**image002.png**
59K

**Melanie Davis** <mdspecialist21@gmail.com>                                  Wed, Jun 6, 2018 at 12:17 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Please stop emailing me! I'm not interested anymore!  I have told everyone who has contacted me by phone and email!!
[Quoted text hidden]

MD000282

# SOF ¶ 53
# Supporting Exhibits

# EXHIBIT C

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | CALLING_NBR | CALLED_NBR | DIALED_DIGITS | MOBILE ROLE | START_DATE | END_DATE | DURATION (SEC) | Call Type | NEID |
| 2 | ▮-4599 | (844) 246-9758 | (1844) 246-9758 | Outbound | 08/09/2017 17:39:48 | 08/09/2017 18:22:07 | 2539 | Voice | 207 |
| 3 | (203) 564-9763 | ▮-4599 | | Inbound | 08/09/2017 18:33:10 | 08/09/2017 18:33:10 | 0 | Text Detail | 198 |
| 4 | (203) 564-9763 | 6-4599 | | Inbound | 08/09/2017 18:33:11 | 08/09/2017 18:33:11 | 0 | Text Detail | 198 |
| 5 | (203) 596-8364 | ▮-4599 | -325 | Inbound | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 6 | (203) 596-8364 | -325 | ▮-4599 | Routed_Call | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 7 | (203) 596-4625 | (6245000) 000-0901 | ▮-4599 | Routed_Call | 08/13/2017 15:40:56 | 08/13/2017 15:42:29 | 93 | Voice | 207 |
| 8 | (203) 596-8364 | (6245000) 000-0901 | ▮-4599 | Routed_Call | 08/14/2017 15:55:18 | 08/14/2017 16:00:21 | 303 | Voice | 207 |
| 9 | (203) 596-8364 | (6245000) 000-0901 | ▮-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 10 | (203) 596-8364 | ▮-4599 | ▮-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 11 | (203) 596-8364 | ▮-4599 | -459 | Undetermined | 08/15/2017 15:49:14 | 08/15/2017 15:49:27 | 13 | Voice | 207 |
| 12 | (203) 596-4625 | ▮-4599 | ▮-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 13 | (203) 596-4625 | (6245000) 000-0901 | ▮-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 14 | (203) 596-4625 | ▮-4599 | -554 | Undetermined | 08/15/2017 16:58:59 | 08/15/2017 16:59:26 | 27 | Voice | 207 |
| 15 | (203) 433-7705 | ▮-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:23 | 0 | Text Detail | 547 |
| 16 | (203) 433-7705 | ▮-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:24 | 0 | Text Detail | 547 |
| 17 | ▮-4599 | (203) 433-7705 | | Outbound | 08/30/2017 12:43:17 | 08/30/2017 12:43:17 | 0 | Text Detail | 229 |
| 18 | (203) 591-5144 | (6245000) 000-0901 | ▮-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 19 | (203) 591-5144 | ▮-4599 | ▮-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 20 | (203) 591-5144 | ▮-4599 | -191 | Undetermined | 10/18/2017 14:57:29 | 10/18/2017 14:57:52 | 23 | Voice | 207 |
| 21 | (203) 596-8364 | ▮-4599 | ▮-4599 | Inbound | 01/11/2018 18:56:22 | 01/11/2018 18:58:03 | 101 | Voice | 207 |
| 22 | (203) 802-5819 | ▮-4599 | | Inbound | 07/17/2018 15:56:45 | 07/17/2018 15:56:45 | 0 | Text Detail | 552 |
| 23 | (203) 802-5819 | ▮-4599 | | Inbound | 07/17/2018 15:56:51 | 07/17/2018 15:56:51 | 0 | Text Detail | 552 |
| 24 | (203) 802-5819 | ▮-4599 | | Inbound | 07/17/2018 15:56:59 | 07/17/2018 15:56:59 | 0 | Text Detail | 552 |
| 25 | (203) 802-5819 | ▮-4599 | | Inbound | 07/17/2018 15:57:05 | 07/17/2018 15:57:05 | 0 | Text Detail | 552 |
| 26 | (203) 802-5819 | ▮-4599 | | Inbound | 07/17/2018 15:57:12 | 07/17/2018 15:57:12 | 0 | Text Detail | 552 |
| 27 | ▮-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:22 | 07/17/2018 16:00:22 | 0 | Text Detail | 558 |
| 28 | ▮-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:23 | 07/17/2018 16:00:23 | 0 | Text Detail | 558 |
| 29 | ▮-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:01:34 | 07/17/2018 17:01:34 | 0 | Text Detail | 558 |
| 30 | ▮-4599 | (203) 802-5819 | | Inbound | 07/17/2018 17:03:09 | 07/17/2018 17:03:09 | 0 | Text Detail | 552 |
| 31 | ▮-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:05:31 | 07/17/2018 17:05:31 | 0 | Text Detail | 558 |
| 32 | (203) 802-5819 | ▮-4599 | | Inbound | 07/17/2018 17:09:04 | 07/17/2018 17:09:04 | 0 | Text Detail | 552 |
| 33 | ▮-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:13:28 | 07/17/2018 17:13:28 | 0 | Text Detail | 558 |
| 34 | ▮-4599 | (203) 591-5047 | (1203) 591-5047 | Outbound | 07/18/2018 10:18:07 | 07/18/2018 10:21:22 | 195 | Voice | 207 |

# MD000887 (Subset)

# EXHIBIT D



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports

**Calling number:** This column reflects the number placing the call (the individual who initiated the call).    If the call is an outgoing call, this will be the Sprint PCS target number.

**Called number:** This column reflects the number actually called.    In most cases this number will be the same as the number in the "Dialed Digits" column.    If the number has been forwarded, or if there is a routing number, then this will be reflected. If the number has a 11 in front of the area code, that means the call rolled to voicemail and was NOT answered by the customer.

**Dialed digits:** This column reflects the digits that the caller enters into the keypad of the phone.    If the call is an incoming call, this will be the Sprint PCS target number.

**Mobile Role:** Mobile Role (Type of Call).    Listed as outgoing, incoming, routed call or undetermined.

**Start Date:** Date and time the call was initiated.

**End Date:** Date and time the call was ended.

**Duration:** Duration of call, in seconds.

**Call Type:** Indicates the type of transaction on the network.    This includes, but not limited to: Voice, Text Detail, WiFi and Airave.

**NEID:** This reflects which network element handled the call.

MD000907



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports, cont.

*Routed calls come in several varieties.    A TLDN (Temporary Local Directory Number) may be considered to be a bridge/router number to complete a call.    A TLDN will be represented by a number that may range from 3 to 10 digits in length.    Similar to TLDN, an IMRN (IP Multimedia Routing Number), will be used to route Apple WiFi Calls.    Another scenario is when a call is not answered, but is routed to voicemail. Calls routed straight to voicemail    may also have an "11" before the number indicated in the "Called_Nbr" column. For handsets using visual voicemail, these numbers may replace the "11" in the called number column: (800) 877-2400, (866) 677-8204, (866) 222-2604, and (877) 836-4746    The indicator that Sprint's Visual Voicemail platform was used within the session appears as 624500000XXXXXXX.

*WiFi Call Type: Please note that Sprint does not have the capability to determine the time stamp. These calls can be reflected in Switch time or GMT.

*The CDMA call detail report may indicate the sending and receipt of text messages and e-mail.    While not flagged as text messages, the line will indicate no duration, the dialed digits column will either be blank or will show an e-mail address, and the NEID column may contain one of the following numbers: 191-198 226-229 291-294

* On the CDMA network, Sprint maintains Gateway, SWATs (Soft Wireless Access Tandem) and MCGs (Media Gateway Controllers)    networks in areas where there are large Sprint customer populations. These provide the required extra space that helps Sprint maintain all of the calls.    When a call moves through a gateway or SWAT cell site information is not retained and is not recoverable.    NEIDs for Gateways 124-125, SWATs are 96, 184-190, 263, 363-365 and MGCs are 366-371

* Time Zones: Beginning 10/20/17 through present SMS text message time stamps are in Central. From 05/31/2017 through 10/19/2017, text message time stamps may have been GMT.    An indicator of GMT time zones include the NEID range of 540-559.    From October 12, 2010 through May of 2017 text message time stamps were kept in Central time zone. Records prior to October 12, 2010 are either in Central or Eastern time zone.    Sprint is unable to determine which time zone is reflected in records older than October 12, 2010.

*Please be advised: The time stamp reflected on call detail reports for Sprint CDMA during the time frame of 02/04/2018 through 02/28/2018 may have been affected by a storage related upgrade. During this period, transactions may be reflected in GMT instead of the time stamp native to the switch utilized in the transaction.    This includes, but is not limited to, Voice calls and SMS transactions.

MD000908



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330    Fax: 816-600-3111

## Key to Understanding CDMA Call Detail Reports, cont.

*Short codes, also known as short numbers, are special telephone codes, significantly shorter than full telephone numbers, which can also be used to address SMS and MMS messages from mobile phones or fixed phones. Short codes are often associated with automated services. An automated program can handle the response and typically requires the sender to start the message with a command word or prefix. A list of short codes is not maintained by Sprint as number of short codes is extensive and constantly growing. Example of a short code- the customer may want updates pertaining to their favorite sports team.   The customer would sign up with that team in order to receive text message updates relevant to the team.

* Please Note - Calls made on another carrier's network, will not appear on our CDR records.   If you suspect the device was roaming on another network, please obtain those records from the other carrier.

* Please Note - As of approximately September 2018, Sprint performed a soft-launch of a voice-over-LTE product.    Because of this launch, certain calls are routed through a specific network element that time-stamps these transactions in central time.    These transactions will not have location information and may appear on the records as call type 42 or Voice.

MD000909



**Sprint**
Corporate Security
Mailstop KSOPHM0206
6480 Sprint Parkway
Overland Park, KS 66251
Office: 800-877-7330   Fax: 816-600-3111

# Star Codes

Your request has been fulfilled, at least in part, by what is known as a CDMA CDR Report.    A CDMA CDR Report lists information about incoming/outgoing calls including the digits dialed on the handset.    As a dialing shortcut, PCS subscribers may use star codes (an asterisk (*) plus a short number sequence) when using our wireless telephones.    On call detail reports the star may be indicated by a letter "B". This code will appear in the dialed digits column of the CDMA CDR Report.    Following is a list of the most common star codes.    Additional star codes may exist in the market from which the call is made. Please contact the Subpoena Compliance Group at the number listed above for more information concerning star codes.

>    *18 - Ping the nearest tower, call delivery activate
>    *180 - Call delivery deactivate
>    *2 - Customer Care
>    *3 - Payment Center
>    *31 - Three Way Calling
>    *4 - Account information
>    *5 - Spanish Customer care
>    *67 - Caller ID block
>    *68 - Override caller ID block
>    *70 - Cancel call waiting for that call
>    *711 - Customer Care
>    *72 - Activates call forwarding
>    *720 - Deactivates call forwarding
>    *73 - Call forwarding no answer
>    *74 - Call forward busy
>    *811 - Customer Care
>    *82 - Override caller ID block- for that call
>    *911 - 911
>    *073 - Cancel call forward no answer
>    *074 - Cancel call forward busy

Other numbers which may appear in the dialed digits column:

>    411 - Directory assistance
>    611 - Customer Care
>    711 - Telecommunications Relay Service (hearing impaired)
>    911 - Can also dial 0911 or 1911
>    c777 - Web Browsing (SINS)

MD000910

# GZJ KDKV'S '''



(203) 802-5819

(1/5)Hello Melanie, this is Connie with Post University's admissions

(2/5)office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to

Text Message

MD000001



(203) 802-5819

you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Text Message

MD000002

Case 9:18-cv-81004-RKA   Document 23-1   Entered on FLSD Docket 07/19/2019   Page 328 of



.ıll Sprint 🛜



(203) 802-5819

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Yesterday 6:01 PM

I would like to have a copy of Post University's Do-not-call-list please! You may send it to my address on your file.

Thank you!

Melanie Davis

We do not disclose student information. Your file has been closed.

Text Message


MD000003

(203) 802-5819

I'm am not asking for any student information. I am asking for Post University's Do not call Manuel. My file being closed with your organization did not stop you from contacting me after several requests!

You will not be contacted by us again

Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school.

Thank you!

Text Message

MD000004

# SOF ¶ 54
# Supporting Exhibits

# GZJ KDKV'S '''

Case 9:18-cv-81004-RKA Document 23-1 Entered on FLSD Docket 07/19/2019 Page 332 of

(203) 802-5819

Text Message
Yesterday 4:56 PM

(1/5)Hello Melanie, this is Connie with Post University's admissions

(2/5)office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to

Text Message

MD000001



(203) 802-5819

you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Text Message

MD000002

Case 9:18-cv-81004-RKA · Document 33-1 · Entered on FLSD Docket 07/19/2019 · Page 334 of



(203) 802-5819

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Yesterday 6:01 PM

I would like to have a copy of Post University's Do-not-call-list please! You may send it to my address on your file.

Thank you!

Melanie Davis

We do not disclose student information. Your file has been closed.

Text Message

MD000003

(203) 802-5819

I'm am not asking for any student information. I am asking for Post University's Do not call Manuel. My file being closed with your organization did not stop you from contacting me after several requests!

You will not be contacted by us again

Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school.

Thank you!

Text Message

MD000004

# SOF ¶ 55
# Supporting Exhibits

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF FLORIDA
 3   _____
     MELANIE DAVIS,              )Civil Case
 4                               )No.: 18-cv-81004-RLR
                   Plaintiffs,)
 5                               )
     v.                          )
 6                               )
     POST UNIVERSITY, INC.,      )
 7                               )
                   Defendants.)
 8                               )
     _____)
 9
10
11            DEPOSITION OF CONSTANCE REILLY
12
13
14
15   DATE:           February 8, 2019
16   TIME:           9:00 a.m.
17   HELD AT:        Wyndham Southbury
                     Southbury, Connecticut
18
19
        By:         Sarah J. Miner, RPR, LSR #238
20
21
22
23
24
25
```

1        A. Yes.

2        Q. At the top of the page, you see a telephone

3   number is a 203-802-5819?

4        A. Yes.

5        Q. Do you recognize that number?

6        A. Yes.

7        Q. What number is that?

8        A. My old Google Voice work account number.

9        Q. And is that the Google Voice work account

10   number that you would use to text prospective leads?

11        A. Yes.

12        Q. Or that you would use to text leads?

13        A. Yes.

14        Q. Is that the Google Voice number that you

15   would occasionally use to call leads?

16        A. Only if I was working from home.

17        Q. Do you recognize these messages, the content

18   of these messages?

19        A. No.

20        Q. Do you know if you sent these messages?

21   Excuse me.  There are two different colors on here.  I

22   am sure you know how the text messaging works.

23        A. Yes.

24        Q. The lighter color are the ones my client

25   received, the darker ones being the one my client

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**MELANIE DAVIS,**

                    Plaintiff,

  v.

**POST UNIVERSITY, INC.**

                    Defendant.

Civil Case No.: 18-cv-81004-RLR

**Plaintiff's Third Set of Requests for Admission**

PROPOUNDING PARTY: Melanie Davis ("Plaintiff")

RESPONDING PARTIES: Post University, Inc.

SET NUMBER:                Three (3)

Pursuant to Rules 26(e) and 36 of the Federal Rules of Civil Procedure, Defendant Post University, Inc., through counsel, hereby provides its Responses to Plaintiff's Third Set of Requests for Admission ("Requests") propounded to it by Plaintiff Melanie Davis.

These responses are made solely for the purpose of the above-captioned proceeding. Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Requests. All responses are given on the basis of a good faith effort to locate requested information. Upon additional information being located throughout the course of discovery, Defendant will supplement its responses.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION

## REQUEST FOR ADMISSION NO. 37

Admit that YOU do not contest that the "Internal DNC Class", as defined in Paragraph 132 of Plaintiff's First Amended Complaint, docket entry 34, is sufficiently numerous for class certification purposes.

Admit that YOU have produced all documents that reflect, between July 30, 2014 and July 30, 2018, YOUR training of YOUR agents or employees on how to interpret, honor, and/or document "do not call" requests[.]

**RESPONSE TO REQUEST FOR ADMISSION NO. 47**

Post University admits that it has produced all documents in its possession that reflect its training of its agents or employees on how to interpret, honor, and/or document "do not call" requests that it has been able to locate to date after a diligent search.

**REQUEST FOR ADMISSION NO. 48**

Admit that on or about July 17, 2018 telephone number 203-802-5819 was owned, operated, or used by YOU.

**RESPONSE TO REQUEST FOR ADMISSION NO. 48**

Post University admits that on or about July 17, 2018, the telephone number 203-802-5819 was owned, operated, or used by one of Post University's employees on the University's behalf.

**REQUEST FOR ADMISSION NO. 49**

Admit that on or about July 17, 2018 telephone number 203-802-5819 was owned, operated, or used by one of YOUR employees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49**

Post University admits that on or about July 17, 2018, telephone number 203-802-5819 was owned, operated, or used by one of Post University's employees.

**REQUEST FOR ADMISSION NO. 50**

Admit that YOU permitted employees to use personal cell phones, personal Google Voice accounts, or third-party text messaging platforms (e.g. "Text Now") to communicate with prospective students.

**RESPONSE TO REQUEST FOR ADMISSION NO. 50**

Post University admits that it permitted employees to use Google Voice accounts and third-party text messaging platforms registered under their Post University credentials, but denies that it permitted employees to use personal cell phones to communicate with prospective students.

Dated: February 12, 2019                    Respectfully submitted,

                                            By: */s/ Adam Bowser*
                                            Adam Bowser
                                            **ARENT FOX LLP**
                                            1717 K Street, N.W.
                                            Washington, DC 20006-5344
                                            (202) 857-6000 (telephone)
                                            (202) 857-6395 (facsimile)
                                            adam.bowser@arentfox.com

                                            *Attorneys for Post University, Inc.*

# SOF ¶ 56
# Supporting Exhibits

# GZJ KDKV'S '''

.ıll Sprint 🛜       **9:24 AM**       🔄 ➚ ⏰ 10% 🔋



**(203) 802-5819**

Text Message
Yesterday 4:56 PM

(1/5)Hello Melanie, this is Connie with Post University's admissions

(2/5)office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to

Text Message

MD000001



(203) 802-5819

you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Text Message

MD000002



(203) 802-5819

> I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Yesterday 6:01 PM

> I would like to have a copy of Post University's Do-not-call-list please! You may send it to my address on your file.
>
> Thank you!
>
> Melanie Davis

We do not disclose student information. Your file has been closed.

Text Message

MD000003

Case 9:18-cv-81004-RKA  Document 73-1  Entered on FLSD Docket 07/19/2019  Page 347 of

**Sprint**

(203) 802-5819

I'm am not asking for any student information.  I am asking for Post University's Do not call Manuel. My file being closed with your organization did not stop you from contacting me after several requests!

You will not be contacted by us again

Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school.

Thank you!

Text Message

MD000004

# SOF ¶ 57
# Supporting Exhibits

GZJ KDKV'S '''



(203) 802-5819

(1/5)Hello Melanie, this is Connie with Post University's admissions

(2/5)office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to

Text Message

MD000001



(203) 802-5819

you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Text Message

MD000002



**(203) 802-5819**

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Yesterday 6:01 PM

I would like to have a copy of Post University's Do-not-call-list please! You may send it to my address on your file.

Thank you!

Melanie Davis

We do not disclose student information. Your file has been closed.

MD000003

**9:24 AM**

(203) 802-5819

I'm am not asking for any student information. I am asking for Post University's Do not call Manuel. My file being closed with your organization did not stop you from contacting me after several requests!

You will not be contacted by us again

Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school.

Thank you!

# SOF ¶ 58
# Supporting Exhibits

# EXHIBIT C

| | CALLING_NBR | CALLED_NBR | DIALED_DIGITS | MOBILE ROLE | START_DATE | END_DATE | DURATION (SEC) | Call Type | NEID |
|---|---|---|---|---|---|---|---|---|---|
| 2 | ■-4599 | (844) 246-9758 | (1844) 246-9758 | Outbound | 08/09/2017 17:39:48 | 08/09/2017 18:22:07 | 2539 | Voice | 207 |
| 3 | (203) 564-9763 | ■-4599 | | Inbound | 08/09/2017 18:33:10 | 08/09/2017 18:33:10 | 0 | Text Detail | 198 |
| 4 | (203) 564-9763 | ■6-4599 | | Inbound | 08/09/2017 18:33:11 | 08/09/2017 18:33:11 | 0 | Text Detail | 198 |
| 5 | (203) 596-8364 | ■-4599 | | Inbound | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 6 | (203) 596-8364 | ■-325 | ■-4599 | Routed_Call | 08/11/2017 14:50:22 | 08/11/2017 14:53:48 | 206 | Voice | 207 |
| 7 | (203) 596-4625 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/13/2017 15:40:56 | 08/13/2017 15:42:29 | 93 | Voice | 207 |
| 8 | (203) 596-8364 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/14/2017 15:55:18 | 08/14/2017 16:00:21 | 303 | Voice | 207 |
| 9 | (203) 596-8364 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 10 | (203) 596-8364 | ■-4599 | ■-4599 | Routed_Call | 08/15/2017 15:49:13 | 08/15/2017 15:51:17 | 124 | Voice | 207 |
| 11 | (203) 596-4625 | ■-4599 | -459 | Undetermined | 08/15/2017 15:49:14 | 08/15/2017 15:49:27 | 13 | Voice | 207 |
| 12 | (203) 596-4625 | ■-4599 | ■-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 13 | (203) 596-4625 | (6245000) 000-0901 | ■-4599 | Routed_Call | 08/15/2017 16:58:58 | 08/15/2017 17:00:22 | 84 | Voice | 207 |
| 14 | (203) 596-4625 | ■-4599 | -554 | Undetermined | 08/15/2017 16:58:59 | 08/15/2017 16:59:26 | 27 | Voice | 207 |
| 15 | (203) 433-7705 | ■-4599 | | Inbound | 08/30/2017 17:42:23 | 08/30/2017 17:42:23 | 0 | Text Detail | 547 |
| 16 | (203) 433-7705 | ■-4599 | | Inbound | 08/30/2017 17:42:24 | 08/30/2017 17:42:24 | 0 | Text Detail | 547 |
| 17 | ■-4599 | (203) 433-7705 | | Outbound | 08/30/2017 12:43:17 | 08/30/2017 12:43:17 | 0 | Text Detail | 229 |
| 18 | (203) 591-5144 | (6245000) 000-0901 | ■-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 19 | (203) 591-5144 | ■-4599 | ■-4599 | Routed_Call | 10/18/2017 14:57:28 | 10/18/2017 14:58:53 | 85 | Voice | 207 |
| 20 | (203) 591-5144 | ■-4599 | -191 | Undetermined | 10/18/2017 14:57:29 | 10/18/2017 14:57:52 | 23 | Voice | 207 |
| 21 | (203) 596-8364 | ■-4599 | ■-4599 | Inbound | 01/11/2018 18:56:22 | 01/11/2018 18:58:03 | 101 | Voice | 207 |
| 22 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:56:45 | 07/17/2018 15:56:45 | 0 | Text Detail | 552 |
| 23 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:56:51 | 07/17/2018 15:56:51 | 0 | Text Detail | 552 |
| 24 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:56:59 | 07/17/2018 15:56:59 | 0 | Text Detail | 552 |
| 25 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:57:05 | 07/17/2018 15:57:05 | 0 | Text Detail | 552 |
| 26 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 15:57:12 | 07/17/2018 15:57:12 | 0 | Text Detail | 552 |
| 27 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:22 | 07/17/2018 16:00:22 | 0 | Text Detail | 558 |
| 28 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 16:00:23 | 07/17/2018 16:00:23 | 0 | Text Detail | 558 |
| 29 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:01:34 | 07/17/2018 17:01:34 | 0 | Text Detail | 558 |
| 30 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 17:03:09 | 07/17/2018 17:03:09 | 0 | Text Detail | 552 |
| 31 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:05:31 | 07/17/2018 17:05:31 | 0 | Text Detail | 558 |
| 32 | (203) 802-5819 | ■-4599 | | Inbound | 07/17/2018 17:09:04 | 07/17/2018 17:09:04 | 0 | Text Detail | 552 |
| 33 | ■-4599 | (203) 802-5819 | | Outbound | 07/17/2018 17:13:28 | 07/17/2018 17:13:28 | 0 | Text Detail | 558 |
| 34 | ■-4599 | (203) 591-5047 | (1203) 591-5047 | Outbound | 07/18/2018 10:18:07 | 07/18/2018 10:21:22 | 195 | Voice | 207 |

MD000887 (Subset)

# EXHIBIT R

**Cooley, Sean**

From:       Cooley, Sean
Sent:       Wed 7/18/2018 3:34 PM (GMT-04:00)
To:         Neely, Elaine
Cc:         Schechter, Richard
Bcc:
Subject: RE: ACD Call Received- Student Requesting a Copy of our "Do Not Call Policy"


I'm deferring that question to Rich

**From:** Neely, Elaine
**Sent:** Wednesday, July 18, 2018 3:32 PM
**To:** Cooley, Sean <SCooley@Post.edu>
**Cc:** Schechter, Richard <RSchechter@Post.edu>
**Subject:** Re: ACD Call Received- Student Requesting a Copy of our "Do Not Call Policy"

Do we have a written policy?

On Jul 18, 2018, at 3:30 PM, Cooley, Sean <SCooley@Post.edu> wrote:

   Good afternoon –

   The below email was passed on to me and I wanted to do the same.  What should the next steps be?  I
   have already informed the AC that we will be handling communication with the inquiry moving
   forward.

   Regards,

   **From:** Winters, Annalynn
   **Sent:** Wednesday, July 18, 2018 10:42 AM
   **To:** Cooley, Sean <SCooley@Post.edu>
   **Subject:** ACD Call Received- Student Requesting a Copy of our "Do Not Call Policy"
   **Importance:** High

   Good morning Sean,

   I hope this message finds you well. At approximately 10:20 this morning I received an ACD call from a student
   named Melanie. She did not wish to provide her last name, and upon searching her email in CRM I didn't find an
   associated lead and/or opportunity. The student was very pleasant, and after she asked for our "Do Not Call Policy"
   I offered to look up her file to ensure that it was closed. She indicated that she was assured that this was already
   taken care of and that she simply wanted to be emailed a formal copy of our policy.

   I obtained the student's email address so that the policy could be sent via email. Her email is
   mdspecialist21@gmail.com.

   If you have any further questions or concerns in this regard please feel free to reach out!

   All the best,

   *-Annalynn Winters-Fuentes*

PU00011779

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>            Defendant. | Civil Case No.: 18-cv-81004-RKA<br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

### DECLARATION OF MELANIE DAVIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.     My name is Melanie Davis and I declare, under penalty of perjury, that the following is true and correct.

2.     The telephone number ending in 4599 is my personal cellular telephone number.

3.     It was my personal cellular telephone number prior to my first contact with Post University, and remains so to this day.

4.     The document labeled MD000009 is a true and accurate copy of a page from my Sprint bill that I took directly from my online account portal, with part of my account number and another telephone number on my account redacted.

5.     Post University continued to call, text, and email me after I had expressed that I was unable to move forward, and after numerous do-not-call requests.

6.     On August 13, I replied to an email from Post University informing it I would no longer be able to move forward with school.

7.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000199-200.

DocuSign Envelope ID: 877C307D-D2A6-4414-B1C8-544E4EBDCC04

18.     On April 4, 2018, I replied to an email from Post University by writing, in part, "[t]his is the 5th or 6th time I have asked Post representatives to stop contacting me. Please close my file!!! I will be forced to obtain legal action."

19.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000121-23.

20.     On June 6, 2018, I replied to an email from Post University by writing, in part, "[p]lease stop emailing me! I'm not interested anymore! I have told everyone who has contacted me by phone and email!!!"

21.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000280-82.

22.     On July 17, 2018, Post University sent me a series of text messages at my telephone number ending in 4599.

23.     True and accurate copies of these text messages and my responses are shown in the screenshots labeled MD000001-4, which were taken on July 18, 2018.

24.     On September 7, 2018, PU sent me an email inviting me to submit my FAFSA.

25.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000509-510.

26.     On at least two occasions, I asked Post University for a copy of its written do-not-call policy, so I could act in accordance with it and finally get the calls to stop.

27.     To date, no such policy has been provided to me.

28.     All of Post University's calls, texts, and emails to me after I first informed Post University that I was unable to move forward were to encourage me to re-start or continue the

DocuSign Envelope ID: 877C307D-D2A6-4414-B1C8-544E4EBDCC04

enrollment process that I had said I did not intend to continue, and/or gauge my interest in enrolling in an upcoming class session.

29.    If called upon, I could testify about the matters set forth herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed on ___7/18/2019_____ (date).

_____
Melanie Davis

Page 1

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF FLORIDA

3      -----------------------------)

4      MELANIE DAVIS,                )    CASE NO.:

5               Plaintiff,           )    18-81004-CIV

6          vs.                       )

7      POST UNIVERSITY, INC.,        )

8               Defendant.           )

9      -----------------------------)

10

11

12          DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13     AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                    DATE:  APRIL 11, 2019

15                       HELD AT:

16                  WYNDHAM SOUTHBURY

17                 1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1      Q.    And it's the same thing with respect to

2    lost opportunities; correct?  There's a lot of

3    questions I asked so let me try again.

4          A lost opportunity is reached; an

5    admissions counselor is gauging if they are

6    interested or capable of now continuing the process

7    that they previously started; correct?

8      A.    Most of the times, yes.

9      Q.    That's the 90 plus percent versus the

10   small subset we discussed; correct?

11     A.    Yes.

12     Q.    And those admissions counselors then, they

13   take sort of the same role as we just discussed;

14   they nurture those prospective students through the

15   process in 16?

16     A.    Yes.

17     Q.    Between July 30th, 2014 and July 30th,

18   2018, did Post have a written Do Not Call policy?

19     A.    No.

20     Q.    Between July 30th 2014 and July 30, 2018

21   if someone requested Post's written Do Not Call

22   policy, what would be provided?

23     A.    I don't know.  I'm not certain.

24     Q.    Did anyone ever request -- to the best of

25   your knowledge, did anyone ever request the Do Not

Page 210

1    Call policy from Post University?

2        A.    Outside of this, not to my knowledge.

3        Q.    When you say "outside of this," are you

4    saying outside of my client's request?

5        A.    Correct.

6        Q.    And when my client requested a written Do

7    Not Call policy, what was provided?

8        A.    I can't recall exactly what was provided.

9        Q.    Did my client's request get discussed

10   internally at Post?

11       A.    Yes.

12       Q.    Excluding any communications with your

13   lawyers, I'm talking strictly after my client made

14   the request, did Post University employees and

15   officers discuss how to respond to the request?

16       A.    Just the lawyer or the lawyer and --

17       Q.    No, I'm excluding -- Adam, I'm sorry to

18   exclude you -- but no, I don't want to know any

19   communication with the lawyers.

20             Before the lawsuit, my client requested

21   the policy.  When my client requested the policy,

22   was it discussed on how to respond?

23       A.    There were a couple of communications as

24   to, is there something that can be provided.  Adam

25   was on the call.

# SOF ¶ 59
# Supporting Exhibits

DocuSign Envelope ID: 877C307D-D2A6-4414-B1C8-544E4EBDCC04

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>                 Plaintiff,<br><br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>               Defendant. | Civil Case No.: 18-cv-81004-RKA<br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## DECLARATION OF MELANIE DAVIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.     My name is Melanie Davis and I declare, under penalty of perjury, that the following is true and correct.

2.     The telephone number ending in 4599 is my personal cellular telephone number.

3.     It was my personal cellular telephone number prior to my first contact with Post University, and remains so to this day.

4.     The document labeled MD000009 is a true and accurate copy of a page from my Sprint bill that I took directly from my online account portal, with part of my account number and another telephone number on my account redacted.

5.     Post University continued to call, text, and email me after I had expressed that I was unable to move forward, and after numerous do-not-call requests.

6.     On August 13, I replied to an email from Post University informing it I would no longer be able to move forward with school.

7.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000199-200.

18.     On April 4, 2018, I replied to an email from Post University by writing, in part, "[t]his is the 5th or 6th time I have asked Post representatives to stop contacting me. Please close my file!!! I will be forced to obtain legal action."

19.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000121-23.

20.     On June 6, 2018, I replied to an email from Post University by writing, in part, "[p]lease stop emailing me! I'm not interested anymore! I have told everyone who has contacted me by phone and email!!!"

21.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000280-82.

22.     On July 17, 2018, Post University sent me a series of text messages at my telephone number ending in 4599.

23.     True and accurate copies of these text messages and my responses are shown in the screenshots labeled MD000001-4, which were taken on July 18, 2018.

24.     On September 7, 2018, PU sent me an email inviting me to submit my FAFSA.

25.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000509-510.

26.     On at least two occasions, I asked Post University for a copy of its written do-not-call policy, so I could act in accordance with it and finally get the calls to stop.

27.     To date, no such policy has been provided to me.

28.     All of Post University's calls, texts, and emails to me after I first informed Post University that I was unable to move forward were to encourage me to re-start or continue the

DocuSign Envelope ID: 877C307D-D2A6-4414-B1C8-544E4EBDCC04

enrollment process that I had said I did not intend to continue, and/or gauge my interest in enrolling in an upcoming class session.

29.     If called upon, I could testify about the matters set forth herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/18/2019 _____ (date).

_____
Melanie Davis

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                 )   CASE NO.:

5              Plaintiff,           )   18-81004-CIV

6         vs.                       )

7    POST UNIVERSITY, INC.,         )

8              Defendant.           )

9    ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1    Q.    And it's the same thing with respect to

2    lost opportunities; correct?  There's a lot of

3    questions I asked so let me try again.

4         A lost opportunity is reached; an

5    admissions counselor is gauging if they are

6    interested or capable of now continuing the process

7    that they previously started; correct?

8    A.    Most of the times, yes.

9    Q.    That's the 90 plus percent versus the

10   small subset we discussed; correct?

11   A.    Yes.

12   Q.    And those admissions counselors then, they

13   take sort of the same role as we just discussed;

14   they nurture those prospective students through the

15   process in 16?

16   A.    Yes.

17   Q.    Between July 30th, 2014 and July 30th,

18   2018, did Post have a written Do Not Call policy?

19   A.    No.

20   Q.    Between July 30th 2014 and July 30, 2018

21   if someone requested Post's written Do Not Call

22   policy, what would be provided?

23   A.    I don't know.  I'm not certain.

24   Q.    Did anyone ever request -- to the best of

25   your knowledge, did anyone ever request the Do Not

Page 210

1    Call policy from Post University?

2         A.    Outside of this, not to my knowledge.

3         Q.    When you say "outside of this," are you

4    saying outside of my client's request?

5         A.    Correct.

6         Q.    And when my client requested a written Do

7    Not Call policy, what was provided?

8         A.    I can't recall exactly what was provided.

9         Q.    Did my client's request get discussed

10   internally at Post?

11        A.    Yes.

12        Q.    Excluding any communications with your

13   lawyers, I'm talking strictly after my client made

14   the request, did Post University employees and

15   officers discuss how to respond to the request?

16        A.    Just the lawyer or the lawyer and --

17        Q.    No, I'm excluding -- Adam, I'm sorry to

18   exclude you -- but no, I don't want to know any

19   communication with the lawyers.

20             Before the lawsuit, my client requested

21   the policy.  When my client requested the policy,

22   was it discussed on how to respond?

23        A.    There were a couple of communications as

24   to, is there something that can be provided.  Adam

25   was on the call.

# SOF ¶ 60
# Supporting Exhibits

# EXHIBIT S

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

---

**Post University - Financial Aid Grants & Loans**

**McInerney, Tashina** <tmcinerney@post.edu>                    Fri, Sep 7, 2018 at 11:34 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



Hello!



I know that the main concern about attending school is the cost of tuition. Submit your FAFSA and see what your award will be prior to enrolling in classes. It takes 48-72 hours for your FAFSA to process and come in to our financial aid department.

Once submitted a confirmation email is auto generated to the email address you used for your FAFSA. Please, forward the confirmation email to me at; Vmeehan@post.edu



Fill out the **2018/2019** FAFSA application at www.fafsa.ed.gov

Be sure that you are adding our school code: **001401.** This application should be filled out carefully and accurately.



Let me know if you have any questions or if there is anything that I can assist you with.

I am looking forward to being able to help you reach your long term educational goals!

Best Regards,

*Tashina McInerney*

**Admissions Counselor**

MD000509



Follow us on social media:





**Tashina McInerney**
ADP Admissions Counselor
tmcinerney@Post.edu
**w.** 203.596.4641
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

🗎 **image005.emz**
   2K

MD000510

# SOF ¶ 61
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3        ------------------------------)

4        MELANIE DAVIS,                )   CASE NO.:

5               Plaintiff,             )   18-81004-CIV

6            vs.                       )

7        POST UNIVERSITY, INC.,        )

8               Defendant.             )

9        ------------------------------)

10

11

12          DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13     AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                DATE:  APRIL 11, 2019

15                     HELD AT:

16                WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1          But does Post conduct any marketing to

2     advertise Post to prospective students?

3          A.    Yes.

4          Q.    What kind of marketing?

5          A.    TV commercials, radio ads, billboards,

6     AdWords on Google, things of that nature.

7          Q.    What's the point of that marketing?

8          A.    To capture people that are interested in

9     going back to school, and if they were unaware that

10    Post existed, hopefully that they will be driven

11    towards us so that we can have a PCAS with them and

12    see if we are the right choice for them.

13         Q.    What is the goal of that marketing from

14    Post's perspective?

15         A.    I believe I just answered that.

16         Q.    Is one of the goals of that marketing to

17    increase enrollment?

18         A.    Yes.  That's how prospective students come

19    to us.

20         Q.    Through --

21         A.    As you had mentioned, we are not Harvard.

22         Q.    It's through your marketing that they come

23    to you; correct?

24         A.    Correct, sir.

25         Q.    And does Post conduct outreach to

Page 102

1    prospective students as part of efforts to increase

2    enrollment?

3         A.    Yes.

4         Q.    Are outbound telephone calls included in

5    that?

6         A.    Yes.

7         Q.    Text messages?

8         A.    Yes.

9         Q.    Emails?

10        A.    Yes.

11        Q.    And so as you said, I don't want to

12   mischaracterize, but the marketing is done basically

13   to attract potential students to Post; correct?

14        A.    It's to provide brand awareness and

15   attract, let people know that we are here.

16        Q.    And the hope of that obviously is to get

17   people to hopefully come here or come to Post;

18   correct?

19        A.    Correct.

20        Q.    How does Post find out about interested

21   prospective students?

22             MR. BOWSER:  Objection, compound.

23        A.    Many different ways.

24        Q.    Does it find out -- I guess I'm not asking

25   about specific vendors you work with; I'm more

Page 132

1      Q.    So were the calls -- I'll ask again just

2   because I want to clarify the testimony -- were the

3   calls made to prospective students in the lead stage

4   considered to be marketing?

5                  MR. BOWSER:  Objection, legal

6   conclusion, compound.

7      A.    I guess it depends.

8      Q.    Is television advertisement -- did you say

9   Post does television advertisements?

10     A.    Yes.

11     Q.    Is that marketing?

12     A.    Yes.

13     Q.    Does Post do radio advertisements?

14     A.    Yes.

15     Q.    Is that marketing?

16     A.    Yes.

17     Q.    So you, again, have an understanding of

18   what marketing is; correct?

19     A.    Correct.

20     Q.    So to you, what does marketing mean?

21     A.    Bringing awareness to something, the act

22   of bringing awareness to something.

23     Q.    And when we talked previously about

24   marketing, I believe we established that part of the

25   goal of Post's marketing was to increase enrollment;

Page 133

1    correct?

2        A.    They provide -- help us obtain resources,

3    but the end goal, yes.

4        Q.    So the end goal of the marketing was, or

5    at least one of the end goals of the marketing was

6    to increase enrollment; correct?

7        A.    One of, yes.

8        Q.    So were the telephone calls to leads

9    intended to increase enrollment?

10                  MR. BOWSER:   Objection, compound.

11       A.    The intention is to respond to somebody

12   that's requested more information.  That's the

13   intention of reaching out to -- we are speaking on

14   the admissions level, and we are speaking about

15   phone calls, that phone call on the lead level is to

16   respond to someone that has requested, through

17   filling out an RFI, that they would like to receive

18   more information via text, email and phone, as all

19   are advised have TCPA language within them.  So to

20   answer your question, that is the intention of the

21   call.

22                  So I would say no, it's not marketing.

23   It's response.   It could be considered marketing in

24   the way of we are providing information about the

25   school when we speak to someone.

1      Q.    And to what end is that information being

2   provided from Post's perspective?

3      A.    Within the context of the conversation

4   that the admissions counselor is having with the

5   prospect at that juncture?

6      Q.    Admission counselors are instructed as

7   part of their job to call leads; correct?

8      A.    Correct.  They are responding to that

9   request for information, yes.

10      Q.    And when they call those leads, regardless

11   of -- when they call those leads to respond to their

12   request for information, what is Post's goal with

13   respect to calling those leads?

14              MR. BOWSER:  Objection, asked and

15   answered.

16      Q.    You can answer.

17      A.    I believe I've answered that.

18      Q.    Well, I would like you to answer again,

19   because I don't believe you have.

20      A.    Can you repeat the question.

21      Q.    When Post places calls to leads, even if

22   you are saying that the lead requested information,

23   what are Post's goals in making those calls?

24      A.    Post is returning a request for

25   information, that is what the admissions counselor

Page 135

1    is going through the motion of when they call, text

2    and/or email a lead.  They are calling to provide

3    that person who has requested information,

4    information about Post University.

5        Q.    Were these calls part of an effort to

6    encourage enrollment in Post?

7        A.    Throughout the cadence of the PCAS, should

8    the conversation shift into that, the admissions job

9    is to enroll students at Post University.

10       Q.    How many admissions counselors are

11   employed at Post?

12       A.    I can give you a rough number.

13       Q.    Rough number is fine.

14       A.    130.

15       Q.    And between 2014 and 2018, did that --

16       A.    Pause.  Forgive me, that's 130 undergrad.

17   If we are factoring in all departments, I just want

18   it to be clear, it's probably closer to 160 all

19   encompassing.

20       Q.    And between 2014 and 2018, did that number

21   stay approximately stable?

22       A.    I don't know.

23       Q.    Do you know, is an admissions counselor

24   hourly or salaried?

25       A.    Hourly.

# SOF ¶ 62
# Supporting Exhibits

Page 1

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF FLORIDA

3    -----------------------------)

4    MELANIE DAVIS,               )   CASE NO.:

5            Plaintiff,           )   18-81004-CIV

6        vs.                      )

7    POST UNIVERSITY, INC.,       )

8            Defendant.           )

9    -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14               DATE:  APRIL 11, 2019

15                    HELD AT:

16             WYNDHAM SOUTHBURY

17             1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 137

1   said multiple times, not to your understanding, but

2   also that it could be marketing.

3          So what definition are you using of

4   marketing that includes television, radio ads, but

5   does not include the outbound telephone calls?

6     A.    Because -- I'll explain.  The phone call

7   is replying to a request for information; we've

8   covered that.  I also consider providing

9   information, as I had mentioned before, to be a part

10  of marketing, providing information about something.

11  That is what transpires within a phone call.  So the

12  act of making a phone call isn't necessarily an act

13  of marketing by my definition, but I do feel like it

14  is a conduit to marketing because information is

15  then provided once a connection has been made.

16    Q.    Got it.  That's actually helpful because I

17  can sort of figure out where the issue is coming in

18  in terms of our communication.

19          So when Post reaches a lead and the lead

20  actually gets on the phone, Post then, its admission

21  counselors or whoever is making phone calls,

22  provides information; correct?

23    A.    Correct.

24    Q.    And that has a marketing component to it;

25  correct?

Page 138

1     A.     We are providing information about the

2  university, so yes.

3     Q.    And in Post's perspective that has a

4  marketing --

5              MR. BOWSER:  Objection, calls for a

6  legal conclusion.

7     Q.    Does Post consider that to have a

8  marketing element to it?

9     A.    That's my opinion.

10     Q.    I'm asking about how Post views the

11  purpose of these calls.

12              Does it have a marketing element to them?

13     A.    The call is to provide information.

14     Q.    And does Post view providing information

15  as part of a marketing function?

16     A.    I don't -- I don't know.

17              MR. GLAPION:  Can you mark this, what

18  are we on, 19?

19              THE REPORTER:  Yes.

20              MR. GLAPION:  Thank you.  These can

21  be 19 and 20.

22           (Exhibit 19, Post University

23           Position Description, December 1,

24           2016, Bates Number PU00000005, marked

25           for identification.)

# SOF ¶ 63
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3      -----------------------------)

4      MELANIE DAVIS,                )     CASE NO.:

5              Plaintiff,            )     18-81004-CIV

6          vs.                       )

7      POST UNIVERSITY, INC.,        )

8              Defendant.            )

9      -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16               WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 141

1   have the same -- or excuse me, PU 29, Exhibit 20,

2   where it says, in the first paragraph, You will need

3   excellent communication, listening, customer service

4   and sales skills.

5          So admissions counselors needed sales

6   skills; correct, in Post's view?

7      A.   You need the ability to build rapport,

8   which is considered a sales skill.

9      Q.   Is it your testimony that admissions

10  counselors were not involved in any sales?

11     A.   No.

12     Q.   That's not your testimony.  So, okay, so

13  then if --

14     A.   Define sales, since we went round and

15  round with that.

16     Q.   Sure.   The definition I'm using of sales

17  in the context of Post University, and you can tell

18  me if you disagree, is that Post University provides

19  its education services for a fee.

20     A.    If by that definition of sales, then yes,

21  and an admissions counselor is involved in that

22  process, yes.

23     Q.    And these phone calls that the admissions

24  counselors make, even if responding to a request for

25  information, are part of that sales process, using

1    the definition we just established; correct?

2        A.    Yes.

3        Q.    And on this document -- we are still on

4    Exhibit 20, third to last bullet point -- it says

5    that an admissions counselor is expected to

6    participate in weekly team and floor-wide meetings

7    to address sales tactics.

8            Do you see that?

9        A.    Where are we?

10       Q.    Third to last bullet point on Exhibit 20,

11   on the top section, I apologize.

12       A.    Yes, I see that.

13       Q.    So again, one of the expectations of an

14   admissions counselor was to be in meetings where

15   they talk about tactics to sell; correct?

16       A.    Yeah, well, whenever anybody is providing

17   a product to someone, you should understand how to

18   deliver that product.

19       Q.    So they would meet, and tell me if you

20   disagree with this characterization, when they say

21   "weekly team and floor-wide meetings to address

22   sales tactics," that's talking about how best to

23   sell Post University?

24       A.    It's how best to build rapport or

25   objection overcoming, as we've discussed before.

# SOF ¶ 64
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    -----------------------------)

4    MELANIE DAVIS,                )    CASE NO.:

5             Plaintiff,           )    18-81004-CIV

6        vs.                       )

7    POST UNIVERSITY, INC.,        )

8             Defendant.           )

9    -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 153

1    information is a form of marketing.  Marketing is

2    providing information.  That's a personal feeling.

3    So if that is a Post testimony, then I would like to

4    retract it.

5         Q.    I mean, ultimately you were designated to

6    be deposed by Post.  I recognize what you are saying

7    about that is your own personal testimony.  If you

8    are not prepared to answer that question on behalf

9    of Post, again, that's something that can be dealt

10   with later, but I understand what you are saying in

11   terms of your testimony that it is on your own

12   personal behalf on that particular question.

13            Is one of the goals when an admissions

14   counselor first places a call -- let's start with a

15   lead, they first place a call to a lead, is one of

16   the goals to ultimately enroll that student in Post?

17       A.    Yes.

18       Q.    And when you enroll in Post, again, we've

19   established, though we don't necessarily like to

20   agree on the terminology, enrollment in Post and

21   purchasing Post educational services are the same

22   thing.

23       A.    Yes.

24       Q.    And there are multiple steps from inquiry

25   to enrollment; correct?

1      A.    If the lead picks up the phone.

2      Q.    That appears to me though to be captured

3  in the red arrow to the right, that you are

4  attempting to contact the lead.

5            So the attempt to contact the lead starts

6  the process of that; correct?

7      A.    Yes.

8      Q.    And then reaching the lead starts the

9  actual status process in qualifying, qualify,

10  qualified, etcetera?

11     A.    Correct.

12     Q.    So although the prospective student may

13  not enroll on that very first call, that very first

14  call to a lead starts that process that could

15  potentially lead to enrollment; correct?

16     A.    Yes.

17     Q.    And when an opportunity is called, is it

18  fair to characterize a goal of that call to an

19  opportunity to move the -- help move the opportunity

20  move through the process outlined in Exhibit 16?

21     A.    Yes -- well, it depends.  It's not -- not

22  every call is designed to move a person through the

23  funnel.  There are calls to check up on someone.

24  There's calls -- personal relationship calls that

25  are established to see how someone's soccer game

# SOF ¶ 65
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------)

4     MELANIE DAVIS,                 )    CASE NO.:

5              Plaintiff,            )    18-81004-CIV

6         vs.                        )

7     POST UNIVERSITY, INC.,         )

8              Defendant.            )

9     ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                DATE:  APRIL 11, 2019

15                    HELD AT:

16               WYNDHAM SOUTHBURY

17               1284 Strongtown Road

18               Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 288

1   correct?

2       A.    Telephone and text.

3       Q.    And text?

4       A.    Which you combined.

5       Q.    I apologize.  Okay.  So as part of this

6   process, Post makes telephone calls and text

7   messages to prospective students?

8       A.    Correct.

9       Q.    And it does so to leads; correct?

10      A.    Yes.

11      Q.    And it does so to opportunities; correct?

12      A.    Yes.

13      Q.    And Post also calls, as we discussed, some

14  categories of rejected leads; correct?

15      A.    Pardon me?

16      Q.    Post also calls some categories of

17  rejected leads; correct?

18      A.    Correct.

19      Q.    And the purpose for the calls of those

20  rejected leads is to move them back into this

21  process or a similar process, like the one described

22  in Exhibit 16?

23      A.    The purpose of calling these rejected

24  leads is to provide them with the information that

25  they had requested when filling out the RFI, when we

Page 290

1      Q.    Which is part of the process?

2      A.    Which is part of the process.

3      Q.    And same with respect to opportunities,

4   lost opportunities, Post calls or texts some

5   categories of lost opportunities; correct?

6      A.    Correct.

7      Q.    And the goal with contacting those

8   categories of lost opportunities is to get them into

9   or back into this process, correct, for the

10   majority, the vast majority of those calls?

11      A.    Correct.

12      Q.    And as part of the communication with

13   rejected leads, one of the roles is to encourage or,

14   excuse me, your word was "nurture," is to nurture

15   them through this process; correct?

16      A.    Correct.

17      Q.    And part of nurturing those rejected leads

18   or now converted leads through this process is to

19   encourage them at the various steps; correct?

20      A.    Yes.

21      Q.    And with respect to opportunities and lost

22   opportunities, once they enter back into this

23   process, the goal is to continue to nurture them

24   through this process; correct?

25      A.    Correct.

# SOF ¶ 66
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3      ------------------------------)

4      MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,            )    18-81004-CIV

6          vs.                       )

7      POST UNIVERSITY, INC.,        )

8              Defendant.            )

9      ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13     AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                 DATE:  APRIL 11, 2019

15                     HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 117

1          Q.    I'm asking at the time a lead is rejected,

2     are they still considered a potential new enrollment

3     by Post?

4          A.    I guess I don't understand the question.

5          Q.    There are a lot of rejected leads; is that

6     fair to say?

7          A.    Yes.

8          Q.    In that lot of rejected leads, does Post

9     view those as still an avenue to potentially obtain

10    new enrollments?

11         A.    Yes.

12         Q.    Same question with respect to lost/closed

13    and lost opportunities.  After they are marked as

14    closed/lost, are they still considered a potential

15    avenue for new enrollments?

16         A.    Yes.

17                    MR. GLAPION:  Can we mark this as --

18    what are we on -- 18, and please hand it to the

19    witness when you can.

20                         (Exhibit 18, Emails, Bates Numbers

21                         PU00000062 through 64, marked for

22                         identification.)

23    BY MR. GLAPION:

24         Q.    Have you seen this document before?  If

25    you need time to look at it still, that's fine.

# SOF ¶ 67
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------)

4     MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,           )    18-81004-CIV

6         vs.                       )

7     POST UNIVERSITY, INC.,        )

8              Defendant.           )

9     ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                DATE:  APRIL 11, 2019

15                     HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1          MR. GLAPION:  I don't remember -- I

2    can't remember anything.  That's why I have the

3    realtime.

4    BY MR. GLAPION:

5       Q.    In terms of rejected leads, because we've

6    been focused on opportunities, would rejected leads

7    be called by the admissions department?

8       A.    It depends which ones.

9       Q.    But at least some of the rejected leads

10   would be called by the admissions department;

11   correct?

12      A.    Correct.

13      Q.    And the calls to the rejected leads, did

14   they have that same purpose we discussed with --

15   excuse me -- did the majority of them have the same

16   purpose we discussed with lost opportunity, to

17   reengage them with the sales process, or excuse

18   me --

19      A.    It should be probably all of them because

20   if they never made it to the opportunity phase, then

21   there was no conversation that transpired, so how

22   could rapport be established at that juncture.

23      Q.    So the goal of calling a rejected lead was

24   to --

25      A.    To see if --

1    Q.    -- I don't even want to say reengage, to

2    engage them with the process outlined in 16?

3    A.    The goal of calling a rejected lead is to

4    see if a prospective student that had once filled

5    out a request for information about going to school

6    with us, that we were unable to connect to in a

7    timely manner in the past, due to reasons we were

8    unable to identify, to see if now is the better

9    time.

10    Q.    To see if they are still interested;

11    correct?

12    A.    Correct.

13    Q.    In purchasing education services from

14    Post; correct?

15    A.    In moving forward with their education

16    with Post, correct.

17    Q.    Is there a difference between what you

18    said and I said?

19         I know we keep fighting on this, I don't

20    like it either, but is there a difference between

21    what you said and I said besides the words?

22    A.    We are providing a service and the service

23    has a fee attached to it so, we can call it whatever

24    we'd like.

25    Q.    So when you say it's correct that the

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, | Civil Case No.: 18-cv-81004 |
| Plaintiff, | |
| v. | Judge: Hon. Roy K Altman |
| | Magistrate Judge: Hon. Dave Lee Brannon |
| **POST UNIVERSITY, INC.,** | |
| Defendant. | |

## <u>DECLARATION OF SARAH MARKHAM</u>

1.     My name is Sarah Markham and I declare, under penalty of perjury, that the following is true and correct.

2.     I further declare that the following is based on my own personal knowledge.

3.     I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.     From approximately May 2016 to January 2017, I was an employee at Post University.

5.     During my employment, my title was ADP Admissions Counselor.

6.     ADP stands for Accelerated Degree Program.

7.     Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 10-15 Admissions Counselors and an Admissions Team Lead.

8.     My job responsibilities included making telephone calls to encourage and convince prospective students to enroll at Post University, interview prospective students, and ensure and pressure interested students complete the admissions process.

41.     The persons to be called during these "Power Hours" were provided on a list separate from the CRM system.

42.     We could, and were expected to, look up these persons in the CRM system before calling them.

43.     However, we were obligated to call them regardless of what the previous call dispositions stated, including if they had been noted as someone not to call.

44.     The purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to "get them back" or, in other words, re-engage that person with Post University and to encourage them to apply to and/or enroll at Post University.

45.     My general impression is that no matter what a lead said or did, they were never truly free of our attempts to contact them and convince them to enroll at Post University.

46.     In addition, during our interviews with prospective students, we were expected to ask for "references."

47.     We then made files for each of the references provided and treated those references as leads.

48.     The high-pressure approach outlined above is the primary reason I left Post University.

49.     I documented, in general terms, my concerns about Post's high-pressure tactics to Post University upon my departure.

50.     In a January 5, 2017 letter to Post University's Human Resources department, I wrote, among other things:

a.   "I find that Post University has no mission other than being profitable."

59.     For calls, I could type in the result or disposition of a call manually and/or I could select a pre-created disposition from a dropdown menu.

60.     These included self-explanatory pre-created dispositions such as (or similar to) "Left Voicemail" (which I understood should be used when I placed a call and left a voicemail), "Hang Up" (which I understood should be used when I placed a call, it was answered, but the line hung up), "Voicemail Full" (which I understood should be used when I placed a call, reached a voicemail, but was unable to leave a message because the voicemail was full), and "Voicemail not set up" (which I understood should be used when I placed a call and reached a message saying that the voicemail had not been set up).

61.     Another pre-created disposition was "No Message Left", which I understood should be used when I placed a call, reached a voicemail, but chose not to leave a message.

62.     I would estimate that at least half of my calls to rejected leads or lost opportunities were picked up or reached the dialed number's voicemail system.

63.     While I do not recall exactly how many unique rejected leads or lost opportunities I reached more than once (either by someone picking up or my call reaching their voicemail), it was in excess of 40.


I declare under penalty of perjury that the foregoing is true and correct. Executed on

June 19, 2019
_____   (date).


_____

Sarah Markham

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, | Civil Case No.: 18-cv-81004 |
| Plaintiff, | |
| v. | Judge: Hon. Roy K Altman |
| | Magistrate Judge: Hon. Dave Lee Brannon |
| **POST UNIVERSITY, INC.,** | |
| Defendant. | |

## <u>DECLARATION OF SUSANNA SHIGO</u>

1.　　My name is Susanna Shigo and I declare, under penalty of perjury, that the following is true and correct.

2.　　I further declare that the following is based on my own personal knowledge.

3.　　I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.　　From approximately October 2016 to May 2017, I was an employee at Post University.

5.　　During my employment, my title was ADP Admissions Counselor.

6.　　ADP stands for Accelerated Degree Program.

7.　　Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 8-14 Admissions Counselors, Team Lead and an Assistant Director.

46.     Similarly, when I first started at Post, during my two-week training with Shannon Madore we were provided stacks of old leads and instructed to make calls to those old leads no matter what.

47.     These training lists contained leads over two years old and were often called by different new hires.

48.     Lost opportunities and other old or rejected leads would also be called by Admissions Counselors who needed calls to meet their daily expected call volume.

49.     Admission's Counselors would often call old leads, numbers that were not in service, or rejected leads.

50.     A purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to re-connect with someone previously interested and to convince them to attend Post University.

51.     My general impression is that no matter what a lead said or did, they were never truly out of our system, and would eventually begin receiving calls again.

52.     In addition to calls, we would also communicate with leads and opportunities (new or old) via email.

53.     Many of the emails that were sent out were sent out in bulk using a "mail merge."

54.     We were never trained to or, to the best of my knowledge, expected to keep emails.

55.     When an Admissions Counselor like myself would manually note an interaction with a prospective student or the result of a call or text to that prospective student, we would often use shorthand and abbreviations.

56.     For example, "SW" and "SWS" typically meant "spoke with student" (i.e. the call reached the lead, opportunity, or student it was meant to reach, and we spoke with them).

57. "LM" ("Left Message"), "LVM" ("Left Voicemail"), "VM" ("Voicemail"), and "Left VM" all typically meant that a voicemail message was left ("VM" is short for voicemail).

58. "NML" meant "No Message Left."

I declare under penalty of perjury that the foregoing is true and correct. Executed on

6/24/2019

_____ (date).

DocuSigned by:

*Susanna Shigo*

17D430B33EBB423...

Susanna Shigo

# SOF ¶ 68
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------)

4     MELANIE DAVIS,                )   CASE NO.:

5             Plaintiff,            )   18-81004-CIV

6         vs.                       )

7     POST UNIVERSITY, INC.,        )

8             Defendant.            )

9     ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                DATE:  APRIL 11, 2019

15                     HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18                Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1                MR. GLAPION:  I don't remember -- I

2      can't remember anything.  That's why I have the

3      realtime.

4      BY MR. GLAPION:

5          Q.    In terms of rejected leads, because we've

6      been focused on opportunities, would rejected leads

7      be called by the admissions department?

8          A.    It depends which ones.

9          Q.    But at least some of the rejected leads

10     would be called by the admissions department;

11     correct?

12         A.    Correct.

13         Q.    And the calls to the rejected leads, did

14     they have that same purpose we discussed with --

15     excuse me -- did the majority of them have the same

16     purpose we discussed with lost opportunity, to

17     reengage them with the sales process, or excuse

18     me --

19         A.    It should be probably all of them because

20     if they never made it to the opportunity phase, then

21     there was no conversation that transpired, so how

22     could rapport be established at that juncture.

23         Q.    So the goal of calling a rejected lead was

24     to --

25         A.    To see if --

Page 168

1    Q.    -- I don't even want to say reengage, to

2    engage them with the process outlined in 16?

3    A.    The goal of calling a rejected lead is to

4    see if a prospective student that had once filled

5    out a request for information about going to school

6    with us, that we were unable to connect to in a

7    timely manner in the past, due to reasons we were

8    unable to identify, to see if now is the better

9    time.

10   Q.    To see if they are still interested;

11   correct?

12   A.    Correct.

13   Q.    In purchasing education services from

14   Post; correct?

15   A.    In moving forward with their education

16   with Post, correct.

17   Q.    Is there a difference between what you

18   said and I said?

19         I know we keep fighting on this, I don't

20   like it either, but is there a difference between

21   what you said and I said besides the words?

22   A.    We are providing a service and the service

23   has a fee attached to it so, we can call it whatever

24   we'd like.

25   Q.    So when you say it's correct that the

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>Defendant. | Civil Case No.: 18-cv-81004<br><br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## DECLARATION OF SARAH MARKHAM

1.      My name is Sarah Markham and I declare, under penalty of perjury, that the following is true and correct.

2.      I further declare that the following is based on my own personal knowledge.

3.      I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.      From approximately May 2016 to January 2017, I was an employee at Post University.

5.      During my employment, my title was ADP Admissions Counselor.

6.      ADP stands for Accelerated Degree Program.

7.      Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 10-15 Admissions Counselors and an Admissions Team Lead.

8.      My job responsibilities included making telephone calls to encourage and convince prospective students to enroll at Post University, interview prospective students, and ensure and pressure interested students complete the admissions process.

41.    The persons to be called during these "Power Hours" were provided on a list separate from the CRM system.

42.    We could, and were expected to, look up these persons in the CRM system before calling them.

43.    However, we were obligated to call them regardless of what the previous call dispositions stated, including if they had been noted as someone not to call.

44.    The purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to "get them back" or, in other words, re-engage that person with Post University and to encourage them to apply to and/or enroll at Post University.

45.    My general impression is that no matter what a lead said or did, they were never truly free of our attempts to contact them and convince them to enroll at Post University.

46.    In addition, during our interviews with prospective students, we were expected to ask for "references."

47.    We then made files for each of the references provided and treated those references as leads.

48.    The high-pressure approach outlined above is the primary reason I left Post University.

49.    I documented, in general terms, my concerns about Post's high-pressure tactics to Post University upon my departure.

50.    In a January 5, 2017 letter to Post University's Human Resources department, I wrote, among other things:

        a.    "I find that Post University has no mission other than being profitable."

59.     For calls, I could type in the result or disposition of a call manually and/or I could select a pre-created disposition from a dropdown menu.

60.     These included self-explanatory pre-created dispositions such as (or similar to) "Left Voicemail" (which I understood should be used when I placed a call and left a voicemail), "Hang Up" (which I understood should be used when I placed a call, it was answered, but the line hung up), "Voicemail Full" (which I understood should be used when I placed a call, reached a voicemail, but was unable to leave a message because the voicemail was full), and "Voicemail not set up" (which I understood should be used when I placed a call and reached a message saying that the voicemail had not been set up).

61.     Another pre-created disposition was "No Message Left", which I understood should be used when I placed a call, reached a voicemail, but chose not to leave a message.

62.     I would estimate that at least half of my calls to rejected leads or lost opportunities were picked up or reached the dialed number's voicemail system.

63.     While I do not recall exactly how many unique rejected leads or lost opportunities I reached more than once (either by someone picking up or my call reaching their voicemail), it was in excess of 40.


I declare under penalty of perjury that the foregoing is true and correct. Executed on

June 19, 2019
_____   (date).

_____
Sarah Markham

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>          Defendant. | Civil Case No.: 18-cv-81004<br><br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## <u>DECLARATION OF SUSANNA SHIGO</u>

1.      My name is Susanna Shigo and I declare, under penalty of perjury, that the following is true and correct.

2.      I further declare that the following is based on my own personal knowledge.

3.      I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.      From approximately October 2016 to May 2017, I was an employee at Post University.

5.      During my employment, my title was ADP Admissions Counselor.

6.      ADP stands for Accelerated Degree Program.

7.      Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 8-14 Admissions Counselors, Team Lead and an Assistant Director.

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

46.     Similarly, when I first started at Post, during my two-week training with Shannon Madore we were provided stacks of old leads and instructed to make calls to those old leads no matter what.

47.     These training lists contained leads over two years old and were often called by different new hires.

48.     Lost opportunities and other old or rejected leads would also be called by Admissions Counselors who needed calls to meet their daily expected call volume.

49.     Admission's Counselors would often call old leads, numbers that were not in service, or rejected leads.

50.     A purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to re-connect with someone previously interested and to convince them to attend Post University.

51.     My general impression is that no matter what a lead said or did, they were never truly out of our system, and would eventually begin receiving calls again.

52.     In addition to calls, we would also communicate with leads and opportunities (new or old) via email.

53.     Many of the emails that were sent out were sent out in bulk using a "mail merge."

54.     We were never trained to or, to the best of my knowledge, expected to keep emails.

55.     When an Admissions Counselor like myself would manually note an interaction with a prospective student or the result of a call or text to that prospective student, we would often use shorthand and abbreviations.

56.     For example, "SW" and "SWS" typically meant "spoke with student" (i.e. the call reached the lead, opportunity, or student it was meant to reach, and we spoke with them).

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

57. "LM" ("Left Message"), "LVM" ("Left Voicemail"), "VM" ("Voicemail"), and "Left VM" all typically meant that a voicemail message was left ("VM" is short for voicemail).

58. "NML" meant "No Message Left."

I declare under penalty of perjury that the foregoing is true and correct. Executed on

6/24/2019

_____ (date).


DocuSigned by:

*Susanna Shigo*

17D430B33EBB423...

Susanna Shigo

# SOF ¶ 69
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3   -----------------------------)

4   MELANIE DAVIS,                )   CASE NO.:

5           Plaintiff,            )   18-81004-CIV

6       vs.                       )

7   POST UNIVERSITY, INC.,        )

8           Defendant.            )

9   -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1      A.    Correct.

2      Q.    So these calls are necessarily then part

3   of an effort to enroll students?

4      A.    Yes.

5      Q.    And was one of the purposes to convert

6   someone who was previously rejected into an enrolled

7   student?

8      A.    Yes.  I'm confused.

9      Q.    Was one of the purposes of the calls to

10  rejected leads to convert them ultimately into an

11  enrolled student?

12     A.    Yes.

13     Q.    Did Post track rejected leads that were

14  subsequently converted into enrolled students?

15     A.    Not to the granularity that they probably

16  should.

17     Q.    Did you track rejected leads that were

18  converted into enrolled students?

19     A.    No.

20           MR. BOWSER:  Can we go off the record

21  for a second?

22           MR. GLAPION:  Sure.

23     (Recess taken from 1:07 p.m. to 1:09 p.m.)

24  BY MR. GLAPION:

25     Q.    Before the break, I asked if you had

1      Q.     And there are multiple stages in general

2   in the admissions process at Post; correct?

3      A.     Correct.

4      Q.     So once a rejected lead now moves into the

5   process on Exhibit 16, would you characterize one of

6   the roles of an admission counselor to encourage

7   them to complete the steps necessary to move through

8   those steps?

9      A.     I would use the word "nurture" them versus

10   encourage, but yes, that is the objective.

11      Q.     Is nurture to you broader or narrower than

12   encourage?

13      A.     Again, the admissions counselors' scope of

14   their job is outside of just the documentation.

15   It's to provide the information to the student,

16   conduct a PCAS, and then help them, nurture them

17   through the additional steps that are needed in

18   order to complete their enrollment file.

19      Q.     And nurture also could or does nurture

20   also include encouragement, hey, complete this step

21   or you are close, do this step, that kind of thing?

22      A.     Sure, yes.

23      Q.     So there is an encouragement element to

24   nurturing would you say?

25      A.     Absolutely.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>　　　　　　　　Defendant. | Civil Case No.: 18-cv-81004<br><br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## DECLARATION OF SARAH MARKHAM

1.　　My name is Sarah Markham and I declare, under penalty of perjury, that the following is true and correct.

2.　　I further declare that the following is based on my own personal knowledge.

3.　　I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.　　From approximately May 2016 to January 2017, I was an employee at Post University.

5.　　During my employment, my title was ADP Admissions Counselor.

6.　　ADP stands for Accelerated Degree Program.

7.　　Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 10-15 Admissions Counselors and an Admissions Team Lead.

8.　　My job responsibilities included making telephone calls to encourage and convince prospective students to enroll at Post University, interview prospective students, and ensure and pressure interested students complete the admissions process.

41.     The persons to be called during these "Power Hours" were provided on a list separate from the CRM system.

42.     We could, and were expected to, look up these persons in the CRM system before calling them.

43.     However, we were obligated to call them regardless of what the previous call dispositions stated, including if they had been noted as someone not to call.

44.     The purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to "get them back" or, in other words, re-engage that person with Post University and to encourage them to apply to and/or enroll at Post University.

45.     My general impression is that no matter what a lead said or did, they were never truly free of our attempts to contact them and convince them to enroll at Post University.

46.     In addition, during our interviews with prospective students, we were expected to ask for "references."

47.     We then made files for each of the references provided and treated those references as leads.

48.     The high-pressure approach outlined above is the primary reason I left Post University.

49.     I documented, in general terms, my concerns about Post's high-pressure tactics to Post University upon my departure.

50.     In a January 5, 2017 letter to Post University's Human Resources department, I wrote, among other things:

        a.   "I find that Post University has no mission other than being profitable."

59.     For calls, I could type in the result or disposition of a call manually and/or I could select a pre-created disposition from a dropdown menu.

60.     These included self-explanatory pre-created dispositions such as (or similar to) "Left Voicemail" (which I understood should be used when I placed a call and left a voicemail), "Hang Up" (which I understood should be used when I placed a call, it was answered, but the line hung up), "Voicemail Full" (which I understood should be used when I placed a call, reached a voicemail, but was unable to leave a message because the voicemail was full), and "Voicemail not set up" (which I understood should be used when I placed a call and reached a message saying that the voicemail had not been set up).

61.     Another pre-created disposition was "No Message Left", which I understood should be used when I placed a call, reached a voicemail, but chose not to leave a message.

62.     I would estimate that at least half of my calls to rejected leads or lost opportunities were picked up or reached the dialed number's voicemail system.

63.     While I do not recall exactly how many unique rejected leads or lost opportunities I reached more than once (either by someone picking up or my call reaching their voicemail), it was in excess of 40.


I declare under penalty of perjury that the foregoing is true and correct. Executed on
June 19, 2019
_____ (date).

_____
Sarah Markham

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.**,<br><br>                    Defendant. | Civil Case No.: 18-cv-81004<br><br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## <u>DECLARATION OF SUSANNA SHIGO</u>

1.      My name is Susanna Shigo and I declare, under penalty of perjury, that the following is true and correct.

2.      I further declare that the following is based on my own personal knowledge.

3.      I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.      From approximately October 2016 to May 2017, I was an employee at Post University.

5.      During my employment, my title was ADP Admissions Counselor.

6.      ADP stands for Accelerated Degree Program.

7.      Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 8-14 Admissions Counselors, Team Lead and an Assistant Director.

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

46.    Similarly, when I first started at Post, during my two-week training with Shannon Madore we were provided stacks of old leads and instructed to make calls to those old leads no matter what.

47.    These training lists contained leads over two years old and were often called by different new hires.

48.    Lost opportunities and other old or rejected leads would also be called by Admissions Counselors who needed calls to meet their daily expected call volume.

49.    Admission's Counselors would often call old leads, numbers that were not in service, or rejected leads.

50.    A purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to re-connect with someone previously interested and to convince them to attend Post University.

51.    My general impression is that no matter what a lead said or did, they were never truly out of our system, and would eventually begin receiving calls again.

52.    In addition to calls, we would also communicate with leads and opportunities (new or old) via email.

53.    Many of the emails that were sent out were sent out in bulk using a "mail merge."

54.    We were never trained to or, to the best of my knowledge, expected to keep emails.

55.    When an Admissions Counselor like myself would manually note an interaction with a prospective student or the result of a call or text to that prospective student, we would often use shorthand and abbreviations.

56.    For example, "SW" and "SWS" typically meant "spoke with student" (i.e. the call reached the lead, opportunity, or student it was meant to reach, and we spoke with them).

57. "LM" ("Left Message"), "LVM" ("Left Voicemail"), "VM" ("Voicemail"), and "Left VM" all typically meant that a voicemail message was left ("VM" is short for voicemail).

58. "NML" meant "No Message Left."

I declare under penalty of perjury that the foregoing is true and correct. Executed on

6/24/2019
_____ (date).

_____
Susanna Shigo

# SOF ¶ 70
# Supporting Exhibits

# EXHIBIT A



New Lead Arrives

Status: Qualifying

10 attempts are made to contact lead

Lead is not contacted or is contacted but is not qualified/interested

Status: Rejected

Contact made

Interest confirmed

Lead is Converted

Lead becomes an Opportunity

Sales Category: Qualify

Sales Stage: Interviewing

Interview Opportunity Assessment

Sales Category: Qualify

Sales Stage: Qualified

Send Application

Sales Category: Documents

Manually Change Sales Stage: Application Sent

*Possible Sales Stage at any time: Request Transfer Eval

Sales Category: Documents

Sales Stage: Financial Plan Determined

FAFSA arrives but FAA needs more info need to ATP

Receive Application
Sales Category: Documents
Create plan to receive FAFSA
Write and send Recommendation

All info comes in and Student is ATP'd

FAFSA arrives, all docs in. Student is ATP'd

FAFSA arrives, is not able to be ATP'd

FAFSA does not arrive

Sales Category: Enroll

Sales Stage: Ready to Enroll

Student does Not Participate

Manually Change Sales Stage Action to Closed/Lost

Sales Category: Lost

Sales Category: Register

Sales Stage: Student Package Created

Register Student

Sales Category: Attend

Sales Stage: Anticipating Orientation

Student Participates

Sales Category: Attend

Sales Stage: Closed/Won

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3     ------------------------------)

4     MELANIE DAVIS,                 )    CASE NO.:

5             Plaintiff,             )    18-81004-CIV

6         vs.                        )

7     POST UNIVERSITY, INC.,         )

8             Defendant.             )

9     ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                DATE:  APRIL 11, 2019

15                     HELD AT:

16                WYNDHAM SOUTHBURY

17               1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

                                                    Page 3
 1                           INDEX
 2    EXAMINATION
 3    Witness Name                               Page
 4    Sean Cooley
 5        Direct By Mr. Glapion ..................... 7
 6
 7
 8                          REQUEST
 9        Request .................................. 113
10
11
12                   PLAINTIFF'S EXHIBITS
13                 (Marked For Identification)
14                                               Page
15    Exhibit 12 Marked ........................... 7
      Notice of Deposition of designated
16    representative of Post University and Notice
      of Deposition of Sean Cooley
17
      Exhibit 13 Marked ........................... 20
18    Post University Performance Appraisal Reviews
      re Sean Cooley, Bates Numbers PU00017449
19    through 17470
20    Exhibit 14 Marked ........................... 50
      Email, Bates Numbers PU00004476 through 4481
21
      Exhibit 15 Marked ........................... 66
22    Post University Performance Appraisal Review
      Form, Bates Numbers PU00000134 through 150
23
      Exhibit 16 Marked ........................... 70
24    Document bearing Bates Number PU00011106
25

1    experience is like being a Post University eagle.

2         Q.    Okay.

3         A.    That is what I deduce from this email.

4         Q.    Fair enough.  Going back to what we

5    discussed -- we are done with this document for

6    now -- I believe you said that with respect to

7    rejected leads, all of the calls to rejected lead

8    would be an attempt to begin the process outlined in

9    Exhibit 16; is that accurate?  We are talking about

10   rejected leads.

11        A.    Yes.

12        Q.    And this process is -- I'm not going to

13   ask that again, I don't even want to go there again.

14        These calls then were ultimately part of

15   efforts by Post to enroll students at Post

16   University; is that fair?

17        A.    These efforts were put in place to provide

18   information to a prospective student that had

19   requested information that we were unable at that

20   point -- up until that point to provide them with.

21        Q.    To begin this process?

22        A.    To begin that process.  I just wanted to

23   preface it with that first part.

24        Q.    And this process is the process by which

25   students are enrolled?

Page 204

```
 1              AFTERNOON SESSION
 2                    2:04 P.M.
 3
 4   S E A N   C O O L E Y,
 5        having been previously duly sworn, resumed the
 6        stand, testifying further on his oath as
 7        follows:
 8
 9   DIRECT EXAMINATION BY MR. GLAPION (continued):
10        Q.    I want to circle back to the calls to
11   rejected leads.  We established that the calls to
12   rejected leads were primarily, if not exclusively,
13   to -- the goal was to get them back onto the process
14   outlined in Exhibit 16; correct?
15        A.    Yes.
16        Q.    So essentially the first question, if a
17   rejected lead was reached would be some variation
18   of, are you still interested; is that a fair
19   characterization?
20        A.    Yes.
21        Q.    And if the rejected lead expressed
22   interest, would the next stage in that process be to
23   encourage them to -- excuse me.  What would the next
24   stage in that process be?
25        A.    To provide them the information that they
```

1   were unable to do so when they originally requested,

2   and we are hoping to catch them and provide them

3   with that information regarding our institution like

4   they had originally asked for.

5        Q.    But that is captured on this chart;

6   correct?

7        A.    I don't understand the question.

8        Q.    That providing information to a rejected

9   lead or -- excuse me, providing information that was

10  requested is captured on the flowchart in

11  Exhibit 16; correct?

12       A.    If we are calling the interview part of

13  that providing the information, which I think we

14  discovered before, then yes, that is captured on the

15  chart.

16       Q.    I believe your testimony was that

17  providing the information is part of the PCAS.

18       A.    Yes.

19       Q.    So that's captured on this chart?

20       A.    Correct.

21       Q.    So the goal when contacting rejected leads

22  is to put them back into this process; correct?

23       A.    The goal is to provide -- yes, to put them

24  back in this process so that we can provide the

25  information that they had requested, yes.

# SOF ¶ 71
# Supporting Exhibits

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3    ------------------------------)

 4    MELANIE DAVIS,                 )   CASE NO.:

 5           Plaintiff,             )   18-81004-CIV

 6       vs.                         )

 7    POST UNIVERSITY, INC.,         )

 8           Defendant.             )

 9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25
```

1    record.  Post is a for-profit business; correct?

2         A.    Correct.

3         Q.    And your testimony right now is that Post

4    would place telephone calls to people that are no

5    longer in the pipeline, don't have potential in the

6    pipeline, out of the goodness of its heart?

7                   MR. BOWSER:  Objection to form.

8         Q.    You can answer.  Is that your testimony?

9         A.    What I had mentioned is that not every

10   call that's placed to a closed opportunity is made

11   with the sole intention of bringing that person back

12   into the Exhibit 16 funnel.

13        Q.    Okay, good.  Now we have a lot to unpack

14   with that answer.

15              Does every call made to a lost opportunity

16   include the intention of reestablishing a

17   relationship with that lost opportunity, not the

18   sole opportunity, is that one of the purposes of the

19   call to a lost opportunity?

20                   MR. BOWSER:  Objection to form.

21        A.    I'm sorry, you began with is that the

22   only.

23        Q.    I didn't, but I'll correct it.  Is every

24   call made to a lost opportunity made with one of the

25   purposes of that call being to reestablish a

Page 165

1    relationship with Post University?

2        A.    Not every call.

3        Q.    Would you say the majority of calls?

4        A.    Yes.

5        Q.    The vast majority of calls?

6        A.    Yes.

7        Q.    Would you say 90 percent of the calls?

8        A.    Yes.

9        Q.    95 percent of the calls?

10       A.    I can't say with certainty, but --

11       Q.    But on occasion someone will --

12       A.    The majority, the majority of calls that

13   are made to a closed opportunity or a closed lead

14   would be to see if someone is interested, if now is

15   a better time for someone to move forward with their

16   education with us.

17       Q.    And we established that a closed

18   opportunity was no longer in that process we talked

19   about in Exhibit 16; correct?

20       A.    Correct.

21       Q.    So when you say to see if someone is

22   interested, if now is a better time for someone to

23   move forward with their education with us, to see if

24   you can get them back into that enrollment process;

25   is that correct?

1      A.     Correct.

2      Q.     And I know you can't give me an exact

3  figure, but on occasion, it seems to be a very small

4  on occasion, someone who developed a really strong

5  relationship just might call to say, hey, how are

6  you, but I want to be clear that the expected use of

7  those calls to lost opportunities was to attempt to

8  reengage them with the enrollment process; is that

9  correct?

10     A.     The ones that they are reaching out to,

11 because again, that's contingent on why they were

12 rejected, but yes, that's the majority purpose of

13 attempting to make contact.

14     Q.     And you said upwards probably of

15 90 percent; is that fair?

16     A.     That's fair.

17     Q.     In terms of rejected leads, because we've

18 been focused on opportunities, would rejected leads

19 continue to be called?  Excuse me.  Let me rephrase.

20     A.     Excuse me, pardon me.

21     Q.     Do you need more water?

22     A.     I might actually.

23                     (Pause.)

24             THE WITNESS:  I'm not sure if you

25 asked a question.

```
 1   that email or, excuse me, this information?
 2       A.    I'm assuming that he did.
 3       Q.    But you don't actually remember, you are
 4   assuming just because of who you sent it to;
 5   correct?
 6       A.    Correct.
 7       Q.    You don't remember what is meant by
 8   converted in this email; correct?
 9       A.    Right.  It could be any number of those
10   things.  It's probably converted into opportunity
11   or -- yeah, I mean, I can't say with any certainty,
12   so it would only be speculatory.
13       Q.    I asked a moment ago whether the purpose
14   of calling rejected leads were part of Post's
15   efforts to enroll students, and I think we agreed
16   that because it's to start them on the process that
17   it was?
18       A.    Of course.
19       Q.    And same with respect to lost/closed
20   opportunities, I know you said there were some calls
21   that were more checkup calls, but --
22       A.    The majority.
23       Q.    The 90 percent plus majority were part of
24   Post's efforts to enroll students; is that correct?
25       A.    Correct.
```

1    Q.    And to essentially reengage those lost

2    opportunities with Post, I'm talking about the

3    90 percent for now; is that fair?

4    A.    That's fair.

5    Q.    And with respect to the 10 percent of

6    calls, was there any business purpose to those

7    10 percent of calls?  And I'm saying 10 percent, I

8    know it's fuzzy there, but just for ease of

9    communication, for those 10 percent of calls, was

10   there any business purpose for Post just calling a

11   student or, excuse me, a former prospective student

12   just to check up on them?

13   A.    A former opportunity?

14   Q.    Let me say that again.  Was there any

15   business purpose to calling a lost opportunity in

16   those 10 percent of calls you said were just to

17   check up on them?

18   A.    I'm sorry, can you rephrase that.

19   Q.    Was there any business purposes to calling

20   a lost opportunity for those small subset of calls

21   which we said was probably 10 percent or less that

22   was just to sort of check up on them?

23   A.    No.

24   Q.    No business purpose?

25   A.    Right.  The 10 percent is probably high,

Page 200

1    calls?

2         A.    Right.  They are the outliers for sure.

3         Q.    And I know you can't give me an exact

4    number, and I wouldn't expect you to give me an

5    exact number; you thought 10 percent -- you said

6    might be high.  I mean, how many calls does Post's

7    admissions counselors make in a given day?

8         A.    I am not certain.  I don't have those

9    figures.  I mean, making an outreach to a once open

10   opportunity that was now closed because something

11   mitigating happened in their life and you are

12   checking up on them, it's not an everyday

13   occurrence.  It's not an every admissions counselor

14   occurrence.  It's just something that some people do

15   based on the unique circumstance of the prospect.

16        Q.    Okay.  I think we've established sort of

17   what I was trying to in terms of, there is always

18   going to be outliers in any call?

19        A.    Of course.

20        Q.    Theoretically, a rejected lead you can

21   have an outlier where someone placed --

22        A.    The original question, the reason why I

23   answered it as such is you said, is the only reason

24   to make a contact an opportunity, which is why we

25   arrived here, is with the intention of reengaging

Page 201

1    them and bringing them back into this process, and I

2    wanted to provide you that that is not the sole

3    reason for an outreach to a closed opportunity.

4        Q.    Is that the sole trained reason?

5        A.    Yes.

6        Q.    Were all rejected leads intended to be

7    called again?

8        A.    No.

9        Q.    And similarly, were all lost or closed

10   opportunities intended to be called again?

11       A.    No.

12       Q.    Between July 30th, 2014 and July 30th,

13   2018, were admissions counselors permitted to use

14   third-party services in connection with their

15   communication with the leads and opportunities?

16       A.    Can you provide the dates for me once more

17   please.

18       Q.    July 30, 2014 and July 30, 2018.

19       A.    Yes.

20       Q.    Did this include Google Voice?

21       A.    Yes.

22       Q.    What about TextNow?

23       A.    Yes.

24       Q.    Are there any others that you can think of

25   in that vein?

Page 1

1                    UNITED STATES DISTRICT COURT
2                    SOUTHERN DISTRICT OF FLORIDA
3     _____

      MELANIE DAVIS,                    )Civil Case
4                                       )No.: 18-cv-81004-RLR
                         Plaintiffs,)
5                                       )
      v.                               )
6                                       )
      POST UNIVERSITY, INC.,           )
7                                       )
                         Defendants.)
8                                       )
      _____)
9
10
11            DEPOSITION OF VICTORIA L. MEEHAN
12
13
14
15    DATE:              February 8, 2019
16    TIME:              11:35 a.m.
17    HELD AT:           Wyndham Southbury
                         Southbury, Connecticut
18
19
         By:           Sarah J. Miner, RPR, LSR #238
20
21
22
23
24
25

Page 85

1   not in service, you would have to call it 10 times

2   before rejecting the lead?

3          A. Absolutely not.

4          Q. Are you speaking specifically with respect to

5   your team?

6          A. No.  We would email that lead and call it

7   occasionally to see if the number came back in

8   service.

9          Q. Did you ever tell one of your admissions

10  counselors not to reject a lead because students could

11  change their mind?

12         A. No.  But that is why we would reach out to a

13  closed opportunity that went unresponsive.

14         Q. So when these are sworn affidavits, so they

15  are under penalty of perjury, one of these affiants

16  says the call recipients "do not call" request was not

17  treated as a valid reason to reject the lead because

18  we were often told students could change their minds,

19  is this person lying?

20         A. I think they misunderstood the direction.

21         Q. Is it possible that she was trained

22  differently by a different assistant director of

23  admissions than the way you train your admission

24  counselors?

25         A. It is highly unlikely.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, | Civil Case No.: 18-cv-81004 |
| Plaintiff, | |
| v. | Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |
| **POST UNIVERSITY, INC.,** | |
| Defendant. | |

## DECLARATION OF SARAH MARKHAM

1.     My name is Sarah Markham and I declare, under penalty of perjury, that the following is true and correct.

2.     I further declare that the following is based on my own personal knowledge.

3.     I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.     From approximately May 2016 to January 2017, I was an employee at Post University.

5.     During my employment, my title was ADP Admissions Counselor.

6.     ADP stands for Accelerated Degree Program.

7.     Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 10-15 Admissions Counselors and an Admissions Team Lead.

8.     My job responsibilities included making telephone calls to encourage and convince prospective students to enroll at Post University, interview prospective students, and ensure and pressure interested students complete the admissions process.

41.     The persons to be called during these "Power Hours" were provided on a list separate from the CRM system.

42.     We could, and were expected to, look up these persons in the CRM system before calling them.

43.     However, we were obligated to call them regardless of what the previous call dispositions stated, including if they had been noted as someone not to call.

44.     The purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to "get them back" or, in other words, re-engage that person with Post University and to encourage them to apply to and/or enroll at Post University.

45.     My general impression is that no matter what a lead said or did, they were never truly free of our attempts to contact them and convince them to enroll at Post University.

46.     In addition, during our interviews with prospective students, we were expected to ask for "references."

47.     We then made files for each of the references provided and treated those references as leads.

48.     The high-pressure approach outlined above is the primary reason I left Post University.

49.     I documented, in general terms, my concerns about Post's high-pressure tactics to Post University upon my departure.

50.     In a January 5, 2017 letter to Post University's Human Resources department, I wrote, among other things:

    a.   "I find that Post University has no mission other than being profitable."

59.     For calls, I could type in the result or disposition of a call manually and/or I could select a pre-created disposition from a dropdown menu.

60.     These included self-explanatory pre-created dispositions such as (or similar to) "Left Voicemail" (which I understood should be used when I placed a call and left a voicemail), "Hang Up" (which I understood should be used when I placed a call, it was answered, but the line hung up), "Voicemail Full" (which I understood should be used when I placed a call, reached a voicemail, but was unable to leave a message because the voicemail was full), and "Voicemail not set up" (which I understood should be used when I placed a call and reached a message saying that the voicemail had not been set up).

61.     Another pre-created disposition was "No Message Left", which I understood should be used when I placed a call, reached a voicemail, but chose not to leave a message.

62.     I would estimate that at least half of my calls to rejected leads or lost opportunities were picked up or reached the dialed number's voicemail system.

63.     While I do not recall exactly how many unique rejected leads or lost opportunities I reached more than once (either by someone picking up or my call reaching their voicemail), it was in excess of 40.

I declare under penalty of perjury that the foregoing is true and correct. Executed on
June 19, 2019
_____ (date).

_____
Sarah Markham

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, | Civil Case No.: 18-cv-81004 |
| Plaintiff, | |
| v. | Judge: Hon. Roy K Altman |
| | Magistrate Judge: Hon. Dave Lee Brannon |
| **POST UNIVERSITY, INC.,** | |
| Defendant. | |

## <u>DECLARATION OF SUSANNA SHIGO</u>

1.      My name is Susanna Shigo and I declare, under penalty of perjury, that the following is true and correct.

2.      I further declare that the following is based on my own personal knowledge.

3.      I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.      From approximately October 2016 to May 2017, I was an employee at Post University.

5.      During my employment, my title was ADP Admissions Counselor.

6.      ADP stands for Accelerated Degree Program.

7.      Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 8-14 Admissions Counselors, Team Lead and an Assistant Director.

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

46.     Similarly, when I first started at Post, during my two-week training with Shannon Madore we were provided stacks of old leads and instructed to make calls to those old leads no matter what.

47.     These training lists contained leads over two years old and were often called by different new hires.

48.     Lost opportunities and other old or rejected leads would also be called by Admissions Counselors who needed calls to meet their daily expected call volume.

49.     Admission's Counselors would often call old leads, numbers that were not in service, or rejected leads.

50.     A purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to re-connect with someone previously interested and to convince them to attend Post University.

51.     My general impression is that no matter what a lead said or did, they were never truly out of our system, and would eventually begin receiving calls again.

52.     In addition to calls, we would also communicate with leads and opportunities (new or old) via email.

53.     Many of the emails that were sent out were sent out in bulk using a "mail merge."

54.     We were never trained to or, to the best of my knowledge, expected to keep emails.

55.     When an Admissions Counselor like myself would manually note an interaction with a prospective student or the result of a call or text to that prospective student, we would often use shorthand and abbreviations.

56.     For example, "SW" and "SWS" typically meant "spoke with student" (i.e. the call reached the lead, opportunity, or student it was meant to reach, and we spoke with them).

57.     "LM" ("Left Message"), "LVM" ("Left Voicemail"), "VM" ("Voicemail"), and

"Left VM" all typically meant that a voicemail message was left ("VM" is short for voicemail).

58.     "NML" meant "No Message Left."


I declare under penalty of perjury that the foregoing is true and correct. Executed on

6/24/2019
_____ (date).


DocuSigned by:

_Susanna Shigo_

17D430B33EBB423...

_____
Susanna Shigo

# SOF ¶ 72
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    -----------------------------)

4    MELANIE DAVIS,                )    CASE NO.:

5             Plaintiff,           )    18-81004-CIV

6        vs.                       )

7    POST UNIVERSITY, INC.,        )

8             Defendant.           )

9    -----------------------------)

10

11

12       DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14                DATE:  APRIL 11, 2019

15                     HELD AT:

16                 WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18               Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 164

1    record.  Post is a for-profit business; correct?

2        A.    Correct.

3        Q.    And your testimony right now is that Post

4    would place telephone calls to people that are no

5    longer in the pipeline, don't have potential in the

6    pipeline, out of the goodness of its heart?

7                    MR. BOWSER:  Objection to form.

8        Q.    You can answer.  Is that your testimony?

9        A.    What I had mentioned is that not every

10   call that's placed to a closed opportunity is made

11   with the sole intention of bringing that person back

12   into the Exhibit 16 funnel.

13       Q.    Okay, good.  Now we have a lot to unpack

14   with that answer.

15             Does every call made to a lost opportunity

16   include the intention of reestablishing a

17   relationship with that lost opportunity, not the

18   sole opportunity, is that one of the purposes of the

19   call to a lost opportunity?

20                   MR. BOWSER:  Objection to form.

21       A.    I'm sorry, you began with is that the

22   only.

23       Q.    I didn't, but I'll correct it.  Is every

24   call made to a lost opportunity made with one of the

25   purposes of that call being to reestablish a

Page 165

1    relationship with Post University?

2        A.    Not every call.

3        Q.    Would you say the majority of calls?

4        A.    Yes.

5        Q.    The vast majority of calls?

6        A.    Yes.

7        Q.    Would you say 90 percent of the calls?

8        A.    Yes.

9        Q.    95 percent of the calls?

10       A.    I can't say with certainty, but --

11       Q.    But on occasion someone will --

12       A.    The majority, the majority of calls that

13   are made to a closed opportunity or a closed lead

14   would be to see if someone is interested, if now is

15   a better time for someone to move forward with their

16   education with us.

17       Q.    And we established that a closed

18   opportunity was no longer in that process we talked

19   about in Exhibit 16; correct?

20       A.    Correct.

21       Q.    So when you say to see if someone is

22   interested, if now is a better time for someone to

23   move forward with their education with us, to see if

24   you can get them back into that enrollment process;

25   is that correct?

473 of

1      Q.    And it's the same thing with respect to

2  lost opportunities; correct?  There's a lot of

3  questions I asked so let me try again.

4          A lost opportunity is reached; an

5  admissions counselor is gauging if they are

6  interested or capable of now continuing the process

7  that they previously started; correct?

8      A.    Most of the times, yes.

9      Q.    That's the 90 plus percent versus the

10  small subset we discussed; correct?

11      A.    Yes.

12      Q.    And those admissions counselors then, they

13  take sort of the same role as we just discussed;

14  they nurture those prospective students through the

15  process in 16?

16      A.    Yes.

17      Q.    Between July 30th, 2014 and July 30th,

18  2018, did Post have a written Do Not Call policy?

19      A.    No.

20      Q.    Between July 30th 2014 and July 30, 2018

21  if someone requested Post's written Do Not Call

22  policy, what would be provided?

23      A.    I don't know.  I'm not certain.

24      Q.    Did anyone ever request -- to the best of

25  your knowledge, did anyone ever request the Do Not

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3    _____

     MELANIE DAVIS,                )Civil Case

4                                  )No.: 18-cv-81004-RLR

                    Plaintiffs,)

5                                  )

     v.                            )

6                                  )

     POST UNIVERSITY, INC.,        )

7                                  )

                    Defendants.)

8                                  )

     _____)

9

10

11            DEPOSITION OF VICTORIA L. MEEHAN

12

13

14

15   DATE:           February 8, 2019

16   TIME:           11:35 a.m.

17   HELD AT:        Wyndham Southbury

                     Southbury, Connecticut

18

19

         By:        Sarah J. Miner, RPR, LSR #238

20

21

22

23

24

25

1   not in service, you would have to call it 10 times

2   before rejecting the lead?

3       A. Absolutely not.

4       Q. Are you speaking specifically with respect to

5   your team?

6       A. No.  We would email that lead and call it

7   occasionally to see if the number came back in

8   service.

9       Q. Did you ever tell one of your admissions

10  counselors not to reject a lead because students could

11  change their mind?

12      A. No.  But that is why we would reach out to a

13  closed opportunity that went unresponsive.

14      Q. So when these are sworn affidavits, so they

15  are under penalty of perjury, one of these affiants

16  says the call recipients "do not call" request was not

17  treated as a valid reason to reject the lead because

18  we were often told students could change their minds,

19  is this person lying?

20      A. I think they misunderstood the direction.

21      Q. Is it possible that she was trained

22  differently by a different assistant director of

23  admissions than the way you train your admission

24  counselors?

25      A. It is highly unlikely.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, | Civil Case No.: 18-cv-81004 |
| Plaintiff, | |
| v. | Judge: Hon. Roy K Altman |
| | Magistrate Judge: Hon. Dave Lee Brannon |
| **POST UNIVERSITY, INC.,** | |
| Defendant. | |

## DECLARATION OF SARAH MARKHAM

1.     My name is Sarah Markham and I declare, under penalty of perjury, that the following is true and correct.

2.     I further declare that the following is based on my own personal knowledge.

3.     I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.     From approximately May 2016 to January 2017, I was an employee at Post University.

5.     During my employment, my title was ADP Admissions Counselor.

6.     ADP stands for Accelerated Degree Program.

7.     Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 10-15 Admissions Counselors and an Admissions Team Lead.

8.     My job responsibilities included making telephone calls to encourage and convince prospective students to enroll at Post University, interview prospective students, and ensure and pressure interested students complete the admissions process.

41.     The persons to be called during these "Power Hours" were provided on a list separate from the CRM system.

42.     We could, and were expected to, look up these persons in the CRM system before calling them.

43.     However, we were obligated to call them regardless of what the previous call dispositions stated, including if they had been noted as someone not to call.

44.     The purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to "get them back" or, in other words, re-engage that person with Post University and to encourage them to apply to and/or enroll at Post University.

45.     My general impression is that no matter what a lead said or did, they were never truly free of our attempts to contact them and convince them to enroll at Post University.

46.     In addition, during our interviews with prospective students, we were expected to ask for "references."

47.     We then made files for each of the references provided and treated those references as leads.

48.     The high-pressure approach outlined above is the primary reason I left Post University.

49.     I documented, in general terms, my concerns about Post's high-pressure tactics to Post University upon my departure.

50.     In a January 5, 2017 letter to Post University's Human Resources department, I wrote, among other things:

        a.   "I find that Post University has no mission other than being profitable."

59.     For calls, I could type in the result or disposition of a call manually and/or I could select a pre-created disposition from a dropdown menu.

60.     These included self-explanatory pre-created dispositions such as (or similar to) "Left Voicemail" (which I understood should be used when I placed a call and left a voicemail), "Hang Up" (which I understood should be used when I placed a call, it was answered, but the line hung up), "Voicemail Full" (which I understood should be used when I placed a call, reached a voicemail, but was unable to leave a message because the voicemail was full), and "Voicemail not set up" (which I understood should be used when I placed a call and reached a message saying that the voicemail had not been set up).

61.     Another pre-created disposition was "No Message Left", which I understood should be used when I placed a call, reached a voicemail, but chose not to leave a message.

62.     I would estimate that at least half of my calls to rejected leads or lost opportunities were picked up or reached the dialed number's voicemail system.

63.     While I do not recall exactly how many unique rejected leads or lost opportunities I reached more than once (either by someone picking up or my call reaching their voicemail), it was in excess of 40.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

June 19, 2019 (date).
_____

_____

Sarah Markham

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>               Defendant. | Civil Case No.: 18-cv-81004<br><br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## <u>DECLARATION OF SUSANNA SHIGO</u>

1.     My name is Susanna Shigo and I declare, under penalty of perjury, that the following is true and correct.

2.     I further declare that the following is based on my own personal knowledge.

3.     I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.     From approximately October 2016 to May 2017, I was an employee at Post University.

5.     During my employment, my title was ADP Admissions Counselor.

6.     ADP stands for Accelerated Degree Program.

7.     Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 8-14 Admissions Counselors, Team Lead and an Assistant Director.

46.     Similarly, when I first started at Post, during my two-week training with Shannon Madore we were provided stacks of old leads and instructed to make calls to those old leads no matter what.

47.     These training lists contained leads over two years old and were often called by different new hires.

48.     Lost opportunities and other old or rejected leads would also be called by Admissions Counselors who needed calls to meet their daily expected call volume.

49.     Admission's Counselors would often call old leads, numbers that were not in service, or rejected leads.

50.     A purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to re-connect with someone previously interested and to convince them to attend Post University.

51.     My general impression is that no matter what a lead said or did, they were never truly out of our system, and would eventually begin receiving calls again.

52.     In addition to calls, we would also communicate with leads and opportunities (new or old) via email.

53.     Many of the emails that were sent out were sent out in bulk using a "mail merge."

54.     We were never trained to or, to the best of my knowledge, expected to keep emails.

55.     When an Admissions Counselor like myself would manually note an interaction with a prospective student or the result of a call or text to that prospective student, we would often use shorthand and abbreviations.

56.     For example, "SW" and "SWS" typically meant "spoke with student" (i.e. the call reached the lead, opportunity, or student it was meant to reach, and we spoke with them).

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

57.    "LM" ("Left Message"), "LVM" ("Left Voicemail"), "VM" ("Voicemail"), and "Left VM" all typically meant that a voicemail message was left ("VM" is short for voicemail).

58.    "NML" meant "No Message Left."


I declare under penalty of perjury that the foregoing is true and correct. Executed on

_6/24/2019_
_____ (date).


DocuSigned by:

_Susanna Shigo_

— 17D430B33EBB423...

Susanna Shigo

# SOF ¶ 73
# Supporting Exhibits

# EXHIBIT A



**New Lead Arrives**

**Status: Qualifying**

10 attempts are made to contact lead

Lead is not contacted or is contacted but is not qualified/interested

**Status: Rejected**

Contact made

Interest confirmed

Lead is Converted

Lead becomes an Opportunity

**Sales Category: Qualify**

**Sales Stage: Interviewing**

Interview Opportunity Assessment

**Sales Category: Qualify**

**Sales Stage: Qualified**

Send Application

**Sales Category: Documents**

Manually Change **Sales Stage: Application Sent**

*Possible Sales Stage at any time: Request Transfer Eval

**Sales Category: Documents**

**Sales Stage: Financial Plan Determined**

FAFSA arrives but FAA needs more info need to ATP

Receive Application
**Sales Category: Documents**
Create plan to receive FAFSA
Write and send Recommendation

All info comes in and Student is ATP'd

FAFSA arrives, all docs in. Student is ATP'd

FAFSA arrives, is not able to be ATP'd

FAFSA does not arrive

**Sales Category: Enroll**

**Sales Stage: Ready to Enroll**

Student does Not Participate

**Manually Change Sales Stage Action to Closed/Lost**

**Sales Category: Lost**

**Sales Category: Register**

**Sales Stage: Student Package Created**

Register Student

**Sales Category: Attend**

**Sales Stage: Anticipating Orientation**

Student Participates

**Sales Category: Attend**

**Sales Stage: Closed/Won**

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,          )    18-81004-CIV

6         vs.                      )

7    POST UNIVERSITY, INC.,        )

8              Defendant.          )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

```
                                                    Page 3
 1                        INDEX
 2   EXAMINATION
 3   Witness Name                               Page
 4   Sean Cooley
 5       Direct By Mr. Glapion .................... 7
 6
 7
 8                       REQUEST
 9       Request ................................ 113
10
11
12               PLAINTIFF'S EXHIBITS
13               (Marked For Identification)
14                                              Page
15   Exhibit 12 Marked ........................... 7
     Notice of Deposition of designated
16   representative of Post University and Notice
     of Deposition of Sean Cooley
17
     Exhibit 13 Marked ........................... 20
18   Post University Performance Appraisal Reviews
     re Sean Cooley, Bates Numbers PU00017449
19   through 17470
20   Exhibit 14 Marked ........................... 50
     Email, Bates Numbers PU00004476 through 4481
21
     Exhibit 15 Marked ........................... 66
22   Post University Performance Appraisal Review
     Form, Bates Numbers PU00000134 through 150
23
     Exhibit 16 Marked ........................... 70
24   Document bearing Bates Number PU00011106
25
```

Page 165

1      relationship with Post University?

2          A.    Not every call.

3          Q.    Would you say the majority of calls?

4          A.    Yes.

5          Q.    The vast majority of calls?

6          A.    Yes.

7          Q.    Would you say 90 percent of the calls?

8          A.    Yes.

9          Q.    95 percent of the calls?

10         A.    I can't say with certainty, but --

11         Q.    But on occasion someone will --

12         A.    The majority, the majority of calls that

13     are made to a closed opportunity or a closed lead

14     would be to see if someone is interested, if now is

15     a better time for someone to move forward with their

16     education with us.

17         Q.    And we established that a closed

18     opportunity was no longer in that process we talked

19     about in Exhibit 16; correct?

20         A.    Correct.

21         Q.    So when you say to see if someone is

22     interested, if now is a better time for someone to

23     move forward with their education with us, to see if

24     you can get them back into that enrollment process;

25     is that correct?

1    A.    Correct.

2    Q.    And I know you can't give me an exact

3  figure, but on occasion, it seems to be a very small

4  on occasion, someone who developed a really strong

5  relationship just might call to say, hey, how are

6  you, but I want to be clear that the expected use of

7  those calls to lost opportunities was to attempt to

8  reengage them with the enrollment process; is that

9  correct?

10    A.    The ones that they are reaching out to,

11  because again, that's contingent on why they were

12  rejected, but yes, that's the majority purpose of

13  attempting to make contact.

14    Q.    And you said upwards probably of

15  90 percent; is that fair?

16    A.    That's fair.

17    Q.    In terms of rejected leads, because we've

18  been focused on opportunities, would rejected leads

19  continue to be called?  Excuse me.  Let me rephrase.

20    A.    Excuse me, pardon me.

21    Q.    Do you need more water?

22    A.    I might actually.

23                    (Pause.)

24              THE WITNESS:  I'm not sure if you

25  asked a question.

1    Q.    I'm off of this document, I'm sorry.

2    A.    Okay, I'm still looking at this; I'm

3  trying to put the pieces together.

4    Q.    I'm just back to those particular calls to

5  opportunities now, because we've established that

6  calls to rejected leads were part of getting them on

7  to this Exhibit 16 process.

8          I'm asking now about lost and closed

9  opportunities.  Almost always the calls were -- one

10 of the goals of the calls were to get them back onto

11 the process in Exhibit 16; is that fair to say?

12   A.    Yes.

13   Q.    Very infrequently is the process you just

14 described where there was a call without that

15 intent; correct?

16         MR. BOWSER:  Objection, asked and

17 answered.

18   A.    Yes.

19   Q.    And that those infrequent calls, that was

20 not a trained policy?  I'm just trying to establish

21 whether they were trained to do that or if it was

22 something sort of an admissions counselor did on

23 their own.

24   A.    To my knowledge, it wasn't part of the

25 training process whatsoever.

Page 200

1  calls?

2      A.    Right.  They are the outliers for sure.

3      Q.    And I know you can't give me an exact

4  number, and I wouldn't expect you to give me an

5  exact number; you thought 10 percent -- you said

6  might be high.  I mean, how many calls does Post's

7  admissions counselors make in a given day?

8      A.    I am not certain.  I don't have those

9  figures.  I mean, making an outreach to a once open

10  opportunity that was now closed because something

11  mitigating happened in their life and you are

12  checking up on them, it's not an everyday

13  occurrence.  It's not an every admissions counselor

14  occurrence.  It's just something that some people do

15  based on the unique circumstance of the prospect.

16      Q.    Okay.  I think we've established sort of

17  what I was trying to in terms of, there is always

18  going to be outliers in any call?

19      A.    Of course.

20      Q.    Theoretically, a rejected lead you can

21  have an outlier where someone placed --

22      A.    The original question, the reason why I

23  answered it as such is you said, is the only reason

24  to make a contact an opportunity, which is why we

25  arrived here, is with the intention of reengaging

Page 201

1    them and bringing them back into this process, and I

2    wanted to provide you that that is not the sole

3    reason for an outreach to a closed opportunity.

4        Q.    Is that the sole trained reason?

5        A.    Yes.

6        Q.    Were all rejected leads intended to be

7    called again?

8        A.    No.

9        Q.    And similarly, were all lost or closed

10   opportunities intended to be called again?

11       A.    No.

12       Q.    Between July 30th, 2014 and July 30th,

13   2018, were admissions counselors permitted to use

14   third-party services in connection with their

15   communication with the leads and opportunities?

16       A.    Can you provide the dates for me once more

17   please.

18       Q.    July 30, 2014 and July 30, 2018.

19       A.    Yes.

20       Q.    Did this include Google Voice?

21       A.    Yes.

22       Q.    What about TextNow?

23       A.    Yes.

24       Q.    Are there any others that you can think of

25   in that vein?

1     Q.     And it's the same thing with respect to

2     lost opportunities; correct?   There's a lot of

3     questions I asked so let me try again.

4            A lost opportunity is reached; an

5     admissions counselor is gauging if they are

6     interested or capable of now continuing the process

7     that they previously started; correct?

8     A.     Most of the times, yes.

9     Q.     That's the 90 plus percent versus the

10    small subset we discussed; correct?

11    A.     Yes.

12    Q.     And those admissions counselors then, they

13    take sort of the same role as we just discussed;

14    they nurture those prospective students through the

15    process in 16?

16    A.     Yes.

17    Q.     Between July 30th, 2014 and July 30th,

18    2018, did Post have a written Do Not Call policy?

19    A.     No.

20    Q.     Between July 30th 2014 and July 30, 2018

21    if someone requested Post's written Do Not Call

22    policy, what would be provided?

23    A.     I don't know.  I'm not certain.

24    Q.     Did anyone ever request -- to the best of

25    your knowledge, did anyone ever request the Do Not

Page 290

1     Q.     Which is part of the process?

2     A.     Which is part of the process.

3     Q.     And same with respect to opportunities,

4  lost opportunities, Post calls or texts some

5  categories of lost opportunities; correct?

6     A.     Correct.

7     Q.     And the goal with contacting those

8  categories of lost opportunities is to get them into

9  or back into this process, correct, for the

10  majority, the vast majority of those calls?

11     A.     Correct.

12     Q.     And as part of the communication with

13  rejected leads, one of the roles is to encourage or,

14  excuse me, your word was "nurture," is to nurture

15  them through this process; correct?

16     A.     Correct.

17     Q.     And part of nurturing those rejected leads

18  or now converted leads through this process is to

19  encourage them at the various steps; correct?

20     A.     Yes.

21     Q.     And with respect to opportunities and lost

22  opportunities, once they enter back into this

23  process, the goal is to continue to nurture them

24  through this process; correct?

25     A.     Correct.

# SOF ¶ 74
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )   CASE NO.:

5            Plaintiff,            )   18-81004-CIV

6        vs.                       )

7    POST UNIVERSITY, INC.,        )

8            Defendant.            )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14             DATE:  APRIL 11, 2019

15                 HELD AT:

16             WYNDHAM SOUTHBURY

17             1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 192

1    that email or, excuse me, this information?

2        A.    I'm assuming that he did.

3        Q.    But you don't actually remember, you are

4    assuming just because of who you sent it to;

5    correct?

6        A.    Correct.

7        Q.    You don't remember what is meant by

8    converted in this email; correct?

9        A.    Right.  It could be any number of those

10   things.  It's probably converted into opportunity

11   or -- yeah, I mean, I can't say with any certainty,

12   so it would only be speculatory.

13       Q.    I asked a moment ago whether the purpose

14   of calling rejected leads were part of Post's

15   efforts to enroll students, and I think we agreed

16   that because it's to start them on the process that

17   it was?

18       A.    Of course.

19       Q.    And same with respect to lost/closed

20   opportunities, I know you said there were some calls

21   that were more checkup calls, but --

22       A.    The majority.

23       Q.    The 90 percent plus majority were part of

24   Post's efforts to enroll students; is that correct?

25       A.    Correct.

Page 209

1      Q.    And it's the same thing with respect to

2  lost opportunities; correct?  There's a lot of

3  questions I asked so let me try again.

4           A lost opportunity is reached; an

5  admissions counselor is gauging if they are

6  interested or capable of now continuing the process

7  that they previously started; correct?

8      A.    Most of the times, yes.

9      Q.    That's the 90 plus percent versus the

10  small subset we discussed; correct?

11      A.    Yes.

12      Q.    And those admissions counselors then, they

13  take sort of the same role as we just discussed;

14  they nurture those prospective students through the

15  process in 16?

16      A.    Yes.

17      Q.    Between July 30th, 2014 and July 30th,

18  2018, did Post have a written Do Not Call policy?

19      A.    No.

20      Q.    Between July 30th 2014 and July 30, 2018

21  if someone requested Post's written Do Not Call

22  policy, what would be provided?

23      A.    I don't know.  I'm not certain.

24      Q.    Did anyone ever request -- to the best of

25  your knowledge, did anyone ever request the Do Not

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>      Defendant. | Civil Case No.: 18-cv-81004<br><br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

### DECLARATION OF SARAH MARKHAM

1. My name is Sarah Markham and I declare, under penalty of perjury, that the following is true and correct.

2. I further declare that the following is based on my own personal knowledge.

3. I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4. From approximately May 2016 to January 2017, I was an employee at Post University.

5. During my employment, my title was ADP Admissions Counselor.

6. ADP stands for Accelerated Degree Program.

7. Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 10-15 Admissions Counselors and an Admissions Team Lead.

8. My job responsibilities included making telephone calls to encourage and convince prospective students to enroll at Post University, interview prospective students, and ensure and pressure interested students complete the admissions process.

41.     The persons to be called during these "Power Hours" were provided on a list separate from the CRM system.

42.     We could, and were expected to, look up these persons in the CRM system before calling them.

43.     However, we were obligated to call them regardless of what the previous call dispositions stated, including if they had been noted as someone not to call.

44.     The purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to "get them back" or, in other words, re-engage that person with Post University and to encourage them to apply to and/or enroll at Post University.

45.     My general impression is that no matter what a lead said or did, they were never truly free of our attempts to contact them and convince them to enroll at Post University.

46.     In addition, during our interviews with prospective students, we were expected to ask for "references."

47.     We then made files for each of the references provided and treated those references as leads.

48.     The high-pressure approach outlined above is the primary reason I left Post University.

49.     I documented, in general terms, my concerns about Post's high-pressure tactics to Post University upon my departure.

50.     In a January 5, 2017 letter to Post University's Human Resources department, I wrote, among other things:

      a.   "I find that Post University has no mission other than being profitable."

59.     For calls, I could type in the result or disposition of a call manually and/or I could select a pre-created disposition from a dropdown menu.

60.     These included self-explanatory pre-created dispositions such as (or similar to) "Left Voicemail" (which I understood should be used when I placed a call and left a voicemail), "Hang Up" (which I understood should be used when I placed a call, it was answered, but the line hung up), "Voicemail Full" (which I understood should be used when I placed a call, reached a voicemail, but was unable to leave a message because the voicemail was full), and "Voicemail not set up" (which I understood should be used when I placed a call and reached a message saying that the voicemail had not been set up).

61.     Another pre-created disposition was "No Message Left", which I understood should be used when I placed a call, reached a voicemail, but chose not to leave a message.

62.     I would estimate that at least half of my calls to rejected leads or lost opportunities were picked up or reached the dialed number's voicemail system.

63.     While I do not recall exactly how many unique rejected leads or lost opportunities I reached more than once (either by someone picking up or my call reaching their voicemail), it was in excess of 40.


I declare under penalty of perjury that the foregoing is true and correct. Executed on June 19, 2019 _____ (date).

Sarah Markham

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated, | Civil Case No.: 18-cv-81004 |
| Plaintiff, | |
| v. | Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |
| **POST UNIVERSITY, INC.,** | |
| Defendant. | |

## <u>DECLARATION OF SUSANNA SHIGO</u>

1.    My name is Susanna Shigo and I declare, under penalty of perjury, that the following is true and correct.

2.    I further declare that the following is based on my own personal knowledge.

3.    I further declare that I am competent to state the following, that I have not made the following statements under any duress or coercion, that I am of legal age and sound mind, and that I am not under the influence of any substances or conditions that would impair my memory or ability to make the below statements.

4.    From approximately October 2016 to May 2017, I was an employee at Post University.

5.    During my employment, my title was ADP Admissions Counselor.

6.    ADP stands for Accelerated Degree Program.

7.    Admissions Counselors were broken into "teams" of admissions counselors, which would consist of approximately 8-14 Admissions Counselors, Team Lead and an Assistant Director.

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

46.     Similarly, when I first started at Post, during my two-week training with Shannon Madore we were provided stacks of old leads and instructed to make calls to those old leads no matter what.

47.     These training lists contained leads over two years old and were often called by different new hires.

48.     Lost opportunities and other old or rejected leads would also be called by Admissions Counselors who needed calls to meet their daily expected call volume.

49.     Admission's Counselors would often call old leads, numbers that were not in service, or rejected leads.

50.     A purpose of every call to a "lost opportunity" or otherwise previously-rejected lead was to re-connect with someone previously interested and to convince them to attend Post University.

51.     My general impression is that no matter what a lead said or did, they were never truly out of our system, and would eventually begin receiving calls again.

52.     In addition to calls, we would also communicate with leads and opportunities (new or old) via email.

53.     Many of the emails that were sent out were sent out in bulk using a "mail merge."

54.     We were never trained to or, to the best of my knowledge, expected to keep emails.

55.     When an Admissions Counselor like myself would manually note an interaction with a prospective student or the result of a call or text to that prospective student, we would often use shorthand and abbreviations.

56.     For example, "SW" and "SWS" typically meant "spoke with student" (i.e. the call reached the lead, opportunity, or student it was meant to reach, and we spoke with them).

DocuSign Envelope ID: E01EE989-4840-4D89-ACC0-2EA944A88E8C

57. "LM" ("Left Message"), "LVM" ("Left Voicemail"), "VM" ("Voicemail"), and "Left VM" all typically meant that a voicemail message was left ("VM" is short for voicemail).

58. "NML" meant "No Message Left."

I declare under penalty of perjury that the foregoing is true and correct. Executed on
6/24/2019
_____ (date).

_____
Susanna Shigo

# SOF ¶ 75
# Supporting Exhibits

Page 1

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )   CASE NO.:

5              Plaintiff,          )   18-81004-CIV

6         vs.                      )

7    POST UNIVERSITY, INC.,        )

8              Defendant.          )

9    ------------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14               DATE:  APRIL 11, 2019

15                     HELD AT:

16               WYNDHAM SOUTHBURY

17                1284 Strongtown Road

18               Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 193

1      Q.    And to essentially reengage those lost

2  opportunities with Post, I'm talking about the

3  90 percent for now; is that fair?

4      A.    That's fair.

5      Q.    And with respect to the 10 percent of

6  calls, was there any business purpose to those

7  10 percent of calls?  And I'm saying 10 percent, I

8  know it's fuzzy there, but just for ease of

9  communication, for those 10 percent of calls, was

10  there any business purpose for Post just calling a

11  student or, excuse me, a former prospective student

12  just to check up on them?

13      A.    A former opportunity?

14      Q.    Let me say that again.  Was there any

15  business purpose to calling a lost opportunity in

16  those 10 percent of calls you said were just to

17  check up on them?

18      A.    I'm sorry, can you rephrase that.

19      Q.    Was there any business purposes to calling

20  a lost opportunity for those small subset of calls

21  which we said was probably 10 percent or less that

22  was just to sort of check up on them?

23      A.    No.

24      Q.    No business purpose?

25      A.    Right.  The 10 percent is probably high,

1   but no.  Again, it's a checkup call, it's the

2   minority.

3       Q.    Did admissions counselors have discretion

4   on when to just do one of those checkup calls?

5       A.    Again, it was extremely infrequent.  It's

6   nothing outlined in any of the process.

7       Q.    Was it encouraged for them to make these

8   checkup calls to those lost opportunities that they

9   did not intend or hope to enroll?

10      A.    I can't speak to that.  I don't know.

11      Q.    Were they trained to do that?

12      A.    No.

13      Q.    So it's sort of -- it wasn't a policy to

14  do that is what you are saying; correct?

15      A.    Was calling an old -- a closed opportunity

16  because something mitigating happened in their life

17  and a rapport was established and you are calling

18  them to see how they are doing, not necessarily with

19  the intent of moving them through Exhibit 16 again,

20  is that a trained process?  No.

21      Q.    And that process you just described where

22  a call is made to a closed opportunity without an

23  intent of moving them through Exhibit 16 happened

24  very infrequently, as you said?

25      A.    Yes.  These are leads more than likely.

Page 199

1    I'm asking, and that's why I want to parse through

2    it because my question is related to calling lost

3    opportunities, and the story you gave was about

4    calling an enrolled student and then getting someone

5    who had never requested information.

6        A.    I know and I appreciate that they are not

7    perfectly aligned.  My story that I provided for you

8    does not completely align with your original ask,

9    and I understand what your original ask was, but

10   that was -- it's been a long time since I've been in

11   that position, so I can't really give you any other

12   real examples of me doing that besides making a

13   story up.  That one resonated with me, so I can

14   reflect on it as if it was last month rather than

15   eight years ago.

16       Q.    I understand.

17       A.    So that's why I went in that direction.

18       Q.    I appreciate that.  And it's sort of these

19   relatively unique circumstances, I guess I'll call

20   them, that in your opinion would lead to

21   non-enrollment related calls to lost opportunities;

22   is that fair?

23       A.    Forgive me.

24       Q.    These are relatively sort of extreme and

25   unique circumstances that would necessitate those

1    calls?

2         A.    Right.   They are the outliers for sure.

3         Q.    And I know you can't give me an exact

4    number, and I wouldn't expect you to give me an

5    exact number; you thought 10 percent -- you said

6    might be high.   I mean, how many calls does Post's

7    admissions counselors make in a given day?

8         A.    I am not certain.   I don't have those

9    figures.   I mean, making an outreach to a once open

10   opportunity that was now closed because something

11   mitigating happened in their life and you are

12   checking up on them, it's not an everyday

13   occurrence.   It's not an every admissions counselor

14   occurrence.   It's just something that some people do

15   based on the unique circumstance of the prospect.

16        Q.    Okay.   I think we've established sort of

17   what I was trying to in terms of, there is always

18   going to be outliers in any call?

19        A.    Of course.

20        Q.    Theoretically, a rejected lead you can

21   have an outlier where someone placed --

22        A.    The original question, the reason why I

23   answered it as such is you said, is the only reason

24   to make a contact an opportunity, which is why we

25   arrived here, is with the intention of reengaging

# SOF ¶ 76
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3      -----------------------------)

4      MELANIE DAVIS,                )   CASE NO.:

5             Plaintiff,             )   18-81004-CIV

6         vs.                        )

7      POST UNIVERSITY, INC.,        )

8             Defendant.             )

9      -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                  HELD AT:

16             WYNDHAM SOUTHBURY

17            1284 Strongtown Road

18           Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 194

1    but no.  Again, it's a checkup call, it's the

2    minority.

3        Q.    Did admissions counselors have discretion

4    on when to just do one of those checkup calls?

5        A.    Again, it was extremely infrequent.  It's

6    nothing outlined in any of the process.

7        Q.    Was it encouraged for them to make these

8    checkup calls to those lost opportunities that they

9    did not intend or hope to enroll?

10       A.    I can't speak to that.  I don't know.

11       Q.    Were they trained to do that?

12       A.    No.

13       Q.    So it's sort of -- it wasn't a policy to

14   do that is what you are saying; correct?

15       A.    Was calling an old -- a closed opportunity

16   because something mitigating happened in their life

17   and a rapport was established and you are calling

18   them to see how they are doing, not necessarily with

19   the intent of moving them through Exhibit 16 again,

20   is that a trained process?  No.

21       Q.    And that process you just described where

22   a call is made to a closed opportunity without an

23   intent of moving them through Exhibit 16 happened

24   very infrequently, as you said?

25       A.    Yes.  These are leads more than likely.

1    Q.    I'm off of this document, I'm sorry.

2    A.    Okay, I'm still looking at this; I'm

3  trying to put the pieces together.

4    Q.    I'm just back to those particular calls to

5  opportunities now, because we've established that

6  calls to rejected leads were part of getting them on

7  to this Exhibit 16 process.

8         I'm asking now about lost and closed

9  opportunities.  Almost always the calls were -- one

10  of the goals of the calls were to get them back onto

11  the process in Exhibit 16; is that fair to say?

12    A.    Yes.

13    Q.    Very infrequently is the process you just

14  described where there was a call without that

15  intent; correct?

16              MR. BOWSER:  Objection, asked and

17  answered.

18    A.    Yes.

19    Q.    And that those infrequent calls, that was

20  not a trained policy?  I'm just trying to establish

21  whether they were trained to do that or if it was

22  something sort of an admissions counselor did on

23  their own.

24    A.    To my knowledge, it wasn't part of the

25  training process whatsoever.

```
 1   calls?

 2        A.    Right.  They are the outliers for sure.

 3        Q.    And I know you can't give me an exact

 4   number, and I wouldn't expect you to give me an

 5   exact number; you thought 10 percent -- you said

 6   might be high.  I mean, how many calls does Post's

 7   admissions counselors make in a given day?

 8        A.    I am not certain.  I don't have those

 9   figures.  I mean, making an outreach to a once open

10   opportunity that was now closed because something

11   mitigating happened in their life and you are

12   checking up on them, it's not an everyday

13   occurrence.  It's not an every admissions counselor

14   occurrence.  It's just something that some people do

15   based on the unique circumstance of the prospect.

16        Q.    Okay.  I think we've established sort of

17   what I was trying to in terms of, there is always

18   going to be outliers in any call?

19        A.    Of course.

20        Q.    Theoretically, a rejected lead you can

21   have an outlier where someone placed --

22        A.    The original question, the reason why I

23   answered it as such is you said, is the only reason

24   to make a contact an opportunity, which is why we

25   arrived here, is with the intention of reengaging
```

Page 201

1    them and bringing them back into this process, and I

2    wanted to provide you that that is not the sole

3    reason for an outreach to a closed opportunity.

4        Q.    Is that the sole trained reason?

5        A.    Yes.

6        Q.    Were all rejected leads intended to be

7    called again?

8        A.    No.

9        Q.    And similarly, were all lost or closed

10   opportunities intended to be called again?

11       A.    No.

12       Q.    Between July 30th, 2014 and July 30th,

13   2018, were admissions counselors permitted to use

14   third-party services in connection with their

15   communication with the leads and opportunities?

16       A.    Can you provide the dates for me once more

17   please.

18       Q.    July 30, 2014 and July 30, 2018.

19       A.    Yes.

20       Q.    Did this include Google Voice?

21       A.    Yes.

22       Q.    What about TextNow?

23       A.    Yes.

24       Q.    Are there any others that you can think of

25   in that vein?

# SOF ¶ 77
# Supporting Exhibits

Page 1

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF FLORIDA

3     ----------------------------)

4     MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,           )    18-81004-CIV

6         vs.                       )

7     POST UNIVERSITY, INC.,        )

8              Defendant.           )

9     ----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13    AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14             DATE:  APRIL 11, 2019

15                  HELD AT:

16             WYNDHAM SOUTHBURY

17             1284 Strongtown Road

18             Southbury, Connecticut

19

20

21

22

23

24    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

Page 196

1    Q.    Did you ever make such calls?

2    A.    Yes.

3    Q.    And in what circumstances?  Was it just

4    that you had developed a strong rapport with the

5    person; is that when you would sort of --

6    A.    When I was an admissions counselor back in

7    2014, maybe before then even, maybe 2012 -- I wasn't

8    an admissions counselor for long -- I was working

9    with a student who was young, 17.  Classes began.

10   He lived with his grandmother.  And I was in

11   constant communication with him up until the day

12   that classes began, and I was unable to make contact

13   with him for that week of when classes were

14   beginning, and I was calling, calling, calling,

15   calling, unable to make contact.  I finally got

16   ahold of his grandmother, and he had died in a car

17   accident the night before.

18   Q.    That's a shame.

19   A.    It is.  So I had kept in contact with her

20   for a little bit and checked up on her -- this was a

21   very long time ago -- just to see how she was doing.

22   Q.    Sounds very nice of you, and I'm sure she

23   appreciated that.

24   A.    That wasn't a taught practice in any of

25   the training sessions, but those sort of things -- I

Page 197

1   don't know about to that level, I hope not, that

2   other people have those kinds of experiences, but

3   when you are dealing with a lot of people, stories

4   like this come up.  And so I know that people have

5   done things like that in the past, checked up on

6   people to see how they are without the intention

7   of -- my intention was not to get his grandmother

8   started for classes.

9        Q.    Gotcha.  And I hate to use this story to

10  segue because it's obviously an impactful story.  In

11  that scenario though, the grandmother was not a

12  lead; correct?

13       A.    Correct, but anybody could be interested

14  in going to school if we tell them about the

15  university and provide information.

16       Q.    So I'm sorry to ask a question about this

17  story.

18       A.    No, I provided the story, so if you have

19  to --

20       Q.    And I will try to be sensitive to the

21  story because it's an emotional story.  When you

22  were calling the grandmother to just check up on

23  her, she was not a lead at that time?

24       A.    No.

25       Q.    She could potentially become a lead or --

Page 198

1        A.      She could have become.

2        Q.      But she wasn't when you were calling her;

3    correct?

4        A.      Yeah.

5        Q.      And the grandson that you were

6    communicating with, while you were communicating

7    with him, do you recall if he was a lost or closed

8    opportunity or an open opportunity?

9        A.      He was a registered student when I was

10   communicating with him.

11       Q.      I understand, okay.  That makes sense and

12   I apologize for misunderstanding that.  So you said

13   that anyone could become a lead, so recognizing that

14   your primary concern was with her well-being and

15   mental state, did you nonetheless provide

16   information to her about Post?

17       A.      I didn't provide any information to her

18   about Post.

19       Q.      But in that scenario and in that story,

20   the opportunity that you were communicating with --

21       A.      Everybody is unique.

22       Q.      I understand.

23       A.      Every situation is unique.

24       Q.      I just want to make sure because that

25   scenario doesn't exactly match up with the question

1   I'm asking, and that's why I want to parse through

2   it because my question is related to calling lost

3   opportunities, and the story you gave was about

4   calling an enrolled student and then getting someone

5   who had never requested information.

6        A.    I know and I appreciate that they are not

7   perfectly aligned.  My story that I provided for you

8   does not completely align with your original ask,

9   and I understand what your original ask was, but

10  that was -- it's been a long time since I've been in

11  that position, so I can't really give you any other

12  real examples of me doing that besides making a

13  story up.  That one resonated with me, so I can

14  reflect on it as if it was last month rather than

15  eight years ago.

16       Q.    I understand.

17       A.    So that's why I went in that direction.

18       Q.    I appreciate that.  And it's sort of these

19  relatively unique circumstances, I guess I'll call

20  them, that in your opinion would lead to

21  non-enrollment related calls to lost opportunities;

22  is that fair?

23       A.    Forgive me.

24       Q.    These are relatively sort of extreme and

25  unique circumstances that would necessitate those

# SOF ¶ 78
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3     -----------------------------)

4     MELANIE DAVIS,                )   CASE NO.:

5              Plaintiff,           )   18-81004-CIV

6         vs.                       )

7     POST UNIVERSITY, INC.,        )

8              Defendant.           )

9     -----------------------------)

10

11

12        DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                    HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1   went.  Not every call has a system-driven intention

2   behind it, so I just wanted to add that layer of

3   clarity.

4        Q.    And let's break that down.  So you said

5   there are calls to opportunities that are to check

6   up on someone; correct?

7        A.    Uh-huh.

8        Q.    And when you say "check up on someone,"

9   are you talking about -- what do you mean by "check

10  up on someone"?

11       A.    As I mentioned, a big piece of this sales

12  experience that we were referencing earlier is

13  rapport building.  Throughout that and throughout a

14  PCAS, that could last upwards of an hour; I've seen

15  them last for 90 minutes.  A lot of times, a lot of

16  information is shared, and that relationship that's

17  established between the admissions counselor and the

18  prospect sometimes is a very tight bond.

19            A lot of our prospects don't have a lot of

20  support in their personal life, so when they find

21  that support in our admissions counselor, a bond is

22  built there occasionally.  So the calls that are

23  placed to the people that they've spoken with and

24  have expressed interest, they are not always with a

25  school-driven intent behind it, so I just wanted to

Page 158

1    add that layer of distinction.

2        Q.    Are admissions counselors permitted to

3    make personal calls while working?

4        A.    Yes.

5        Q.    And I can show you the training document.

6    I just want to clarify.  I believe the training

7    document says that no cell phones are allowed on the

8    floor, but --

9        A.    Do you mean on the clock or while they are

10   at the job?

11       Q.    While they are working on the clock, are

12   Post admissions counselors permitted to make

13   personal calls?

14       A.    While you are on the clock, you should not

15   be making personal phone calls.

16       Q.    So it's fair to say then that if an

17   admissions counselor is doing their job while on the

18   clock, the calls that they make are on behalf of

19   Post University?

20       A.    Yes.

21       Q.    So when someone places a telephone call to

22   check up on a prospective student, and I think we

23   are talking about opportunities now, that's not

24   considered to be a personal call?

25       A.    Absolutely not.

1      Q.    So these building-rapport calls are to

2  place calls to rejected leads to build rapport?

3      A.    No, you never said rejected opportunities.

4      Q.    So you will place calls to rejected

5  opportunities to build rapport?

6      A.    If a bond has been made between an

7  admissions counselor and a once prospective student,

8  admissions counselors will occasionally still keep

9  in contact to see how everything is going on, to see

10  if someone is interested and maybe if this is a

11  better time for them in their personal life to move

12  forward or if something mitigating happened in their

13  life.

14          There is a lot of stories that we hear,

15  some really heartbreaking stories that come about,

16  and throughout that PCAS or that eight-week time

17  frame where they were, you know, kind of building

18  that camaraderie and relationship, people want to

19  make sure that our former prospects are doing okay.

20  It's part of -- again, part of our culture.  So that

21  happens, you know, probably less frequently, but to

22  answer your question, I want it to be full

23  disclosure.

24      Q.    Within that answer, you mentioned that if

25  a bond has been made between an admissions counselor

Page 162

1   and a once prospective student, they may check in to

2   see if it might be a better time for them; correct?

3       A.      Uh-huh.

4       Q.      And the other reasons were similar to

5   that, has whatever was affecting you before resolved

6   kind of questions?

7       A.      Of course.

8       Q.      In those scenarios, would you agree that

9   though the person was marked as opportunity lost,

10  the admissions counselor making those calls had

11  reason to believe that they may be able to get that

12  opportunity back into Post?

13      A.      It depends.

14      Q.      Are you aware of admissions counselors

15  being permitted to make telephone calls to lost

16  opportunities that there was no basis for belief

17  that the lost opportunity might be converted into an

18  enrolled student?

19      A.      I believe I just gave you an example.

20      Q.      What you said was --

21      A.      To check up on somebody, see how they were

22  doing.

23      Q.      To see if it is a better time in their

24  personal life to move forward.

25      A.      That's one example.

Page 163

1    Q.    Okay.  And --

2    A.    That could be a reason.

3    Q.    So --

4    A.    Not every outbound call made to a lost

5  opportunity is made with the intention of moving

6  that student back into Exhibit 16.

7    Q.    Wouldn't that be a personal call then?

8    A.    No.

9    Q.    Why not?

10    A.    Because this was a former prospect.

11    Q.    But it's not a prospect when the call is

12  made; correct?

13    A.    Who's to say?

14    Q.    I'm asking you.  You just said that --

15    A.    I'm saying they didn't make the call with

16  the intention, every call.

17    Q.    But were these calls made only to those

18  that were considered prospects or that could be

19  turned back into a prospect?

20    A.    And I said no.

21    Q.    And I'm asking then how is that not a

22  personal call?

23    A.    Because at that point they were part of

24  the Post family.

25    Q.    So I want to get this very clear on the

1      Q.    And to essentially reengage those lost

2   opportunities with Post, I'm talking about the

3   90 percent for now; is that fair?

4      A.    That's fair.

5      Q.    And with respect to the 10 percent of

6   calls, was there any business purpose to those

7   10 percent of calls?  And I'm saying 10 percent, I

8   know it's fuzzy there, but just for ease of

9   communication, for those 10 percent of calls, was

10   there any business purpose for Post just calling a

11   student or, excuse me, a former prospective student

12   just to check up on them?

13      A.    A former opportunity?

14      Q.    Let me say that again.  Was there any

15   business purpose to calling a lost opportunity in

16   those 10 percent of calls you said were just to

17   check up on them?

18      A.    I'm sorry, can you rephrase that.

19      Q.    Was there any business purposes to calling

20   a lost opportunity for those small subset of calls

21   which we said was probably 10 percent or less that

22   was just to sort of check up on them?

23      A.    No.

24      Q.    No business purpose?

25      A.    Right.  The 10 percent is probably high,

1   but no.  Again, it's a checkup call, it's the

2   minority.

3       Q.    Did admissions counselors have discretion

4   on when to just do one of those checkup calls?

5       A.    Again, it was extremely infrequent.  It's

6   nothing outlined in any of the process.

7       Q.    Was it encouraged for them to make these

8   checkup calls to those lost opportunities that they

9   did not intend or hope to enroll?

10      A.    I can't speak to that.  I don't know.

11      Q.    Were they trained to do that?

12      A.    No.

13      Q.    So it's sort of -- it wasn't a policy to

14  do that is what you are saying; correct?

15      A.    Was calling an old -- a closed opportunity

16  because something mitigating happened in their life

17  and a rapport was established and you are calling

18  them to see how they are doing, not necessarily with

19  the intent of moving them through Exhibit 16 again,

20  is that a trained process?  No.

21      Q.    And that process you just described where

22  a call is made to a closed opportunity without an

23  intent of moving them through Exhibit 16 happened

24  very infrequently, as you said?

25      A.    Yes.  These are leads more than likely.

# SOF ¶ 79
# Supporting Exhibits

DocuSign Envelope ID: 877C307D-D2A6-4414-B1C8-544E4EBDCC04

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANIE DAVIS**, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>**POST UNIVERSITY, INC.,**<br><br>               Defendant. | Civil Case No.: 18-cv-81004-RKA<br><br>Judge: Hon. Roy K Altman<br>Magistrate Judge: Hon. Dave Lee Brannon |

## DECLARATION OF MELANIE DAVIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.      My name is Melanie Davis and I declare, under penalty of perjury, that the following is true and correct.

2.      The telephone number ending in 4599 is my personal cellular telephone number.

3.      It was my personal cellular telephone number prior to my first contact with Post University, and remains so to this day.

4.      The document labeled MD000009 is a true and accurate copy of a page from my Sprint bill that I took directly from my online account portal, with part of my account number and another telephone number on my account redacted.

5.      Post University continued to call, text, and email me after I had expressed that I was unable to move forward, and after numerous do-not-call requests.

6.      On August 13, I replied to an email from Post University informing it I would no longer be able to move forward with school.

7.      A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000199-200.

DocuSign Envelope ID: 877C307D-D2A6-4414-B1C8-544E4EBDCC04

18.     On April 4, 2018, I replied to an email from Post University by writing, in part, "[t]his is the 5th or 6th time I have asked Post representatives to stop contacting me. Please close my file!!! I will be forced to obtain legal action."

19.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000121-23.

20.     On June 6, 2018, I replied to an email from Post University by writing, in part, "[p]lease stop emailing me! I'm not interested anymore! I have told everyone who has contacted me by phone and email!!!"

21.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000280-82.

22.     On July 17, 2018, Post University sent me a series of text messages at my telephone number ending in 4599.

23.     True and accurate copies of these text messages and my responses are shown in the screenshots labeled MD000001-4, which were taken on July 18, 2018.

24.     On September 7, 2018, PU sent me an email inviting me to submit my FAFSA.

25.     A true and accurate copy of that email exchange taken directly from my Gmail inbox is shown in the document labeled MD000509-510.

26.     On at least two occasions, I asked Post University for a copy of its written do-not-call policy, so I could act in accordance with it and finally get the calls to stop.

27.     To date, no such policy has been provided to me.

28.     All of Post University's calls, texts, and emails to me after I first informed Post University that I was unable to move forward were to encourage me to re-start or continue the

DocuSign Envelope ID: 877C307D-D2A6-4414-B1C8-544E4EBDCC04

enrollment process that I had said I did not intend to continue, and/or gauge my interest in enrolling in an upcoming class session.

29.     If called upon, I could testify about the matters set forth herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

7/18/2019
_____ (date).

_____
Melanie Davis

# GZJ KDKV'J "

Date - 2017-08-25T14:51:11
Message - Class starts next week for Post U's Online Degree Program! There's still time to get started: call 203-568-1652. TxtSTOP2end
From number - +12034337702

Date - 2017-08-30T17:42:24
Message - Post University has not received your 2017/2018 FAFSA. You can access this financial aid application at fafsa.ed.gov (school code: 001401). Class begins this week, so if you need assistance, please call us at 203-568-1652 Msg&DataRatesMayApply
From number - +12034337705

Date - 2017-08-30T17:43:18
Message - STOP
To Number - +12034337705

Date - 2017-08-30T17:43:20
Message - You have been opted out of all subscriptions: Post_University_Info_Alerts. No more messages will be sent. Help at www.truedialog.com/help or 877-501-4276
From Number - +12034337705

# EXHIBIT I

| | |
|---|---|
| **From:** | Melanie Davis <mdspecialist21@gmail.com> |
| **Sent:** | Thursday, September 21, 2017 2:56 PM |
| **To:** | Valluzzo, Carissa |
| **Subject:** | Re: *Urgent*-Response Required - No |
| **Attachments:** | image001.png |

Hello Carissa!

Thank you for following up with me.  I am unable to attend school at time.  I was very interested at the time I contacted your school.  Shortly afterwards, my life was interrupted by unpleasant events and I am no longer able to continue my plans for school.

You may close my file.

Thank you!

Melanie

On Thu, Sep 21, 2017 at 10:20 AM Valluzzo, Carissa <CValluzzo@post.edu> wrote:



To Whom It May Concern:

PU00000062

A while back, we had received a request for more information regarding Post University's online degree programs. I'm sorry it didn't work out for you for the previous sessions. Our next session is coming up and I was seeing if this was something you were still interested in! I would be happy to answer any questions that you have and tell you more about the University at your earliest convenience! **You are welcome to call me at 203.596.4673 or text me at 860-407-4413.**

**Post University has classes beginning on October 23rd with plenty of time to get your file finalized!**

Please use one of the following responses so I can update our records:

If **YES**, please reply YES.

If **NO**, please reply to this email with: Close File.

Post University's online degree program courses are offered in eight-week modules, six times a year. You'll find that our program offers:

- Flexibility and convenience -- without sacrificing quality

- A chance to engage in highly interactive and relevant courses taught by professors skilled at stepping outside the text and into the real-world

- The benefits of a traditional New England college experience -- without having to go to campus
- Immediate opportunities to apply what you're learning in class to your career
- Access to a team of academic and student support specialists whose sole purpose is to be a champion of your success
- A chance to transfer credits from other accredited colleges and universities as they fit into your degree plan.

If you have any questions at all or would like to get your future started please do not hesitate to contact me. I look forward to assisting you as you make strides toward your academic and career goals!

Sincerely,

**Carissa Valluzzo**

Admissions Counselor

PU00000063





**Carissa Valluzzo**
ADP Admissions Counselor
CValluzzo@Post.edu
**w.** 203.596.4673

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

3

PU00000064

GZJ KDKV'L''

 **Gmail**

Melanie Davis <mdspecialist21@gmail.com>

---

**Your FAFSA is Here!**
3 messages

---

**Meehan, Victoria** <VMeehan@post.edu>                              Wed, Oct 11, 2017 at 12:24 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

Follow us on social media:





Dear Melanie,

The good news is you have done the hard part!

**Your 1718 FAFSA is currently on file at Post University.**

With the start of classes just around the corner, it's important to understand your financial aid award package and if going to college to change your life will be feasible for you. We have financial aid advisors available 7 days a week to discuss your options with you.

**To discuss your FAFSA and possibly get started in our October 23ʳᵈ session please REPLY BACK:**

**The best phone number to reach me is:** _____

**The best time to call me is:** _____

Sincerely

*V Meehan*

Assistant Director of Admissions

MD000396



Follow us on social media:





**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

📄 **image006.emz**
2K

---

**Melanie Davis** <mdspecialist21@gmail.com>                                   Wed, Oct 11, 2017 at 6:42 PM
To: "Meehan, Victoria" <VMeehan@post.edu>

Please stop emailing, texting, sms, calls and voicemail!!

This is the third or fourth time I am asking to be removed from all of your lists!!

Thank you!
[Quoted text hidden]

---

**11 attachments**

 **image002.png**
3K

 **image003.png**
2K

 **image002.png**
3K

 **image001.png**
2K

 **image008.jpg**
13K

MD000397



**image004.png**
3K

**image005.png**
31K

**image007.png**
2K

**image001.png**
2K

**image003.png**
2K

**image004.png**
3K

---

**Melanie Davis** <mdspecialist21@gmail.com>
To: Jeremy Glapion <jmg@glapionlaw.com>

Wed, Jul 18, 2018 at 10:09 AM

███████████



MD000398

# EXHIBIT K



Melanie Davis <mdspecialist21@gmail.com>

**It's Not Too Late *Please Reply***
1 message

**Meehan, Victoria** <VMeehan@post.edu>                    Wed, Oct 18, 2017 at 8:37 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



Dear Melanie,

It is not too late for you to change your life through education!

Post University offers 24/7 tutoring, lifelong career services assistance and unparalleled flexibility and support.

Once before you told us that was what you wanted from a school, is that still the case?

**To get started in our October 23rd session please REPLY BACK:**

**The best phone number to reach me is: _____**

**The best time to call me is: _____**

Sincerely

*V Meehan*

Assistant Director of Admissions

MD000413



Follow us on social media:





**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

image002.emz
2K

MD000414

# EXHIBIT L

 **Gmail**

Melanie Davis <mdspecialist21@gmail.com>

---

## New Year, New You- Classes now forming at Post University!
2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                    Wed, Nov 8, 2017 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>





Melanie,

I hope this email finds you well.  You were previously working with our admissions team regarding enrollment for Post University's online accelerated programs. I know timing was off and you were unable to start in 2017. I wanted to let you know Post University is now registering students for courses that begin on January 8th 2018 and this is the first class of the New Year!

**Here are a few facts about Post University:**

MD000308

- We are regionally accredited.

- Our sessions are 8 weeks long (accelerated to help you finish quickly).

- NO set login times! You will not be required to be online at a specific time during the week.

- You can take 1 or 2 classes per 8 weeks.

- We have NO application fee.

- Please take a few moments to look over our website and our program offerings - PROGRAMS

# YOUR FUTURE BEGINS TODAY!

## Get started today by completing your FAFSA.

And you can complete your 2017/2018 FAFSA at

www.fafsa.ed.gov

Post University school code 001401

*Don't wait another year to begin working on your dreams! 2018 is a new year and a new you!*

If you are no longer interested in completing your degree, please respond to this email and I will update our records.

I look forward to assisting you with your goals. Feel free to reach me directly:

*Kimberly Williams*

*203.591.5144*

MD000309



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

---

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Nov 8, 2017 at 4:04 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Kimberly Williams, I have asked you and your colleagues to stop calling and emailing me. I was once interested and have had to change my mind.  I am no longer interested in applying to attend Post University!

Please let this be the last communication regarding your school.

Thank you!

[Quoted text hidden]

---

**3 attachments**


**image003.jpg**
12K


**image002.jpg**
17K

MD000310



**image001.png**
36K

MD000311

# EXHIBIT "I"

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

**New Year, New You, Don't Miss Out!**
1 message

**Valluzzo, Carissa** <CValluzzo@post.edu>                                    Thu, Dec 7, 2017 at 11:28 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



## POST UNIVERSITY

**Don't Wait Another Minute, Classes Begin January 8th!**

XXX,

Now's the perfect time to get the education you need on your own time.

**Enroll today** to take an important step forward in achieving your personal and professional goals.  We offer:

- 100% accelerated online classes
- The highest level of college accreditation & are ranked top 20 in the U.S.
- A career-focused education, and high employment rates for students
- Small class sizes in a personalized setting
- A program that is based on our 125-year-old traditional campus—your degree **WILL NOT** specify that you completed your degree online



**Melanie,Dear Melanie,**
**Contact me today at (203) 596-4673 for assistance, or get started on your own using the buttons above.**

I look forward to welcoming you to the Post University family! ☺

*Carissa Valluzzo* | ADP Admissions Counselor

800 Country Club Road • Waterbury, CT 06723 • post.edu/online
  

**Carissa Valluzzo**
ADP Admissions Counselor
CValluzzo@Post.edu
**w.** 203.596.4673

MD000232



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

MD000233

# EXHIBIT N



Melanie Davis <mdspecialist21@gmail.com>

---

**Snowed In? We Can Help with Your FASFA!**
2 messages

---

**Meehan, Victoria** <VMeehan@post.edu>                          Thu, Jan 4, 2018 at 9:24 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

## Hi Melanie!

# Are you snowed in today and want to have a productive day?

# We can help you get your FAFSA done!



Meghan, our FAFSA Specialist is available!  Call (646)535-2426 or text (860) 554-1473 and she would be happy to help you!

You can also reach the Assistant Director of Admissions for assistance today at 203-529-5596.

Completing your FAFSA is a very important step in the admissions process and we don't want you to miss out on classes that start January 8, 2018!

MD000247



**Victoria Meehan**
Assistant Director of ADP Admissions
VMeehan@Post.edu
**w.** 203.596.4625
**f.** 203.841.1161

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 · 800.345.2562 · Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                    Thu, Jan 4, 2018 at 10:53 AM
To: "Meehan, Victoria" <VMeehan@Post.edu>

Please stop contacting me!  Not interested!!

Melanie
[Quoted text hidden]



**image001.jpg**
22K

MD000248

GZJ KDKV'Q'''

 **Melanie Davis <mdspecialist21@gmail.com>**

---

**Post University would love to reconnect with you!**
2 messages

---

**Williams, Kimberly** <KWilliams@post.edu>                     Wed, Apr 4, 2018 at 3:47 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>



Melanie

Post University would love to reconnect with you regarding starting online classes. At Post University, our online classes are accelerated and have no set login times. This flexibility is designed for you and your busy schedule!

We have classes beginning on **April 30th, 2018**, are you interested in starting?

Please use one of the following responses so I can update our records:

If **YES**, please respond with "YES" and I will contact you to get started.

If you are choosing to use Financial Aid, please fill out your 2017-2018 Financial Aid Application at www.fafsa.ed.gov and add our school code:  **001401**

TOP TEN REASONS TO BECOME A STUDENT AT POST U

MD000121

1.  We aren't an "online school", we have a **campus that has been in located in Connecticut since 1890** and we offer the same classes online as on our campus so your diploma will not say that you earned your degree online.

2.  **Our university is small and private**, offering students a more personable experience from start to graduation

3.  We were just recently **ranked one of the Top 10 Programs in the Country for Return on Investment**. Meaning you are much more likely to make back the money you put into your education if you graduate from Post.

4.  We hold a regional accreditation by NEASC, the **highest accreditation a university can have**.

5.  We're also accredited with the Better Business Bureau and **have an A- rating**

6.  Students can **graduate at a quicker pace than at other universities** – usually at least 6 months to 1 year faster.

7.  Our online classes are extremely flexible allowing students to learn on their own time each week—**there are no set login times or live lectures.**

8.  When online students graduate, they are given the opportunity to **come to campus and attend graduation in person.**

9.  We're top ranked for the percentage of students that receive financial aid.

10.  Our professors are all experts working in their field so you will receive the most up to date information available from those most qualified to give it.


If **NO**, please reply to this email with: Close File.

Sincerely,

**Kimberly Williams**

Admissions Counselor



Follow us on social media:



MD000122



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

**Melanie Davis** <mdspecialist21@gmail.com>                                    Wed, Apr 4, 2018 at 5:34 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

This is the 5 or 6th time I have asked Post representatives to stop contacting me.

Please close my file!!!  I will be forced to obtain legal action.

Melanie
[Quoted text hidden]

MD000123

# EXHIBIT P



Melanie Davis <mdspecialist21@gmail.com>

## Post U has not forgotten about you!

2 messages

**Williams, Kimberly** <KWilliams@post.edu>                              Wed, Jun 6, 2018 at 12:09 PM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>

Post University Accelerated Degree Program  |  Unleash Potential, Create Possibility, Change Lives | Since 1890



Hello,

Not too long ago you considered Post
University for your education, I am
touching base with you because we have
not given up on you and your goals! We
want to make sure you hadn't either.

Classes start at the end of this month and
Post U requires just two applications to
have your file reviewed.

To get started with our upcoming June
25th session please respond to this email
with the *best time and number today* for
us to connect or if you prefer you can call
me directly at 203-591-5144.

I look forward to helping you achieve your
academic and career goals!

MD000280

**All the best!**



Sincerely,
Kimberly Williams, Admissions Advisor

**P. 203.591.5144**

Follow us on social media:



Post University Accelerated Degree Program | Unleash Potential, Create Possibility, Change Lives | Since 1890



**Kimberly Williams**
Admissions Counselor ADP - Team Lead
KWilliams@Post.edu
**w.** 203.591.5144
**f.** 203.841.1161



800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

MD000281

This communication, including attachments, may contain information that is privileged or confidential to Post University. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you believe that you are not the intended recipient and/or have received this communication in error please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.



**image002.png**
59K

---

**Melanie Davis** <mdspecialist21@gmail.com>                    Wed, Jun 6, 2018 at 12:17 PM
To: "Williams, Kimberly" <KWilliams@post.edu>

Please stop emailing me! I'm not interested anymore!  I have told everyone who has contacted me by phone and email!!
[Quoted text hidden]

MD000282

# GZJ KDKV'S '''



**9:24 AM**

.ıll Sprint

10%

(203) 802-5819

Text Message
Yesterday 4:56 PM

(1/5)Hello Melanie, this is Connie with Post University's admissions

(2/5)office. You were working with our admissions team last year at this time to get registered for our Fall session. I know life got in the way and you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to

Text Message

MD000001



(203) 802-5819

you were

(3/5)unable to begin with us last year. Are you still interested in earning a Bachelor's degree in Human Services?

(4/5)We'd love to help you get back on track towards your educational

(5/5)and career goals. Reply back to this text message to discuss enrollment options for Fall 2018.

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Text Message

MD000002



(203) 802-5819

I have asked your organization over 8 different times to take me off your contact list! Please do not contact me regarding enrollment to Post University! Any further communication from Post will allow me to file a complaint for harassment.

Yesterday 6:01 PM

I would like to have a copy of Post University's Do-not-call-list please! You may send it to my address on your file.

Thank you!

Melanie Davis

We do not disclose student information. Your file has been closed.

Text Message

MD000003

(203) 802-5819

I'm am not asking for any student information. I am asking for Post University's Do not call Manuel. My file being closed with your organization did not stop you from contacting me after several requests!

You will not be contacted by us again

Connie, I have heard that before a few times. But here we are. I know you are just following directions. So, I am requesting the Post University's Do-Not-Call manual. I am going to make sure I don't receive any other communication from this school.

Thank you!

Text Message

MD000004

# EXHIBIT S

 Gmail

Melanie Davis <mdspecialist21@gmail.com>

---

**Post University - Financial Aid Grants & Loans**

**McInerney, Tashina** <tmcinerney@post.edu>                                    Fri, Sep 7, 2018 at 11:34 AM
To: "mdspecialist21@gmail.com" <mdspecialist21@gmail.com>





Hello!

I know that the main concern about attending school is the cost of tuition. Submit your FAFSA and see what your award will be prior to enrolling in classes. It takes 48-72 hours for your FAFSA to process and come in to our financial aid department.



Once submitted a confirmation email is auto generated to the email address you used for your FAFSA. Please, forward the confirmation email to me at; Vmeehan@post.edu

Fill out the **2018/2019** FAFSA application at www.fafsa.ed.gov



Be sure that you are adding our school code: **001401.**  This application should be filled out carefully and accurately.

Let me know if you have any questions or if there is anything that I can assist you with.

I am looking forward to being able to help you reach your long term educational goals!

Best Regards,

*Tashina McInerney*

**Admissions Counselor**

MD000509





Follow us on social media:

Tashina McInerney
ADP Admissions Counselor
tmcinerney@Post.edu
**w.** 203.596.4641
**f.** 203.841.1161



 

800 Country Club Rd., P.O. Box 2540, Waterbury, CT 06723-2540 • 800.345.2562 • Visit us at post.edu

📄 **image005.emz**
2K

MD000510

# SOF ¶ 80
# Supporting Exhibits

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    ------------------------------)

4    MELANIE DAVIS,                )    CASE NO.:

5              Plaintiff,          )    18-81004-CIV

6         vs.                      )

7    POST UNIVERSITY, INC.,        )

8              Defendant.          )

9    ------------------------------)

10

11

12         DEPOSITION OF SEAN COOLEY, INDIVIDUALLY

13   AND AS DESIGNATED REPRESENTATIVE OF POST UNIVERSITY

14              DATE:  APRIL 11, 2019

15                   HELD AT:

16              WYNDHAM SOUTHBURY

17              1284 Strongtown Road

18              Southbury, Connecticut

19

20

21

22

23

24   Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

25

1   That's all we can do right now.  I have the Do Not

2   Call list but have no way to scrub those names

3   against it.  Correct?

4        A.    Correct.

5        Q.    Do you have any reason to believe that

6   this is not accurate with respect to the Do Not Call

7   list and Post University's use of it in July 2016?

8        A.    It seems accurate.  I have no reason to

9   believe otherwise.

10        Q.    Did admissions department employees have

11   company emails?

12        A.    Yes.

13        Q.    And were those email addresses meant to be

14   monitored by the employee that has that email

15   address?

16        A.    Monitored as in --

17        Q.    Are they meant to check their inbox?

18        A.    Yes.

19        Q.    And do they communicate through email?

20        A.    Yes.

21        Q.    Were they permitted to delete emails?

22        A.    For space reasons, yes.

23        Q.    Were there any restrictions on their

24   ability to delete emails?

25        A.    Well, I know that when Mrs. Davis filed

Page 272

1   her case, there was a litigation hold put on

2   anything regarding --

3       Q.    So the case was filed on July 30th, 2018,

4   so let's talk about July 30th, 2018 up until before

5   the case was filed -- just before the case was

6   filed.

7       A.    Right.  We tried to make the best practice

8   archiving records rather than deleting them, but not

9   everybody was brought up to speed on that, and there

10  was -- at that point in time, our Outlook had very

11  limited space available.

12      Q.    So it was possible that during that time

13  then that emails would need to be deleted for space

14  reasons; correct?

15      A.    That's a possibility.

16      Q.    And while you said it was best practices

17  to archive instead of delete, was there any training

18  on doing so?

19      A.    I can't say if there was training done on

20  scale.

21      Q.    When you say "on scale," what do you mean?

22      A.    As part of a training session or process,

23  I can't speak to that.

24      Q.    Were there any repercussions for deleting

25  an email prior to the litigation hold?

Page 273

1      A.    I know that our space had greatly
2  increased even before that hold.
3      Q.    That's what I get for a vague question.
4  Let me try again.
5           Did anyone get punished for deleting an
6  email?
7      A.    Not to my knowledge.
8      Q.    Were there any policies or procedures in
9  place that would call for punishment for deleting
10  certain emails?
11      A.    Not to my knowledge.
12      Q.    And were deleted emails or the action of
13  deleting emails audited or reviewed in any way?
14      A.    I can't say.
15      Q.    Who is Keypath or what is Keypath?
16      A.    Keypath is our marketing agency.
17      Q.    I thought that was Thruline.
18      A.    They were formerly Keypath.
19      Q.    So that's the same entity?
20      A.    Correct.
21      Q.    And what are Keypath's responsibilities,
22  broad strokes, with respect to Post?
23      A.    They work hand in hand with our CMO and
24  they help with brand awareness and obtain our
25  inquiries, our leads for us.

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3     _____

      MELANIE DAVIS,                )Civil Case

4                                   )No.: 18-cv-81004-RLR

                   Plaintiffs,)

5                                   )

      v.                            )

6                                   )

      POST UNIVERSITY, INC.,        )

7                                   )

                   Defendants.)

8                                   )

      _____)

9

10

11          DEPOSITION OF VICTORIA L. MEEHAN

12

13

14

15    DATE:          February 8, 2019

16    TIME:          11:35 a.m.

17    HELD AT:       Wyndham Southbury

                     Southbury, Connecticut

18

19

         By:       Sarah J. Miner, RPR, LSR #238

20

21

22

23

24

25

Page 111

1          A. We use Outlook.

2          Q. Do you check your email?

3          A. Yes.

4          Q. Did you send emails?

5          A. Yes.

6          Q. Do you ever use templates in emails?

7          A. Yes.

8          Q. Mail blasts, I guess we call them?

9          A. Yes.

10         Q. What do you call them?

11         A. Mail merges.

12         Q. Mail merges.  Do you use mail merges?

13         A. Yes.

14         Q. Were you ever instructed to keep all of your

15    emails?

16         A. They are archived.  Was I instructed to keep

17    all of my emails?  I don't recall.

18         Q. Were you instructed not to delete your

19    emails?  Setting aside anything counsel may have told

20    you after this lawsuit was filed.

21         A. I don't recall.

22         Q. Did you ever delete emails?

23         A. Yes.

24         Q. In what context would you delete emails?

25         A. Spam, clear that out.

Page 112

1          Q. Of course.

2          A. If -- I can't think of another.   So when

3     sending mail merges, if we are sending a large amount

4     at once, this was a long time ago and our inbox would

5     be full, not just sending mail merges, if our inbox

6     was full, we would have to delete emails to make

7     space.   We have since migrated to larger -- I don't

8     the technical term -- amount of space for emails, so I

9     haven't had to do that for some time.

10          Q. When you say some time, how long would you

11     say?

12          A. Approximately -- I do not know.

13          Q. Whatever archive you mentioned for the email,

14     does that archive delete emails?

15          A. I do not know.

16          Q. Did you ever check your emails while you were

17     at home?

18          A. Yes.

19          Q. Did you have access to the CRM system at

20     home?

21          A. Yes.

22          Q. Does your supervisor have access to the CRM

23     system at home?

24          A. Yes.

25          Q. I want to go through some emails.

```
                                              Page 113

 1          (Exhibit No. 7 marked for identification.)
 2     BY MR. GLAPION:
 3          Q. Do you see this?  Do you recognize this email
 4     at all?
 5          A. Yes.
 6          Q. Is this a mail merge email that you would
 7     have sent out?
 8          A. I don't know.
 9          Q. Do you see the top left email address
10     VMeehan@Post.edu?  Is that your email address?
11          A. It is.
12          Q. Do you recall sending the email to the email
13     address on the "to" field?
14          A. I send a lot of emails to students, so not
15     specifically, no.
16          Q. Why would this email no longer be in your
17     sent folder?
18          A. If I had to delete it to make space.
19          Q. So it is possible you deleted this email?
20          A. It is possible.
21          Q. Do you recall if you typed this particular
22     email up or would you have used the template to send
23     this email?
24          A. I do not recall.
25          Q. Have you used templates that are similar to
```

Page 115

```
 1    merges.
 2         Q. Do you recall the body of this email?
 3         A. Like I said, I send a lot of emails, so no.
 4         Q. Would this have been a mail merge or manually
 5    typed?
 6         A. This was likely a mail merge.
 7         Q. What makes you think that?
 8         A. Just the formatting of it.
 9         Q. And on the last page of the document, there
10    appears to be a response sent to you.
11              Do you see that?
12         A. Yes.
13         Q. It says, "I am no longer interested.  Please
14    take me off your email list."
15              Do you see that?
16         A. Yes.
17         Q. Do you recall receiving that email?
18         A. I do not.
19         Q. Why would that email no longer be in your
20    inbox?
21         A. I do not know.
22         Q. Is it possible you deleted that email?
23         A. It is.
24         Q. And is it the same for this email being in
25    your sent box, is it possible you deleted it?
```

1        A. Possible.

2            (Exhibit No. 9 marked for identification.)

3    BY MR. GLAPION:

4        Q. Have you had a chance to look at this?

5        A. Yes.

6        Q. Do you recognize this email?

7        A. I don't remember sending it, but I recognize

8    it as an email from Post.

9        Q. From your Post account?

10       A. Yes.

11       Q. Have you seen emails that are similar in

12   content to this one?

13       A. Yes.

14       Q. Regarding the FAFSA?

15       A. Yes.

16       Q. Is that usually a mail merge or manual email?

17       A. That would be a mail merge.

18       Q. Do you know if this one is a mail merge?

19       A. I don't know for certain.

20       Q. What is your best guess?

21       A. That it likely was.

22       Q. And you will see that this was sent on

23   October 11th, 2017 at 12:24.  Assuming you were

24   working at work that day in the office, would you have

25   been working at 12:24?

1        A. Yes.

2        Q. And you would have been -- presumably, if you

3    were working that day, you would have been working in

4    the office at that time?

5        A. Assuming it wasn't a snow day or something

6    along those lines, then yes.

7        Q. The next page marked MD397, do you see the

8    response from Melanie Davis to your email address?

9        A. Yes.

10       Q. It says, "Please stop emailing, texting, SMS

11   calls and voicemail."

12           Do you see that?

13       A. Yes.

14       Q. How do you interpret that request?

15       A. Stop calling, emailing and texting.

16       Q. The next line, "This is the third or fourth

17   time I'm asking to be removed from all your lists."

18           Do you see that?

19       A. Yes.

20       Q. Why would this email not still be in your

21   inbox?

22       A. If I had deleted it.  I don't remember doing

23   so.

24       Q. Is it possible you deleted it?

25       A. It is possible.

Page 119

```
 1    form or -- is the content of this email in line with
 2    an email you would have sent?
 3         A. Yes.
 4         Q. Do you still send emails like this?
 5         A. Yes.
 6            (Exhibit No. 11 marked for identification.)
 7    BY MR. GLAPION:
 8         Q. Do you recognize this email discussing being
 9    snowed in?
10         A. Yes.
11         Q. You will note that it begins, "Hi, Melanie."
12            Do you see that?
13         A. Yes.
14         Q. Then below "snowed in," it says, "Megan, our
15    FAFSA specialist is available."
16            Do you know if this is a manually typed
17    email?
18         A. I don't recall.
19         Q. If we go to the next page, you will see a
20    response.  It says, "Please stop contacting me.  Not
21    interested."
22            Do you see that?
23         A. Yes.
24         Q. How would you interpret that request?
25         A. Do not call, do not reach out.
```

Page 120

1        Q. Why would this email no longer be in your

2   inbox?

3        A. Same reason for the others.

4        Q. It's possible you deleted it?

5        A. It is possible.

6        Q. It is possible you deleted the email you

7   sent?

8        A. Yes.

9        Q. Why would this request not be documented in

10  the CRM system?

11       A. Same reason, human error.

12       Q. So just to be clear, none of these emails

13  were produced in this case to me.  They all came from

14  my client.  So as a result, they are not in your inbox

15  or sent folder.  Just by way of background.

16       A. Could they be in the archive?

17       Q. I will have to talk to Adam about that.  But

18  your testimony, though, is with each of these emails

19  you went through, it is possible you deleted them?

20       A. It is possible.

21       Q. And that with respect to the two requests

22  that you agreed you would interpret as a "do not call"

23  request, that if it is not in the system, it is due to

24  human error?

25       A. Yes.