UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81004-CIV-Altman/Brannon

**MELANIE DAVIS**, on behalf of herself and all others similarly situated**,**

          **Plaintiff,**
   v.

**POST UNIVERSITY, INC.,**

          **Defendant.**

**DEFENDANT POST UNIVERSITY, INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

In its Motion to Dismiss, the University established that Plaintiff cannot pursue her claims under the Telephone Consumer Protection Act ("TCPA") for two independent reasons. First, Plaintiff's Complaint is fatally overbroad because she claims relief for calls that she actively solicited before allegedly making a do-not-call ("DNC") request. Plaintiff cannot ground these distinct claims on the alleged failure of the University to have a written internal DNC policy because she did not, and cannot, allege a cognizable injury traceable to such an alleged procedural violation. Second, Plaintiff lacks a private right of action to bring her "telemarketing" claims under Subsection (c) of the TCPA because that authorizes suit only for a subset of telemarketing calls: telephone solicitations. That is, *unsolicited* telemarketing calls received in the absence of an established business relationship or express authorization. Indeed, the FCC has consistently held that Subsection (c)'s private right of action only applies to its guidelines on telephone solicitations found in Subsection (c) of its rules,[1] and thus Plaintiff's "*do*-call me" claims must be dismissed under the Hobbs Act alone.

Plaintiff, for her part, sets the theme of her Opposition[2] right from the start with references to abracadabra, monsters under the bed, time travel, and even getting eaten. Opp. at 1. In other words, what follows is largely a work of fiction. Indeed, despite the FCC's consistent and binding interpretation on the limited scope of the private right of action at issue here, Plaintiff argues that the "FCC was clear" that the procedural rules applicable to all telemarketing calls it adopted ***in 2003*** are enforceable by private plaintiffs because of the ***table of contents*** in

---

[1] *See, e.g.*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC Rulemaking Proceeding 92-90, 7 F.C.C. Rcd. 8752, ¶ 55 (1992) ("*1992 TCPA Order*"); *see also In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 18 F.C.C. Rcd. 14014, ¶ 204 (2003) ("*2003 TCPA Order*"); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, 20 F.C.C. Rcd. 3788, ¶ 3 n.7 (2005) ("2005 TCPA Order").
[2] Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss (ECF No. 71).

1

the *1992 TCPA Order*.  Opp. at 7–8.  That is, the order in which the FCC adopted the rules applicable to *telephone solicitations*.  This is not a serious argument.

Ultimately, Plaintiff's fantasy is based largely on the false premise that the FCC's guidelines applicable to telephone solicitations in § 64.1200(c) now only apply to calls placed to individuals on the National Do-Not-Call Registry.  Opp. at 10.  But this rule expressly includes company-specific do-not-call requirements, specifically the duty to "maintain[] and record[] a list of telephone numbers that the seller may not contact."  47 C.F.R. § 64.1200(c)(2)(i)(C).  And this duty is provided as an affirmative defense, *exactly* as Congress mandated. 47 U.S.C. § 227(c)(5).  Yet to enforce this rule, you must first have "telephone solicitations to which [the telephone subscriber] object[ed]," also *exactly* as Congress mandated.  *Id.* at 227(c)(1).  As Plaintiff does not dispute, however, a telephone solicitation legally *cannot be* placing a telemarketing call to someone who has invited the call or with whom the caller has an established business relationship.  Such calls are not actionable under the TCPA.

At bottom, in order to accept Plaintiff's legal theory, the Court would first need to find that Plaintiff suffered a concrete injury from receiving *solicited* communications she expressly invited.  The Court would then have to (1) disregard the plain language of the statute, and (2) ignore the FCC's *binding* interpretation of the scope of Subsection (c)'s private right of action, in violation of the Hobbs Act.  Indeed, the Court would also have to find that the FCC not only silently reversed itself in *the same order*, but that it dramatically expanded the private right of action without any notice or comment, in violation of hornbook administrative law.  In short, the Court would have to embrace a fantasy *and* be the first court in the country to do so.

I. **PLAINTIFF FAILS TO ESTABLISH CONCRETE INJURY TRACEABLE TO EACH ALLEGED VIOLATION OF THE TCPA**

The University established that Plaintiff's claims that are based simply on an alleged

2

failure to institute internal DNC procedures must fail because she has not alleged that *this alleged procedural violation* caused her any cognizable harm for calls received *before* allegedly making a valid do-not-call request. Mem. at 9–16.³  Fatal to her claims, Plaintiff refused to address the binding Supreme Court precedent holding that Plaintiff must demonstrate standing for *each* claim and *each* theory of relief sought.  *Id.* at 10–11.  That is, standing to challenge one form of conduct — receiving calls *after* allegedly making a do-not-call request — does not confer standing to challenge a different form of conduct — receiving *solicited* calls *before* making a do-not-call request.  *Id.*  There is no supplemental standing.

Ironically, instead of addressing this binding Supreme Court authority, Plaintiff faults the University for not addressing the Eleventh Circuit's inapposite decision in *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019).  This case — in which the defendant itself did not even challenge whether the plaintiff had standing, *id.* at 1183 — concerned the defendant's failure to truncate consumers' credit card numbers printed on receipts.  *Id.* at 1181.  The Eleventh Circuit found that the plaintiff "suffered a heightened risk of identity theft when Godiva printed more digits of his credit card number than the law allows." *Id.* at 1184.  Importantly, however, the court held that this injury occurred at "the moment Godiva printed too many digits of his credit card number." *Id.* at 1185.  That is, the injury-in-fact was directly traceable to the exact conduct the statute was meant to prevent in this "one-shot" case.

Here by contrast, TCPA liability is analyzed on a per-call basis.  *See*, *e.g.*, *2015 TCPA Order*,⁴ ¶ 30 (FCC holds that one must "look to the totality of the facts and circumstances surrounding the placing of a particular call" to assess liability).  And even the cases cited by

---

³ Defendant Post University's Memorandum in Support of Motion to Dismiss (ECF No. 70-1).
⁴ *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ("*2015 TCPA Order*").

Plaintiff make clear that the harm the TCPA is designed to prevent is limited to "the ***unwanted intrusion*** and nuisance of ***unsolicited telemarketing***." Opp. at 17–18.[5] Indeed, this is spelled out in the statute itself: Congress was concerned with telephone subscribers "receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), not calls actively solicited.[6]

*Muransky* therefore has no relevance to this case. Instead, the Eleventh Circuit's decision in *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001–03 (11th Cir. 2016) is directly on point. *See* Mem. at 10 n.8. In *Nicklaw*, the Court of Appeals refused to find that a procedural violation of a statute constituted a concrete injury because the statute in question was not designed to prevent the "harm" alleged by the plaintiff: "But these causes of action provided a remedy to prevent the risk of harm that occurred while title to property was wrongfully clouded, not a remedy *after* the cloud was lifted." *Id.* at 1003.

The same reasoning applies here to any calls received *before* making a valid do-not-call request. No court has ever found that a plaintiff has standing under the TCPA to pursue claims for calls the person actively solicited. Instead, the "statute **requires** that an individual receive a call on his own residential number, **a call that he previously took steps to avoid**." *Krakauer, LLC*, 925 F.3d at 653 (emphasis added). In other words, all of the calls plaintiff received *before* allegedly making a do-not-call request would have occurred whether the University complied

---

[5] Citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (emphasis added); *see also Golan v. FreeEats.com, Inc.*, No. 17-3156, 2019 WL 3118582, at *4 (8th Cir. July 16, 2019) ("The harm here was the receipt of two telemarketing messages **without prior consent**.") (emphasis added).

[6] For the same reasons, Plaintiff's attempt to distinguish the Fourth Circuit's *Krakauer* decision misses the mark. Opp. at 19. The fact that it involves the National Do-Not-Call Registry is a distinction without a difference because placing your telephone number on the Registry is simply an alternative way of objecting to telephone solicitations. That is, one can object either on a company-by-company basis or through the Registry. Either way, a "claim under § 227(c)(5) accrues only once" an objection is made *and* the defendant "actually places multiple calls." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019).

with the procedural rules at issue or not.  There is no "causal connection between the injury and the conduct complained of," which the Supreme Court has ruled must be present for a plaintiff to have standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Thus, the only way to interpret the private right of action in Subsection (c) of the TCPA consistent with Article III standing requirements is that Plaintiff only has standing to pursue claims for telephone solicitations received *after* making a do-not-call request.  Under binding Supreme Court precedent left unaddressed by Plaintiff, she does not have roving Article III standing.  That is, standing to challenge one form of conduct — receiving calls after allegedly making a do-not-call request — does not confer standing to challenge a different form of conduct that is not traceable to an alleged procedural violation — receiving *solicited* calls before making a do-not-call request.  Plaintiff's claims for calls predating her do-not-call request therefore should be dismissed because she lacks standing to pursue such claims.

## II.     PLAINTIFF LACKS A PRIVATE RIGHT OF ACTION UNDER THE TCPA

The University established in its Motion that Plaintiff also lacks standing because Section 64.1200(d) is a procedural rule that was not issued pursuant to Section (c)(2) of the TCPA, and thus there is no private right to enforce it.  Further, the FCC has consistently interpreted the private right of action in Subsection (c) to only apply to telephone solicitations, and Plaintiff cannot collaterally attack the FCC's interpretation of the TCPA here.  Mem. at 16–20.

Plaintiff does not dispute that (1) the procedural rules the FCC adopted for telemarketing calls writ large were issued in a separate rulemaking proceeding than the one initiated under Subsection (c)(1); (2) were issued over a decade after the deadline to proscribe regulations as mandated in Subsection (c)(2); and (3) are outside the scope of Subsection (c)(5)—as the FCC itself has repeatedly recognized.  Remarkably, Plaintiff actually argues that "[w]hen a statute is

clear, 'the role of the judicial branch is to apply statutory language, not to rewrite it.'" Opp. at 13–14 (citing *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000). The University agrees — Subsection (d) cannot be "the regulations prescribed under this subsection"—which are the only ones that telephone subscribers have a private right of action to enforce. 47 U.S.C. § 227(c)(5).

Plaintiff's argument regarding Congress's later directive for the FCC to complete the separate rulemaking proceeding it began in 2002 regarding the National Do-Not-Call Registry is an exercise in missing the point. Opp. at 8 (citing 15 U.S.C. § 6153). Congress did not amend in any way the plain language of the TCPA through this separate statute, let alone authorize the Commission to turn the private right of action on its head, as Plaintiff's interpretation would demand. But the University is not questioning the FCC's authority to issue regulations that *it* has the ability to enforce regarding telemarketing generally.[7] The only question before the Court is whether there is a *private right of action* to enforce Subsection (d). And under the plain language of the statute and the *FCC's own binding interpretation* of it, the answer is clearly no.

Indeed, Plaintiff bizarrely argues that the University is "emphasizing *dicta* that § 227(c) is meant to protect against unwanted telemarketing calls (i.e. 'telephone solicitations')." Opp. at 14. To characterize the plain language and central purpose of the *statute itself* as *dicta* is absurd. To characterize the FCC's consistent interpretation that the private right of action is limited to its guidelines on telephone solicitations is beyond absurd— it is futile under the Hobbs Act. Mem. at 18–20.[8] As the University detailed previously, the FCC has held in **every order** addressing

---

[7] Notably, in its *2002 NPRM*, the FCC also relied on its statutory authority under Sections 151-154 and 303(r) of the Communications Act to issue the new rules in 2003. *In Re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, ¶ 85 (2002) ("*2002 NPRM*"). The FCC also has the statutory authority to enforce its regulations directly against entities in violation of its rules. *See*, *e.g.*, 47 U.S.C. §§ 501-504.

[8] To reiterate, the guidelines on telephone solicitations are only found at § 64.1200(c), and as the University established above, this Rule expressly covers company-specific do-not-call

6

the scope of Subsection (c)'s private right of action that it is limited to enforcing violations of "the guidelines for making telephone solicitations. § 227(c)(5)." *See, e.g.*, *1992 TCPA Order*, ¶ 55. The FCC reiterated this in its *2002 NPRM*, again noting that the private right of action is limited to claims for telephone calls received "in violation of the guidelines for making telephone solicitations." *2002 NPRM*, ¶ 47. There was absolutely no notice or comment on whether the Commission should drastically expand Subsection (c)'s private right of action to cover no-injury procedural violations related to solicited telephone calls, or even whether the Commission had the authority to do so, as would be required under the APA. *See* Mem. 19 n.14.[9]

In the final analysis, the TCPA is a national statute that balances the privacy rights of telephone subscribers against the interests of businesses to contact individuals with whom they have an established business relationship. It requires a "uniform, nationwide interpretation . . . by the centralized expert agency created by Congress to enforce the TCPA." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014). The FCC has never revisited or altered its straightforward and consistent interpretation of the scope of subsection (c)'s private right of action — that it only applies to violations of its regulations applicable to *unsolicited* telephone solicitations, exclusively found at § 64.1200(c). Plaintiff is barred from asking the Court to upend the TCPA's careful balance and the FCC's interpretation of it here.

### III. PLAINTIFF'S RELIANCE ON UNSOLICITED TELEMARKETING CASES PROVES THE UNIVERSITY'S POINT

---

requests in addition to the National Do-Not-Call Registry. In other words, 64.1200(c) completely covers the "privacy rights to avoid receiving telephone solicitations to which [telephone subscribers] object." 47 U.S.C. § 227(c)(1).

[9]   The only issue the FCC sought comment on related to the private right of action was whether the Commission should clarify "whether a consumer may file suit after receiving *one* call from a telemarketer who, for example, fails to properly identify himself or makes a call outside the time of day restrictions?" *Id.* It was in direct response to this specific and very limited question that the FCC demurred to Congress in its *2003 TCPA Order*. *See 2003 TCPA Order*, ¶ 206. Context matters.

Plaintiff attempts to use inapposite case law to argue that courts have either found plaintiffs have standing under the TCPA or that there is a private right of action for § 64.1200(d) violations. But all of the cases are easily distinguishable because they exclusively involve unsolicited telephone solicitations, which is precisely the University's position.

As an initial matter, however, Plaintiff's assertion that courts are unanimous and "no case supports Defendant's position" is simply false. Opp. at 10. For example, in a decision affirmed by the Eleventh Circuit, the Middle District of Florida held that the "anti-solicitation regulations" found in Subsection (d) "do not apply to calls made with the 'express invitation or permission' of the called party under 47 U.S.C. § 227(a)(4)." *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *9 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302 (11th Cir. 2015). Likewise, the court in *Hamilton v. Spurling*, No. 3:11CV00102, 2013 WL 1164336 (S.D. Ohio Mar. 20, 2013) directly rejected Plaintiff's theory, holding that calls placed before terminating an EBR were not actionable under Subsection (c). *Id.* at *10–11. This is precisely because "it is not *until* a person who has an EBR . . . requests to be placed on a DNC list that a company must comply with the dictates of Section 64.1200." *Id.* at *10 n.12 (emphasis added). Similarly, in *Worsham v. TravelOptions, Inc.*, No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017), the court made clear that "the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, . . . no private right of action exists" to enforce these rules. 2016 WL 4592373, at *4, *7.[10]

---

[10]   *See also Giles v. James B. Nutter & Co.*, No. 1:13-CV-1800-WBH, 2014 WL 12461035, at *1–2 (N.D. Ga. Aug. 26, 2014) (holding that it was legally impossible to violate Subsection (c) when EBR with call recipient existed); *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (holding that Subsection (d) "relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls," and unless an

8

In contrast, the fountainhead of Plaintiff's "courts are unanimous" argument is the Sixth Circuit's decision in *Charvat v. GVN Mich., Inc.*, 561 F.3d 623 (6th Cir. 2009). There, the court discussed in passing, without analysis, violations of Subsection (d) on its way to affirming that the plaintiff's complaint *should be dismissed* because he failed to meet the amount-in-controversy requirement for diversity jurisdiction. *Id.* at 631–32 (holding that Subsection (c) "unambiguously allows for statutory damages on only a per-call basis"). Likewise, in *Charvat II*, *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011), the court addressed whether the same plaintiff could recover for the same **unsolicited** telephone call under both Subsection (b) and Subsection (c) of the statute. Other cases Plaintiff cites similarly deal with *unsolicited* telephone solicitations and/or never analyze the scope of Subsection (c)'s private right of action.[11] In other words, none of these cases support Plaintiff's theory that Subsection (c) provides a private right of action for **solicited** telephone calls. As Plaintiff herself has argued, these cases have "no relevance" when the pertinent issue before this Court "was neither briefed nor presented to the court." Dkt. No. 68-1 at 24.

Plaintiff's reliance on certain cases, however, goes beyond being merely hypocritical. For example, Plaintiff quotes *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017) — another case involving *unsolicited* calls — for the proposition that calls received in violation of the Subsection (d) regulations provide a private right of action. Opp. at 9. But Plaintiff neglects

---

individual made an "affirmative request to Defendant," the provision is not violated).
[11]   *See Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1191 (M.D. Tenn. 2017) (telephone solicitations with no established business relationship); *Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531368, at *1 (S.D. Fla. Jan. 17, 2014) (same, involving autodialers); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014) (unsolicited telephone solicitations with no established business relationship involving an autodialer); Order at 3, *Baxter v. VSC LLC*, 8:17CV01718 (M.D. Fla. Mar. 13, 2018), ECF No. 34 (same); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) (same).

9

Case 9:18-cv-81004-RKA   Document 74   Entered on FLSD Docket 07/22/2019   Page 11 of 13

to inform the Court that the *Cordoba* court immediately qualifies this statement, ruling that such calls would "**not [be] actionable if a seller has an 'established business relationship' ('EBR')** with a customer." *Id.* at 587 (emphasis added); *see also id.* at 596 (finding plaintiff had standing *because* the calls were unsolicited). Plaintiff also cites to *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015), in which the court similarly ruled that [c]alls are also not actionable if a seller has an 'established business relationship' ('EBR') with a person." *Id.* at 387–88.[12]

Far from helping Plaintiff, the case law she cites establishes that, to have a private right of action under the TCPA's Subsection (c), the plaintiff cannot have solicited the calls and cannot have had an established business relationship with the defendant. In other words, Plaintiff only has a private right of action for *telephone solicitations* made in violation of the TCPA. Because Plaintiff's claims are predicated on telemarketing generally, rather than the much more limited subset of telephone solicitations, Plaintiff's Complaint is fatally overbroad. Accordingly, she lacks a private right of action to bring her claims as pled, and her Complaint must be dismissed.

## CONCLUSION

When it appeared likely that the University's initial motion to dismiss would be granted, Plaintiff voluntarily withdrew her claims for the solicited calls she allegedly received. For good reason. Plaintiff's belated attempt to revive these claims at this late juncture should be denied once and for all — she does not have Article III or statutory standing to pursue these claims.

---

[12] *See also Allard v. SCI Direct, Inc.*, No. 16-CV-01033, 2017 WL 2957883, at *6 (M.D. Tenn. July 10, 2017) ("**Notably**, Allard **never gave prior express written consent** to receive prerecorded telemarketing calls from SCI. Moreover, the telemarketing robocalls happened *after* Allard had **repeatedly requested she not be contacted by SCI**.) (emphasis added). Plaintiff is therefore reading way too much into the *one* case she claims supports her position because even the court there thought it was critical that the calls at issue occurred *after* repeated DNC requests.

Dated: July 22, 2019                    Respectfully submitted,

By: */s/ Mary Joanne Dowd*
Mary Joanne Dowd, # 368970
Adam Bowser, (admitted pro hac vice)
Brandi G. Howard, (admitted pro hac vice)
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006-5344
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)
mary.dowd@arentfox.com
adam.bowser@arentfox.com
brandi.howard@arentfox.com

*Attorneys for Post University, Inc.*

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 22, 2019, the foregoing was filed electronically with the Clerk of Court to be served by Notice of Electronic Filing from the Court's electronic filing system upon the following:

Bradford R. Sohn
THE BRAD SOHN LAW FIRM PLLC
2600 South Douglas Rd., Suite 1007
Coral Gables, Florida 33134
Tel: (786) 708-9750
Fax: (305) 397-0650
brad@sohn.com

Jeremy M. Glapion
THE GLAPION LAW FIRM, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: (732) 455-9737
Fax: (732) 709-5150
jmg@glapionlaw.com
*Attorneys for Plaintiff*

                                      /s/ *Mary Joanne Dowd*
                                        Mary Joanne Dowd