UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81004-CIV-Altman/Brannon

MELANIE DAVIS, on behalf of herself and all others similarly situated,

   Plaintiff,
 v.

POST UNIVERSITY, INC.,

   Defendant.

**DEFENDANT POST UNIVERSITY, INC.'S**
**OPPOSITION TO MOTION TO STAY CASE**

## INTRODUCTION

Plaintiff's request for a blanket stay of this case pending the resolution of the appeal of the inapposite *Cordoba*[1] decision should be summarily denied. As the below timeline demonstrates, Plaintiff's Motion is a transparent attempt to delay the Court's application of the Court of Appeals' *Salcedo*[2] decision to this case:

**07/26/2017** – DirecTV petitions for review under Fed. R. Civ. P. 23(f) of the district court's decision certifying two classes in a case arising from DirecTV's agent's "unsolicited outbound telemarketing."[3]

**09/28/2018** – Plaintiff extensively relies on *Cordoba* in Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Class Action Complaint at 11, 17–18 (Dkt. No. 19).

**10/05/2018** – The University details that "the plaintiff in *Cordoba* was subjected to unsolicited calls from DIRECTV's outbound call center. . . . The *Cordoba* Court's conclusion that DIRECTV **invaded the plaintiff's privacy** makes sense in light of the fact that plaintiff had *not invited* those calls. Here, however, Plaintiff's *do*-call-me requests simply cannot be traced to the FCC's do-*not*-call rules." Dkt. No. 22 at 4 (emphasis added). The University also expressly highlights that *Cordoba* is "**currently on appeal before the Eleventh Circuit**." *Id.* (emphasis added).

**July to August 2019** – The Parties once again extensively brief the *Cordoba* decision in multiple dispositive motions. Indeed, Plaintiff relies on *Cordoba* in **all of her briefs**. *See, e.g.*, Dkt. No. 68-1 at 5, 12, 14; Dkt. No. 71 at 9, 17; Dkt. No. 73-2 at 3, 17.

---

[1] *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017).
[2] *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019).
[3] Defendant's Rule 23(f) Petition for Permission to Appeal from an Order on Class Certification at 1, *Cordoba v. DirecTV, LLC*, No. 17-90020 (11th Cir. July 26, 2017).

**08/20/2019** – Briefing on all matters is complete.

**09/26/2019** - The University notifies the Court of the Eleventh Circuit's decision in *Salcedo*. In this controlling decision, the Court of Appeals ruled that even the receipt of an *unsolicited* telemarketing text message does not create "a concrete harm that meets the injury-in-fact requirement of Article III." 936 F.3d at 1172. The Court of Appeals also expressly found that an unsolicited text message to a cell phone is not an actionable invasion of privacy because the receipt of such an unsolicited message is not "objectively serious and universally condemnable." *Id.* at 1171 (quoting Restatement (Second) of Torts § 652B "cmt. d (no liability for one, two, or three phone calls; liability 'only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff.")).

**10/16/2019** – Plaintiff "reluctantly" requests a stay pending the appeal of *Cordoba*, purportedly to avoid the inefficiency of a party "seek[ing] to use that opinion to get a second bite at the apple." Mot. at 2-3.

At this stage of the litigation, the University respectfully submits that briefing *Cordoba* again would hardly be taking a second bite at the apple. It would be tantamount to swallowing the core. It strains credulity that Plaintiff, after wedding her case to the *Cordoba* decision throughout this entire case, would just now stumble upon the issues on appeal and come to the (mistaken) realization that waiting for the appeal's resolution would promote efficiency—more than a *year* after the University highlighted the appeal of *Cordoba* and *months* after the Parties completed a marathon briefing schedule. Plaintiff's newly expressed concern for efficiency does not pass the smell test.

At bottom, Plaintiff's Motion should be denied for the following three independent reasons.

**First**, resolution of the *Cordoba* appeal will not alter the fact that Plaintiff did not and cannot establish that she individually has Article III standing for each call or text for which she is pursuing recovery under the TCPA.

**Second**, the Court is duty bound to apply the Court of Appeals' *Salcedo* decision to the facts of this case.  If the Court of Appeals found that even unsolicited telemarketing text messages do not cause an injury-in-fact, clearly the University's varied communications with prospective students who actively requested that the University contact them cannot be actionable.

**Third**, for similar reasons, no matter how the *Cordoba* decision is resolved, it will not be helpful to Plaintiff.  No one—Plaintiff included—can have their privacy invaded by a call which that person expressly requested.  Indeed, *Cordoba* is expressly limited to *unsolicited* telemarketing calls to individuals who did not have an established business relationship with the defendant—a finding central to the district court's decision.  Thus, resolution of the appeal will in no way validate Plaintiff's attempt to certify her proposed class.

## STANDARD OF REVIEW

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Sellers ex rel. 21st Century Holding Co. v. Lawson*, No. 08-60374-CIV, 2009 WL 10698793, at *2 (S.D. Fla. Mar. 30, 2009) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).  "In determining whether a proceeding should be stayed, the court must weigh competing interests, including '[(1)] the possible damage which may result from the granting of the stay, [(2)] the hardship or inequity which a party may suffer in being required to go forward, and [(3)] the orderly cause of justice measured in terms of the simplifying or

complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Id.* at *2 (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)). Stays are disfavored, however, as there is an interest in proceedings being brought to a close without undue delay, and thus, a party seeking to stay proceedings faces a "heavy burden." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C. 2002) (denying stay); *see also GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) ("the right to proceed in court should not be denied except under the most extreme circumstances").

The precedent of this Circuit establishes that stays are disfavored even when a related case is pending resolution. In *Ortega Trujillo v. Conover & Co. Communications, Inc.*, the Eleventh Circuit vacated a stay finding that it was "immoderate" and an abuse of discretion. 221 F.3d 1262, 1264–65 (11th Cir. 2000). "When a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the district court must limit properly the scope of the stay. A stay must not be 'immoderate.'" *Id.* at 1264 (quoting *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982)). Notably, the Eleventh Circuit ruled that even when the pending proceeding would address the same issues, "[t]he case law illustrates that, in a case like this one, the interests of judicial economy alone are insufficient to justify such an indefinite stay." *Id.* at 1265.

Further, "[t]he Eleventh Circuit disfavors the granting of a stay based on the Supreme Court's grant of certiorari. A 'grant of certiorari does not change the law.'" *Arkin v. Innocutis Holdings, LLC*, 176 F. Supp. 3d 1313, 1314 (M.D. Fla. 2016) (citation omitted). "In fact, '[u]ntil the Supreme Court issues a decision that actually changes the law, we are duty-bound to apply this Court's precedent and to use it and any existing decisions of the Supreme Court to measure the likelihood of plaintiff's success on the merits.'" *Id.*; *see also Zuluaga v. Ocwen Loan*

4

*Servicing, LLC*, No 6:17-cv-335, 2017 WL 1684127, at *1–2 (M.D. Fla. May 3, 2017) (declining to stay the case pending the issuance of an appellate decision on same issue).

## ARGUMENT

I.  **The Court Can and Should Resolve Whether Plaintiff Has Article III Standing Based on the Current Record**

Without in any way attempting to reopen the briefing on whether Plaintiff herself has Article III standing for each of her claims under the TCPA, the University notes that there is no dispute between the Parties that Plaintiff herself must have standing in order to represent the proposed class.  A review of both the *Cordoba* decision and the Appellant's brief, however, reveal that the standing of *the absent class members* is the only standing issue being reviewed by the Court of Appeals.  *See Cordoba*, 320 F.R.D. at 593–96 (analyzing "[w]hether the Proposed IDNC Class Lacks Standing"); Appellant's Brief at 9–22 (Dkt. No. 99-1).  In other words, DirecTV did not challenge, and is not seeking review of, the named Plaintiff's standing, let alone whether Cordoba suffered an injury-in-fact for each call he received.

That is not this case.  The University has consistently challenged Plaintiff's standing. And because each call is its own claim under the TCPA, 47 U.S.C. § 227(c)(5), the University has also consistently challenged Plaintiff's *inconsistent* attempts to recover for constantly shifting calls and texts on a per message basis.  This includes her attempt to recover for a text message she never received, as well as her failure to present any evidence of any injury for the calls and texts she did.  *See, e.g.*, Dkt. No. 80-1 at 11–14, 16–20; Dkt. No. 92 at 1–4.

In short, resolution of the *Cordoba* appeal will not even address, let alone control, these distinct issues related to Plaintiff's individual standing.  Plaintiff therefore has not met her heavy burden to establish that a blanket stay of this case is appropriate.

## II.   The Court Is Duty Bound to Apply *Salcedo* to the Facts of This Case

As detailed above, the Eleventh Circuit has ruled that lower courts "are duty-bound to apply this Court's precedent" unless and until there is "a decision that actually changes the law." *Gissendaner v. Comm'r, Georgia Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015).  The Court of Appeals' recent *Salcedo* decision directly addresses Article III standing—or the lack thereof—in the context of the receipt of unsolicited telemarketing text messages.  In so doing, the Court of Appeals provided clear, controlling authority that the Court is duty bound to apply here.

Indeed, the Court of Appeals provided a clear roadmap for analyzing Plaintiff's individual and class claims.  The court first looked to the statute itself:  "We first note what Congress has said in the TCPA's provisions and findings about harms from telemarketing via text message generally: *nothing*.  The TCPA is completely silent on the subject of unsolicited text messages." *Salcedo*, 936 F.3d at 1168–69.  Further, Congress's legislative "findings in the TCPA show a concern for privacy within the sanctity of the home that do not apply to text messaging: 'Unrestricted telemarketing . . . can be an intrusive invasion of privacy,' and '[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.'" *Id.* at 1169.

Looking to the statutory provisions at issue here, and as the University has extensively briefed already, Congress was expressly concerned with "the need to protect residential telephone subscribers' privacy rights to avoid receiving **telephone solicitations to which they object**."  47 U.S.C. § 227(c)(1) (emphasis added).  Congress went a step further, mandating that the term "telephone solicitation" expressly **excludes** "a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has

an established business relationship." 47 U.S.C. § 227(a)(4).

In other words, Congress was not concerned with *solicited* telemarketing, let alone varied transactional messages, but specifically with *unsolicited telemarketing*. And as the Court of Appeals held further, Congress was specifically concerned about "'intrusive invasion[s] of privacy' into the home when it enacted the TCPA." *Salcedo*, 936 F.3d at 1170; *see also id.* at 1169 (distinguishing between calls to landlines invading "the sanctity of the home" with messages to cell phones, which "are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion"). Further, relevant to Plaintiff's frequent conflation of Congress and the FCC, the Court of Appeals notably dismissed "deference to the FCC's interpretation of the TCPA" in the context of analyzing Article III standing because "the Supreme Court has specifically instructed us to consider the judgment of *Congress*." *Id.* at 1169 (emphasis in original). And at no point has Congress ever elevated the receipt of *solicited* calls as the type of "harm" addressable in court. Quite the opposite. Congress expressly carved such calls out of Subsection (c) of the statute.

Finally, even for the *unsolicited* autodialed telemarketing text message before it, the Court of Appeals went on to find that the receipt of such a message did not have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 1171. In order to find such harm, the court looked to "the generally accepted tort of intrusion upon seclusion," which requires "invasions of privacy that would be 'highly offensive to a reasonable person.'" *Id.* (quoting Restatement (Second) of Torts § 652B ("cmt. d (no liability for one, two, or three phone calls; liability 'only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff")). As the University has extensively briefed throughout this case, there can be no

invasion of an individual's privacy when that person has expressly invited the contact. *See, e.g.*, Dkt. No. 22 at 1; Dkt. No. 70-1 at 2, 11–12. Plaintiff's position is like calling the cops for a trespass because your dinner guests arrived on time.

At bottom, given the Court of Appeals' controlling decision in *Salcedo* that even an *unsolicited* autodialed telemarketing message to a cell phone does not create an injury-in-fact, any contention that Plaintiff, or anyone else, was injured by the University's *solicited* calls is without merit. Crediting Plaintiff's theory of the case would therefore create an untenable contradiction with the Eleventh Circuit's binding Article III precedent.

### III.     *Cordoba* **Is Expressly Inapplicable to Solicited Telephones Calls**

As the University has repeatedly briefed, the *Cordoba* court's holding was expressly predicated on the *absence* of an established business relationship, i.e., that all the calls at issue were unsolicited telephone solicitations:

> Plaintiff's reliance on certain cases, however, goes beyond being merely hypocritical. For example, Plaintiff quotes *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017) — another case involving *unsolicited* calls — for the proposition that calls received in violation of the Subsection (d) regulations provide a private right of action. Opp. at 9. But Plaintiff neglects to inform the Court that the *Cordoba* court immediately qualifies this statement, ruling that such calls would "**not [be] actionable if a seller has an 'established business relationship' ('EBR')** with a customer." *Id.* at 587 (emphasis added).

Dkt. No. 74 at 9–10. Indeed, the court in *Cordoba* expressly grounded its standing determination on the unsolicited nature of the calls before it: "the Court finds that '**[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients**,'" sufficient to confer Article III standing. *Cordoba*, 320 F.R.D. at 596 (emphasis added) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

To be sure, the Eleventh Circuit expressly rejected the Ninth Circuit's *Van Patten*

8

decision on which *Cordoba* is based.  *Salcedo*, 936 F.3d at 1172 ("We decline to adopt [*Van Patten*'s] reasoning and instead embrace more fully the Supreme Court's instruction for a 'close relationship' to a traditionally redressable harm.").  Thus, not only is *Cordoba* now in direct conflict with Court of Appeals precedent, the decision by its terms does not extend to the solicited calls at issue in this case.  Again, the *Cordoba* court expressly held that such solicited calls *are not actionable* under the TCPA.  The University agrees.

Thus, no matter how many times Plaintiff falsely contends that the Eleventh Circuit will be addressing "the precise" or "the exact Article III standing issue" presented in this case, Mot. at 1–2, repetition will not make it true.  Resolution of the *Cordoba* appeal will not disturb the common sense notion that expressly inviting telephone calls does not result in an invasion of privacy when—and if—those calls are received.

## CONCLUSION

For the foregoing reasons, the University respectfully requests that the Court deny Plaintiff's Motion to Stay.

Dated: October 25, 2019

Respectfully submitted,

By: */s/ Mary Joanne Dowd*
Mary Joanne Dowd, # 368970
Adam Bowser, (admitted pro hac vice)
Samantha Collins, (admitted pro hac vice)
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006-5344
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)
mary.dowd@arentfox.com
adam.bowser@arentfox.com
samantha.collins@arentfox.com

*Attorneys for Post University, Inc.*

9

## **CERTIFICATE OF SERVICE**

       I hereby certify that on October 25, 2019, the foregoing was filed electronically with the Clerk of Court and served by Notice of Electronic Filing from the Court's electronic filing system upon the following:

Bradford R. Sohn
THE BRAD SOHN LAW FIRM PLLC
2600 South Douglas Rd., Suite 1007
Coral Gables, Florida 33134
Tel: (786) 708-9750
Fax: (305) 397-0650
brad@sohn.com

Jeremy M. Glapion
THE GLAPION LAW FIRM, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: (732) 455-9737
Fax: (732) 709-5150
jmg@glapionlaw.com
*Attorneys for Plaintiff*

                                                             /s/ *Mary Joanne Dowd*
                                                              Mary Joanne Dowd